Jeffrey A. LeVee (State Bar No. 125863)
jlevee@JonesDay.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071
Telephone:     213.489.3939
Facsimile:     213.243.2539

David C. Kiernan (State Bar No. 215335)
dkiernan@JonesDay.com
Lin Wang Kahn (State Bar No. 261387)
linkahn@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     415.626.3939
Facsimile:     415.875.5700

Attorneys for Defendant
SUTTER HEALTH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DJENEBA SIDIBE and DIANE DEWAY, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiffs,<br><br>     v.<br><br>SUTTER HEALTH, and DOES 1 through 25, inclusive,<br><br>             Defendants. | Case No. 3:12-CV-04854-LB<br><br><br>**DEFENDANT SUTTER HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>**Date:   March 21, 2013**<br>**Time:  11:00 a.m.** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 1

RELIEF SOUGHT ............................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 3

ISSUES TO BE DECIDED ................................................................................................. 3

INTRODUCTION AND factual BACKGROUND............................................................. 3

ARGUMENT ........................................................................................................................ 5

I.  PLAINTIFFS' FIRST CAUSE OF ACTION UNDER SHERMAN ACT
    SECTION 1 FAILS........................................................................................ 6

    A.  Plaintiffs Do Not Have Standing To Challenge Sutter's Agreements
        With Health Plans .......................................................................... 6

    B.  Plaintiffs Have Not Properly Asserted a Claim For Unlawful
        Exclusive Dealing ........................................................................ 11

        1.  Plaintiffs Have Not Alleged Any Exclusive Dealing
            Agreements ...................................................................... 11

        2.  Plaintiffs Have Not Properly Defined A Relevant Market
            Affected By Any Alleged Exclusive Dealing Agreements........... 15

    C.  Plaintiffs Have Not Properly Asserted a Claim for Unlawful Tying ........ 17

II. PLAINTIFFS' SECOND CAUSE OF ACTION UNDER SHERMAN
    ACT SECTION 2 FAILS.............................................................................. 20

III. PLAINTIFFS' THIRD CAUSE OF ACTION FOR VIOLATION OF THE
     CARTWRIGHT ACT FAILS ....................................................................... 21

IV. PLAINTIFFS' FOURTH CAUSE OF ACTION FOR VIOLATION OF
    THE CALIFORNIA UNFAIR COMPETITION ACT FAILS........................... 22

V.  PLAINTIFFS' FIFTH CAUSE OF ACTION FOR UNJUST
    ENRICHMENT FAILS ................................................................................ 23

CONCLUSION................................................................................................................... 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3   CASES

4   *Abraham v. Intermountain Health Care Inc.*,
5       461 F.3d 1249 (10th Cir. 2006)..................................................................... 14, 19

6   *Aguilar v. Atlantic Richfield Co.*,
        25 Cal. 4th 826 (2001) ...................................................................................... 23
7
    *Alaska Airlines, Inc. v. United Airlines, Inc.*,
8       948 F.2d 536 (9th Cir. 1991)............................................................................. 20

9   *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
        592 F.3d 991 (9th Cir. 2010)........................................................................ 11, 12
10
    *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
11      190 F.3d 1051 (9th Cir. 1999).......................................................................... 7, 8

12  *Amarel v. Connell*,
        102 F.3d 1494 (9th Cir. 1997)............................................................................. 7
13
    *Armstrong v. Chevy Chase Bank, FSB*,
14      No. 5:11-cv-05664 EJD, 2012 WL 4747165 (N.D. Cal. Oct. 3, 2012) ................. 23

15  *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
        204 Cal. App. 4th 1 (2012) .............................................................................. 22
16
    *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
17      459 U.S. 519 (1983) ......................................................................... 5, 7, 8, 10
18
    *Barocio v. Bank of America, N.A.*,
19      No. C 11-5636 SBA, 2012 WL 39455354 (N.D. Cal. Sept. 10, 2012)................... 23
20
    *Barry v. Blue Cross of Cal.*,
21      805 F.2d 866 (9th Cir. 1986)............................................................................. 13

22  *Bell Atlantic Corp. v. Twombly*,
        550 U.S. 544 (2007)............................................................................................ 5
23
    *Berkey Photo, Inc. v Eastman Kodak Co.*,
24      603 F.2d 263 (2d Cir. 1979).............................................................................. 20
25
    *Bhan v. NME Hosps., Inc.*,
26      772 F.2d 1467 (9th Cir. 1985)............................................................................. 7

27  *Brantley v. NBC Universal, Inc.*,
        675 F.3d 1192 (9th Cir. 2012) ......................................................................... 18
28

*California v. Sutter Health System,*
  130 F. Supp. 2d 1109 (N.D. Cal. 2001) ............................................................ 4, 14, 15, 16

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.,*
  725 F. Supp. 669 (N.D.N.Y. 1989) ................................................................................. 15

*Cascade Health Solutions v. PeaceHealth,*
  515 F.3d 883 (9th Cir. 2008)......................................................................................... 18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ................................................................................................. 22

*Chavez v. Whirlpool Corp.,*
  93 Cal. App. 4th 363 (2001) ........................................................................................ 23

*Copperweld Corp. v. Independence Tube Corp.,*
  467 U.S. 752 (1984)........................................................................................................ 6

*Cyntegra, Inc. v. Idexx Labs., Inc.,*
  520 F. Supp. 2d 1199 (C.D. Cal. 2007) ........................................................................ 20

*Datagate, Inc. v. Hewlett–Packard Co.,*
  60 F.3d 1421 (9th Cir. 1995)......................................................................................... 18

*Del. Valley Surgical Supply, Inc. v. Johnson & Johnson,*
  523 F.3d 1116 (9th Cir. 2008).................................................................................... 7, 9

*Delano Farms Co. v. California Table Grape Comm'n,*
  No. 1:07-CV-1610 OWW SMS, 2010 WL 2952358 (E.D. Cal. July 26, 2010).................... 24

*Doe v. Abbott Labs.,*
  571 F.3d 930 (9th Cir. 2009)......................................................................................... 20

*Faulkner Adver. Ass'n, Inc. v. Nissan Motor Corp.,*
  905 F.2d 769 (4th Cir. 1990)......................................................................................... 19

*Glen Holly Entm't. v. Tektronix Inc.,*
  343 F.3d 1000 (9th Cir. 2003)......................................................................................... 7

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984).......................................................................................................... 5

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977)........................................................................................................ 9

*In re ATM Fee Antitrust Litig.,*
  No. C 04-02676 CRB, 2010 WL 3701912 (N.D. Cal. Sept. 16, 2010).................................. 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................ 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  536 F. Supp. 2d 1129 (N.D. Cal. 2008) ................................................................. 10

*In re Mid-Atl. Toyota Antitrust Litig.*,
  516 F. Supp. 1287, 1292 (D. Md. 1981) .............................................................. 10

*In re Webkinz Antitrust Litig.*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) ............................................................ 17, 19

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ......................................................................................... 18

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
  884 F.2d 504 (9th Cir. 1989) ............................................................................ 6

*Levine v. Blue Shield of Cal.*,
  189 Cal. App. 4th 1117 (2010) ........................................................................ 23

*Los Angeles Mem'l. Coliseum Comm'n v. NFL*,
  726 F.2d 1381 (9th Cir. 1984) ......................................................................... 15

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
  140 F.3d 1228 (9th Cir. 1998) ....................................................................... 7, 9

*Marilao v. McDonald's Corp.*,
  632 F. Supp. 2d 1008 (S.D. Cal. 2009) ............................................................. 23

*Marin County Bd. of Realtors, Inc. v. Palsson*,
  16 Cal. 3d 920 (1976) ................................................................................... 22

*Masimo Corp. v. Tyco Health Care Grp., LP*,
  No. CV 02-4770 MRP, 2006 WL 1236666 (C.D. Cal. Mar. 22, 2006), *aff'd*, 350 Fed.
  App'x 95 (9th Cir. 2009) ............................................................................... 12

*MetroNet Servs. Corp. v. US West Commc'ns*,
  329 F.3d 986 (9th Cir. 2003, *vacated on other grounds*, 540 U.S. 1147 (2004)) .................. 20

*Northern Pac. Ry. Co. v. United States*,
  356 U.S. 1 (1958) ......................................................................................... 18

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997) .............................................................. 11, 12, 15

*Pacific Bell Tel. Co., v. Linkline Commc'ns*,
  555 U.S. 438 (2009) ................................................................................. 2, 210

*Person v. Google, Inc.*,
  No. C 06-7297 JF (RS), 2007 WL 832941 (N.D. Cal. Mar. 16, 2007) .......................... 16

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
  890 F.2d 139 (9th Cir. 1989).................................................................... 7, 16

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995)...................................................................... 17

*Redwood Theatres, Inc. v. Festival Enters., Inc.*,
  200 Cal. App. 3d 687 (1988)....................................................................... 22

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
  532 F.3d 963 (9th Cir. 2008)....................................................................... 18

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961).................................................................................... 17

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001)..................................................................... 15

*Tri-State Rubbish v. Waste Mgmt.*,
  998 F.2d 1073 (1st Cir. 1993)..................................................................... 11

*U.S. v. Grinnell Corp.*,
  384 U.S. 563 (1966).................................................................................... 20

*Ubaldi v. SLM Corp.*,
  852 F. Supp. 2d 1190 (N.D. Cal. 2012) ...................................................... 23

*United States v. Long Island Jewish Med. Ctr.*,
  983 F. Supp. 121 (E.D.N.Y. 1997) ............................................................. 16

*United States v. Lowe's*,
  371 U.S. 38 (1962)...................................................................................... 18

*Universal Grading Serv. v. eBay, Inc.*,
  No. C-09-2755 RMW, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012)........................... 16

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004).................................................................................... 21

*Vinci v. Waste Mgmt., Inc.*,
  36 Cal. App. 4th 1811 (1995) ..................................................................... 22

*Western Parcel Express v. United Parcel Service of Am. Inc.*,
  190 F.3d 974 (9th Cir. 1999)........................................................... 12, 15, 17

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................... 22, 23

California Cartwright Act, Cal. Bus. & Prof. Code § 16720 ....................... 3, 21, 22, 23

1

Clayton Act § 4 ................................................................................................. 9

2

Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act") ................................. 14

3

Sherman Act § 1 ........................................................................................ passim

4

Sherman Act § 2 ........................................................................................ passim

5

**RULES**

6

Fed. R. Civ. P. 12 ............................................................................................. 1

7

**OTHER AUTHORITIES**

8

Fed. Trade Commission Report, "Improving Health Care: A Dose of Competition" (July
    2004) ................................................................................................. 14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 12(b)(6),

3 Defendant Sutter Health ("Sutter") will and hereby does move the Court to dismiss plaintiffs'

4 First Amended Complaint.  This motion shall be heard on March 21, 2013, at 11:00 a.m., or as

5 soon thereafter as it may be heard, in the courtroom of the Honorable Laurel Beeler, United States

6 Magistrate Judge, at United States District Court, 450 Golden Gate Avenue, 15th Floor,

7 Courtroom C, San Francisco, California 94102.

8

## RELIEF SOUGHT

9      Pursuant to Federal Rule of Civil Procedure 12(b)(6), Sutter requests that the Court

10 dismiss plaintiffs' first amended complaint with prejudice for failure to state a claim upon which

11 relief can be granted.

12      Plaintiffs' first cause of action under Section 1 of the Sherman Act fails because:

13 (1) plaintiffs do not have standing to challenge Sutter's agreements with health plans;

14 (2) plaintiffs have not properly asserted a claim for unlawful exclusive dealing; and (3) plaintiffs

15 have not properly asserted a claim for unlawful tying.

16      Plaintiffs' second cause of action under Section 2 of the Sherman Act, third cause of

17 action under the Cartwright Act, and fourth cause of action under California's unfair competition

18 statute fail for the same reasons that plaintiffs' first cause of action fails.

19      Plaintiffs' fifth cause of action for unjust enrichment is defective because unjust

20 enrichment is not an independent cause of action in California, and plaintiffs nonetheless have

21 failed to allege sufficient facts to support this claim.

22      Sutter's motion is based on this Notice of Motion and Motion, the accompanying

23 Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the

24 accompanying Declaration of Lin W. Kahn, the complete files and records in this action,

25 including Plaintiffs' First Amended Complaint, oral argument of counsel, and such other and

26 further matters as this Court may consider.

27

28

1

2     Dated:       January 18, 2013                    JONES DAY

3
                                                       By:     /s/ Jeffrey A. LeVee
4                                                              Jeffrey A. LeVee

5                                                      Attorneys for Defendant SUTTER HEALTH

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES TO BE DECIDED**

1.     Have plaintiffs stated a valid Section 1 Sherman Act claim?

2.     Have plaintiffs stated a valid Section 2 Sherman Act claim?

3.     Have plaintiffs stated a valid Cartwright Act claim?

4.     Have plaintiffs stated a valid claim under California's unfair competition statute?

5.     Have plaintiffs stated a valid unjust enrichment claim?

**INTRODUCTION AND FACTUAL BACKGROUND**

In their first amended complaint (ECF No. 11, hereinafter "Complaint"), Plaintiffs allege various antitrust and related claims against defendant Sutter Health ("Sutter").  By this motion, Sutter seeks to have the entire complaint dismissed with prejudice because none of the five claims for relief is legally viable.

Plaintiffs' first amended complaint consists of sixty-five pages of ad hominem attacks on Sutter, which is a non-profit corporation based in Sacramento that includes 33 hospitals, 4 skilled nursing facilities, 14 home healthcare locations, and contracts with medical groups.  (Complaint ¶¶ 7, 19.)  The thrust of the complaint is that "big is bad," with the implied assumption that, because Sutter has become a large healthcare provider, that size – in and of itself – must be the result of violations of the antitrust laws.  The bases for the specific violations, however, are incredibly slim and easily dismissed at the Rule 12 stage, as explained herein.

The amended complaint tells the Court virtually nothing about the two named plaintiffs except that they are California residents who are or have been "enrolled in a licensed health care plan that has a contractual relationship with Sutter Health for health care services."  (Complaint ¶¶ 17, 18.)  Incredibly, the complaint does not allege that either plaintiff actually visited a Sutter provider (hospital, physician, and so forth) during the relevant period, much less paid any money to Sutter as a result, or even what type of health insurance either had.  Instead, the complaint merely alleges that plaintiffs' unidentified health plans have contractual relationships with Sutter, and plaintiffs contend that the health plans' contracts with Sutter somehow give plaintiffs a legal basis to pursue claims against Sutter.  Plaintiffs purport to represent a class of potentially millions

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1   of Californians dating back to September 2008 who live in twenty-two different California

2   counties and who were enrolled in a licensed health care service plan that had a contractual

3   relationship with Sutter.  (Complaint ¶ 130.)  In other words, plaintiffs' putative class consist of

4   all persons who have had health insurance of any kind where that insurer had a contract that

5   permitted its members to visit a Sutter provider.

6        Most of the allegations of the complaint consist of random concerns about Sutter and its

7   growth as a health care delivery system, with an emphasis on Sutter's allegedly high prices.

8   Plaintiffs concede in the opening paragraph that the allegations are made entirely on information

9   and belief, and that they found most of their "facts" on the Internet.  Plaintiffs are critical of

10  various contracts that Sutter has signed with health plans over the years, but plaintiffs give no

11  indication of how they might possibly have standing to complain about any of those contracts.

12  Further, many of the allegations are quite old and undoubtedly time-barred.  For example,

13  plaintiffs' allegations include references to an alleged Sutter "planning document" drafted in 1996

14  (Complaint ¶ 90), to contract negotiations in 1998 (Complaint ¶ 82) and 2004 (Complaint ¶¶ 43-

15  44), and to statements made in 2004 (Complaint ¶ 43).  The complaint also devotes considerable

16  attention to the alleged evils of hospital consolidation (Complaint ¶¶ 51-52, 59), although the

17  alleged antitrust violations have nothing to do with Sutter's hospital acquisitions.  Indeed,

18  precious little in the amended complaint has anything to do with the actual allegations of antitrust

19  violations.

20       Other allegations in the complaint are demonstrably false or misleading.  For example,

21  plaintiffs refer to Sutter's purchase of Summit Medical Center in Oakland in 1999 and testimony

22  from a trial that occurred when the California Attorney General attempted to block the

23  transaction.  Plaintiffs imply that Sutter's acquisition of Summit was anticompetitive, and they

24  allege that the California Attorney General's efforts to enjoin that purchase were "rebuffed."

25  (Complaint ¶¶ 42, 86.)  What plaintiffs do not acknowledge, however, is that the "rebuffing" was

26  done by District Judge Maxine Chesney in a lengthy opinion that made clear that the California

27  Attorney General's efforts to block Sutter's purchase of Summit on antitrust grounds were

28  unfounded.  *California v. Sutter Health System*, 130 F. Supp. 2d 1109 (N.D. Cal. 2001).

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1    The amended complaint also contains numerous allegations related to Sutter's alleged

2  "abuse" of its non-profit status, although plaintiffs are candid enough to admit that the lawsuit

3  "does not concern Sutter Health's non-profit status."  (Complaint ¶ 113.)  Despite plaintiffs'

4  admission, plaintiffs nevertheless devote fifteen paragraphs of their complaint to a discussion of

5  Sutter's non-profit status, allegations that are utterly irrelevant.

6    When plaintiffs finally get around to explaining the actual bases for their antitrust claims,

7  the allegations are incredibly thin and provide almost no explanation of how Sutter has violated

8  any laws.  Plaintiffs refer to "tying" and "exclusive dealing" arrangements that they allege to

9  violate the laws, but as discussed in this motion, the complaint's allegations do not actually

10  identify **any** tying or exclusive dealing, and certainly not conduct that could violate the antitrust

11  laws or preclude Sutter's competitors from competing fully.  To the contrary, the complaint is

12  utterly devoid of allegations that Sutter has in any way prevented its competitors from engaging

13  in full and fair competition.  Absent such allegations, as well as specific allegations of how

14  Sutter's conduct vis-à-vis the named plaintiffs could violate the antitrust laws, this lawsuit should

15  be dismissed.

16                                    **ARGUMENT**

17    On a motion to dismiss, the Court should accept well-pleaded factual allegations as

18  correct, but a complaint should be dismissed when its allegations fail to state a cognizable claim.

19  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (courts shall not accept legal conclusions as

20  true, and complaints must state a plausible claim for relief in order to survive a motion to

21  dismiss); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The Court in *Twombly* noted that

22  the costs of modern federal antitrust litigation, in particular, should counsel against sending the

23  parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a

24  claim from the events set forth in the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. at

25  558 ("Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of

26  discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.  As

27  we indicated over 20 years ago in *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 'a

28  district court must retain the power to insist upon some specificity in pleading before allowing a

1    potentially massive factual controversy to proceed.'" (internal citations omitted)).

2    **I.      PLAINTIFFS' FIRST CAUSE OF ACTION UNDER SHERMAN ACT**

3    **SECTION 1 FAILS.**

4           Plaintiffs' first cause of action alleges a violation of Section 1 of the Sherman Act.  A

5    violation of Section 1 requires a contract or agreement between two or more unrelated entities

6    that has the effect of unreasonably restraining trade.  *Copperweld Corp. v. Independence Tube*

7    *Corp.*, 467 U.S. 752 (1984); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507

8    (9th Cir. 1989) ("The rule of reason requires a claimant under Sherman Act § 1 initially to

9    establish three elements: '(1) an agreement or conspiracy among two or more persons or distinct

10   business entities; (2) by which the persons or entities intend to harm or restrain competition; and

11   (3) which actually injures competition.'").

12          In their initial complaint, plaintiffs' Section 1 claim accused Sutter of entering into

13   agreements with entities that Sutter controls.  However, plaintiffs have now abandoned those

14   allegations, presumably in recognition of the fact that Sutter cannot, as a matter of law, conspire

15   with itself in violation of Sherman Act Section 1.  *Copperweld,* 467 U.S. 752 (parent corporations

16   and their wholly-owned subsidiaries are incapable of conspiring as a matter of law).

17          In their amended complaint, plaintiffs allege that Sutter's contracts with various health

18   plans – contracts that Sutter and those health plans entered into voluntarily so that the health plans

19   could refer their members to Sutter facilities for discounted healthcare services – violate Sherman

20   Act Section 1.  As explained herein, these allegations are deficient as a matter of law.

21          **A.      Plaintiffs Do Not Have Standing To Challenge Sutter's Agreements With**

22          **Health Plans**.

23          In paragraph 143 of the amended complaint, plaintiffs assert that Sutter's agreements with

24   health plans – the complaint does not identify which ones – violate Section 1 because Sutter has

25   "impos[ed] illegal and improper tying and exclusive dealing agreements" in those contracts in

26   order to "maintain and enhance [Sutter's] monopoly power in the market for health care in

27   Northern California."  Before addressing whether these health plan contracts constitute "tying" or

28   "exclusive dealing" arrangements, plaintiffs must establish that they have standing under the

1  Sherman Act to challenge contracts as to which they are not a party.  The law is clear that they do

2  not.

3      A plaintiff invoking the Sherman Act must show that she has "antitrust standing"— *i.e.*,

4  that she is a proper party to bring the case.  *See Associated Gen. Contractors of Cal., Inc. v. Cal.*

5  *State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983); *Bhan v. NME Hosps., Inc.*, 772 F.2d

6  1467, 1469 n.2 (9th Cir. 1985) ("What courts have referred to as antitrust standing is . . .

7  subsumed within the inquiry into whether a plaintiff is a proper party to bring an antitrust

8  action.").  The antitrust standing requirement is a "more demanding standard" that significantly

9  limits the universe of parties injured by the violation who may recover damages for the violation.

10  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997).  *See Del. Valley Surgical Supply, Inc. v.*

11  *Johnson & Johnson,* 523 F.3d 1116, 1120 (9th Cir. 2008) (referring to the constrained class of

12  parties that have statutory standing to recover damages through antitrust suits); *Lucas Auto.*

13  *Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998).  While antitrust

14  <u>injury</u> focuses on the nature of plaintiff's injury and its connection to the anticompetitive effects

15  of the violation, antitrust <u>standing</u> is a search for the proper plaintiff to bring the antitrust suit —

16  the most efficient plaintiff to redress the violation.  *See Associated Gen. Contractors*, 459 U.S. at

17  535 n.31.

18      Plaintiffs bear the burden of demonstrating that they have antitrust standing, *R.C. Dick*

19  *Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 144, 146 (9th Cir. 1989), which is a

20  question of law and determined from the face of the complaint.  *See Glen Holly Entm't v.*

21  *Tektronix Inc.*, 343 F.3d 1000, 1014 n.5 (9th Cir. 2003) ("an antitrust cause of action is

22  susceptible of dismissal at any stage once it does appear factually that the injury complained of

23  was not antitrust in nature" because standing can be raised at any stage of the case); *Am. Ad*

24  *Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999) ("Anti-trust standing is

25  a question of law reviewed de novo.").

26      In *Associated General Contractors*, the Supreme Court set forth a number of factors that

27  courts should examine to determine whether a plaintiff has antitrust standing.  None, except

28  antitrust injury, is an absolute or determinative requirement itself.  Rather, a court is required to

balance the factors to determine if the plaintiff has antitrust standing.  *Associated Gen.*

*Contractors*, 459 U.S. at 535.  The relevant factors are:

(1)   the closeness or the causal connection between the violation and the harm to the
         plaintiff, and whether the defendant intended to cause the harm to the plaintiff that
         it caused;

(2)   the nature of the plaintiff's injury, including whether the plaintiff was a customer
         or competitor in the relevant market affected by the violation;

(3)   the directness of the injury, and whether the plaintiff's damages are too
         speculative;

(4)   the risk of duplicative recovery and danger of complex damage-apportionment
         problems; and

(5)   the existence of more direct victims.

*Id.* at 535-46; *Am. Ad Mgmt.*, 190 F.3d at 1054 (listing the *Associated General Contractors*

factors).

Here, plaintiffs clearly fail to meet their burden, for multiple reasons.

Although plaintiffs allege that they have "been enrolled in a licensed health care plan that

has a contractual relationship with Sutter Health for health care services" (Complaint ¶¶ 17-18),

the complaint does not allege any connection between plaintiffs and Sutter.  For example:

- the complaint does not allege that plaintiffs purchased their health plans or even
   what health plans they had;

- the complaint does not provide any details as to the nature of the specific health
   plans and whether those health plans contain the "tying" or "exclusive dealing"
   language that plaintiffs allege to violate the Sherman Act;

- the complaint does not allege that plaintiffs ever received medical care from a
   Sutter provider (or, for that matter, any other provider);

- the complaint does not allege that plaintiffs ever paid Sutter directly for any
   medical care;

- the complaint does not provide any details that would demonstrate that the price

1        that plaintiffs paid to any healthcare provider other than a Sutter provider might

2        somehow have been affected by Sutter's so-called antitrust violations.

3            Because plaintiffs do not allege that they visited (much less paid money to) a Sutter

4    provider during the relevant period, plaintiffs cannot prove that they are either customers or

5    competitors of Sutter.  While plaintiffs imply that health plans pay higher prices – and perhaps

6    charge higher premiums – as a result of Sutter's conduct, to the extent that any health plan

7    believes that its contract with Sutter constitutes an antitrust violation, the health plan obviously is

8    the more direct and appropriate plaintiff to bring such a claim.

9            Indeed, plaintiffs lack standing for the additional reason that they are indirect purchasers

10   from Sutter.  Plaintiffs do not allege that they paid Sutter too much money as a result of Sutter's

11   alleged violation of the antitrust laws.  Instead, plaintiffs are alleging that their health insurance

12   companies have paid Sutter too much money.  Because plaintiffs did not pay Sutter directly,

13   plaintiffs are "indirect purchasers" with respect to Sutter's charges to health plans, and they lack

14   standing to pursue Section 1 claims.  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the

15   U.S. Supreme Court held that, as a matter of law, only a direct purchaser is deemed to be

16   "injured" for purposes of Section 4 of the Clayton Act, even if the direct purchaser passes on the

17   overcharge, in whole or in part, to its customers.  Accordingly, an indirect purchaser cannot

18   recover damages for violation of the federal antitrust laws.  *See Del. Valley*, 523 F.3d at 1122

19   (concluding that the court is "bound by the sensible and straightforward rule set forth in *Illinois*

20   *Brick*" and thus the plaintiff lacks standing under the antitrust laws); *Lucas Auto.*, 140 F.3d at

21   1233 (indirect purchasers lack standing to seek damages; explaining that "indirect purchaser rule

22   serves to avoid the complications of apportioning overcharges between direct and indirect

23   purchasers and to eliminate multiple recoveries"); *In re ATM Fee Antitrust Litig.*, No. C 04-02676

24   CRB, 2010 WL 3701912, at *4 (N.D. Cal. Sept. 16, 2010) (explaining that only "'direct

25   purchasers,' *i.e.*, those entities that directly pay the allegedly fixed price, may recover antitrust

26   damages").

27           An important reason that indirect purchasers do not have standing relates to the issue of

28   tracing and apportioning damages.  Assuming, for discussion purposes only, that Sutter's

1   contracts with health plans somehow violate the Sherman Act, it would be virtually impossible to

2   determine the extent to which Sutter's "unlawfully high" prices to health plans had an impact on

3   the cost of <u>plaintiffs'</u> health insurance because the cost of that insurance would be affected by

4   numerous factors, including the prices charged to the health plans by all of their other providers,

5   the health plans' cost of administering the insurance, the health plans' profit margins, and so

6   forth.  *See, e.g., In re Mid-Atl. Toyota Antitrust Litig.*, 516 F. Supp. 1287, 1292 (D. Md. 1981)

7   (referring to problems that make it impossible to attribute price increases to an alleged overcharge

8   as opposed to all other supply and demand factors); *In re Dynamic Random Access Memory*

9   *(DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1137 (N.D. Cal. 2008) (granting motion to

10  dismiss for lack of antitrust standing and noting that the "Ninth Circuit has repeatedly stated that

11  the requirement that a plaintiff's alleged injury be related to anticompetitive conduct requires, 'as

12  a corollary, that the injured party be a participant in the same market as the alleged malefactors.'

13  … Parties whose injuries, 'though flowing from that which makes the defendant's conduct

14  unlawful, are experienced in another market do not suffer antitrust injury'").

15        In short, <u>none</u> of the factors for antitrust standing set forth in *Associated General*

16  *Contractors* weighs in plaintiffs' favor.  Plaintiffs' alleged injury is indirect, their damages are

17  speculative, there is a significant risk of duplicative recovery and danger of complex damage-

18  apportionment problems, and there obviously are victims (the health plans that signed contracts

19  with Sutter) that are far more direct "victims" of Sutter's conduct.

20        Further confirmation of the lack of plaintiffs' antitrust standing is the fact that plaintiffs do

21  not even participate in the "relevant market" in which the antitrust violations are alleged to have

22  occurred.  In paragraphs 36 and 37 of the amended complaint, plaintiffs allege that the relevant

23  market relates to the provision of health care services in 22 California counties, and plaintiffs then

24  allege that "there is a relevant market for the provision of contracted access to health care services

25  in Northern California through health plans."  Thus, the participants in the market are health plans

26  and the health care providers that contract with health plans (as confirmed by footnote 3 of the

27  amended complaint, which states that Kaiser health plans are not to be included in the market).

28  By contrast, plaintiffs are consumers who (apparently) have purchased health insurance; they are

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1   neither health care providers nor health plans that have contracted with providers.  They lack any

2   notion of privity or directness vis-à-vis Sutter, and thus they have no basis to assert direct claims

3   against Sutter.

4           For all these reasons, the Court should dismiss plaintiffs' Sherman Act Section 1 and

5   Section 2 claims because plaintiffs lack antitrust standing to pursue these claims.

6       **B.**      **Plaintiffs Have Not Properly Asserted a Claim For Unlawful Exclusive**

7                  **Dealing.**

8              **1.**      **Plaintiffs Have Not Alleged Any Exclusive Dealing Agreements**.

9           Even if the Court concluded that plaintiffs had standing to assert claims related to health

10  plan contracts with Sutter, plaintiffs have not properly alleged an unlawful exclusive dealing

11  agreement, and thus their Section 1 claim should be dismissed.  An exclusive dealing agreement

12  results when a seller agrees with a purchaser to sell its products or services to only that purchaser,

13  or a purchaser agrees with a seller to buy a product from only that seller.  *See, e.g., Allied*

14  *Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010)

15  ("Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer

16  from purchasing a given good from any other vendor.").[1]

17          While plaintiffs use the word "exclusive" frequently in their complaint, the complaint

18  does not actually allege any facts supporting a conclusion that Sutter's competitors have been

19  excluded from any health plan contracts.  Yet, that is the type of "exclusion" that would be

20  necessary to pursue an "exclusive dealing" claim.  As the Ninth Circuit has explained, "[t]he main

21  antitrust objection to exclusive dealing is its tendency to 'foreclose' existing competitors or new

22  entrants from competition in the covered portion of the relevant market during the term of the

23  agreement."  *Omega Envtl.*, 127 F.3d at 1162.  Accordingly, courts within the Ninth Circuit have

24  held that exclusive contracts are unlawful only when they foreclose a substantial share of the

25  _____

26          [1] Exclusive dealing agreements are not necessarily unlawful, and the effect on competition
    of such agreements is always assessed under the rule of reason.  *See, e.g., Omega Envtl., Inc. v.*
27  *Gilbarco, Inc.,* 127 F.3d 1157, 1162 (9th Cir. 1997) ("We . . . analyze challenges to exclusive
    dealing arrangements under the antitrust rule of reason."); *Tri-State Rubbish v. Waste Mgmt.,* 998
28  F.2d 1073, 1080 (1st Cir. 1993) ("[E]xclusive dealing contracts may also benefit customers and
    are unlawful only upon a particularized showing of unreasonableness").

1   market.  *See Allied Orthopedic*, 592 F.3d at 996 ("Under the antitrust rule of reason, an exclusive

2   dealing arrangement violates Section 1 only if its effect is 'to foreclose competition in a

3   substantial share of the line of commerce affected.'" (citing *Omega Envtl.*, 127 F.3d at 1162);

4   *Masimo Corp. v. Tyco Health Care Grp., LP*, No. CV 02-4770 MRP, 2006 WL 1236666, at *3

5   (C.D. Cal. Mar. 22, 2006), *aff'd*, 350 Fed. App'x 95 (9th Cir. 2009) ("Under the rule of reason,

6   'only those arrangements whose probable effect is to foreclose competition in a substantial share

7   of the line of commerce affected violate the antitrust laws.'") (internal quotation and citation

8   omitted).

9        Thus, where the contracts at issue do not foreclose consumers from entering into contracts

10  with other competitors of the defendant, they are not exclusive dealing contracts that preclude

11  competition in violation of the Sherman Act.  *See Western Parcel Express v. United Parcel*

12  *Service of Am. Inc*., 190 F.3d 974, 976-77 (9th Cir. 1999) (concluding that the contracts at issue

13  were not exclusive dealing contracts because they did not preclude consumers from using other

14  parcel delivery services).  The Ninth Circuit has also emphasized that, where alternative means of

15  distribution are available, this can provide a complete defense to an exclusive dealing

16  arrangement even at high levels of foreclosure.  *See Omega Envtl.*, 127 F.3d at 1163 ("If

17  competitors can reach the ultimate consumers of the product by employing existing or potential

18  alternative channels of distribution, it is unclear whether such restrictions foreclose from

19  competition any part of the relevant market.").

20       These cases make clear that plaintiffs' complaint does not allege a Section 1 violation

21  because the complaint does not identify an exclusive dealing agreement, much less a level of

22  foreclosure allegedly associated with such an agreement that could support a Sherman Act

23  violation.  In paragraph 4 of their complaint, plaintiffs introduce the concept by alleging that

24  Sutter has entered into "exclusive dealing arrangements that have the consequence of forcing

25  health plans to require plaintiffs and other members of the class to obtain all their health care

26  services through Sutter Health providers, Sutter Health affiliated entities or Sutter Health

27  affiliated physicians' groups and to penalize members that use non-Sutter Health providers."  But

28  later in the complaint, when plaintiffs try to explain what they mean by these "exclusive dealing

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

arrangements," it becomes clear that there is nothing "exclusive" about them.

Specifically, in paragraph 92 of the amended complaint, plaintiffs quote from an alleged agreement that Sutter has with a health plan.  The language states that health plans whose members use one Sutter provider are supposed to "actively encourage" those members to use other Sutter providers.  "Actively encourage" is defined in the language plaintiffs quote to mean reduced co-payments, reduced deductibles, and so forth.  Of course, this language is the very essence of managed care:  if, for example, a patient selects a Sutter doctor, that patient will be encouraged – rewarded financially – to use a Sutter laboratory or a Sutter hospital as part of the overall "network" that Sutter has put together to treat the patient.  *Barry v. Blue Cross of Cal.*, 805 F.2d 866, 872 (9th Cir. 1986) ("We agree that paying lower benefits for treatment by nonparticipating physicians greatly discourages patients from using such physicians.  This, however, is simply the ordinary consequence of every commercial contract[.]").  But nowhere does this language prevent health plans from contracting with Sutter's competitors – all health plans and their members are free to obtain their health care from Sutter's competitors – and thus if the patient selects a doctor associated with one of Sutter's competitors, presumably that patient will then be encouraged to use that competitor's laboratories and hospitals as well.[2]

In short, there is nothing "exclusive" about the language that plaintiffs allege to be the basis for their exclusive dealing claim, nor does it create any foreclosure whatsoever.  Sutter simply does not have – nor do plaintiffs allege that Sutter has – contracts that require health plans to send their members to Sutter facilities or that prevent health plans from entering into contracts with Sutter's competitors.

Indeed, all major health plans do, in fact, have contracts with many of Sutter's competitors.  Accompanying this motion is Sutter's Request for Judicial Notice, to which Sutter attaches reports filed by five of California's largest health plans -- Aetna, Blue Cross, Blue Shield, Cigna, and Health Net – that demonstrate that each of those health plans has contracts with scores of hospitals throughout California (including the Northern California counties that are

---

[2] Indeed, virtually all health care networks include incentives to refer to other "in-network" providers.  Plaintiffs do not allege that Sutter's incentives are in any way different than the like incentives that Sutter's competitors have in their contracts with health plans.

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1    in plaintiffs' proposed geographic market).  The health plans filed these reports with the

2    California Department of Managed Health Care ("DMHC") pursuant to the Knox-Keene Health

3    Care Service Plan Act of 1975 ("Knox-Keene Act"), and the reports confirm an utter lack of any

4    "exclusive dealing" agreement that prevents Sutter's competitors from contracting with, and

5    providing health care services to the members of, health plans.

6         Thus, when plaintiffs posit a theoretical scenario in paragraph 94 of their complaint that

7    Sutter prevents health plans such as Aetna or Blue Shield from contracting with physicians who

8    charge less than "Sutter Health's doctor groups," the allegations is simply false, and this lawsuit

9    should not be permitted to proceed to discovery on the faulty premise that Sutter has signed

10   contracts with Aetna or Blue Shield (or any other health plan) that prevent the health plan from

11   contracting with any new medical group or other healthcare provider.  Certainly, the language

12   quoted in paragraph 92 of the complaint does not contain such a restriction.  Simply saying that a

13   contract is an "exclusive dealing agreement" does not make it so, particularly when the complaint

14   does not allege <u>any</u> language preventing health plans from entering into contracts with Sutter's

15   competitors or from actively encouraging their members to use non-Sutter providers as well.

16        It may be that some health plans elect not to contract with every willing healthcare

17   provider.  Of course, this constitutes the essence of managed care by creating price competition

18   among healthcare providers.  *See, e.g., California v. Sutter Health System*, 130 F. Supp. 2d 1109,

19   1113-14 (N.D. Cal. 2001).[3]  But the fact that some health plans make the voluntary decision to

20        [3] In some respects, plaintiffs' complaint is an attack on the entire premise of managed
     care.  Managed care is based on the idea that some providers will be excluded from health care
21   networks and/or reimbursed at different rates.  *Id.* ("Managed care [] has increasingly taken the
     place of traditional indemnity-based insurance"; there are three broad types of managed care
22   organizations – health maintenance organizations ("HMOs"), preferred provider organizations
     ("PPOs"), and HMO point-of-service plans ("POS") – all of which function on the basis of
23   including preferred providers and excluding out of network providers).  If every hospital/doctor
     could treat every patient at the same reimbursement level, no hospital/doctor would have an
24   incentive to compete on the basis of price.  U.S. Dep't of Justice and Fed. Trade Commission
     Report, "Improving Health Care: A Dose of Competition," at Ch. 1 at 4 (July 2004) ("Selective
25   contracting intensifies price competition and allows payors to negotiate volume discounts and
     choose providers based on a range of criteria.  . . . When insurers have a credible threat to exclude
26   providers from their networks and channel patients elsewhere, providers have a powerful
     incentive to bid aggressively.").  Nearly all health care reform is based on some variant of
27   managed care, and the courts have consistently confirmed that managed care – including the
     exclusion of some health care providers from some health care networks – is absolutely
28   appropriate.  *See, e.g., Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1256-57 (10th
     Cir. 2006) (entirely permissible under antitrust laws for managed care company to make the

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1   contract with fewer than all healthcare providers is not evidence of exclusive dealing.  Exclusive

2   dealing might occur if Sutter's contracts with health plans actually prevented the health plans

3   from contracting with Sutter's competitors, but such is not the case.  Health plans have all sorts of

4   options, and the fact that they have these options means that there is no possible basis for an

5   "exclusive dealing" claim in this case.  Indeed, this lack of foreclosure is completely consistent

6   with similar cases in which the Ninth Circuit has declined to find liability for exclusive dealing in

7   violation of the Sherman Act.  *See, e.g.*, *Omega Envtl.*, 127 F.3d at 1163 (finding that alternative

8   sources of distributions "eliminate substantially any foreclosure effect [the defendant's] policy

9   might have."); *Western Parcel*, 190 F.3d at 976 ("Because the contracts do not preclude

10  consumers from using other delivery services, they are not exclusive dealings contracts that

11  preclude competition in violation of the Sherman Antitrust Act.").

12          **2.      Plaintiffs Have Not Properly Defined A Relevant Market Affected By**

13                  **Any Alleged Exclusive Dealing Agreements**.

14          Plaintiffs' "exclusive dealing" claim fails for the additional reason that plaintiffs have not

15  properly defined a relevant antitrust market.  In order to state a claim for unlawful exclusive

16  dealing under Section 1, a plaintiff must allege a relevant product market and a relevant

17  geographic market.  *See Omega Envtl.*, 127 F.3d at 1162 (defining relevant product market in

18  exclusive dealing case).  In general terms, the relevant product market identifies the products or

19  services that compete with one another, and the relevant geographic market identifies that area

20  within which the competition in the relevant product market takes place.  *Los Angeles Mem'l.*

21  *Coliseum Comm'n v. NFL,* 726 F.2d 1381, 1392 (9th Cir. 1984); *California v. Sutter,* 130 F.

22  Supp. 2d at 1118.  Plaintiffs bear the burden of defining these markets in their complaint.  *See*

23  *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063-64 (9th Cir. 2001) (failure to appropriately define

24

25  (continued…)

26  independent decision to exclude certain optometrists from its network); *Capital Imaging Assocs.,*
    *P.C. v. Mohawk Valley Med. Assocs., Inc.*, 725 F. Supp. 669, 673 (N.D.N.Y. 1989) ("One of the
    essential features of an HMO is that it selects preferred physicians and excludes others thereby
27  creating competition among the providers of health care services.  Antitrust enforcement agencies
    consider exclusions of physicians from HMOs and other managed care delivery systems as
28  procompetitive.").

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1   a relevant product market is a proper ground for dismissing a Sherman Act claim); *R.C. Dick*

2   *Geothermal*, 890 F.2d at 144, 146 (plaintiff bears burden of demonstrating market for antitrust

3   purposes).

4          Plaintiffs define the relevant market in paragraph 35 of the complaint as "the provision of

5   health care and related services in" 22 different California counties, which the complaint alleges

6   to be the counties in which Sutter operates.  Plaintiffs never define what they mean by "related

7   services"; in paragraph 36, plaintiffs allege that this market includes virtually every different type

8   of health care service that a consumer could possibly want – from inpatient hospital services, to

9   those provided by physicians, nurses, psychologists, and nutritionists, to laboratory services,

10  home health services, and so on.

11         Plaintiffs' definition of the relevant market is simply too broad to be a credible market,

12  and Sutter cannot tell if plaintiffs are defining a "health care services" market that consists of all

13  such services in twenty-two separate counties or a single geographic market that is composed of

14  the region that includes these twenty-two counties.[4]  In any event, it would be impossible to

15  calculate market shares in order to determine the extent of any alleged foreclosure from this

16  market.  Thus, while inpatient hospital services might in some circumstances constitute a relevant

17  market – *see, e.g., California v. Sutter*, 130 F. Supp. 2d at 1119; *United States v. Long Island*

18  *Jewish Med. Ctr.*, 983 F. Supp. 121, 138 (E.D.N.Y. 1997) (noting weight of authority in hospital

19  merger cases supports use of general acute inpatient services as appropriate product market)[5] –

20  there is no logic in combining inpatient hospital services with, for example, "preventative health

21  _____

22         [4] Plaintiffs' further clarification in paragraph 37, that there is a "relevant market for the
    provision of contracted access to health care services in Northern California through health plans"
    does not provide any meaningful limitation on the definition of the market inasmuch as most or

23  all of the healthcare providers referenced in paragraph 36 of the complaint enter into contracts
    with health plans.

24         [5] *See also Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 WL 70644,
    at *7 (N.D. Cal. Jan. 9, 2012) (granting motion to dismiss because, inter alia, plaintiffs "provide

25  no authority supporting [their] overbroad and amorphous market definition, which would
    theoretically encompass the market for every one of the millions of items sold through eBay.");

26  *Person v. Google, Inc.*, No. C 06-7297 JF (RS), 2007 WL 832941, at *4 (N.D. Cal. Mar. 16,
    2007) (granting motion to dismiss based in part on "vague and overbroad" relevant market and

27  noting that, "[a]s so defined, the proposed market apparently would include almost anyone who
    hopes to turn a profit while either buying, selling, or consulting on the sale of keyword-

28  advertising").

1    services," or "chemical dependency services," or services provided by nutritionists. Yet, <u>all</u> of

2    these services are included in plaintiffs' proposed market definition.

3          Without identifying a relevant market and the extent of competitors' foreclosure from that

4    market, plaintiff cannot pursue an exclusive dealing claim under Section 1. *See Tampa Elec. Co.*

5    *v. Nashville Coal Co.*, 365 U.S. 320, 329 (1961) (explaining that the competition foreclosed must

6    constitute a substantial share of the relevant market, the opportunities for other firms must be

7    significantly limited, and other factors – such as the relative strength of the parties, the volume of

8    commerce implicated by the arrangement, and economic justifications for the arrangement –

9    should be considered); *Western Parcel*, 190 F.3d at 976-77 (affirming dismissal of exclusive

10   dealing claims by pointing to the short-term nature of the exclusive agreements, the entry and

11   expansion of competitors, and a lack of probative evidence that UPS had market power). Indeed,

12   plaintiffs do not even attempt to calculate Sutter's "share" of the relevant market that plaintiffs

13   define. Instead, plaintiffs refer to Sutter's 36% share of "hospital beds" in Northern California

14   (and a few scattered references to "bed" shares in other areas), but the market for "hospital beds"

15   (presumably related to "inpatient hospital services") is only a tiny component of the overall

16   relevant market that plaintiffs have proposed for this lawsuit. Plaintiffs never allege what they

17   believe to be Sutter's share of the market plaintiffs have defined for purposes of this case, which

18   is fatal to plaintiffs' claims. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th

19   Cir. 1995) ("Market definition is crucial. Without a definition of the relevant market, it is

20   impossible to determine market share.").

21         In sum, plaintiffs' exclusive dealing claim fails as a matter of law. Plaintiffs have not

22   identified any exclusive dealing agreement, plaintiffs have not alleged a proper relevant antitrust

23   market from which Sutter's competitors have been foreclosed, and plaintiffs have not alleged any

24   foreclosure whatsoever. Absent these essential allegations, the claim must be dismissed.

25         **C.**    <u>**Plaintiffs Have Not Properly Asserted a Claim for Unlawful Tying.**</u>

26         Plaintiffs' lack of antitrust standing and their failure to define a proper antitrust market

27   also doom their claim for an "unlawful tying agreement." *In re Webkinz Antitrust Litig.*, 695 F.

28   Supp. 2d 987, 993-94 (N.D. Cal. 2010) (in a tying claim, plaintiff must allege defendant has

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1   market power within a relevant market); *Rick-Mik Enters. Inc. v. Equilon Enters., LLC,* 532 F.3d

2   963, 972-73 (9th Cir. 2008) (dismissing tying claim for failure to allege power in the relevant

3   market).  The tying claim also fails for the more fundamental reason that plaintiffs have not in

4   fact identified an unlawful tying agreement.

5          Tying is defined as "an agreement by a party to sell [the tying product] but only on the

6   condition that the buyer also purchases a different (or tied) product, or at least agrees he will not

7   purchase that product from any other supplier." *Northern Pac. Ry. Co. v. United States*, 356 U.S.

8   1, 5-6 (1958).  *See also Datagate, Inc. v. Hewlett–Packard Co.*, 60 F.3d 1421, 1423 (9th Cir.

9   1995) (describing a tying arrangement as a "device used by a competitor with market power in

10  one market . . . to extend its market power into an entirely distinct market.").  The Ninth Circuit

11  recently explained that "[t]he potential injury to competition threatened by [tying] is that the tying

12  arrangement will either 'harm existing competitors or create barriers to entry of new competitors

13  in the market for the tied product' . . . or will 'force buyers into giving up the purchase of

14  substitutes for the tied product.'"  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir.

15  2012) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984); *United States v.*

16  *Lowe's*, 371 U.S. 38, 45 (1962)).

17         In the Ninth Circuit, a plaintiff must generally prove three elements to prevail on a tying

18  claim:  (1) that there exists two distinct products or services in different markets whose sales are

19  tied together; (2) that the seller possesses appreciable economic power in the tying product

20  market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement

21  affects more than an insubstantial volume of commerce in the tied product market.  *See Brantley*,

22  675 F.3d at 1197 n.7; *Cascade Health Solutions v. PeaceHealth,* 515 F.3d 883, 913 (9th Cir.

23  2008).  Here, plaintiffs have failed with respect to each of these three elements because they do

24  not allege what distinct products are services have been tied together, much less that Sutter has

25  appreciable economic power in the tying product market.  Indeed, plaintiffs do not really allege a

26  "tie" at all because they allege that <u>all</u> of the health care services referenced in paragraph 36 of

27  the amended complaint are part of a single market.

28         Plaintiffs first reference the concept of a "tie" in paragraph 4 of the amended complaint, in

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1    which plaintiffs allege that Sutter's agreements with health plans "require health plans to use

2    ALL Sutter Health providers or affiliated physician groups (even where less expensive options

3    are available) OR suffer the devastating consequences of having contracted access to NONE of

4    them."  In paragraph 60, plaintiffs allege that the tying is based on the following language that

5    Sutter is alleged to have in its agreements with health plans:  "Each payer accessing Sutter Health

6    providers shall designate ALL Sutter Health providers (see Sutter Health provider listing) as

7    participating providers unless a Payer excludes the entire Sutter health provider network."

8            In other words, according to the complaint, if a health plan wants to contract with one

9    Sutter provider, the health plan is required to include in its network all other Sutter providers.

10   Stated differently, "if you want to contract with our hospital in Sacramento, we also want you to

11   contract with our hospital in San Francisco."  But this is not a "tie," much less an unlawful tie:  all

12   this language requires is that, if a health plan wants to permit its members to go to one particular

13   Sutter provider, the health plan must also permit its members to go to any other Sutter provider.

14   There is no obligation on the part of any consumer to select **any** Sutter provider – the consumer

15   always has the choice to visit whatever provider she wants.  *See In re Webkinz,* 695 F. Supp. 2d at

16   996  (granting motion to dismiss because, inter alia, complaint failed to allege an anticompetitive

17   effect in the tied market because there was no inference that competing manufacturers of the core

18   product lines were excluded by defendant's alleged conduct).

19           In fact, plaintiffs have not alleged that they – as health care consumers – have been

20   required to visit a Sutter provider because of some tying agreement.  Indeed, plaintiffs never

21   make the allegation that Sutter has agreements with any health plan that requires the health plan

22   to insist that its members visit a Sutter provider.  The fact that millions of Californians elect to use

23   Sutter's facilities is the result of the excellent service Sutter provides, not any tying or exclusive

24   dealing arrangement that Sutter has with any health plan.

25           Further, to have standing to assert claims for unlawful tying the plaintiffs must be either

26   direct purchasers or competing sellers in the relevant markets.  *See Abraham v. Intermountain*,

27   461 F.3d at 1266 n.10 (denying standing to assert tying claim where "[p]laintiffs neither

28   purchase[d] nor provide[d]" the tied product); *Faulkner Adver. Ass'n, Inc. v. Nissan Motor Corp.*,

1   905 F.2d 769, 772 n.5 (4th Cir. 1990) (only "coerced buyers and the other sellers of a tied product

2   have standing to challenge a tying arrangement."); *Cyntegra, Inc. v. Idexx Labs., Inc.,* 520 F.

3   Supp. 2d 1199, 1210 (C.D. Cal. 2007) ("Two types of plaintiffs have standing to challenge illegal

4   tying arrangements – purchasers who are forced to buy the tied product to obtain to the tying

5   product, and competitors who are restrained from entering the market for the tied product.").

6   Here, as explained above, plaintiffs are neither purchasers from Sutter nor competitors of Sutter.

7   As a result, plaintiffs do not have standing to challenge alleged tying agreements that Sutter might

8   have with health plans.

9   **II.      PLAINTIFFS' SECOND CAUSE OF ACTION UNDER SHERMAN ACT**

10   **SECTION 2 FAILS.**

11         In their second cause of action, plaintiffs allege a violation of Section 2 of the Sherman

12   Act, which prohibits unlawful monopolization.  A Section 2 plaintiff must allege that a defendant

13   has an extremely high share of the relevant market – usually, at least 65 percent (*MetroNet Servs.*

14   *Corp. v. US West Commc'ns*, 329 F.3d 986, 1003 (9th Cir. 2003, *vacated on other grounds*, 540

15   U.S. 1147 (2004)) – and must also allege that the defendant willfully and unlawfully acquired or

16   maintained that power.  As the U.S. Supreme Court noted recently:  "Simply possessing

17   monopoly power and charging monopoly prices does not violate § 2; rather, the statute targets

18   'the willful acquisition or maintenance of that power as distinguished from growth or

19   development as a consequence of a superior product, business acumen, or historic accident."

20   *Pacific Bell Tel. Co., v. Linkline Commc'ns*, 555 U.S. 438, 447-48 (2009) (quoting *U.S. v.*

21   *Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).

22         To be clear, charging high prices does not constitute a violation of Section 2, although one

23   would never know that from reading the complaint, which devotes an enormous amount of

24   attention to Sutter's allegedly highly prices.  The law is clear that "setting a high price . . . is not

25   in itself anti-competitive."  *Alaska Airlines, Inc. v. United Airlines, Inc.,* 948 F.2d 536, 549 (9th

26   Cir. 1991) (quoting *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 294 (2d Cir. 1979).

27   Thus, courts have consistently held that monopolists are free to charge as high a rate as the

28   market will bear.  *See Doe v. Abbott Labs.*, 571 F.3d 930, 934 (9th Cir. 2009) (citing the U.S.

1    Supreme Court's decision in *Linkline* that "mere possession of monopoly power and the practice

2    of charging monopoly prices does not run afoul of [Section] 2").

3         In order to demonstrate that Sutter has engaged in unlawful monopolization, plaintiffs

4    would have to allege and prove first that Sutter has monopoly power and, second, that it willfully

5    acquired or unlawfully maintained its monopoly power.  As the U.S. Supreme Court has stated:

6    "The opportunity to charge monopoly prices at least for a short period is what attracts 'business

7    acumen' in the first place; it induces risk taking that produces innovation and economic growth.

8    To safeguard the incentive to innovate, the possession of monopoly power will not be found

9    unlawful unless it is accompanied by an element of anticompetitive *conduct*."  *Verizon Commc'ns*

10   *Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 407 (2004) (emphasis in original).

11        Plaintiffs do not even attempt to allege that Sutter has monopoly power in a properly

12   defined relevant market.  Nor do plaintiffs properly allege that Sutter has unlawfully maintained

13   any monopoly power; instead, plaintiffs' Section 2 claims are based on the very same "exclusive

14   dealing" and "tying" allegations that were insufficient to sustain Plaintiffs' Section 1 claims.  (*See*

15   Complaint ¶¶ 154-55).  Accordingly, plaintiffs' Section 2 claim actually fails for five independent

16   reasons:

17            1.   Plaintiffs lack standing to assert their claim, as explained above.

18            2.   Plaintiffs have failed to define a plausible relevant market.

19            3.   Plaintiffs have failed to allege that Sutter has a monopoly share of a properly defined

20                 relevant market.

21            4.   Plaintiffs have failed to allege an unlawful exclusive dealing claim that would support

22                 their Section 2 claim.

23            5.   Plaintiffs have failed to allege an unlawful tying claim that would support their

24                 Section 2 claim.

25        For these reasons, the Court should dismiss plaintiffs' second cause of action.

26   **III.   PLAINTIFFS' THIRD CAUSE OF ACTION FOR VIOLATION OF THE**

27   **CARTWRIGHT ACT FAILS.**

28        Plaintiffs' third cause of action alleges a violation of the California Cartwright Act, Cal.

1    Bus. & Prof. Code Section 16720, the California version of Section 1 of the Sherman Act.  The

2    allegations of the complaint are identical to those set forth in the first cause of action.

3            California courts interpreting the Cartwright Act rely on federal authority interpreting

4    Section 1 of the Sherman Act because the prohibitions found in the Cartwright Act are nearly

5    identical to those found in the Sherman Act.[6]  *Marin County Bd. of Realtors, Inc. v. Palsson,* 16

6    Cal. 3d 920, 925 (1976); *see also Redwood Theatres, Inc. v. Festival Enters., Inc.,* 200 Cal. App.

7    3d 687, 694 (1988) ("federal cases interpreting the Sherman Act are applicable to problems

8    arising under the Cartwright Act." (citation omitted)).  Thus, for the very same and numerous

9    reasons that plaintiffs' Sherman Act Section 1 claim fails, their Cartwright Act claim fails as

10   well.[7]

11   **IV.    PLAINTIFFS' FOURTH CAUSE OF ACTION FOR VIOLATION OF THE**

12   **CALIFORNIA UNFAIR COMPETITION ACT FAILS.**

13           Plaintiffs' fourth cause of action alleges a violation of California's unfair competition

14   statute, Cal. Bus. & Prof. Code Section 17200.  The allegations that support this claim are

15   identical to those that plaintiffs allege with respect to their Sherman Act claims.

16           Section 17200 "borrows violations of other laws and treats them as unlawful practices that

17   the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. Los*

18   *Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999).  Thus, where the borrowed allegations

---

19           [6] The Cartwright Act does not prohibit unlawful monopolization analogous to a Sherman
20   Act Section 2 claim.  *Asahi Kasei Pharma Corp. v. CoTherix, Inc.,* 204 Cal. App. 4th 1, 8 (2012)
     ("The Cartwright Act bans combinations, but single firm monopolization is not cognizable under
21   the Cartwright Act.").

             [7] Sutter notes that plaintiffs' status as "indirect purchasers" would not, by itself, bar them
22   from pursuing a Cartwright Act claim that is derivative of their Sherman Act Section 1 claim
     because California courts have allowed indirect purchasers to pursue Cartwright Act claims that
23   arise out of agreements to restrain trade.  *In re Dynamic Random Access Memory (DRAM)*
     *Antitrust Litig.*, 516 F. Supp. 2d 1072, 1087 (N.D. Cal. 2007).  Plaintiffs' status as indirect
24   purchasers, however, was simply one of many reasons why plaintiffs lacked standing under
     *Associated General Contractors* to pursue their antitrust claims, and California courts have
25   likewise restricted the ability of remote plaintiffs to pursue antitrust claims.  *Vinci v. Waste*
     *Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814-17 (1995) (granting demurrer and dismissing plaintiff's
26   California antitrust claims against former employer for lack of antitrust standing); *In re Dynamic*
     *Random Access Memory Antitrust Litigation*, 516 F. Supp. 2d 1072 at 1088-89 (concluding that
27   "[p]laintiffs cannot satisfy antitrust standing requirements by simply invoking their status as
     indirect purchasers," but instead must "satisfy general antitrust standing requirements enunciated
28   by the Supreme Court in AGC[.]").

1  fail, the Section 17200 claims based on them must fail as well.  *Chavez v. Whirlpool Corp.*, 93

2  Cal. App. 4th 363, 374 (2001); *Aguilar v. Atlantic Richfield Co.,* 25 Cal. 4th 826, 866-67 (2001)

3  (dismissal of the plaintiff's Cartwright Act claim required dismissal of the plaintiff's "unlawful"

4  UCL claim premised on an alleged Cartwright Act violation).  Because plaintiffs' Section 17200

5  claim is based on the very same flawed allegations as their Sherman Act and Cartwright Act

6  claims, their Section 17200 claim fails as a matter of law.

7  **V.     PLAINTIFFS' FIFTH CAUSE OF ACTION FOR UNJUST ENRICHMENT**

8  **FAILS.**

9         Plaintiffs' fifth claim for unjust enrichment must be dismissed because unjust enrichment

10  is not an independent cause of action in California.  *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190,

11  1203 (N.D. Cal. 2012) (dismissing plaintiff's putative class action claim of unjust

12  enrichment/quasi-contract because "under California law, there is no claim for unjust enrichment;

13  rather, it is an equitable remedy"); *Armstrong v. Chevy Chase Bank, FSB*, No. 5:11-cv-05664

14  EJD, 2012 WL 4747165, at * 5 (N.D. Cal. Oct. 3, 2012) (dismissing plaintiff's claim that

15  defendant bank was unjustly enriched by accepting mortgage payments in part because unjust

16  enrichment/quasi-contract is not an independent cause of action); *Barocio v. Bank of America*,

17  *N.A.*, No. C 11-5636 SBA, 2012 WL 3945535, at *4 (N.D. Cal. Sept. 10, 2012) ("plaintiffs' claim

18  for 'quasi contract' is, in actuality, a claim for unjust enrichment"; "this Court has previously

19  concluded that there is no independent claim for unjust enrichment"); *Levine v. Blue Shield of*

20  *Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (dismissing plaintiff's unjust enrichment claim

21  because there is no cause of action in California for unjust enrichment).

22         Even if unjust enrichment were an independent cause of action, plaintiffs nonetheless fail

23  to allege that Sutter has been unjustly enriched by plaintiff.  Indeed, plaintiffs do not allege that

24  they have paid <u>any</u> money to Sutter, let alone that they overpaid.  Instead, plaintiffs' unjust

25  enrichment claim is based entirely on the same set of underlying allegations as their other claims.

26  As explained above, these allegations fail to state a viable claim, and thus, plaintiffs' unjust

27  enrichment cause of action fails.  *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013

28  (S.D. Cal. 2009) (where plaintiff's unjust enrichment claim is based on same allegations as those

DEFENDANT'S MOTION TO DISMISS
Case No. 3:12-CV-04854-LB

1  under the unfair competition law claims, dismissal of the latter claims requires dismissal of the

2  unjust enrichment claim); *Delano Farms Co. v. California Table Grape Comm'n*, No. 1:07-CV-

3  1610 OWW SMS, 2010 WL 2952358, at *30 (E.D. Cal. July 26, 2010) (dismissing unjust

4  enrichment claim because underlying antitrust and unfair competition claims did not survive

5  motion to dismiss).

6                                    **<u>CONCLUSION</u>**

7          Plaintiffs' complaint is long, but the allegations of actual violations of law are short and

8  clearly deficient.  Inasmuch as the first amended complaint is plaintiffs' second attempt to find a

9  viable claim against Sutter, Sutter urges the Court to dismiss the first amended complaint with

10  prejudice.

11  Dated: January 18, 2013                    JONES DAY

12

13                                        By:   /s/ *Jeffrey A. LeVee*

14                                             Jeffrey A. LeVee, Esq.

15                                        Attorneys for Defendant SUTTER HEALTH

16  LAI-3179103

17

18

19

20

21

22

23

24

25

26

27

28

                                                    DEFENDANT'S MOTION TO DISMISS
                                                    Case No. 3:12-CV-04854-LB