Exhibit 11

**From:** Doolabh, Rajiv
**Sent:** Tuesday, June 30, 2015 1:04 PM
**To:** Baker, Terri
**Cc:** Wells, Darrin
**Subject:** RE: Sutter network Analysis review

Hi Terri,

In doing the follow ups to our call with the UEBT consultants on June 22nd, we uncovered an issue with our assignment of inpatient hospital emergent claims. Therefore, we had to go back and re-categorized the Sutter claims and re-do the analysis. This shifted the savings assumptions.

Please find the following attached:

- Revised Re-direction Assumption Analysis tab
- We added the 2014 & 2013 UEBT Sutter volume by facility, split between emergent/non-emergent
  - The inpatient hospital emergent claim volume for UEBT ranged from ████% over the 2013/2014 time period.
  - Our book of business inpatient hospital emergent claim volume is more typically in the ████%
    range
- We have added a tab with an example of how the redirection calculation worked.

Our understanding is that ██████████   ████████████████████.

Thanks,
Rajiv


IP_OP Claims
Summary by Maj...

**From:** Baker, Terri
**Sent:** Thursday, June 25, 2015 11:28 AM
**To:** Doolabh, Rajiv; Wells, Darrin
**Subject:** RE: Sutter network Analysis review

Rajiv and Darrin:
Do you have a timeframe on the report the co-consultants requested in our meeting? Basically they are looking for a refresh form the report we did for them in 2011. Please advise if this is your understanding also?
T

**Terri Baker**
Account Management Director | Premier Accounts
Blue Shield of California
400 Capitol Mail , Suite 2000 Sacramento, CA 95814
phone: office and cell: 916-202-4946  f: 916-329-4565
terri.baker@blueshieldca.com / License 0764718



This message (including any attachments) contains business

Highly Confidential - Attorneys Eyes Only

proprietary/confidential information intended for a specific individual and purpose and is protected by law. If you are not the intended recipient, you should delete this message and all attachments from your computer or email server. Any disclosure, copying, or distribution of this message, or the taking of any action based on it, without the express permission of the originator, is strictly prohibited.

**From:** Doolabh, Rajiv
**Sent:** Thursday, June 11, 2015 9:12 PM
**To:** Baker, Terri; Wells, Darrin; Hornbacher, Stan; Barnes(Network Management), Tracy; Lucas, Tami; Zhou, Molly; Chen, Angela; Donaldson, Michelle; Casulo, Adriel; Perlman, Scott (External)
**Cc:** Kelly, Christopher J.; Perlman, Scott (External)
**Subject:** RE: Sutter network Analysis review

Hello,

Attached are materials for our Friday morning meeting.

<< File: UEBT Sutter Exclusion Analysis_20150612.xlsb >>
-----Original Appointment-----
**From:** Baker, Terri
**Sent:** Tuesday, June 02, 2015 9:40 AM
**To:** Baker, Terri; Doolabh, Rajiv; Wells, Darrin; Hornbacher, Stan; Barnes(Network Management), Tracy; Lucas, Tami; Zhou, Molly; Chen, Angela; Donaldson, Michelle; Casulo, Adriel; Perlman, Scott (External)
**Cc:** Kelly, Christopher J.; Perlman, Scott P.
**Subject:** Sutter network Analysis review
**When:** Friday, June 12, 2015 9:00 AM-10:00 AM (UTC-08:00) Pacific Time (US & Canada).
**Where:**


Terri

I met with Adriel last week.  Since they do all the customer facing activities, they will take the lead on this activity with consulting and help from my team and NM.

I put together my notes to help facilitate the process below.  Let me know if you have any questions or concerns.

I suggest you put an internal check in meeting on the calendar for or around June 12th.  Adriel, who should be invited from Pricing?

From my team, please invite Molly Zhou, Stan Hornbacher and myself.  From NM, please include Tami Lucas and Tracy Barnes.

Thanks
Darrin

From: Wells, Darrin
Sent: Monday, April 27, 2015 5:05 PM
To: Casulo, Adriel
Cc: Zhou, Molly; Hornbacher, Stan; Lam, Carmen; Lucas, Tami; Chu, Christopher; Vojta, Alexander
Subject: UEBT Sutter Exclusion / Re-pricing Analysis

Hi Adriel

Highly Confidential - Attorneys Eyes Only

BSC_SutterSub00063622

I am following up with you on the UEBT Sutter exclusion/re-pricing deliverable that we met and spoke about last Friday afternoon.

We agreed given this was a client facing activity and therefore the Pricing team would take the lead.

Given your role change, you were going to check in with Mike. [You did not anticipate any resource issues, but rather perhaps management oversight given your role change]

In any event though, the Pricing team would need the expertise/consulting guidance from my team and potential NM (a chance to practice interconnectedness J)
Molly and Chris Chu can give guidance on the hospital*
Stan can give guidance on the professional/ancillary component*
Tami Lucas is the person in NM responsible for the Sutter account and can also assist

Technical notes

. See attached reporting structure for UEBT.
The analysis must include the impact of removing Sutter professional and ancillary providers

Other issues:
Member Impact:
There is a potential member impact, but given this is a self-funded client with plenty of consulting help, we agreed not to estimate the member impact
However, we should flag items for the consultants' consideration member impacts/perspectives when we deliver the analysis to Markets

Sutter concerns:
We need to keep Tami Lucas in the loop of these activities
We are not restricting by Sutter to perform this type of analysis for a self-funded account, but ultimately Sutter needs to approve any



Analysis format:
I think we have flexibility, but the Client/Consultant will want to see hospital utilization that spikes out the historical emergent/non-emergent services (see attached)

Administrative Constraints/Issues:

Deliverable timeline:
We have negotiated an extended period here, so as not to negatively impact our short term deliverables.

Also, the extended period of time ensures we can be thoughtful and complete
Analysis to be completed no later than June 19th.
Meeting with consultant to discuss analysis to be set up by Terri after June 19th.

Authorized users only. No PHI may be recorded in this WebEx session. All users consent to monitoring for compliance to policy. If monitoring reveals possible criminal activity, BSC may provide information to law enforcement officials.

Terri Baker invites you to an online meeting using WebEx.

Meeting ID Number: 803 104 161
Meeting Password: This meeting does not require a password.

------------------------------------------------
To join this meeting
------------------------------------------------
1. Go to https://blueshield-ca.webex.com/blueshield-ca/j.php?J=803104161
2. If requested, enter your name and email address.
3. If a password is required, enter the meeting password: This meeting does not require a password.
4. Click "Join".
5. Follow the instructions that appear on your screen.

------------------------------------------------
Teleconference information
------------------------------------------------
1. Please call one of the following numbers:
 MeetingPlace Dial-in: 1-888-301-5053
2. Follow the instructions that you hear on the phone.
 Your Cisco Unified MeetingPlace meeting ID: 803 104 161

http://www.webex.com

IMPORTANT NOTICE: This WebEx service includes a feature that allows audio and any documents and other materials exchanged or viewed during the session to be recorded. By joining this session, you automatically consent to such recordings. If you do not consent to the recording, discuss your concerns with the meeting host prior to the start of the recording or do not join the session. Please note that any such recordings may be subject to discovery in the event of litigation.

Highly Confidential -  Attorneys Eyes Only

Redirection Summary

BSC_SutterSub00063625 through BSC_SutterSub00063626

**UEBT Sutter Redirection Analysis**

• Incurred CY2014 with runout through April 2015

| Scenario | A | B | C |
|---|---|---|---|
| **IP Hospital Redirection Assumptions** | • non-emergent: ▮% <br> • emergent: ▮% | • non-emergent: ▮% <br> • emergent: ▮ | • non-emergent: ▮ <br> • emergent: ▮ |
| **OP Hospital Redirection Assumptions** | • emergent: ▮% <br> • surgery: ▮% <br> • other: ▮% <br> • Alternatives priced at market average | • emergent: ▮% <br> • surgery: ▮% <br> • other: ▮% <br> • Alternatives priced at market average | • emergent: ▮ <br> • surgery: ▮% <br> • other: ▮% <br> • Alternatives priced at market average |
| **Prof Redirection Assumptions** | • ▮% | • ▮% | • ▮% |

% of Total members that used Sutter services
　*% of members that used Sutter hospitals*
　*% of members that used Sutter physicians*
**Original Allowed**
　*Original Hospital Allowed*
　*Original Professional Allowed*
**Allowed After Redirection**
　*Hospital Allowed After Redireciton*
　*Professional Allowed After Redireciton*
**$ Difference**
　*Hospital $ Difference*
　*Professional $ Difference*
**% Difference to Total Allowed**
　*Hospital % Difference to Total Allowed*
　*Professional % Difference to Total Allowed*

[1]: Scenarios modeled to provide a range of results given reasonable assumptions. They are by no means an exhaustive list of scenarios nor do they represent the absolute range of possible outcomes.

[2]: We assumed the alternative hospitals can efficiently absorb the allocated redirected volume

[3]: No determination in regards to capacity and breadth of services for the alternative hospitals was considered

[4]: No benefit design or maximum per day is factored into the analysis for those members remaining at the terminated facility on a voluntary, OON basis

[5]: The analysis is intended to measure the long-term impacts of termination. It does not consider short-term costs/benefits.

For example, we do not consider extra costs or savings if we have the right to pay post-termination contract rates on patients already scheduled for surgery, or if we need to pay billed charges for mothers in their 3rd trimester at termination. While affecting our short-term costs per termination, they skew the longer term impact and are difficult to estimate; therefore we have not considered them in this analysis.

[6]: No considerations made in regards to member doctor access for professional services

IP & OP Claims Summary

BSC_SutterSub00063627 through BSC_SutterSub00063635

| Sutter Hospital (Base Data) | | Alternative Hospital | | Expected Allocation % | 2014 IP | | | 2013 IP | | | 2014 OP | | | | 2013 OP | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hospital Id | Hospital Name | Hospital Id | Hospital Name | | Non-Emergent | Emergent | Total | Non-Emergent | Emergent | Total | Surgery | Other | Emergent | Total | Surgery | Other | Emergent | Total |
| ZZZA5001Z | Memorial Hospital Med Ctr | | | | | | | | | | | | | | | | | |
| ZZZA5001Z | Memorial Hospital Med Ctr | | | | | | | | | | | | | | | | | |
| ZZZA5001Z | Memorial Hospital Med Ctr | | | | | | | | | | | | | | | | | |
| ZZZC3906Z | Sutter Tracy Community Hosp | | | | | | | | | | | | | | | | | |
| ZZZC3906Z | Sutter Tracy Community Hosp | | | | | | | | | | | | | | | | | |
| ZZZC3906Z | Sutter Tracy Community Hosp | | | | | | | | | | | | | | | | | |
| ZZZD2401Z | Memorial Hosp Of Los Banos | | | | | | | | | | | | | | | | | |
| ZZZD2401Z | Memorial Hosp Of Los Banos | | | | | | | | | | | | | | | | | |
| ZZZD2401Z | Memorial Hosp Of Los Banos | | | | | | | | | | | | | | | | | |
| ZZZC1701Z | Sutter Lakeside Hosp | | | | | | | | | | | | | | | | | |
| ZZZC1701Z | Sutter Lakeside Hosp | | | | | | | | | | | | | | | | | |
| ZZZH5102Z | Sutter Surgical Hospital - North Valley | | | | | | | | | | | | | | | | | |
| ZZZB3401Z | Sutter General Hosp | | | | | | | | | | | | | | | | | |
| ZZZB3401Z | Sutter General Hosp | | | | | | | | | | | | | | | | | |
| ZZZB3401Z | Sutter General Hosp | | | | | | | | | | | | | | | | | |
| ZZZA3402Z | Sutter Memorial Hosp | | | | | | | | | | | | | | | | | |
| ZZZA3402Z | Sutter Memorial Hosp | | | | | | | | | | | | | | | | | |
| ZZZA3402Z | Sutter Memorial Hosp | | | | | | | | | | | | | | | | | |
| ZZZC3103Z | Sutter Auburn Faith Hosp | | | | | | | | | | | | | | | | | |
| ZZZC3103Z | Sutter Auburn Faith Hosp | | | | | | | | | | | | | | | | | |
| ZZZC3411Z | Sutter Center for Psychiatry | | | | | | | | | | | | | | | | | |
| ZZZC3411Z | Sutter Center for Psychiatry | | | | | | | | | | | | | | | | | |
| ZZZA3101Z | Sutter Roseville Medical Center | | | | | | | | | | | | | | | | | |



| | |
|---|---|
| ZZZA3101Z | Sutter Roseville Medical Center |
| ZZZA3101Z | Sutter Roseville Medical Center |
| ZZZC5704Z | Sutter Davis Hospital |
| ZZZC5704Z | Sutter Davis Hospital |
| ZZZA0101Z | Alta Bates Summit Med Ctr Alta Bates Campus |
| ZZZA0101Z | Alta Bates Summit Med Ctr Alta Bates Campus |
| ZZZA0101Z | Alta Bates Summit Med Ctr Alta Bates Campus |
| ZZZA0101Z | Alta Bates Summit Med Ctr Alta Bates Campus |
| ZZZA0102Z | Alta Bates Summit Medical Center Herrick Campus |
| ZZZA0102Z | Alta Bates Summit Medical Center Herrick Campus |
| ZZZA0102Z | Alta Bates Summit Medical Center Herrick Campus |
| ZZZA0102Z | Alta Bates Summit Medical Center Herrick Campus |
| ZZZA0107Z | Alta Bates Summit Medical Center Summit Campus |
| ZZZA0107Z | Alta Bates Summit Medical Center Summit Campus |
| ZZZA0107Z | Alta Bates Summit Medical Center Summit Campus |
| ZZZA0107Z | Alta Bates Summit Medical Center Summit Campus |
| ZZZA0100A | Eden Hospital Medical Ctr |
| ZZZA0100A | Eden Hospital Medical Ctr |

| | |
|---|---|
| ZZZA0100A | Eden Hospital Medical Ctr |
| ZZZA0100A | Eden Hospital Medical Ctr |
| ZZZC07062 | Sutter Delta Medical Center |
| ZZZC07062 | Sutter Delta Medical Center |
| ZZZC07062 | Sutter Delta Medical Center |
| ZZZA38012 | CPMC Campus Hosp |
| ZZZA38012 | CPMC Campus Hosp |
| ZZZA08012 | CPMC Campus Hosp |
| ZZZB38092 | CPMC Pacific Campus Hosp |
| ZZZB38092 | CPMC Pacific Campus Hosp |
| ZZZB38082 | CPMC Pacific Campus Hosp |
| ZZZB38052 | CPMC |
| ZZZB38052 | CPMC |
| ZZZB38052 | CPMC |
| ZZZA38122 | CPMC Transplant Services |
| ZZZA38122 | CPMC Transplant Services |
| ZZZA38122 | CPMC Transplant Services |
| ZZZA38142 | CPMC St Lukes Campus |
| ZZZA38142 | CPMC St Lukes Campus |
| ZZZA38142 | CPMC St Lukes Campus |
| ZZZC21012 | Novato Community Hospital |
| ZZZC21012 | Novato Community Hospital |
| ZZZC21012 | Novato Community Hospital |
| ZZZC21012 | Novato Community Hospital |

| Code | Facility |
|---|---|
| ZZZC41012 | Novato Community Hospital |
| ZZZC48042 | Sutter Solano Med Ctr |
| ZZZC48042 | Sutter Solano Med Ctr |
| ZZZC48042 | Sutter Solano Med Ctr |
| ZZZC48042 | Sutter Solano Med Ctr |
| | Sutter Maternity And Surgery Center Of Santa Cruz |
| ZZZC44002 | Sutter Maternity And Surgery Center Of Santa Cruz |
| ZZZC44002 | |
| ZZZA49012 | Sutter Medical Center o Santa Rosa |
| ZZZA49012 | Sutter Medical Center o Santa Rosa |
| ZZZA49012 | Sutter Medical Center o Santa Rosa |
| ZZZA49012 | Sutter Medical Center o Santa Rosa |
| ZZZA41012 | Mills Peninsula Med Ctr |
| ZZZA41012 | Mills Peninsula Med Ctr |
| ZZZA41012 | Mills Peninsula Med Ctr |
| ZZZA41012 | Mills Peninsula Med Ctr |
| ZZZA41032 | Mills Peninsula Health Ctr |
| ZZZA41032 | Mills Peninsula Health Ctr |
| ZZZA41032 | Mills Peninsula Health Ctr |
| ZZZA41032 | Mills Peninsula Health Ctr |
| ZZZC41012 | Menlo Park Surgical Hospital |
| ZZZC41012 | Menlo Park Surgical Hospital |
| ZZZC41012 | Menlo Park Surgical Hospital |
| ZZZC08022 | Sutter Coast Hospital |
| ZZZC03002 | Sutter Amador Hospital |
| ZZ11S0072 | Fort Sutter Surgery Center |
| ZZ11S2711Z | San Luis Obispo Surgery Center |
| ZZZZ9242Z | Sutter Auburn Surgery Center |



Example Redirection Calculation

BSC_SutterSub00063636 through BSC_SutterSub00063638

**Example Redirection Calculation**

Scenario A
IP Hospital Redirection    • non-emergent: ▮
Assumptions                • emergent: ▮

Step 1: split claims into potentially redirectable and non-redirectable

| | 2014 Claims | | | Potential Redirectable Claims | | | Potential Non-Redirectable Claims | | |
|---|---|---|---|---|---|---|---|---|---|
| | Sutter IP Hospital Non-Emergent | Sutter IP Hospital Emergent | Sutter IP Hospital Total | Sutter IP Hospital Non-Emergent | Sutter IP Hospital Emergent | Sutter IP Hospital Total | Sutter IP Hospital Non-Emergent | Sutter IP Hospital Emergent | Sutter IP Hospital Total |
| ▮ | ▮ | | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

Step 2: identify alternative hospitals and redirection percentages

| Sutter Hospital Name | Alternative Hospital Name | Expected Allocation % |
|---|---|---|
| ▮ | | ▮ |

Step 3: allocate redirectable dollars to alternative hospitals

| Alternative Hospital Name | Expected Allocation % | Sutter IP Hospital Non-Emergent | Sutter IP Hospital Emergent | Sutter IP Hospital Total |
|---|---|---|---|---|
| ▮ | ▮% | ▮ | | |
| | % | | | |
| | % | | | |

Step 4: summarize final redirected and non-redirected claims

| | Final Non-Redirectable Claims | | |
|---|---|---|---|
| | Sutter IP Hospital Non-Emergent | Sutter IP Hospital Emergent | Sutter IP Hospital Total |
| ▮ | | | |

| | Final Redirectable Claims | | |
|---|---|---|---|
| | Sutter IP Hospital Non-Emergent | Sutter IP Hospital Emergent | Sutter IP Hospital Total |
| ▮ | | | |

Actual Redirection %    ▮

note: additional adjustments are made for hospital efficiencies after determining final redirectable claims

7

HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

```
 1        SUPERIOR COURT OF THE STATE OF CALIFORNIA
                 COUNTY OF SAN FRANCISCO
 2    _____

 3    UFCW & EMPLOYERS BENEFIT TRUST,      )
      ON BEHALF OF ITSELF AND ALL OTHERS )
 4    SIMILARLY SITUATED,                  )
                                           )  NO. CGC-14-538451
 5              Plaintiffs,                )  CONSOLIDATED WITH
                                           )  CGC-18-565398
 6         vs.                             )
                                           )
 7    SUTTER HEALTH, et al.,               )
                                           )
 8              Defendants.                )
      _____

 9

10         HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY
11              PURSUANT TO PROTECTIVE ORDER
12    Videotaped Deposition of Blue Shield By and through
13      its Designated PMQ and 30(b)(6) Representative,
14                      DARRIN WELLS
15                San Francisco, California
16          Thursday, August 30, 2018, Volume II
17
18
19
20
21
22    Reported by:
23    MARY J. GOFF, CSR No. 13427
24    Job No. 2994670
25    PAGES 351-653
```

                                        Page 351

```
 1        SUPERIOR COURT OF THE STATE OF CALIFORNIA
                COUNTY OF SAN FRANCISCO
 2    _____
 3    UFCW & EMPLOYERS BENEFIT TRUST,     )
      ON BEHALF OF ITSELF AND ALL OTHERS )
 4    SIMILARLY SITUATED,                 )
                                          )  NO. CGC-14-538451
 5              Plaintiffs,               )  CONSOLIDATED WITH
                                          )  CGC-18-565398
 6          vs.                           )
                                          )
 7    SUTTER HEALTH, et al.,              )
                                          )
 8              Defendants.               )
      _____)
 9
              UNITED STATES DISTRICT COURT
10          NORTHERN DISTRICT OF CALIFORNIA
      _____
11                                        )
      DJENEBA SIDIBE, JERRY JANKOWSKI,    )
12    SUSAN HANSEN, DAVID HERMAN,         )
      CAROLINE STEWART, OPTIMUM GRAPHICS, )
13    INC., and JOHNSON POOL & SPA, ON    )
      BEHALF OF THEMSELVES AND ALL        )
14    OTHERS SIMILARLY SITUATED,          )
                                          ) NO. 3:12-CV-4854-LB
15              Plaintiffs,               )
            vs.                           )
16                                        )
      SUTTER HEALTH,                      )
17                                        )
                Defendants.               )
18    _____)
19        Highly Confidential Videotaped Deposition of
20    DARRIN WELLS, Volume II, taken on behalf of
21    Defendants, at Jones Day, 555 California Street,
22    26th Floor, San Francisco, California 94104,
23    beginning at 9:16 a.m. and ending at 5:47 p.m., on
24    August 30, 2018, before MARY J. GOFF, California
25    Certified Shorthand Reporter No. 13427.
```

                                              Page 352

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

```
 1   APPEARANCES:

 2

 3   For UEBT Plaintiffs

 4        Farella Braun + Martel LLP

 5        BY:  ALEX REESE

 6        Attorney at Law

 7        235 Montgomery Street

 8        Russ Building

 9        San Francisco, California 94104

10        areese@fbm.com

11        415-954-4400

12

13   For Sidibe Plaintiffs

14        Constantine Cannon LLP

15        BY:  MATTHEW L. CANTOR

16        Attorney at Law

17        335 Madison Avenue

18        22nd Floor

19        New York, New York 10017

20        mcantor@constantinecannon.com

21        212-350-2738

22

23

24

25
```

Page 353

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

```
 1   APPEARANCES (continued):

 2   For Blue Shield of California and the witness

 3        Mayer Brown LLP

 4        BY:  SCOTT P. PERLMAN

 5        Attorney at Law

 6        1999 K Street, N.W.

 7        Washington, D.C. 20006

 8        sperlman@mayerbrown.com

 9        202-263-3201

10

11   For Blue Shield of California and the witness

12        Mayer Brown LLP

13        BY:  ELSPETH V. HANSEN

14        Attorney at Law

15        Two Palo Alto Square

16        Suite 300

17        Palo Alto, California 94306

18        ehansen@mayerbrown.com

19        650-331-2043

20

21

22

23

24

25

                                        Page 354
```

```
 1   APPEARANCES (continued):

 2   For Sutter Health Defendants

 3         Jones Day

 4         BY:  CAROLINE N. MITCHELL

 5         Attorney at Law

 6         555 California Street

 7         26th Floor

 8         San Francisco, California 94104

 9         cnmitchell@jonesday.com

10         415-626-3939

11

12   For Sutter Health Defendants

13         Jones Day

14         BY:  CHRISTOPHER K. SPIERS

15         Attorney at Law

16         555 South Flower Street

17         Fiftieth Floor

18         Los Angeles, California 90071

19         cspiers@jonesday.com

20         213-489-3939

21

22

23   Videographer:

24         Dustin Brown

25
```

Page 355

1    handing you what's been previously marked as

2    Exhibit 5157.  Okay.  I'm going to -- I'm also going

3    to hand you what's been marked previously as

4    Exhibit 1210, because they kind of go together.

5           MR. CANTOR:  Do you guys have one more

6    now?

7           MS. MITCHELL:  Oh, yes, we do.  I just --

8    52.  Okay.

9           MR. CANTOR:  Thank you.

10    Q   (BY MS. MITCHELL) Okay.  Do you remember

11    that after the meeting where Rajiv walked the

12    consultants through the 2015 redirection analysis,

13    Blue Shield discovered that there was an error in

14    that analysis?

15    A   I do recall that we revised it for -- for

16    emergency assumptions, I think.  I think that's

17    what's outlined in this document too.

18    Q   Okay.  And if you were looking at

19    Exhibit 5157, that's an e-mail that you wrote to

20    Rajiv Doolabh on June 30, 2015, correct?

21    A   Correct.

22    Q   And -- and you were providing with --

23    him -- him with a draft e-mail to send to Terri

24    Baker, correct?

25    A   Yes.

Page 463

1    Q    And Terri Baker -- do you remember that

2    Terri Baker was the account manager for the UEBT

3    account?

4    A    Yes, I remember that.

5    Q    Okay.  And so do you remember why you

6    drafted the e-mail for Rajiv to send to Terri?

7    A    I don't recall why I did it.

8    Q    Okay.  And then the e-mail that you

9    drafted said, In doing the follow-up to our call

10   with UEBT consultants on June 22, we uncovered an

11   issue with our assignment of inpatient hospital

12   emergent claims.

13        Do you see that?

14   A    Yes, I see that.

15   Q    Do you remember what the issue was that

16   you uncovered -- that Blue Shield uncovered?

17   A    My recollection, it was how -- how we

18   defined the emergent claims originally.

19   Q    And do you know -- what did Blue Shield do

20   for the redirection analysis to determine if a claim

21   was an emergency claim or not an emergency claim?

22   A    I --

23        MR. PERLMAN:  Objection, vague.

24   A    -- for specific for UEBT or how we do it

25   in general?

Page 464

1          Q     (BY MS. MITCHELL) Specific for the UEBT

2     redirection analysis.

3          A     Yeah, I don't recall how we -- how we did

4     it.  But what I recall is we -- we went into a line

5     in ████████████████████████.

6               THE COURT REPORTER:  Went into line?

7          A     Yeah.  So we were -- we were trying to

8     figure out how ████████████████████████████████

 ███████████████████████████████████████████████████

 ██████████████████████████████████████████

11         Q     (BY MS. MITCHELL) And did you discover

12    that end -- Blue Shield discovered that in the first

13    redirection analysis, ████████████████████████████

 ███████████████████████████████████████████?

15         A     That's my recollection.

16         Q     Okay.  And who did the -- was Rajiv

17    Doolabh the one who was character -- was

18    categorizing claims as emergent or nonemergent?

19         A     Yes, that's my recollection.

20         Q     Okay.  And do you know -- was anything

21    done to make sure that ██████████████████████████

 ████████████████████████████████████████████████

 █████████████████████████████████████████████████

 ████████████████████████████████████████

 ████████?

                                        Page 465

```
 1            MR. PERLMAN:  Objection, no foundation.

 2       A    ███████████████████████████████████████

         ███████████████████████████

 4       Q    (BY MS. MITCHELL) Okay.  Is there anything

 5  in the law, though -- is there anything that you are

 6  aware of that would prevent you from doing that?

 7            MR. PERLMAN:  Object to the form of the

 8  question --

 9            MR. CANTOR:  Join.

10            MR. PERLMAN:  -- vague.

11       A    I mean, if the -- if the ████████████████

    ██████████████████████████████████████████████

    ██████████████████████████████████████████████

14       Q    (BY MS. MITCHELL) Okay.  And my question

15  goes to -- more to whether you can ████████████████

    ██████████████████████████████████████████████

    █████████████████████████.

18            MR. PERLMAN:  Object to the form of the

19  question; vague; and incomplete hypothetical.

20       A    So you're asking me if I have knowledge on

21  laws that would --

22       Q    (BY MS. MITCHELL) Well, what I am asking

23  you is:  Did you account for █████████████████████

    ██████████████████████████████████████████

    ███████████████████████████████████████?
```

                                    Page 466

```
 1              MR. PERLMAN:  Same objection.

 2         A    ███████████████████████████████

     █████████████████████████████████████████

     █████████████████████████████████████████

     ████████████████████████████████████████████

     ██████████████████████████████████████

 7         Q    (BY MS. MITCHELL) Okay.  But if they went

 8    into a Sutter Hospital when Sutter was in network,

 9    there would be ██████████████████████████████████

      ████████, right?

11              MR. PERLMAN:  Objection, incomplete

12    hypothetical.

13         A    Yes.

14         Q    (BY MS. MITCHELL) So in your analysis, you

15    would have to plan for ██████████████████████████

      ██████████████████████████████████████████████

      ████████.  And what I am asking is:  Did you do that

18    at all?

19         A    So you're asking if the analysis takes

20    into account somebody that ███████████████████████

      ███████████████████████████ --

22         Q    Correct.

23         A    -- ████████████████████████████?

24         Q    Correct.

25         A    ██████████████████████████████████████
```



                                        Page  467

```
 1    ████████████████
 2    Q    Okay.  And do you know why ██████████████
 █  ██?
 4    A    We just --
 5         MR. CANTOR:  Objection.
 6    A    ████████████████████████████████
 █  ██████████████
 8    Q    (BY MS. MITCHELL) Okay.  But had you done
 9    a redirection analysis for a PPO client before?
10         MR. PERLMAN:  Objection to the form of the
11    question; no foundation.
12    A    Other than UEBT?
13    Q    (BY MS. MITCHELL) Right.
14    A    Client specific?
15    Q    Right.
16    A    Yeah, I -- I don't recall.
17    Q    Okay.  And so did you think about whether,
18    when you were doing a client-specific redirection
19    analysis, ████████████████████████████████
 █  ████████████████████████████████████
 █  ████████████████████████████████████████
 █  ██████████████████?
23         MR. PERLMAN:  Objection to the form of the
24    question; incomplete hypothetical.
25    A    ████████████████████████████████████
```

Page 468

1       Q   (BY MS. MITCHELL) Okay.  Okay.  And then

2   if you look at Exhibit 1210, you'll see that Rajiv

3   Doolabh followed your advice and largely took your

4   e-mail and sent it to Terri Baker.

5       Do you see that?

6       A   Yes, I see that.

7       Q   And then he attached to the document, the

8   new redirection analysis.  Do you see that?

9       A   I see that.

10      Q   And if you look at that, you'll see that

11  there are a number of footnotes.  Do you see those?

12     A   I see those.

13     Q   Do you know if any of these are standard

14  footnotes that you do use when you're doing modeling

15  or whether these were specifically created for the

16  redirection analysis?

17     MR. PERLMAN:  Object to the form of the

18  question; vague.

19     A   ████████████████████████████████████

      ████████████████████████████

21     Q   (BY MS. MITCHELL) Okay.  And so the first

22  one says, Scenarios modeled to provide a range of

23  results given reasonable assumptions.  They are by

24  no means an exhaustive list of scenarios, nor do

25  they represent the absolute range of possible

Page 469

```
 1   outcomes.
 2           Do you see that?
 3      A    Yes, I see that.
 4      Q    And in Scenario A, you -- you determined
 5   that ██ percent of emergent care can be redirected
 6   for inpatient and outpatient, and for the rest of
 7   the scenarios you assume ████, correct?
 8      A    Correct.
 9      Q    And you're the one who provided those
10   assumptions to Darrin Wells, correct?
11           MR. PERLMAN:  Object to the form of the
12   question; vague and confusing.
13           MR. CANTOR:  He is Darrin Wells.
14      Q    (BY MS. MITCHELL) I'm sorry.  I -- you're
15   right.  I'll rephrase.
16           You're the one who provided those
17   assumptions to be used by Rajiv Doolabh in
18   performing the redirection analysis, correct?
19      A    Yeah --
20           MR. PERLMAN:  Objection, no foundation.
21      A    -- yeah, I recall probably working with
22   him, yeah, to -- for those assumptions.
23      Q    (BY MS. MITCHELL) Okay.  So would it be
24   surprise you if there are documents that say
25   "assumptions from --
```

Page 470

```
 1      A    No.

 2      Q    -- Darrin Wells"?

 3      A    No.

 4      Q    Okay.  And when you -- Okay.  Okay.  And

 5  do you know why you picked ████ sit -- ████

 6  circumstances where the emergency redirection would

 7  be ████?

 8      A    I think it was to show a range of what --

 9  you mean ████████████████████████████████████████

██      ████...

11      Q    And did you ever consider using a number

12  bigger than ██ percent?

13      A    No.  I think this is what we thought was a

14  reasonable assumption.

15      Q    And did you go back and look at ████████████

██  ████████████████████████████████████████████████████

██  ████████████████████████████████████████████████?

18           MR. CANTOR:  Objection.

19           MR. PERLMAN:  Objection, no foundation.

20      A    ██████████████████████████████████████

21      Q    (BY MS. MITCHELL) And did you think about

22  whether, ███████████████████████████████████████████

██  ██████████████████████████████████████████████████████

██  ██████████████████████████████████████████████

██  █████████████████████████████████████████████████████
```

Page 471

1      ████████████████████████████

2               MR. PERLMAN:  Objection --

3               MR. CANTOR:  Objection --

4               MR. PERLMAN:  -- vague; and incomplete

5      hypothetical.

6               MR. CANTOR:  -- assumes facts.

7         A    For -- for what type of service?

8         Q    (BY MS. MITCHELL) For emergency services.

9               MR. PERLMAN:  Same objection.

10              MR. CANTOR:  Join.

11        A    ███████████████████████████████████

       ███████████████████

13        Q    (BY MS. MITCHELL) Did you think about

14     that?

15              MR. CANTOR:  Objection.

16              MR. PERLMAN:  Same objection.

17        A    I think the thought process here is that

18     ████████████████████████████████████████████

       ████████████████████████████████████████████

20        Q    (BY MS. MITCHELL) Did you look at the fact

21     that some of the hospitals that you were redirecting

22     to were ████████████████████████████████████████

       ████████████████████████████?

24              MR. PERLMAN:  Objection, no foundation.

25        A    Yeah, the assumptions came from network

                                            Page 472

1    management that we used for the redirection.

2        Q    (BY MS. MITCHELL) Well -- but not for the

3    emergent redirection, right; that's --

4        A    Well, this is the assumption of how much

5    the dollars would move.

6        Q    Right.  So --

7        A    But who they moved to --

8        Q    -- right.

9        A    -- was --

10       Q    Did you think -- for example, if somebody

11   had to move their regular cancer care to a different

12   hospital, ██████████████████████████████████████

     ████████████████████████████████████████████████

     ████████████?

15            MR. CANTOR:  Objection.

16            MR. PERLMAN:  Objection, calls for

17   speculation.

18       A    ████████████████████████████████████████

     ████████████████████████████████████████████████

20       Q    (BY MS. MITCHELL) Did you ever know that

21   in connection with the CalPERS narrow network

22   hospital -- narrow network that Paul Markovich said

23   that an assumption -- a zero -- an assumption of

24   zero redirection of emergency was unrealistic?

25            MR. PERLMAN:  Objection, no foundation.

                                    Page 473

1    A    Yeah, I don't recall him saying that.

2    Q    (BY MS. MITCHELL) Did you ask around

3    about:  What assumptions have we made about

4    redirection of emergency before?

5         MR. PERLMAN:  Object to the form of the

6    question; vague.

7    A    ████████████████████████████████

     ████████████████████████████████

9    Q    (BY MS. MITCHELL) Okay.  I'm going to hand

10   you what's been marked as Exhibit 1968.

11   A    Okay.

12   Q    Do you know who Paul Markovich is?

13   A    Yes, I do.

14   Q    Who is he?

15   A    He's our current CEO.

16   Q    Okay.  And if you look at this document,

17   he's writing to Melissa Brendt at Sutter, right?

18   A    Yes.

19   Q    And on the second page of this document,

20   he says, On the emergency room utilization, it looks

21   as though you assumed all of the ER utilization

22   would remain as is, even with a network change.  Is

23   that true?  This is just not a realistic assumption,

24   as people will be changing doctors and we will be

25   implementing programs to get people to stay in

Page 474