UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DJENEBA SIDIBE, et al., | Case No. 12-cv-04854-LB |
| Plaintiffs, | |
| v. | **FINAL PRETRIAL ORDER** |
| SUTTER HEALTH, et al., | |
| Defendants. | |

The court held pretrial conferences on August 12 and 19, 2021. The court issues this pretrial order pursuant to Federal Rule of Civil Procedure 16(e).

## 1. Trial Date and Length of Trial

The jury trial will begin on October 4, 2021, in Courtroom 9, 19th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.

Based on the parties' estimates of their times for witness examinations and the court's rulings on *Daubert* and the motions in limine, the trial will last up to four weeks, and each side will have 40 hours per side for direct examination of witnesses and cross-examination of the opposing party's witnesses, including all objections raised during the trial day. The trial will be held Monday through Friday from 8:30 a.m. to approximately 1:30 or 2:00 p.m. (or slightly longer to finish a witness) and will include two ten- to fifteen-minute breaks, depending on how the court is

ORDER – No. 12-cv-04854-LB

able to schedule the court reporters. (The jury needs a break every two hours. The court reporters need one every 90 minutes. The staffing of the trial will drive the breaks.) This allows about five hours of trial testimony each day and twenty-five hours each week, allowing the parties to put in their cases easily in four weeks. Given the pandemic, it is especially important to be considerate of the jury. The parties can avoid evidentiary objections about foundation, and issues about relevance and Rule 403 can be raised outside of trial time.

In addition, each party may have up to 45 minutes for an opening statement and one hour to close (including rebuttal closing for the plaintiffs). If the parties have a different view about the time for openings and closings, they can propose it.)

Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Counsel can also raise issues after the trial day concludes. Also, the first trial day will run the full day and will include jury selection, opening statements if possible, and witnesses, as the day and pandemic permit.

Once the jury begins deliberations, it usually stays all day.

## 2. Procedures During Trial; Exhibit and Witness Lists; Witnesses

The court's October 27, 2016, Case-Management and Pretrial Order has the court's trial procedures for the presentation of exhibits, depositions, and witness testimony, including specific procedures for deposition excerpts.[1]

The parties have identified their witnesses on their separate witness lists. As discussed at the pretrial conference, if the parties identify the same witnesses, the defendant will examine the witness when the plaintiffs call them (as opposed to recalling them).

---

[1] Case-Mgmt. and Pretrial Order – ECF No. 113 at 7–14. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

### 3. Claims, Defenses, and Relief Sought

The remaining claims in the case are reflected in the summary-judgment order at ECF No. 962. They are (1) unlawful tying and an unlawful course of conduct, in violation of the Sherman Antitrust Act § 1 and California's Cartwright Act, and (2) a violation of California's Unfair Competition Law (UCL). Sutter denies the claims. The parties' positions (claims, defenses, relief sought) are reflected in their joint proposed pretrial order at ECF No. 1130 at 2–6.

### 4. Stipulations

The parties have certain stipulations in their proposed pretrial order at ECF No. 1130. At trial, the parties must have a document reflecting any evidentiary stipulations in a format that can be read into the record and introduced as an exhibit. The parties must try to stipulate to as many uncontested facts as they can. It will shorten trial time.

### 5. Motions in Limine (MILs)

For the reasons stated on the record and below, the court rules as follows.

#### 5.1 Plaintiffs' MILs

##### 5.1.1 MIL 1 to Exclude Evidence About Procompetitive Benefits — Denied

In the *Daubert* order, the court allowed expert testimony about procompetitive benefits, following the *UEBT* court. The *UEBT* court also denied a similar MIL.[2] The court denies the MIL here too. The viability of Sutter's hospitals is relevant to the free-riding issue discussed in the *Daubert* order. Sutter's costs and spending are relevant to its pricing. As discussed in the *Daubert* order, evidence of capital investments is relevant to procompetitive benefits. Evidence of other investments is too. For example, evidence of funding pensions is relevant to employee hiring, which is relevant to the quality of patient care. Evidence of quality care is relevant to the procompetitive benefits of the challenged contracting practices. *Cnty. of Tuolumne v. Sonora Cnty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *Law v. NCAA*, 134 F.3d 1010, 1023 (10th Cir. 1998).

---

[2] *UEBT* Order, Ex. 9 to Su Decl. – ECF No. 1068-2 at 120–21.

Evidence of charity care is relevant to widening consumer access to medical services. (The court's examples are illustrative, not exhaustive.)

### 5.1.2   MIL 2 to Exclude Evidence of Sutter Health's Nonprofit Status — Denied

In the *UEBT* case, the court denied a similar MIL.[3] *See also Aetna Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-15346, 2015 WL 1646464, at *6–8 9 (E.D. Mich. Apr. 14, 2015) (denying similar MIL). The court denies the MIL. The plaintiffs suggest risk of jury confusion, but Sutter's nonprofit status is relevant to its financial governance, pricing, and spending.

### 5.1.3   MIL 3 to Exclude Evidence About Covid-19 and California Wildfires — Denied

In the *Daubert* order, the court allowed expert testimony on these topics because they are relevant to the procompetitive benefits of the challenged contracting practices. The court denies the MIL for the same reasons. The court accepts Sutter's representations that it will not overdo its presentation because the issue is a small point, not a big one. If Sutter goes too far, it may open the door for cross-examination about Sutter's actual delivery of services. The plaintiffs must make an offer of proof if this occurs so that the court can address Rule 402 and 403 issues in context at trial.

### 5.1.4   MIL 5 to Exclude Evidence of Patients' Personal Experiences — Denied[4]

The plaintiffs do not identify specific evidence. A categorical exclusion might prevent evidence relevant to understanding complex concepts. The issue is better addressed in context at trial. The *UEBT* court denied a similar MIL.[5] The court denies the motion without prejudice. The plaintiffs can object to any issues at trial. Based on Sutter's representation that it will not call patients or refer to medical history and instead will make illustrative (not personal-context) points about patient care, it seems unlikely that this is a real issue.

### 5.1.5   MIL 6 to Exclude Evidence About Payer Mix and Cost Shifting — Denied

The plaintiffs moved to exclude evidence about Sutter's and competitor hospitals' payer mix (including Medicare and Medi-Cal reimbursement) and Sutter's raising its prices to offset its losses

---

[3] *Id.* at 124–25.

[4] There is no MIL 4.

[5] *UEBT*, Order Ex. 9 to Su Decl. – ECF No. 1068-2 at 127–28.

from its government revenue stream. The court denies the MIL. At minimum, the evidence is relevant to pricing. Also, as discussed above, the evidence is relevant to procompetitive benefits of the challenged contracting practices such as access to medical care and a predictable revenue stream and the resulting volume assurances, allowing, for example, increased access to medical care.

### 5.1.6   MIL 7 to Exclude the Health Plans' Financial Information — Denied

The plaintiffs moved to exclude evidence of the class health plans' financial information, including profits, executive salaries, and fines paid to the California Department of Managed Health Care. Evidence of specific executive salaries is not relevant, and the court excludes it.[6] But the financial evidence, including executive compensation as a category of overall costs, is relevant to calculating the passthrough rate. The court denies the motion.

### 5.1.7   MIL 9 to Exclude Pre-Litigation Hold Evidence — Denied[7]

The plaintiffs moved to exclude evidence predating litigation holds on the ground that Sutter unjustifiably delayed issuing the holds: it issued holds to four witnesses in 2014 (two years after the plaintiffs filed the initial complaint in 2012) and to eight witnesses between 2016 and 2018 (four to six years after 2012). The court denies the motion.

The ordinary way to challenge spoliated evidence is through a sanctions motion. *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d, 1093, 1095 (C.D. Cal. July 25, 2012) (motions in limine are not "a substitute for motions to compel discovery or for discovery sanctions that should have been brought earlier"). In any event, assuming the procedural correctness of the motion, there is no evidence that relevant evidence was lost. As the court said in its separate order denying an adverse-inference instruction for the destruction of boxes, Sutter has produced substantial discovery, and this is not a case that has suffered from the withholding of evidence. Without evidence of spoliation, the court cannot conclude that it happened. *Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. July 3, 2007) ("speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of

---

[6] Opp'n to Pls.' Mot. in Limine 7 – ECF No. 1078-4 at 5.

[7] There is no MIL 8.

evidence"); *U.S. Legal Support, Inc. v. Hofioni*, No. 13-cv-1770, 2014 WL 172336, at *4 (E.D. Cal. Jan 15, 2014) (same).

Moreover, Sutter evaluated the scope of its litigation holds periodically as the litigation evolved. In June 2014, the court dismissed the case with prejudice. After the Ninth Circuit's remand in July 2016, the plaintiffs served their first discovery requests in November 2016. They filed a fourth amended complaint in September 2017 and their class-certification motion in June 2018. Along the way, as discussed in the sanctions order, their claims and Sutter's defenses changed. When that happened, Sutter issued litigation holds, produced responsive documents, and made the witnesses available for depositions.[8] There is no evidence of destruction of evidence for any witnesses.

Also, the twelve witnesses are not testifying about the contracting practices at issue in the litigation, and there is no discernable prejudice to the plaintiffs' case.

Two witnesses (Meghan Brosnahan, an e-discovery manager, and Jeanne Carriere, an operations manager at Sutter Records Management) are document-retention witnesses testifying on the limited topic of Sutter's record-retention policies and the remediation efforts related to the destruction of boxes of documents. The court denied the plaintiffs' sanctions motion for an adverse-inference instruction, finding that the evidence had no discernable relevance to the case.

Two witnesses (Brett Moore, Sutter's VP of Financial Planning and Analysis, and John Gates, Sutter's CFO for the Bay Area) were not involved in the contracting practices. They will testify about Sutter's budgeting and operations. Sutter has produced 51,500 Gates documents and 6,500 Moore documents, both have been deposed, and the plaintiffs identified no documents that they believed were missing from the productions.

Michael Taylor is a former Sutter employee who was the senior director of the central business office for Sutter Shared Services. The plaintiffs attended the joint PMK deposition in the *UEBT* case and did not ask questions or serve document requests.

Four witnesses are clinical-care witnesses: Lawrence deGetaldi (a primary-care physician who serves as the President of the Palo Alto Medical Foundation Santa Cruz), Thomas Shaunessy (a

---

[8] Chart of Holds, Ex. P1 Kim Decl. – ECF No. 1080-1 at 6.

critical-care physician who heads Sutter's remote ICU program (discussed in the *Daubert* order), Sean Townsend (a critical-care physician who leads Sutter's sepsis initiatives), and Jonathan Judy-Del Rosario (an intensive-care nurse and the senior nursing executive at Sutter's CPMC hospital). They were not involved in the challenged contracting processes and instead have evidence relevant to the procompetitive benefits of the challenged contracting practices.

Three witnesses are new department leaders who assumed new responsibilities during the nine years of this litigation after other executives left Sutter's employment: Conrad Vial (a cardiothoracic surgeon who is now Sutter's systemwide chief clinical officer), William Isenberg (an OB-GYN who is the current systemwide chief quality and safety officer), and Brian Dean (Sutter's new CFO). The doctors were not involved in the challenged contracting practices and provide evidence relevant to the procompetitive benefits of the challenged contracting times. The plaintiffs limited their discovery to documents from 2017 on. (Both received litigation holds in 2018.) Sutter added Mr. Dean to its witness list as soon as he was identified as the successor to the former CFO. He will testify about Sutter's finances and current financial condition.

In sum, the court denies the motion. There is no evidence of destruction, only speculation that there could be. Also, the testimony poses no threat to the plaintiffs' challenge to the contracting practices because the witnesses had nothing to do with the practices.

### 5.2 Sutter's MILs

#### 5.2.1 MIL 1 to Exclude References to the Term "Monopoly" — Granted

The court granted Sutter summary judgment on the plaintiffs' claims of monopolization and attempted monopolization in violation of Sherman Act § 2 on the ground that there was no evidence of Sutter's willful maintenance of market power in the Tying Markets and no dangerous probability of monopolization in the Tied Markets.[9] The court grants the MIL and precludes the use of the use of the term "monopoly."[10] Anticompetitive is a word that serves just as well. The plaintiffs contend that redacting documents is burdensome. The only exhibits that will go to the

---

[9] Order – ECF No. 962 at 10–16.

[10] *UEBT*, Order Ex. 9 to Su Decl. – ECF No. 1068-2 at 132 (addressing similar issue and granting MIL in part on similar grounds).

jury are those that a witness sponsors and discusses. Redactions even on the fly are easy. There will be time to conform any final exhibits that go into the jury room.

### 5.2.2 MIL 2 to Exclude Other Litigation and Investigations — Granted in Part

The court generally grants the motion. Whatever relevance the evidence has under Rule 404(b) or otherwise, the prejudice substantially outweighs the probative value. Fed. R. Evid. 402, 403, & 404(b)(1). This lawsuit is about Sutter's contracting practices in the class period and some reasonable period that precedes it. It is not, for example, about Sutter's arguments in the 1999 Alta Bates-Summit merger litigation (twelve years earlier).[11] The UEBT and California AG cases similarly are collateral actions that raise Rule 403 concerns, not just of unfair prejudice but also of confusion of the issues and wasting time. This does not preclude the plaintiffs from using admissible evidence from the other proceedings, including Sutter's admissions, subject to any Rule 403 objections at trial. If appropriate (such as with deposition or other testimony), the plaintiffs can use terms such as "in a prior proceeding" or the equivalent. Also, if Sutter offers evidence about its response to the Covid-19 pandemic or the California wildfires that strays into the particular, then the plaintiffs can rebut the evidence. To that point, the one-off OSHA complaints are irrelevant, at least on this record. But if the plaintiffs deem them relevant at trial to rebut Sutter's alleged procompetitive benefits of the challenged contract terms, then the plaintiffs can make an offer of proof, and the court will rule on the issue in context.[12]

### 5.2.3 MIL 3 to Exclude Pre-2006 Evidence — Granted

The history of Sutter's practices is relevant within some reasonable time period that predates the class period: the plaintiffs are entitled to provide context in the form of pre-limitations and pre-damages period evidence. Allowing evidence from the five-year period that proceeds the class period achieves this objective. But this case is not about conduct that predates the contracting practices by more than five years (and sometimes, a decade or more). The contracts were renegotiated regularly, and the contracts with the alleged restraints took effect shortly before the

---

[11] Opp'n to Sutter's Mot. in Limine 2 – ECF No. 1034-2 at 2–4 (advancing that as relevant).
[12] Exs. D14–D16 to Kauffman Decl. – ECF No. 1053-1 at 150–61.

class period. Pre-2006 evidence has minimal relevance, and in any event results in confusing, cumulative presentations that substantially outweigh any relevance. Also, pre-2006 evidence generally is cumulative of similar evidence within the post-2006 time period: for example, Sutter cites communications with the health plans in the pre-2006 time period that are substantially similar to post-2006 communications.[13] Even if evidence is not cumulative, evidence from the earlier years (stretching back to the early 2000s) is too attenuated from the relevant period, confuses the issues, wastes time, and adds delay in the form of the parties' litigating collateral issues. Again, the case is about Sutter's contracting practices in the relevant time period. That said, at trial, in the context of a particular identified exhibit, the plaintiffs can make an offer of proof outside of the presence of the jury, but generally, the court grants the MIL.

The court grants Sutter's motion to exclude the pre-2006 CALPERs evidence. The marginal relevance does not merit the mini-trial and the other Rule 403 issues that would result from allowing the evidence.

### 5.2.4 MIL 4 to Exclude Strategy Advantage Documents — Granted

The challenged documents are a 2006 memorandum summarizing statements that Sutter executives made about Sutter's marketing position and the individual statements. An outside consultant — hired by Sutter as part of its Marketing Task Force to understand market needs and define its product strategy — prepared the memorandum and based it on her interviews with the executives. They are like a brainstorming session, eliciting the executives' views on what Sutter did (or did not do) right and how it could improve. They have nothing to do with contracting practices. Sutter contends that they are not business records because (1) there was a delay between the interviews and the consultant's drafting the documents (meaning, that she did not prepare the documents "at or near the time" of the act), and (2) the record is untrustworthy because the consultant does not remember the precise processes that she used for taking notes and turning them into memoranda, and she made basic fact errors (such as getting a title and a name wrong). It also contends that the documents are not party admissions (partly due to the inaccuracies in them

---

[13] Sutter Mot. in Limine 3 – ECF No. 1045-1 at 4–5.

and partly because the plaintiffs cannot show that the persons made them in a representative capacity). Sutter also contends that the documents are irrelevant and any probative value is substantially outweighed by undue prejudice under Rule 403.

Generally, the business-records foundation could be laid, and Sutter's objections might go to weight, not admissibility. But the memorandum, which stitches together the interviews without attribution, is confusing. Also, the individual interviews are not obviously party admissions (although perhaps a foundation could be laid) in the classic sense: a party making statements about the issue such that the statements are evidence about the issue. Here, the statements do have some relevance to the issues in the litigation (e.g., there is discussion about pricing and quality) but they have nothing to do with contracting. In early 2006, they necessarily look back at years that precede the class period by over five years. Any marginal relevance to the relevant time period is substantially outweighed by the danger of confusion of the issues and the same sideshow concerns discussed in MIL 3. The court grants the motion.

### 5.2.5   MIL 5 to Exclude Evidence of Alleged Spoliation — Granted

The court denied the motion for sanctions in a separate order on the ground that there was no spoliation. The court grants the MIL on similar grounds.

### 5.2.6   MIL 6 to Exclude Specific Executive Compensation — Granted

Sutter moved to exclude evidence of the specific amount of compensation earned by individual Sutter executives and employees. The court grants the motion. Executive compensation as a category of overall costs is relevant. But individual executive compensation is not: it would result in a side show about how compensation is set, it is prejudicial, and the marginal relevance of an individual's compensation to bias (Sutter violated antitrust laws to pay its executives more?) has nothing to do with the challenged contracting practices. The general issues of Sutter's revenues and costs allow flushing out the issues of bias. *Finjan, Inc. v. Sophos, Inc.* No. 14-cv-01197-WHO, 2016 WL 4560071, at *8 (N.D. Cal. Aug. 22, 2016) (compensation "is unquestionably relevant to a witness's bias;" held that the defendant could "address any bias without revealing the exact dollar amount" and excluded the evidence as prejudicial) (cleaned up); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *4 (N.D. Cal. July 8, 2015)

(excluding compensation paid to consultants, even though it ordinarily is a ground for cross-examination, because the consultants' relationship with the plaintiff was "continuous, ongoing, and not limited to litigation purposes").

### 6. Jury Instructions

The court will hold a preliminary instructions conference on September 2, 2021, at 9:30 a.m. The court then will file preliminary jury instructions and proposed final jury instructions and will hold an instructions conference during trial and before closing argument to finalize any issues about the instructions.

### 7. Verdict Form

After the September 2, 2021, conference on jury instructions, the court will file a proposed verdict form and will finalize it before closing argument.

### 8. Jury Questionnaire

The court adopts the parties' proposed jury questionnaire (but will run the pandemic-related questions by the jury office).

### 9. Trial

The court's ordinary processes are as follows. By October 1, 2021, counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits used in opening statements and otherwise) for the first day of trial. Thereafter, at the end of each trial day (generally, by 2:00 p.m.), counsel must give notice of the order of proof for the next trial day. The parties must notify the court of any issues by the end of the day so that the court can resolve them. To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross examination (other than for impeachment).

The parties will call their joint witnesses only once (which means that those witnesses will be called during the plaintiffs' case).

It may make sense — in a complex trial being tried during a pandemic — to provide earlier notice. The parties can raise any issues at the next pretrial conference.

**IT IS SO ORDERED.**

Dated: August 30, 2021



_____
LAUREL BEELER
United States Magistrate Judge