# CONSTANTINE CANNON LLP

**Matthew L. Cantor**
Attorney at Law
212-350-2738
mcantor@constantinecannon.com

NEW YORK | WASHINGTON | SAN FRANCISCO | LONDON

September 1, 2021

**VIA ECF**

The Honorable Laurel Beeler
United States District Court for the Northern District of California
450 Golden Gate Avenue 15th Floor, Courtroom B
San Francisco, CA 94102

      Re:    *Djeneba Sidibe et al. v. Sutter Health*, Case No. 3:12-cv-04854-LB

Dear Judge Beeler:

      Plaintiffs have reviewed your August 31, 2021 Orders regarding motions *in limine*. We write, in advance of the hearing set for tomorrow, to raise two issues that we wish to discuss, in addition to those identified in Mr. Kiernan's email to the Court earlier this week.

      1.    ***Plaintiffs request that the Court schedule a hearing, in advance of trial, to allow them to make "an offer of proof outside of the presence of the jury" as to why certain documents and testimony from the pre-2006 period should be admitted.*** Plaintiffs seek this hearing pretrial so that they can efficiently prepare their trial witness examinations (both direct and cross) and opening statement, and so that they can finalize their offer of proof for each trial day allotted for their case-in-chief.

      As the Court recognized, "plaintiffs challenge Sutter's systemwide contracting as anticompetitive." Order on Motions to Exclude Expert Testimony [ECF No. 1166] at 13. As Plaintiffs have explained, it is through the mechanism of systemwide contracting that Sutter exercised market power over health plans and forced them to accede to its non-par penalty rate, anti-steering, anti-tiering, and price secrecy provisions during the period when Class Members incurred damages.

      Importantly, it is undisputed that Sutter moved to systemwide contracting from individual hospital contracting in the pre-2006 period. The Court recognized this in its March 21, 2021 Order denying summary judgment to Sutter [ECF No. 962] ("Summary Judgment Order") at 3, 2021 WL 879875, at *2 (N.D. Cal. Mar. 9, 2021):

> Before 2002, insurers negotiated with Sutter hospitals individually when they assembled their provider networks. Then, Sutter moved to systemwide contracts, ***forcing insurers to participate***. For example, when one insurer (Anthem) pushed back, Sutter terminated its individual hospital contracts with Anthem. Anthem then folded and entered into a systemwide contract.

NYDOCS 434717v.1

335 Madison Ave. 9th Floor, New York, NY 10017   Telephone: 212-350-2700   Facsimile: 212-350-2701   http://www.constantinecannon.com

A Limited Liability Partnership

## CONSTANTINE CANNON LLP

September 1, 2021
Page 2

NEW YORK | WASHINGTON | SAN FRANCISCO | LONDON

(Emphasis added).  *See also* Summary Judgment Order at 9, 2021 WL 879875, at *6 (noting that issues of fact were raised over whether Sutter "impose[d] a tie" because the "contracts were systemwide").  Accordingly, documents and testimony relevant to Sutter's intent in moving from individual contracting to systemwide contracting is entirely probative of whether Sutter is liable under Plaintiffs' Rule of Reason claims.  *See Corwin v. Los Angeles Newspaper Bureau,* 4 Cal. 3d 842, 856 (1971) (holding that the "history of the restraint" and "the purpose or end sought to be obtained" by the restraint are factors to be considered in Rule of Reason analysis); Model CACI Instruction 3411 regarding Rule of Reason (noting that "in deciding whether [defendant's] challenged restraint had an anticompetitive or beneficial purpose or effect on competition, you should consider the results the restraint was intended to achieve or actually did achieve . . . you may also consider . . .the history of the restraint [and] . . . the reasonableness of the stated purpose of the restraint.").

Admission of this evidence – *i.e.,* the contemporaneous documents from the period when Sutter adopted and implemented systemwide contracting – will also be central to Plaintiffs' **rebuttal** to Sutter witness testimony that will claim that Sutter required health plans to enter into systemwide contracts for benign purposes.  In that regard, its admission will allow for fair and meaningful cross-examination of Sutter witnesses.

Moreover, evidence concerning Sutter's initial requirement that health plans enter into systemwide, rather than individual hospital, contracts, particularly that health plans "folded" when faced with this requirement, is probative of whether Sutter exercises market power through systemwide contracting.  *See* Summary Judgment Order at 3, 8, 2021 WL 879875, at *2, *5 (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12 (1984).  Indeed, this "before and after" evidence *only* emanates from the pre-2006 period; by definition, it is not cumulative of other evidence related to post-2006 exercises of Sutter's market power.

Evidence from the pre-2006 period likewise, as the Court has recognized, contains admissions from Sutter that "*support [] the plaintiffs' position* that in the but-for world, Sutter would lower its prices, not raise them."  *See* Order certifying Rule 23(b)(2) Class [ECF No. 698] at 38 n.117, 333 F.R.D. 463, 490 n.117 (N.D. Cal. 2019) (emphasis supplied).  Those admissions include Sutter attesting that "only a modest loss of patients would be sufficient to discipline their pricing activity," and that "evidence establishes that [a] relatively modest redirection of patients would impose a critical loss sufficient to defeat a price increase" by Sutter's East Bay Hospitals).  *Id.* (quoting from Sutter's Proposed Findings of Fact and Conclusions of Law in Alta Bates/Summit merger proceedings at ¶¶ 55 & 70 filed in 2000).

Finally, it is undisputed that **all** of the challenged contract provisions were first put into effect prior to 2006.  Order certifying Rule 23(b)(2) Class at 9 n.21, 333 F.R.D. at 473 n.21 (quoting from Joyner Declaration that non-par rate was "introduced" in 2005).  For example, the first Equal Treatment/anti-steering provision appeared in systemwide agreements as early as 2001, and the first anti-tiering provisions were introduced in 2004.  *See* Chipty Class Declaration [ECF No. 379-1] at ¶¶ 34-47 (quoting from various health plan witness declarations).  Plaintiffs

CONSTANTINE CANNON LLP

September 1, 2021
Page 3

NEW YORK | WASHINGTON | SAN FRANCISCO | LONDON

must be able to point to when these provisions first went into effect. Otherwise, the narrative that Plaintiffs will provide to the jury will be artificial, disjointed and, frankly, unintelligible.

Given the Court's August 31 Order, Plaintiffs request that they be permitted to submit a short brief, identifying in table format the limited documents and testimony that they seek to offer from the pre-2006 period along with their rationale for doing so. Plaintiffs further request that the Court schedule a hearing to discuss whether Plaintiffs will be permitted to offer such documents and testimony into evidence. To this end, plaintiffs request that the Court permit them to file the referenced brief on September 9, 2021, allow Sutter to file to a responsive brief by September 16, 2021, and hold a hearing on Plaintiffs' proffer on September 21, 2021.

**2. *Plaintiffs seek clarification of the Court's Order denying Plaintiffs' motion to exclude evidence about services that Sutter rendered to COVID-19 and California Wildfire patients*.** The Court is apparently permitting Sutter witnesses to claim that the challenged conduct enhanced Sutter's ability to provide COVID-19 and Wildfire services so long as Sutter does "not overdo its presentation" regarding these services. The Court noted that "[i]f Sutter goes too far, it may open the door for cross-examination about Sutter's actual delivery of services." It then goes on to say that, if plaintiffs seek to cross-examine Sutter on its "actual delivery" of COVID or Wildfire services, they "must make an offer of proof . . . so that the court can address Rule 402 and 403 issues in this context." Final Pretrial Order [ECF No. 1167] at 4.

The Court's Order appears to restrict Plaintiffs in their cross-examination of Sutter fact or expert witnesses on the COVID or Wildfire services that it provided, even if these Sutter witnesses testify about them on direct. If that is the case, this would be clear error. Once Sutter witnesses offer testimony about the services that they offered to COVID or Wildfire patients, which Sutter will only do to imply that these services were of high quality and that they would not have been offered but for the challenged conduct, Plaintiffs have the right to challenge this testimony through cross-examination and through the submission of evidence that demonstrates that Sutter's COVID and/or Wildfire services were, in fact, substandard and unsafe. It would be entirely one-sided, and prejudicial to the Class, to allow Sutter to put on COVID and Wildfire testimony and documents without "an offer of proof," but to require Plaintiffs to make "an offer of proof" as a prerequisite to counter COVID/Wildfire-related testimony and documents that the Court just admitted into evidence. If the Court admits Sutter's proffered evidence regarding Covid and Wildfires, Plaintiffs should be given substantial latitude to rebut it.

Accordingly, Plaintiffs ask that the Court clarify its ruling regarding Covid and Wildfires evidence at the pretrial conference on September 2.

Respectfully submitted,

/s/

Matthew L. Cantor

cc: Counsel of record

NYDOCS 434717v.1