UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DJENEBA SIDIBE, et al., | Case No. 12-cv-04854-LB |
| Plaintiffs, | |
| v. | **ORDER ON PROPOSED JURY INSTRUCTIONS** |
| SUTTER HEALTH, et al., | Re: ECF No. 1133 |
| Defendants. | |

## INTRODUCTION

The parties submitted twenty preliminary instructions (P-1 through P-20), nine instructions for the course of trial (M-1 through M-9), eighteen substantive instructions (S-1 through S-18), and nine concluding instructions (C-1 through C-9).[1] The parties submitted briefing about four substantive issues.[2] The court resolves the legal questions as follows: (1) health plans are not purchasers as a matter of law; (2) business justifications are relevant only to the rule-of-reason claim, not the tying claim; (3) market power is a necessary element for both the rule-of-reason and tying claims; and (4) the jury will be instructed with the standard CACI instruction (and not with the plaintiffs' proposed burden-shifting instruction).

---

[1] Proposed Jury Instrs. – ECF 1133. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Pretrial Memoranda – ECF 1134 and 1135.

ORDER – No. 12-cv-04854-LB

# ANALYSIS

## 1. Whether Health Plans are the Purchasers of Sutter's Inpatient Hospital Services (IHS)

The parties disagree about whether the court should instruct the jury that the health plans are the relevant direct purchasers of IHS. The plaintiffs contend that health plans are purchasers as a matter of law. Sutter counters that a genuine dispute exists about whether patients (not health plans) are the relevant purchasers, and the jury may reasonably find either way.[3] This issue affects instructions S-3, S-4, and S-5 (CACI 3420, 3413, and 3414 respectively).

The plaintiffs contend that earlier orders in the case and case law establish that health plans are the relevant direct purchasers and that the relevant markets must be determined based on the alternatives available to those plans. *Sidibe v. Sutter Health*, 667 F. App'x 641, 642 (9th Cir. 2016); Order Re Summ. J., 2019 WL 2078788, at *24 (ECF 678 at 49); *see Saint Alphonsus Med. Ctr. – Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 343 (3d Cir. 2016) (the district court "failed to properly account for the likely response of insurers in the face of a SSNIP" when defining hospital markets); *FTC v. Advoc. Health Care Network*, 841 F.3d 460, 471 (7th Cir. 2016) (the "market question is therefore most directly about the likely response of insurers, not patients, to a price increase") (cleaned up).

Sutter counters that under a tying analysis, patients — rather than the plans — may be the relevant purchasers. Also, it argues that the court granted summary judgment on the "distinct products" question without ruling on the identity of the purchasers.[4] Sutter also invokes Ninth Circuit precedent wherein the identity of the buyers and the product-market definition were questions of fact for the jury. *See High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (market definition properly left for the jury where both sides "presented strong evidence and compelling arguments to support their respective definitions of the relevant market"); *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989) ("This definitional process is a factual inquiry for the jury; the court may not weigh evidence or judge witness

---

[3] Pls. Mem. – ECF No. 1135 at 6–9; Sutter's Mem. – ECF No. 1134 at 16–20.

[4] Order – ECF 886

credibility."). In responding to the plaintiff's arguments, Sutter says the cited language was dicta that summarized the plaintiffs' assertions, not an explicit finding on the issue. Furthermore, the issue of identifying the purchasers has never been posed directly to the court, which thus could not have decided the issue. Lastly, Sutter argues this case is factually different from the plaintiffs' cases because this case involves Sutter's contention that Kaiser competes in the same market.

The plaintiffs' case of course rests on the predicate that health plans are the direct purchasers. But the court did not grant summary judgment on the basis of who the purchasers are, and its order framed the plaintiffs' position but did not embrace it. Order Re Summ. J., 2019 WL 2078788, at *25 (the response of health plans *and* the response of patients to a change in market conditions are both relevant); Order – ECF No. 886. The identity of the purchasers is not a settled issue as a matter of law, and the instructions will not preclude the jury from making its own finding.

### 2. Whether Business Justification is an Affirmative Defense to Tying Claim

Both parties proposed instructions on the tying claim based on CACI 3420, which lists the elements of a tying claim. The plaintiffs' instruction says that the jury cannot consider Sutter's procompetitive justifications for the alleged tying conduct, and Sutter's instruction has business justification as an affirmative defense.[5]

The plaintiffs contend that the tying claim here involves per se illegal conduct, and thus, business justification is not an affirmative defense. To support this argument, they cite the California Supreme Court's opinion in *Corwin* and other cases holding that tying arrangements under the Cartwright Act "are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.*, 4 Cal. 3d 842, 853 (1971) (cleaned up); *Nicolosi Distrib., Inc. v. BMW of N. Am.*, 2011 WL 1483424, at *4 (N.D. Cal. Apr. 19, 2011) (under a per se tying arrangement under either Sections 16726 or 16727 of the Cartwright Act, "the rule of reason does not apply, and the plaintiff need not separately prove a resulting adverse

---

[5] Pls. Mem. – ECF No. 1135 at 9–14; Sutter's Mem. – ECF No. 1134 at 10–16.

effect on competition in the market"); *see also UFCW & Emps. Benefit Tr. v. Sutter Health*, No. CGC-14-538451 (*UEBT*), Order re Antitrust Jury Instrs. – ECF No. 1135 at 13:12–16 (p. 10:12–16) (Cal. Super. Ct. Sept. 16, 2019) (rejecting the assertion that a plaintiff must prove that the anticompetitive effects of the tying arrangement outweigh the business justification or procompetitive effects of that arrangement: "No such requirement is found in any case interpreting the Cartwright Act;" postponed consideration of whether the affirmative defense of business justification existed for a virtually identical tying claim under the Cartwright Act until after the evidence came in at trial and pending further briefing by the parties).

Sutter counters that Sherman Act precedent, which allows business justification as an affirmative defense to a tying claim, applies with equal force to a tying claim under the Cartwright Act. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 486 (1992) (the defendant may avoid liability by proving any anticompetitive effects of its tying arrangement are outweighed by its competitive effects); *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1348–49 (9th Cir. 1987) (a business justification may excuse an otherwise per se illegal tying arrangement).

California courts follow Sherman Act precedent in defining the elements of a tying claim. *Corwin*, 4 Cal. 3rd at 858; *Marin Cnty. Bd. of Realtors v. Palsson,* 16 Cal. 3d 920, 925 (1976) ("federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act"). In *Corwin*, for example, the court considered whether two ostensibly separate products should be treated as one product for a tying analysis. Relying on federal cases (including *Jerrold Electronics*), the court held that it must examine the facts to see whether there were legitimate reasons to sell normally separate products in a combined form, and it identified factors relevant to that examination. *Corwin*, 4 Cal. 3rd at 858 (citing *United States v. Jerrold Elecs. Corp.*, 187 F. Supp. 545, 559 (E.D. Pa. 1960), *aff'd per curiam*, 365 U.S. 567 (1961)).

Sutter contends that it is not reasonable to conclude that California courts — which otherwise follow Sherman Act cases when interpreting tying claims — deviate from that approach only for the affirmative defense of business justification. But Sutter identifies no California court that has applied the defense. *Corwin* cited *Jerrold* for one point: the factors relevant to identifying whether legitimate reasons existed for selling two apparently distinct products as one. *Jerrold* also held that a defendant

1  may defend the tie of two separate products by establishing that the tie was reasonable because it
2  served a valid business purpose. 187 F. Supp. at 555–58 (the business purpose was the quality of a
3  new community television antenna system). *Corwin* did not cite *Jerrold* for that holding.

4      *Corwin* also characterized tying arrangements as "illegal per se whenever a party has sufficient
5  economic power with respect to the tying product to appreciably restrain free competition in the
6  market for the tied products." *Corwin*, 4 Cal. 3d at 853. Other California courts have made similar
7  pronouncements. *UAS Mgmt., Inc. v. Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357, 369
8  (2008) (reversing a grant of summary judgment to a defendant in a tying case involving hospital
9  services: "where a tying arrangement is found, it is illegal per se; that is, the seller's justifications
10 for the arrangement are not measured by a rule of reasonableness.") (cleaned up); *Morrison v.
11 Viacom, Inc.*, 66 Cal. App. 4th 534, 542–43 (1998) (elements of a per se tying violation are (1) a
12 tying agreement where the sale of tying product was linked to the sale of the tied product, (2) the
13 party had sufficient economic power in the tying market to coerce the purchase of the tied product,
14 (3) a substantial amount of sale was affected in the tied product, and (4) the complaining party
15 suffered pecuniary loss as a result). Given the characterizations in *Corwin*, *UAS*, and *Morrison*
16 about per se tying claims, which is the claim that the plaintiffs advance here, the court cannot
17 conclude that the Cartwright Act allows business justification as an affirmative defense.

18     Sutter also quotes lightly from *Belton* that "many tying arrangements, . . . are fully consistent
19 with a free, competitive market," but that language was referring to Sherman Act claims. *Belton v.
20 Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (2007) (cleaned up).

21

22 **3.  Whether Market Power is a Necessary Element for the Rule-of-Reason Claim**

23     The plaintiffs agree that the CACI market-power instruction is appropriate for the tying claim
24 but propose a different instruction for the rule-of-reason claim that would allow them to show either
25 market power or other anticompetitive effects, including "inflated prices, reduced output, or reduced

consumer choice." Sutter contends that market power is a necessary element of both claims.[6]

The plaintiffs argue that proof of detrimental effects (like supracompetitive pricing) can obviate the need for a showing of market power because market power is a surrogate for detrimental effects. *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 339–40 (3d Cir. 2018); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Market power can be proven by direct evidence" of anticompetitive impact) (cleaned up); *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986) (market power is a "surrogate for detrimental effects," which can obviate the need for an inquiry into market power.) (cleaned up).

But these cases addressed antitrust claims that involved horizontal restraints, not the vertical restraints present in this case. *E.g., Indiana Fed'n of Dentists*, 476 U.S. at 450–451, 459 (horizontal agreement between competing dentists not to share X rays with insurance companies); *Lifewatch Servs.*, 902 F.3d at 335 (horizontal restraint amongst competitors); *Eastman Kodak Co.*, 125 F.3d at 1201 (the plaintiffs withdrew their tying claims and only litigated § 2 claims). Vertical restraints are treated differently under the rule of reason than horizontal restraints because harms to competition are more common when competitors act like a cartel. *E.g., Lifewatch*, 902 F.3d at 335 (horizontal agreements are "more rigorously scrutinized for an antitrust violation because [they] could more easily facilitate competitive harms, such as the exclusion of rivals, price fixing, or the consolidation of market power"). Supreme Court precedent further supports the principle that vertical restraints on trade are different in character than horizontal restraints. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018) ("Vertical restraints often pose no risk to competition unless the entity imposing them has market power.").

Sutter cites cases to support its argument that in a Cartwright Act vertical-restraint case like this case, market power is a threshold element for both the tying and rule-of-reason claims. *SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 91 (2008) ("[I]n all cases involving a

---

[6] Pls. Instrs. Nos. S-9 and S-6 – ECF No. 1133 at 93, 76 (evidence that Sutter could "force health plans to contract" with it on a systemwide basis demonstrates "economic power in the market"); Sutter's Instr. No. S-10 – ECF No. 1133 at 96 ("If you conclude that Sutter does not have market power in the relevant markets that I will describe, then you must find for Sutter on all counts in this case.").

tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." (quoting *Ill. Tool Works Inc. v. Indep. Ink., Inc.*, 547 U.S. 28, 46 (2006))); *Exxon Corp. v. Super. Ct.*, 51 Cal. App. 4th 1672, 1681 (1997) ("[T]he need to prove market power is a threshold consideration in an antitrust case and is the sine qua non of recovery."). The plaintiffs counter that *Exxon* did not reach the issue because the plaintiff produced no evidence of anticompetitive effects or market power, and the Supreme Court's ruling in *American Express* should be cabined to cases involving two-sided markets.[7] This overlooks the precedent that vertical restraints are treated differently than horizontal restraints. *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 348 n.18 (1982) ("horizontal restraints are generally less defensible than vertical restraints").

Market power is an element of both claims and can be proven in different ways. *E.g., In re Cipro Cases I & II*, 61 Cal. 4th 116, 157 (2015) (market power can be shown by a sufficiently large reverse-payment patent settlement); *Exxon*, 51 Cal. App. 4th at 1682 (market power can be shown through market share). But that does not militate in favor of the split approach that the plaintiffs propose. Also, no circumstances here suggest similar inferences of market power, such as the one in *Cipro*. When evaluating a virtually identical tying claim, the *UEBT* court rejected the argument that supracompetitive prices were an alternative to market power. Instead, it held, market power ordinarily is shown by delineating a relevant market and establishing that the defendant plays enough of a role in that market to impair competition significantly. *UEBT* Order re Antitrust Standards — ECF No. 1134-1 at 13–14 & n.7 (pp. 12–13 & n.7) (citing *Cipro*, 61 Cal. 4th at 157, and distinguishing it). *Cipro* involved a reverse-payment patent settlement between direct competitors. There, proof of a "sufficiently large" reverse payment was a surrogate for market power because, intuitively, a patentee would not pay a competitor to stay out of a market unless it had sufficient power to recoup its payments through supracompetitive prices. *UEBT* was not persuaded that any one piece of evidence was itself "conclusive of market power." *Id.*

---

[7] Pls. Mem. – ECF 1135 at 20–21.

The *UEBT* court's reasoning is persuasive and consistent with this court's prior rulings.[8] The court will instruct the jury with the standard CACI instruction on market power for both claims.

### 4. Whether the Jury Must be Instructed on the Burden-Shifting Framework

The plaintiffs contend after they show the anticompetitive effects of Sutter's conduct, the jury must be instructed that Sutter has the burden to establish beneficial effects that could not have been achieved by any less restrictive alternative conduct. Sutter counters that this is a burden of production that is not appropriately included in jury instructions, and that if it does not meet its burden, then the court will not instruct the jury on procompetitive effects at all. The plaintiffs respond that this approach denies them their Seventh Amendment right to have a jury resolve all fact issues in dispute.[9]

The issue here involves only Sutter's burden of production of evidence, not its burden of proof. Evid. Code §§ 110 (burden of production) and 115 (burden of proof). It has the burden of "coming forward with evidence" and "justifications" to show the conduct was procompetitive. *Cipro*, 61 Cal. 4th at 160; *Am. Express Co.*, 138 S. Ct. at 2284. Generally, the court decides whether a defendant produced evidence to get the instruction to the jury. *People v. Adrian*, 135 Cal. App. 3d 335, 340 n.5 (1982) ("The jury should not be instructed on the burden of production, for that determination is for the court to make. Either the defendant has or has not presented sufficient evidence . . . to get to the jury on the issue.").

Moreover, CACI instruction 3405 addresses the elements that the plaintiffs must prove, including the element "that the anticompetitive effect of the restraint outweighed any beneficial effect on competition." If Sutter does not show any beneficial effect, which seems unlikely, then there will be no instruction 3411 and no burden on the plaintiffs. If Sutter meets its burden of production, then the jury will evaluate the anticompetitive and beneficial effects with the aid of CACI instruction 3411,

---

[8] Order re Mot. for Summ. J. – ECF 673 at 8 ("'[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.'") (quoting *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006)).

[9] Pls. Mem. – ECF No. 1135 at 14–15; Sutter's Mem. – ECF No. 1134 at 20–21.

which includes "[t]he availability of less restrictive means to accomplish the stated purpose." The *UEBT* court held that instructions on the burdens of production can hinder more than help a jury. *UEBT*, Order re Antitrust Jury Instrs. – ECF No. 1135-1 at 18:1–2 (p. 15:1–2) ("Instructing the jury on the burden of production will not facilitate these deliberations but will add unnecessary information that may, if anything, confuse the jury."). Similarly, here, requiring the jurors to consider the plaintiffs' proposed burden-shifting instruction does not aid jury deliberations and instead risks obfuscating the issue.

## CONCLUSION

The court will separately issue proposed jury instructions and a proposed verdict form consistent with the following conclusions: (1) health insurers are not direct purchasers of IHS as a matter of law; (2) procompetitive justifications are relevant only to the rule-of-reason claim, not the tying claim; (3) market power is a necessary element for the tying and rule-of-reason claims; and (4) the court will not give a special burden-shifting instruction and instead will use the standard CACI instructions.

This disposes of ECF Nos. 1134 and 1135.

**IT IS SO ORDERED.**

Dated: September 17, 2021

_____
LAUREL BEELER
United States Magistrate Judge