UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DJENEBA SIDIBE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUTTER HEALTH, et al.,<br><br>    Defendants. | Case No. 12-cv-04854-LB<br><br>**PROPOSED FINAL JURY INSTRUCTIONS** |

The court proposes the attached final jury instructions.

**IT IS SO ORDERED.**

Dated: September 17, 2021

_____
LAUREL BEELER
United States Magistrate Judge

PROPOSED FINAL JURY INSTRUCTIONS – No. 12-cv-04854-LB

### 1.4: DUTY OF JURY

Members of the jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions and the verdict form that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

### 1.6: BURDEN OF PROOF — PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### 1.9: WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

## 1.10: WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## 1.12: DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

### 1.13: RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### 1.14: CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### 1.17: NO TRANSCRIPT AVAILABLE TO JURY

During deliberations you will not have a transcript of the trial testimony.

### 1.18: TAKING NOTES

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

### 2.2: STIPULATIONS OF FACT

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

### 2.4 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Deposition testimony may be presented by showing a videotape of the relevant portion of the deposition or it may be presented by having another person read the testimony from the deposition transcript. When the testimony is read from the transcript, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

### 2.9: IMPEACHMENT EVIDENCE — WITNESS

The evidence that a witness gave an inconsistent statement under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

### 2.11 USE OF INTERROGATORIES

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

### 2.12 USE OF REQUESTS FOR ADMISSION

Evidence will now be presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

### 2.13 EXPERT OPINION

You will hear testimony from some witnesses who will testify to opinions and the reasons for those opinions. This opinion testimony is allowed, because of the education or experience of the witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### 2.14 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

### 2.15 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## 2.16: EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data. Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

### CARTWRIGHT ACT CLAIM — INTRODUCTORY INSTRUCTION

The plaintiffs have brought their claims under California's antitrust statute, called the Cartwright Act. In general, the Cartwright Act prohibits acts that unreasonably restrain trade. The plaintiffs have two Cartwright Act claims: (1) unlawful tying and (2) an unreasonable course of conduct. Each claim has elements that plaintiffs must prove. I will instruct you on the elements of each Cartwright Act claim. But first, I will explain the concepts of "markets" and "market power," which apply to both claims.

### CACI 3412: "MARKET POWER" EXPLAINED

Market power is the ability to increase prices or reduce output without losing market share. The higher a seller's market share, the more likely is has market power.

In deciding whether a seller has market power, you should consider how difficult it is for a potential competitor to successfully enter the market. The more difficult it is to successfully enter a market, the more likely a seller has market power within that market. Market power is less likely to exist if it is not difficult for potential competitors to enter a market successfully.

Each market has two components: a product market and a geographic market.

### CACI 3413: "PRODUCT MARKET" EXPLAINED

To define the product market, you must determine which services are in the market in which Sutter is claimed to have carried out its restraint of trade.

A product market consists of all services that can reasonably be used for the same purpose. Services are not in the same product market if users are not likely to substitute one for the other.

In deciding whether products are reasonable substitutes, you may consider whether a small increase in the price of one product would cause a considerable number of customers of that product to switch to a second product. If so, these two products are likely to be in the same market. If a significant increase in the price of one product does not cause a significant number of consumers to switch to a second product, these products are not likely to be in the same market.

The parties agree that the product market is general acute care inpatient hospital services. But they disagree about whether Kaiser is a participant in that product market.

## CACI 3414: "GEOGRAPHIC MARKET" EXPLAINED

This case involves multiple geographic markets. The plaintiffs claim that the geographic markets are roughly equivalent with hospital service areas (HSAs) as defined by *The Dartmouth Atlas of Healthcare*. The plaintiffs claim that the "tying" geographic markets are roughly equivalent to the HSAs for Antioch, Auburn, Crescent City, Jackson, Lakeport, Tracy, and the combined Berkeley-Oakland HSAs. They claim that the "tied" geographic markets are roughly equivalent to the Modesto, Sacramento, San Francisco, and Santa Rosa HSAs. Sutter denies that these HSAs constitute valid geographic markets.

A geographic market is the area where buyers turn for alternate sources of supply or where sellers normally sell. The geographic market may or may not be the same as the area where the parties in this case currently compete or do business. It may be smaller or larger than that area.

A geographic market may be limited to the area where a service can be sold profitably. You may consider whether purchasing patterns are so different in the two areas that services sold in one area tend not to be sold in another. For example, this might occur if the cost of transporting a service into or out of the claimed geographic market is large compared to the value of the service.

In deciding whether services are in the same geographic market, you may consider whether a small increase in the price of the service in one area would cause a considerable number of customers in that area to buy the service in another area. If so, these two areas are likely to be in the same geographic market. If a significant increase in the price in one area does not cause a significant number of consumers to buy the service in another area, these areas are not likely to be in the same geographic market.

### CACI 3420: TYING CLAIM

The plaintiffs claim that there is an unlawful tying arrangement in which inpatient services at Sutter hospitals in the tying markets (Antioch, Auburn, Crescent City, Jackson, Lakeport, Tracy, and Berkeley-Oakland) are the tying products, and inpatient services at Sutter hospitals in the tied markets (Modesto, Sacramento, San Francisco, and Santa Rosa) are the tied products. The hospitals in the tying markets are Alta Bates Summit Medical Center, Sutter Delta Medical Center, Sutter Auburn Faith Hospital, and Sutter Tracy Community Hospital (collectively, the tying hospitals). The hospitals in tied markets are California Pacific Medical Center (CMPC), Memorial Medical Center, Sutter Medical Center Sacramento, and Sutter Santa Rosa Regional Medical Center (collectively, the tied hospitals).

A "tying arrangement" is the sale of one product, called the "tying product," in which the buyer is required or coerced to also purchase a different, separate product, call the "tied product." For example, if a supermarket sells flour only if its customers also buy sugar, that supermarket would be engaged in tying. Flour would be the tying product and sugar the tied product.

To establish this claim against Sutter, the plaintiffs must prove all of the following:

1. That inpatient hospital services at the tying hospitals and inpatient hospital services at the tied hospitals are separate and distinct. The parties agree that services in tying and tied markets are distinct. Therefore, you must treat this fact as having been proved.

2. That Sutter will sell inpatient hospital services at the tying hospitals only if the buyer also purchases inpatient hospital services at the tied hospitals, or that Sutter sold inpatient hospital services at the tying hospitals and required or otherwise coerced buyers to also purchase inpatient hospital services at the tied hospitals;

3. That Sutter has sufficient economic power in the market for inpatient hospital services at the tying hospitals to coerce at least some buyers of inpatient hospital services at the tying hospitals into purchasing inpatient hospital services at the tied hospitals;

4. That the conduct involves a substantial amount of sales, in terms of the total dollar of inpatient hospital services at the tied hospitals;

5. That the plaintiffs were harmed; and

6. That Sutter's conduct was a substantial factor in causing the plaintiffs' harm.

### CACI 3423: TYING — "ECONOMIC POWER" EXPLAINED

In determining whether Sutter has sufficient economic power in the tying market for inpatient hospital services, you may consider whether Sutter has such a large share of the market for inpatient hospital services in the tying markets that buyers do not have alternate sources of inpatient hospital services or a reasonably available substitute. If Sutter has economic power, it may be established even though it exists with respect to some, but not all, buyers.

You may also consider whether a buyer would be unable to locate a similar or equally desirable product in the marketplace. If buyers do not generally consider other services to be substitutes, this fact may give Sutter economic power over its inpatient hospital services at the tied Hospitals. The fact that Sutter can produce inpatient hospital services at the tying hospitals in an efficient manner or at a high level of quality does not, by itself, mean that competitors do not offer a similar service.

## CACI 3405: UNREASONABLE COURSE-OF-CONDUCT CLAIM — RULE OF REASON — ESSENTIAL FACTUAL ELEMENTS

In addition to their tying claim, the plaintiffs claim that Sutter entered contracts with insurance companies that unreasonably restrain competition for inpatient hospital services in the tied markets. The plaintiffs claim that the contracts contained terms that prevented the insurance companies from creating tiered products that would have allowed the insurance companies to steer patients to lower-cost non-Sutter hospitals within the health-plan network.

To establish this claim, the plaintiffs must prove all of the following:

1. That Sutter and insurance companies agreed to contracts with terms that unreasonably restrained trade because they prevented the insurance companies from steering patients to lower-cost non-Sutter hospitals within the health-plan network;

2. That the effect of Sutter's conduct was to restrain competition;

3. That the anticompetitive effect of the restraint outweighed any beneficial effect on competition;

4. That the plaintiffs were harmed; and

5. That Sutter's conduct was a substantial factor in causing the plaintiffs' harm.

## CACI 3411: RULE OF REASON — ANTICOMPETITIVE VERSUS BENEFICIAL EFFECTS

In deciding whether Sutter's challenged restraint has an anticompetitive or beneficial purpose or effect on competition, you should consider the results the restraint was intended to achieve or actually did achieve. In balancing these purposes or effects, you also may consider, among other factors, the following:

(a) The nature of the restraint;

(b) The probable effect of the restraint on the business involved;

(c) The history of the restraint;

(d) The reasonableness of the stated purpose for the restraint;

(e) The availability of less restrictive means to accomplish the stated purpose;

(f) The portion of the market affected by the restraint; and

(g) The extent of Sutter's market power.

### CACI 430: CAUSATION: SUBSTANTIAL FACTOR

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

### CACI 3440: DAMAGES

If you decide that the plaintiffs have proved their claims against Sutter, you must also decide how much money will reasonably compensate the plaintiffs and the class for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that was caused by Sutter, even if the particular harm could not have been anticipated.

The plaintiffs must prove the amount of their damages. However, the plaintiffs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

You must not include in your award any damages to punish or make an example of Sutter. Such damages would be punitive damages, and they cannot be a part of your verdict. You must award only the damages that fairly compensate the plaintiffs for their loss.

The plaintiffs seek damages in an amount equal to the increased health-insurance premiums that they and the class members paid to the health-insurance companies during the class period as a result of Sutter's conduct.

## 3.1: DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 3.2: CONSIDERATION OF THE EVIDENCE — CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it,; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved — including the parties, the witnesses or the lawyers — until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.

Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

### 3.3: COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including the court — how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

### 3.5: RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.