January 11, 2022

**VIA ELECTRIC CASE FILING**

The Honorable Laurel Beeler
United States Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    *Djeneba Sidibe et al. v. Sutter Health*, Case No. 3:12-cv-04854-LB

Dear Judge Beeler:

The parties respectfully submit this joint letter pursuant to the Court's order. *See* ECF 1381.

**Plaintiffs' Position:**

Plaintiffs seek an Order setting trial to commence on January 27, 2022. Plaintiffs want to try this case with counsel, witnesses who do not seek to testify by video, and jurors in person. However, for the reasons stated below and to ensure that this 9.25 year-old case is tried as promptly as possible, Plaintiffs further seek an Order that the parties be prepared, on January 27, 2022, to try this case on a fully remote basis (with remote jurors), similar to the manner in which remote jury trials have been completed in other cases, or, if circumstances permit, on a live/remote hybrid basis (where jurors would participate at the courthouse or other locations). Pursuant to the Court's request at the January 6, 2022 Case Management Conference, Plaintiffs attach a list of tasks that should be completed and protocols that should adopted by the Court and the parties to ensure that the case can proceed in a partially or fully remote manner, if necessary. *See* Exhibits A and B.

As a far less desired, but alternative proposal, Plaintiffs suggest that this case start no later than February 10, 2022 (and hopefully sooner) either on a live, hybrid, or fully remote basis. Under this proposal, given health issues that Plaintiffs' counsel team is encountering that were first disclosed to the Court in September 2021, Plaintiffs would request that certain members of Plaintiffs' counsel team, should it become necessary at some point in the trial, be given the option to participate in and follow these proceedings remotely.[1]

Sutter responds by objecting to or refusing to consent not only to a remote jury, but also to having witnesses or counsel (facing health issues) appear remotely as part of a jury trial. Sutter even contends that "it is premature to establish protocols for an in person trial that starts on February 10, 2022." Sutter's position is extreme, baseless, and constitutes quintessential

---

[1] Should Plaintiffs' legal team members need to participate in trial remotely, Plaintiffs will request that the jury be instructed that these members were required to do so for medical reasons.

The Honorable Laurel Beeler
January 11, 2022
Page 2

dilatory tactics. It also seeks to take advantage of both the COVID-19 pandemic and health issues confronting Plaintiffs' team.

Numerous courts have consistently rejected the Constitutional and legal arguments raised by Sutter, as we discuss below. Other than those arguments, Sutter's argument against a hybrid or fully remote trial amounts to the following: 1) this case involves a potential $1.2 billion treble damages award, 2) there are about "60 witnesses," and 3) the protocols that Plaintiffs have suggested for a remote trial do not address certain issues. All these arguments fail. **First**, Sutter fails to cite *any* law holding that a case should not proceed remotely due to the amount in controversy. Sutter has it exactly backwards. The amount at stake is why the trial in this almost decade-old case should go forward now: millions of Class Members have been substantially harmed by Sutter, including employers that overpaid thousands, if not tens of thousands, of dollars in premiums due to Sutter. *See, e.g.*, Ex. C; Chipty Supplemental Report dated 3/12/21, Ex. F-18 (identifying premium overcharges for one Small Group member as being over $21,000). In support of this contention and to seek Court sympathy, Sutter falsely contends that it "has been hard hit by the pandemic." But Sutter's 3Q 2021 quarterly financial statement shows that its portfolio of cash/short-term investments has grown, during this time, to about $7.5 billion. *See* Ex. D. The Court should not enable Sutter to hold on to its ill-gotten gains by rejecting remote procedures based on Sutter's false claims about its balance sheet.

**Second,** Sutter claims that a trial in the near term could not be completed due to scheduling and/or technological complexities. This is overblown. Half of the witnesses that Sutter references will be called by Plaintiffs and Plaintiffs, not Sutter, will be responsible for ensuring that they can appear remotely. Moreover, if the parties begin on January 27, Sutter will likely not begin its case until the second week of February – one month from now – giving it more than enough time to arrange for its witnesses to testify. If we begin the case later, but before February 10, Sutter will have even more time to work on scheduling its witnesses.

**Third,** Sutter quibbles that Plaintiffs' protocol did not consider a few potential issues relevant to a remote trial. These minor points can easily be addressed: they do not demonstrate that remote procedures, whether in whole or in part, should be rejected. The issues that Sutter raises can be considered by the Court along with those set forth by Plaintiffs in their Exhibit A.

This trial should proceed as soon as possible and, if necessary, on a remote basis.

*********************************

Plaintiffs acknowledge the public health issues that COVID poses and that the Court is charged with protecting the jurors, court staff, and witnesses. Plaintiffs' trial proposal accounts, to the maximum extent possible, for COVID safety measures and any extension of the Northern District Executive Committee Order suspending in-person jury trials (through January 26, 2022).

Plaintiffs' proposal, however, also allows for trial to proceed on a fully live or hybrid remote basis (where jurors are present in the courtroom, but most or all witnesses and counsel

The Honorable Laurel Beeler
January 11, 2022
Page 3

are not), which is Plaintiffs' preference, if the Court feels in the coming weeks that circumstances would permit such a trial. Plaintiffs prefer to proceed in a manner where jurors participate by sitting in the courthouse, or, alternatively, in a few locations near their homes (which can be supplied by a vendor, if necessary) at which attorney presentations and trial testimony would be transmitted by Zoom or other remote technology. Rapid tests can be used to test anyone associated with the trial at regular intervals for a fully live or hybrid remote trial.

The Court should adopt Plaintiffs' proposal for the following reasons:

1. The COVID pandemic is entering its third year with no end in sight. Unless the courts adapt to the COVID era, those who seek judicial relief, like the Plaintiff Class, will not receive justice on a timely basis and the public's confidence in court processes will be undermined. There is no guarantee that COVID-related circumstances will be any better after another substantial adjournment. Indeed, they could be worse.

2. We have a jury that is ready to serve (subject to them being time qualified to do so), the result of substantial time and costs expended to complete jury selection on December 16, 2021. All this work will likely need to be re-done if this case is delayed again. Sutter's contention that the jury was "not qualified for a remote trial" is a red herring. The jury should not be discarded merely because of hypothetical considerations that Sutter raises about jury members' ability to focus at home..

3. Steps have already been taken to allow for remote witness testimony. Ms. Kabling has informed us that the Court has deployed a platform that allows for certain witnesses to testify remotely (due to their health issues). That platform can be used to allow for all witnesses and counsel to appear remotely, if necessary. Moreover, the parties have employed technology vendors/resources that can meet any shortfall in the Court's IT resources. Indeed, Plaintiffs' trial technology vendor has substantial experience with remote proceedings, including two trials where jurors participated remotely while in their homes. When considering this, Sutter's arguments that Plaintiffs' proposal cannot be fairly implemented in a timely manner ring hollow.

4. Plaintiffs have spent hundreds of hours with witnesses and/or their counsel to ensure that these witnesses will be available to appear and provide testimony. Much of this work will need to be re-done if trial is delayed again.

5. **This case is entering its tenth year.** It has been delayed several times (for substantial periods) over Plaintiffs' objections. To put the duration of this case in perspective, the *UEBT/California* case -- a case based on the same anticompetitive conduct at issue here -

The Honorable Laurel Beeler
January 11, 2022
Page 4

- was set for trial in October 2019, despite being filed approximately 1.5 years after this one.  Moreover, fact discovery closed over 3.25 years ago.[2]

6. The case was most recently delayed, on the eve of the scheduled October 2022 trial, when the Sutter's request for yet another adjournment was granted.  Plaintiffs objected then to any adjournment of more than 30 days due to health issues on Plaintiffs' team that likely would worsen (as they have).  Despite Plaintiffs' objection, the case was adjourned for 90 days to January 6, 2022.  Given these very real health issues, if none of Plaintiffs' proposals are adopted, <u>they will not be able try this case until approximately July 1, 2022</u>.

7. Another multi-month adjournment will cause the Class substantial prejudice.  Members of the Class may never receive compensation for the damages Sutter has caused them; some individual Class Members will pass away and some employer Class Members will go out of business during another adjournment.  Witnesses may become unavailable and their memories are fading.

Plaintiffs' proposals for a partial or fully remote jury trial are consistent with well-established law.  Indeed, **courts have recognized repeatedly that they have the authority to order remote jury trials over a party's objection**, particularly during this COVID era and contrary to Sutter's arguments, pursuant to Fed R. Civ. P. 77(b) and 43(a)**.**  *Goldstine v. FedEx Freight Inc*., 2021 WL 952354, at *10 (W.D. Wash. Mar. 11, 2021); *Kieffaber v. Ethicon, Inc.*, 2021 WL 425822, at *2-5 (D. Kan. Feb. 8, 2021); *Guardant Health, Inc. v. Found. Med., Inc.*, 2020 WL 6120186, at *3 (D. Del. Oct. 16, 2020).

In *Goldstine*, the court ordered a trial with jurors attending remotely from their homes.  2021 WL 952354, at *11.  It rejected defendant's argument that a remote jury violated the Seventh Amendment (*id*. at *12) and conducted that trial per the W.D. Wash. Virtual Trials Bench and Jury Handbook.  In *Guardant Health,* the court ordered a partially remote jury trial over defendant's objection where "[t]rial has previously been scheduled twice and moved, due in part to the pandemic."  The court expressed confidence that "[s]killful trial counsel will be able to conduct effective examinations . . . even without the witnesses (and even without examining counsel . . .) being in the courtroom."  2020 WL 6120186, at *3.  In *Kieffaber,* the court permitted a remote trial, rejecting defendant's arguments that 1) it would violate defendant's right to present its case in "open court"; 2) "logistical difficulties [would] interfere with the efficiency" of trial; and 3) such a trial would lead to a "risk of juror distraction."  2021 WL 425822, at *3-4.  The court ruled that it could employ procedures to ensure that remote jurors

---

[2] Sutter argues that the Plaintiffs have contributed to the delay in this case.  Not so.  Sutter erroneously claims that Plaintiffs delayed the filing of their renewed motion for class certification.  That motion was filed promptly in November 2019 [ECF No. 719]: if anything, briefing on that motion was delayed due toSutter's request for an adjournment based on its counsel's participation in the *UEBT/California* trial.  *See* ECF No. 704.  Sutter also sought substantial adjournments in March/April 2020 due to COVID [ECF No. 770: granting Sutter request] and in September 2021.  [ECF No. 1204]

The Honorable Laurel Beeler
January 11, 2022
Page 5

were following the proceedings and concluded that "a case of this age, complexity, length and importance is not unsuitable for remote trial proceedings." *Id*. at *4-5.

In *In re Alle*, 2021 WL 3032712 (C.D. Cal. July 19, 2021), the court affirmed a bankruptcy court judgment following a remote trial over defendants' objection. The court rejected arguments similar to those made by the *Kieffaber* defendant and held that good cause existed for a remote trial because the adversary proceeding was about 6 1/2 years old. *Id*. at *5.[3] And in *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 470 F. Supp. 3d 735 (E.D. Mich. 2020), the court ordered a remote trial where the case had a "protracted history." *Id*. at 742 (rejecting due process objection).[4]

Judges have also emphasized how well virtual trials have operated. *See* Judge Thomas S. Zilly & Judge Marsha J. Pechman, *What the Public Gains by Remote Trials in Federal Court*, The Seattle Times (June 8, 2021) ("Our experience . . . has demonstrated that virtual proceedings have benefits for the future. We have had greater juror participation . . ."); Judge Karin Crump, *Perfecting the Remote Jury Trial*, Texas Appellate Law Podcast (May 6, 2021) (stating that remote trial "works for many people."). Other commentators agree. *See First Remote Jury Trial Shows Potential for Widespread Use*, Nat'l Center for State Courts (May 20, 2020).[5]

In sum, more delay now may lead to even further delay down the road. The Class has waited nearly a decade for their day in Court. They should have it now. Plaintiffs are confident that any challenges presented by COVID in trying this case can be met.

---

[3] COVID era courts have rejected arguments that trials should be delayed until they can be conducted live. *See, e.g.*, *Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cty*., 524 F. Supp. 3d 1113, 1117–18 (W.D. Wash. 2021) (denying continuance when case was 3 plus years old and neither "defendants nor the Court can predict when . . . a civil jury trial may be conducted in the courthouse"); *Vitamins Online, Inc. v. HeartWise, Inc*., 2020 WL 3452872, at *9 (D. Utah June 24, 2020).

[4] Other cases ordering fully or partially remote trials over a party's objection include *Centripetal Networks, Inc., v. Cisco Systems, Inc*., 2020 WL 3411385, at *1 (E.D. Va. Apr. 23, 2020) (rejecting that trial should be postponed because of "the high dollar amount in controversy"); *Staple v. Northwestern Mutual*, Case No. 8:17-cv-3066-MSS-TGW. (M.D. Fla. Jan. 29, 2021) (fully remote jury trial); *Julian Liu v. State Farm Mut. Auto. Ins. Co*., 507 F. Supp. 3d 1262, 1264 (W.D. Wash. 2020); *Argonaut Ins. Co. v. Manetta Enterprises, Inc*., 2020 WL 3104033 (E.D.N.Y. June 11, 2020); and *In re RFC & ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 971-72 (D. Minn. 2020) (denying defendants' motion to postpone trial interrupted by COVID outbreak and allowing final days of trial to continue remotely).

[5] Sutter cites two inapposite minute orders. In *Rivera v Robinson*, 2021 U.S. Dist. LEXIS 6367, at *2 (E.D. La. Jan. 13, 2021), the court denied a motion to conduct the remote trial months before trial had been scheduled. In *Wachuku v. Jet Blue Airways Corp*., 2021 U.S. Dist. LEXIS 116720 (C.D. Cal. June 21, 2021), the court ordered an in-person trial because normal courthouse operations had resumed. *Id*. at *1.

The Honorable Laurel Beeler
January 11, 2022
Page 6

**Sutter's Position:**

Plaintiffs and Sutter agree on one point: this case should be tried as promptly as possible. Sutter was prepared to try the case on January 6 and is prepared to start when the circumstances allow. But Sutter objects to plaintiffs' proposed remote or hybrid jury trial.

The Federal Rules of Civil Procedure do not authorize such a trial, which would deprive Sutter of its constitutional right to a fair trial as it would lack the fundamental elements that have long been regarded as critical to our jury system. This is an antitrust class action, involving complex legal issues, a large number of witnesses (likely 60 live witnesses), and eight experts. The potential impact is enormous: plaintiffs seek $400 million ($1.2 billion trebled) against a hospital system that, like other hospitals, has been hit hard by the pandemic. It is unrealistic to expect a remote jury sitting in their homes with all the real-world distractions would give the necessary time and attention to the evidence and issues over a four- to five-week trial. The Court should not use this as the pilot case for determining whether remote jury trials can be done in a way that is fair and protects the parties' rights.

Sutter recognizes that Class Counsel are pressing for a remote jury trial because certain members of their team will not be available between March 1 and July 1 due to medical issues. Sutter is sympathetic to those issues and has accommodated Class Counsel by agreeing to start the trial after July 1 if the parties cannot conduct an in-person jury trial in February. No prejudice would result from waiting until July or August. Class Counsel contend that waiting a few months would be prejudicial because some class members might never receive compensation as some individual class members could pass away and some employer class members could go out of business during that adjournment. This purely speculative contention ignores that any verdict in plaintiffs' favor will be appealed, and thus no money would be paid to class members for years. In any event, a remote trial is no solution to Class Counsel's concerns because it would substantially prejudice Sutter far more than a mere several month delay would prejudice class members. If Class Counsel still insist that this trial cannot be delayed until July or August, then they should evaluate alternatives for starting the in-person trial before July 1.

For these reasons, and as set forth more fully below, the Court should set a date for an in-person jury trial. Sutter does not object to setting it for February 10 (as plaintiffs propose) with the expectation that circumstances will get better by then. If February 10 does not work, Sutter proposes that the Court set the start date when Class Counsel is available. Alternatively, Sutter is willing to proceed in a bench trial before Judge Beeler at the earliest possible date.

**I.    Remote jury trials are not authorized by the Federal Rules of Civil Procedure.**

Plaintiffs cite no appellate decision endorsing a remote jury trial—let alone one ordered over objection. Some district judges have relied on Rules 43(a) and 77(b) as purportedly authorizing remote trials (albeit in dissimilar circumstances from those here). But far from authorizing remote jury trials, those rules confirm that such trials are not permissible.

Rule 77(b) provides that "[e]very trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom." The language regarding a "regular courtroom" permits a court to convene a trial in a physical location—such as a specially constructed courtroom or a meeting hall—other than the court's usual courtroom. It does not permit a court to forego holding a trial at some physical location. And there is no language in Rule 77 or elsewhere allowing the judge, factfinder, or attorneys to be remote through "contemporaneous transmission" or otherwise. Requiring that the judge, factfinder, and attorneys conduct a trial in a physical location protects against potential misconduct by the factfinder or attorneys as they are under the watchful eye of the judge and the public. Certainly though, the Rule does not authorize forcing a remote trial over a party's objections. Rule 77(b) permits a hearing to be held outside of the district only if "all the affected parties consent." If consent is required for a *hearing* outside of the *district*, then consent should be required for a *jury trial* conducted outside of *physical reality*.

Rule 43 is even less relevant. That rule, which is entitled "Taking Testimony," addresses whether testimony can be presented remotely, not whether lawyers can try or a jury can decide a case from remote locations. The rule authorizes a court only to "permit testimony" by "transmission from another location." It says nothing about whether the jury can receive evidence or deliberate outside of the courtroom. And it says nothing to permit the judge or counsel to not be in the courtroom during the trial. The Advisory Committee Note likewise refers only to remote testimony from individual witnesses, without any hint that the full trial can be held without all major participants being in the courtroom. And even as to individual witnesses testifying remotely, the Advisory Committee emphasizes that the factfinder (here, the jury) will be present: "[t]he importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial **and the presence of the factfinder** may exert a powerful force for truth-telling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Rule 43, 1996 Adv. Comm. Note (emphasis added). Accordingly, the Advisory Committee states that a court may refuse to permit remote testimony even when both parties stipulate to it. Rule 43's limited, guarded exception to the general requirement that testimony be presented live in "open court" in "the presence of the factfinder" provides no basis for excluding the jury, counsel, and the judge from the courtroom and dispersing them to their homes. And it certainly does not permit doing so over a party's objection.

This interpretation is also compelled by bedrock constitutional considerations. *See Gomez v. United States*, 490 U.S. 858, 864 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."). Sutter is constitutionally guaranteed "the right of trial by jury." U.S. Const. amend. VII. Simply put, there is an irreducible core of what it means for something to be a jury trial—and such trials have historically consisted of the trial participants present together in a courtroom, where the jurors hear, observe and evaluate the witnesses and counsel directly and engage in-person in the deliberation process critical to reaching a just result. The constitutional ramifications of abandoning these longstanding tenets of a jury trial weigh heavily against the atextual interpretation of Rules 43 and 77 advanced by

The Honorable Laurel Beeler
January 11, 2022
Page 8

plaintiffs and courts that have permitted remote jury trials.  See *Guidance for Conducting Civil Jury Trials During the COVID-19 Pandemic*, American Board of Trial Advocates, p. 8. ("[I]n-person jury trials are most consistent with the constitutional rights guaranteed by the Seventh Amendment.").

**II.     Zoom is an inadequate substitute for an in-person jury trial.**

Even if courts had the authority to require a remote trial, the Court should not do so here, in this complex, four- to five-week jury trial, where plaintiffs seek $400 million ($1.2 billion when trebled) in damages.  Examples of remote events gone wrong abound:  from jurors vaping or doing yoga in the middle of trial[6] to the state senator who Zoomed while driving.[7]  These examples highlight the reality that Zoom is not a substitute for in-person proceedings.

**A.     Zoom is fundamentally inferior for a complex jury trial and insufficient to protect Sutter's Seventh Amendment right to a "trial by jury."**

A Zoom trial would not ensure a fair trial for a number of reasons.  As an initial matter, a jury watching through Zoom would likely not give the time and attention necessary to decide this case.  "Zoom fatigue" is a well-documented phenomenon.  Video calls are more taxing than in-person events because they "force us to focus more intently on conversations in order to absorb information" and "require us to stare directly at a screen for minutes at a time without any visual or mental break, which is tiring."[8]  *See also Fairstein v. Netflix, Inc.*, 2020 WL 5701767, at *7-8 (M.D. Fla. Sept. 24, 2020) (rejecting plaintiff's argument that the possibility of remote testimony weighed against transferring case to a more convenient location for witnesses because "live testimony from witnesses seated in the same room as the judge and jury may be necessary"); American Board of Trial Advocates, *supra*, pp. 5 & 8 ("the members are unanimous in their preference for live (in-person) trials whenever and wherever possible" because the courtroom is the "physical location where justice is arguably best served").[9]

---

[6] https://www.houstonchronicle.com/news/houston-texas/houston/article/Potential-Harris-County-jurors-vaping-doing-yoga-16252820.php

[7] https://www.nytimes.com/2021/05/06/us/andrew-brenner-zoom-car-meeting.html

[8] "How to Combat Zoom Fatigue," Harvard Business Review (April 29, 2020); *see also* "'Zoom Fatigue' Is Real. Here's Why You're Feeling It, And What You Can Do About It," News@Northwestern, (May 11, 2020) (video calls are particularly tiresome because "many of the nonverbal cues that we typically rely upon during in-person conversations—eye contact, subtle shifts that indicate someone is about to speak—are out the window"),.

[9] Cognitive theory and empirical research have also demonstrated that "people in videoconferences tend to be more influenced by heuristic cues—such as how likeable they perceive the speaker to be—than by the quality of the arguments presented by the speaker" "due to the higher cognitive demands that videoconferencing places on participants."  Carlos Ferran &

The Honorable Laurel Beeler
January 11, 2022
Page 9

Some courts have dismissed these concerns in other contexts. *E.g.*, *Goldstine v. FedEx Freight Inc.*, 2021 WL 952354, at *12 (W.D. Wash. Mar. 11, 2021). But these concerns cannot be swept aside in a case like this—a complex antitrust case, involving a highly specialized industry, with a $400 million damages claim, which would be automatically trebled to $1.2 billion, against a company that provides critically needed healthcare in communities throughout Northern California.[10] Over 60 live witnesses may be called to testify. The evidence will address complicated issues beyond the ordinary experience of the jurors, including the validity of esoteric econometric models that are the basis for plaintiffs' massive damages claim. Presenting in person allows attorneys and witnesses to focus the jury's attention on the pivotal evidence. Accomplishing that goal outside of a courtroom setting in a long, complicated trial is impossible.[11]

In addition to struggling to stay focused or comprehend the evidence, jurors would struggle to evaluate witnesses whose credibility could turn on the shaking in their leg or the tapping of fingers on a desk—none of which a juror could see over Zoom. And as noted, a remote trial eliminates the "very ceremony of trial" and thus the "powerful force for truth-telling" that the "presence of the factfinder may exert" on a witness." And lawyers too will struggle to connect with jurors.

---

Stephanie Watts, Videoconferencing in the Field: A Heuristic Processing Model, 54 Mgmt. Sci. 1565, 1565 (2008). This will benefit plaintiffs, whose cases "often are based on an emotional appeal rather than an analytical massing of evidence," Jerry M. Custis, Litigation Management Handbook § 8:43 (Nov. 2021), while defendants need to methodically walk jurors through complex nuances. Collectively, these deficiencies fail to safeguard Sutter's constitutionally guaranteed "trial by jury."

[10] Plaintiffs mischaracterize the bases for Sutter's objection to a remote trial. Sutter opposes a remote trial because it is unauthorized, unnecessary, and would be fundamentally unfair, particularly given the complexity of this case and the lack of adequate time to even attempt to formulate and implement the necessary protocols on the schedule plaintiffs proposes. Beyond that, plaintiffs' claim that Sutter has not been impacted by the pandemic is unfounded. They cherry pick data from a balance sheet which of course does not record losses. Sutter was and remains on the frontlines responding to the pandemic, leveraging its system of 24 hospitals and thousands of doctors and nurses. Over the last two years, despite receiving nearly $1 billion federal relief funds, Sutter experienced significant losses due to declining volumes and escalating costs to respond to the pandemic. Ex. D, at pp. 3, 8-9.

[11] *See* "[Zoom Jury Trials: The Idea Vastly Exceeds the Technology](#)," Law.com (Sep. 29, 2020) (detailing "the practical and technological challenges associated with Zoom jury trials, and why it's not only a bad idea, but a very bad idea," especially in "any trial of substance" such as where "the stakes are substantial damages"); *[CAL-ABOTA's Position on Forced Remote Civil Jury Trials](#)* (March 23, 2021) ("[s]trongly discourag[ing] forced remote jury trials" and detailing the reasons why they are inferior and logistically problematic).

The Honorable Laurel Beeler
January 11, 2022
Page 10

Even beyond the inherent inferiority of videoconferencing, jurors watching a trial from home will be subject to innumerable distractions not present in a courtroom, including interruptions from children, others in the home, pets or visitors, and the nearly irresistible temptation when sitting at a computer screen to check email, social media, or news or entertainment sites. The Court will have greatly diminished power to adequately monitor distracted jurors. Some courts have even assigned two court officers to monitor jurors virtually, but given that much of this can occur without the juror ever glancing away from the computer screen, it cannot be effectively policed no matter how vigilant the court staff.

With an all-remote trial, there are also far more opportunities for potential juror misconduct that the Court would not be able to adequately police, such as the recording of testimony or other people in the room listening to the trial and conversing with juror about it at the end of the day. The same is true for policing potential witness or attorney misconduct. Requiring witnesses and attorneys to appear in person in a courtroom under the eye of the judge and the public eliminates or at least minimizes misconduct. There is also a heightened risk of confidential, sealed material being disclosed publicly in a remote trial—such as if a juror, witness, or someone else with access to the Zoom takes a screenshot of the material being displayed.

  **B.**  **Plaintiffs' cases do not support a remote jury trial in the circumstances present here.**

Plaintiffs rely on decisions from courts outside of California that have permitted remote trials. All of those cases are based on an incorrect reading of Rules 43 and 77, and give short shrift to the constitutional right to a jury trial. But even aside from their legal error, the decisions of those courts are not persuasive because each of them involved trials that were much shorter and far less complex than the complex antitrust case being tried by plaintiffs here. *Goldstine v. FedEx Freight Inc.*, 2021 WL 952354 (W.D. Wash. Mar. 11, 2021) (ADA discrimination, 8 day trial); *Bao Zuyen Le v. Dr. Martin Luther King, Jr. Cty.*, 524 F. Supp. 3d 1113 (W.D. Wash. 2021) (§ 1983 claim, 10-15 day trial); *Julian Liu v. State Farm Mut. Auto. Ins. Co.*, 507 F. Supp. 3d 1262 (W.D. Wash. 2020) (contract/consumer claim, 7 day trial); *Staple v. Northwestern Mutual*, Case No. 8:17-cv-3066-MSS-TGW, ECF No. 329, at 4:25-6:22 (M.D. Fla.) (defendant was deemed to have demanded a remote proceeding by refusing to appear for trial and the plaintiff affirmatively consented); *Guardant Health, Inc. v. Foundation Medical, Inc.,* No. 17-cv-1616 (D. Del), ECF Nos. 503, 504, 513 (parties were given more than a month and a half notice and time to prepare for a remote trial expected to last a mere eight days (and that trial ultimately never occurred)); *Kieffaber v. Ethicon, Inc*., No. CV 20-1177-KHV, 2021 WL 425822, at *1 (D. Kan. Feb. 8, 2021) (relying on the fact that the trial was "not particularly long (two weeks or less) or complicated (most of defendants' evidence will consist of video depositions from experts, and *defense counsel have already tried 20 such cases on remand from the MDL*)"

The Honorable Laurel Beeler
January 11, 2022
Page 11

(emphasis added)).[12]  In circumstances much more similar to those presented here, other courts have properly declined to conduct trial remotely.  *See Rivera v Robinson*, 2021 U.S. Dist. LEXIS 6367, at*2 (E.D. La. Jan. 13, 2021) (denying motion for a remote trial that would have involved as many as 73 witness because "a trial of this size would be too unwieldy to try virtually"); *Wachuku v. Jet Blue Airways Corp.*, 2021 U.S. Dist. LEXIS 116720 (C.D. Cal. June 21, 2021) ("Although Courts in other districts have allowed trials to proceed virtually, this Court is not required to adopt a virtual model for this one nor has Plaintiff provided any compelling circumstances that would justify its use in this matter.").

   **C.**  **The existing jury cannot be used for a remote jury trial.**

  Even assuming the jury is time-qualified for a February trial, they were ***not*** qualified for a remote trial.  The lengthy juror questionnaire developed over many months contained no questions regarding a remote trial or remote jury participation.  Nor did the parties ask any questions in voir dire regarding the prospective jurors' suitability to participate in a remote trial.  Sutter would have asked questions specifically addressed to that issue had it known that it was selecting a jury for a remote trial because a remote trial is a very different exercise from an in-person trial, and a juror may be suitable for one but not the other.  Among other things, Sutter would have asked questions to explore the jurors' experience working or learning remotely by computer, their ability to maintain focus for multiple hours each day on a computer screen, their access to equipment necessary to participate remotely, their ability to use such equipment, the distractions they may face in whatever location they would be in while watching the trial, and other similar issues going directly to their suitability to be an effective juror in a remote trial.[13]  In addition to the need for further qualification, it is not clear that an adequate number of those jurors will still able to serve in any event.[14]

---

  [12]  More than half of plaintiffs' cases were bench trials.  Trial Transcript, *In re Alle*, 14-ap-1146 (C.D. Cal. Bankr. Filed Mar. 15, 2021), ECF Nos. 611, 612; *Vitamins Online, Inc. v. HeartWise, Inc.*, 2020 WL 3452872 (D. Utah June 24, 2020); *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 470 F. Supp. 3d 735 (E.D. Mich. 2020); *Centripetal Networks, Inc., v. Cisco Systems, Inc.*, 2020 WL 3411385 (E.D. Va. Apr. 23, 2020); *Argonaut Ins. Co. v. Manetta Enterprises, Inc.*, 2020 WL 3104033 (E.D. N.Y. June 11, 2020); *In re RFC & ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967 (D. Minn. 2020).

  [13] These are not abstract considerations.  Out of 88 prospective jurors answering questionnaires, approximately 40 were excused for cause either on the papers or following voir dire.  Eight others were peremptorily excused.  If the unasked fundamental questions regarding a remote trial had been asked, there is no doubt the jury selected December 16, 2021 would have been differently constituted.

  [14] The Court has indicated that fewer than 10 jurors selected December 16, 2021 were available to serve as of January 6, 2021.  On December 16, 2021, the Court filed (ECF 1351) a Clerk's Notice memorializing the parties' agreement and the Court's order that 10 jurors are to

The Honorable Laurel Beeler
January 11, 2022
Page 12

### D. Plaintiffs' proposed hybrid procedure is equally unauthorized and does not solve these problems.

Implicitly conceding the dangers of inattention, distraction, and misconduct involved in a remote trial, plaintiffs propose a hybrid procedure in which jurors, the court, and court staff would be in person with some lawyers present, but only for openings, closings, and when examining "certain" unidentified experts. All remaining experts, lay witnesses, and examining lawyers would appear remotely. Nothing in the Federal Rules authorizes that kind of bizarre trial either, which would fail to solve the problems of a remote trial, while creating its own problems—and all the while doing little (if anything) to mitigate the COVID risks of an in-person trial.

Under plaintiffs' proposal, the majority of the trial would be remote. Based on the parties' trial estimates and assuming plaintiffs are referring to each side's principal economist experts as testifying live (Dr. Chipty, Dr. Gowrisankaran, and Mr. Orszag), plaintiffs' proposal would mean that the jury would hear 14.25 hours of live testimony, leaving the remaining 60 hours of trial testimony to be done remotely. All of the concerns discussed above regarding jury inattention as well as potential witness and attorney misconduct would be fully at issue as to that 60 hours of testimony. Just as it is vitally important that the jurors be in person with the lawyers and witnesses for opening, closings, and expert testimony, it is critical that they be in the same courtroom as lay witnesses too. Lay testimony is the foundational proof on which the claims and defenses in the case turn and on which the experts must rely. Subject to the limited exceptions authorized by Rule 43(a) for individual witnesses on a case-by-case basis in "compelling circumstances," a fair trial requires that they present their testimony live along with the experts.

Presenting only expert testimony live also gives undue emphasis to that testimony. Sutter is entitled to have the jury hear directly from the lay witnesses whose conduct is at issue and who can best explain what Sutter did and why. Sutter is likewise entitled to cross-examine in person lay witnesses, including insurer witnesses, to attack credibility, elicit admissions, and to have the presence of the jury exert pressure to tell the truth. It would be unfair to diminish the importance of this testimony relative to other testimony by relegating it to remote presentation.

Plaintiffs' hybrid proposal also provides little to no public-health benefit relative to an in-person trial with appropriate safeguards. It simply excludes from the courtroom a handful of additional participants each day—*i.e.*, the lay witnesses scheduled to testify that day (who would not be present in the courtroom at the same time as the each other) and perhaps an additional lawyer if the lead lawyers present anyway will not be doing the examination. With the vaccination, masking, and social distancing protocols that the Court has always planned on in

---

be seated: "The court ordered previously that it will seat 10 jurors." While 6 jurors are required at a minimum to reach a verdict, Sutter has not agreed to start the trial with fewer than 10 jurors and has relied on the Court's order that 10 would be seated to start the trial.

The Honorable Laurel Beeler
January 11, 2022
Page 13

place, little incremental COVID-related risk will be created by having these few additional people present.

### E. There is no exigency that justifies using this as the test case for N.D. Cal.

No exigency requires the Court to wade into the legal and practical thickets a remote trial would involve. The trial is over money damages in amounts that are unlikely to be material to any class members' well-being, and any additional delay to the trial schedule will be immaterial in light of the remaining lifespan of the case including appeal. And attempting to hold a remote trial will not meaningfully accelerate the time in which a trial could be completed in any event. At best, accounting for the time needed to select a new jury and to attempt to resolve the numerous logistical and other issues a remote trial would present, the earliest a remote trial could commence would be late February. By that time, however, the current Omicron-related surge in cases will very likely have receded to the point that the situation will be similar to what it was in November or December when the Court and all parties were prepared to move forward with an in-person trial and when numerous other cases around the country were successfully resolved by in-person trials.[15] Perhaps most importantly, rushing into a remote jury trial now will not help serve the parties', the Court's, and the public's ultimate goal—resolution of the case in a final judgment in a manner that is fair to both parties.

Plaintiffs note the age of this case, but that is due to a variety of factors, including factors attributable to plaintiffs. Several of plaintiffs' complaints were dismissed, and the pleadings were not even set until October 2017. Discovery did not start until 2016. Plaintiffs' briefing on the renewed motion for class certification (giving rise to the operative class certification order) was not finished until March 2020—not even two years ago. And the two years of COVID are out of Sutter's control. Sutter did not oppose plaintiffs' request for a new trial date within 30 days of the previously scheduled October date (a November trial date was not possible for the Court). Sutter has diligently moved this case to trial, such as when an experts needed to be replaced and Sutter and its counsel found a substitute and conducted the relevant discovery on a timetable that preserved the January 6 trial date.

Also, a remote trial does not eliminate the COVID-related risks that led to the District's postponement of all trials in the first place. As many as 80% of new COVID cases are being contracted in the community in general as opposed to at work. Unless jurors were to completely isolate themselves for the duration of the trial (which can neither be demanded nor expected), the post-Omicron risk of a juror contracting COVID will not be meaningfully different whether they

---

[15] "South Africa has passed its Omicron outbreak peak, top researcher says," CNN.com (Dec. 23, 2021); "Rapid drop in South Africa's COVID-19 cases means Omicron may have peaked, experts say," NY Post (Dec. 22, 2021); "Fauci predicts omicron Covid wave will peak in U.S. by end of January," CNBC (Dec. 29, 2021); "The pandemic could end in 2022 — here's what 'normal' life might look like soon, according to medical experts," CNBC (Dec. 15, 2021).

The Honorable Laurel Beeler
January 11, 2022
Page 14

participate remotely or participate in an in-person trial with the safeguards the Court will have in place.

    **F.**    **Plaintiffs' proposed protocols are unworkable and inadequate, and cannot be fairly implemented on the schedule plaintiffs propose.**

Plaintiffs sent Sutter four pages of protocols on January 10, 2022, which they state are based on one case in the Western District of Washington and that district's remote trial manual. But on preliminary review, it does not appear that plaintiffs actually included many of the protocols established by the Western District in its handbook for remote jury trials (e.g., requiring that witnesses not access other devices during their testimony); nor did they include other protocols found necessary by other judges in the Western District (*e.g.*, in *Liu*, the judge assigned two courtroom deputies to monitor jurors and shortened the trial day to ensure that they were attentive and to mitigate against misconduct, *see* 507 F. Supp. 3d at 1266).

Plaintiffs' proposed protocols are also unrealistic and fail to address a number of key issues, including that (i) plaintiffs would place an undue burden on Court staff by requiring the Court clerk to manage the complicated, multi-channel Zoom feed that would be required—a task normally performed by a private vendors, and requiring significant set-up and teams of experienced trial technicians; (ii) plaintiffs' proposal of a single ZoomGov.com account and Box.com renders public access (even by audio) effectively impossible given the sealed evidence in this case; (iii) there is no process in place for the inevitable interruption in internet service during trial, particularly as to any juror's connectivity; and (iv) there is no mechanism by which parties can display potentially sealable impeachment evidence (including exhibits or testimony) or potentially sealable evidence from previously undesignated pages of trial exhibits to third party witnesses or the Court (let alone a process for that third party's counsel to seek to seal them). And critically, there is no instruction that jurors must not access other devices during trial nor have unnecessary programs open on their computers. In addition, as discussed above, the Court would need to ensure that jurors are time-qualified and that jurors and witnesses also have appropriate space to attend trial remotely, and have the right equipment and internet access. The jurors and witnesses would also need to be trained on using the technology.

For the reasons discussed above, even with these or other protocols, a remote trial would be inadequate and unfair. But if a remote trial is held over Sutter's objection, much more is required than what plaintiffs propose to even begin to try to address inattention, distraction, and misconduct. Sutter proposes that, if the Court decides to order a remote or hybrid trial, the parties meet and confer and propose joint protocols.

Plaintiffs' proposal also cannot be fairly implemented on the schedule they propose. Under their schedule, the parties would have less than two weeks to agree on and implement a remote protocol. This accelerated schedule is grossly deficient when compared with the cases plaintiffs cite, where the parties had over a month's (or much more) notice that they would be expected to do a remote trial in far shorter and simpler cases. Indeed, before proceeding with

The Honorable Laurel Beeler
January 11, 2022
Page 15

remote trials, the Western District of Washington (a) formed a committee to study the use of Zoom and collect data on it; (b) ensured that jurors who lacked access to technology, training, or the internet could still participate, (c) conducted an entire *mock trial* first to test the process before deploying it in a real case; and then (d) issued a detailed set of procedures before finally holding the same trial again. *Goldstine*, 2021 WL 952354, at *11. Plaintiffs' effort to use this as the test case for remote trials in the Northern District of California is patently unfair to Sutter and a far cry from the easy-fact-pattern case that the Western District of Washington started their program with after careful consideration and planning.

A remote trial on plaintiffs' schedule would also unfairly impair Sutter's ability to make adjustments to its trial preparation and planning to account for the differences between an in-person and remote trial. The parties have been preparing for many months for an in-person trial. A remote trial involves dramatically different trial dynamics from an in-person trial, with implications for how the witnesses should be ordered, how much time should be allocated to each witness, which exhibits can be effectively presented remotely with which witnesses, and what demonstratives and other trial graphics will be effective.

\* \* \* \* \*

Whatever the validity of a remote trial in situations where the parties agree to it, when exigent circumstances demand it, or when the claims at issue are fairly amenable to it, none of those circumstances is present here. The Court should schedule an in-person trial at the earliest available date, and all parties and their counsel should make every effort to be available at that time. That is the most certain route to reaching a prompt, final and defensible resolution to this case.

## III.     Protocols for in person trial.

Sutter believes that it is premature to establish protocols for an in person trial that starts February 10, 2022. Many public health experts forecast the surge in Northern California to occur over the next ten days. If those forecasts are correct and Northern California follows South Africa, the protocols in place for the January 6, 2022 trial or the October 2021 trial may be sufficient. Sutter recognizes, however, that the infection numbers may not decline as expected, which may require additional protocols depending on the circumstances, including potentially testing requirements for counsel and witnesses, use of KN95 or N95 masks, and strict limits on number of people in the actual courtroom. Sutter proposes that the parties and the Court address that issue after the Northern District executive committee meets on January 25 and closer to the actual start date of the trial.

//

//

//

The Honorable Laurel Beeler
January 11, 2022
Page 16

Respectfully submitted,

*/s/ Matthew L. Cantor*
Matthew L. Cantor
Constantine Cannon LLP
*Counsel for Plaintiffs and the Certified Class*


*/s/ David C. Kiernan*
David C. Kiernan
Jones Day
*Counsel for Sutter Health*