January 24, 2022

**BY ELECTRONIC CASE FILING**

The Honorable Laurel Beeler
United States Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:      ***Djeneba Sidibe et al. v. Sutter Health*, Case No. 3:12-cv-04854-LB**

Dear Judge Beeler:

The parties write to raise two issues regarding the jury instructions.

On 1.5 Claims and Defenses, the parties have agreed to the changes shown in the redline attached as Exhibit A. The changes to paragraph 5 are necessary to align the instruction with the Court's prior ruling on the availability of a procompetitive justifications defense to Plaintiffs' per se tying claim (ECF 1193) and to more accurately describe the anticompetitive effects analysis for the unreasonable restraint claim. Although Sutter agrees to these corrections, including the corrections to align the text of the instruction with the Court's prior ruling, Sutter continues to object to the Court's underlying ruling on the procompetitive justifications defense and maintains that the law requires the jury to consider the procompetitive justifications for an alleged tie. *See* ECF 1134 § II.

The parties disagree as to other aspects of this instruction and as to whether the Court should make changes to the Final Proposed Jury Instructions and Verdict Form that Sutter is requesting in light of the Court's market power ruling. Each party's position on these issues is outlined below.

**Plaintiffs' Position**

**Claims and Defenses Instruction 1.5**

Plaintiffs' Rule of Reason claim should be accurately described in Instruction 1.5 as alleging "anticompetitive effects of Sutter's contract terms and contracting practices" and not limited to "contract terms" as Sutter proposes. The sweeping scope of the Cartwright Act and this Court's rulings require rejection of Sutter's position. *See, e.g.*, *Sidibe v. Sutter Health*, 333 F.R.D. 463, 492 (N.D. Cal. 2019) ("plaintiffs have introduced evidence that Sutter engaged in

The Honorable Laurel Beeler
January 24, 2022
Page 2

common anticompetitive systemwide-*contracting practices* with respect to all five health plans at issue in this case and that its practices allow it to charge all five health plans supra-competitive rates in the same way.") (emphasis added); *Id*. at 490 n. 117 ("Whether Sutter in fact increased its prices to supra-competitive levels, and whether it was because of its systemwide-*contracting practices* that it was able to do so, are issues that can be addressed at the merits phase of the litigation.") (emphasis added). *See also Sidibe v. Sutter Health*, 2020 WL 4368221, at *4 (N.D. Cal. July 30, 2020) (discussing Dr. Chipty's analysis of health plans launching "steered products that failed because of Sutter's restrictive contracting practices."). The Court's proposed Instruction 1.5 refers to both Sutter's "conduct and contract terms." ECF 1170 at p. 2.

Plaintiffs' claims are based on Sutter's contracting practices as well as contract provisions and Instruction 1.5 should so state. "[A] litigant is entitled to have the jury charged concerning his theory of the case if there is any direct or circumstantial evidence to support it." *Apple Inc. v. Samsung Elecs. Co.*, 2017 WL 4776443, at *18 (N.D. Cal. Oct. 22, 2017) (quoting *Don Burton, Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702, 706 (9th Cir. 1978)). The Court should reject Sutter's attempt to inaccurately limit Plaintiffs' claims.

Sutter argues that "the Cartwright Act reaches only contracts in restraint of trade, not a company's practices." The Cartwright Act, however, is not limited to the terms of written contracts but also includes anticompetitive conduct, such as Sutter's systemwide contracting practices, which Sutter forced the health plans to agree to. Such forced agreements and contracting practices are clearly within the scope of the Cartwright Act. Moreover, Sutter is well aware of the contracting practices at issue in this litigation and its claim that the term is "vague and confusing" rings hollow.

Instruction 1.5 should also include the following sentence "You should not make any assumptions about any events prior to January 1, 2006." That language was proposed by Sutter to Plaintiffs for inclusion in this instruction in the Joint Case Management Statement dated December 3, 2021. ECF 1316, p. 3. On December 27, 2021, Sutter's counsel emailed Plaintiffs stating that this language was "inadvertently left in" and that Sutter would no longer agree to its own language. The Court's December 9, 2021, minute order characterized the language previously proposed by Plaintiffs as "too confusing" and stated that the "Parties may propose something jointly." ECF 1325. The simple statement Sutter proposed - and which Plaintiffs now agree to - is not confusing and is necessary to prevent the jury from making unwarranted assumptions regarding Sutter's contracting practices and other events prior to 2006.

A copy of Instruction 1.5, accepting the changes to which the parties agree, and redlining the language proposed by Plaintiffs to which Sutter does not agree is attached as Exhibit B.

**CACI 3412 and the Verdict Form**

Sutter also requests that the Court revise Jury Instruction CACI 3412 and the verdict form prior to the commencement of trial. Because the final jury instructions and verdict form will not be used until the end of the case, any new requests by either party to change them should be made in briefing for the Charging Conference. Plaintiffs will seek important revisions to the final jury instructions at the Charging Conference, such as revising the Tying Claim instruction

The Honorable Laurel Beeler
January 24, 2022
Page 3

(CACI 3420) to state that the jury should not consider any pro-competitive justifications in accordance with the Court's ruling that "procompetitive justifications are relevant only to the rule-of-reason claim, not the tying claim;" *Sidibe v. Sutter Health*, 2021 WL 4812445, at *2 (N.D. Cal. Sept. 17, 2021).

The parties have already requested mutually agreeable changes to both the final instructions and verdict form (ECF 1273) and the Court responded by issuing a revised Proposed Final Instructions (ECF 1276) and a revised Proposed Verdict Form on October 11, 2021 (ECF 1275). Sutter should have raised its proposal to alter CACI 3412 then, not on the eve of trial.

Moreover, Sutter proposal to alter CACI 3412 to state that "If you conclude that Sutter does not have market power in the relevant markets that I will describe, then you must find for Sutter on all counts in this case" is unsound. The Judicial Council's CACI 3412 does not include such language and for good reason. It would be inappropriate to isolate and elevate the market power element over all the other elements of the Tying and Rule of Reason claims by altering CACI 3412 to state that the jury "must find for Sutter on all counts" if the market power element is not met
.
In fact, the Court has already considered and rejected Sutter's proposed instruction that "If you conclude that Sutter does not have market power in the relevant markets that I will describe, then you must find for Sutter on all counts in this case" and instead ordered that "[t]he court will instruct the jury with the standard CACI instruction on market power for both claims." *Sidibe v. Sutter Health*, 2021 WL 4812445, at *3-4 and n. 6 (N.D. Cal. Sept. 17, 2021). Sutter simply ignores this language in the Court's Order. The Court's proposed final instructions include the standard CACI instruction on market power (CACI 3412), which applies to both Plaintiffs' claims. Plaintiffs continue to object to the Court's ruling that it is necessary to make a finding of market power on a Rule of Reason claim. Nevertheless, the Court's proposed CACI 3412 instruction is consistent with its September 17, 2021 Order, while Sutter's proposal is inconsistent with that Order.

As a so-called "Alternative Cure," Sutter suggests altering CACI 3423 to state that economic power for the Tying Claim exists only if "Sutter had the ability to increase prices or reduce output in that market without losing market share." That language is inconsistent with CACI 3420, which has been adopted by the Court and correctly states that the "economic power" element of a Tying Claim can be proven by showing that Sutter has "power in the market for inpatient hospital services at the tying hospitals to coerce at least some buyers . . . to purchase inpatient hospital services at the Tied Hospitals." ECF No. 1276, p. 10. Accordingly, Sutter's "Alternative Cure" should also be rejected because 1) no cure is needed; 2) Sutter's proposed economic power language misstates the law; and 3) any issues regarding the Final Instructions should await the Charging Conference.

Sutter's request to add an additional multi-part question to the proposed Verdict Form is also premature and inappropriate. The language Sutter now seeks to add was previously proposed by Sutter (ECF 1130-1 at 177), rejected by the Court in its original proposed Verdict Form, and was not raised by Sutter when the proposed Verdict Form was revised in October

The Honorable Laurel Beeler
January 24, 2022
Page 4

2021. Unlike Instruction 1.5, which will be given when the trial begins, there is simply no need to entertain or resolve Sutter's new arguments regarding the Verdict Form or the Final Instructions before the trial starts.

**Sutter's Position**

**1.5 Claims and Defenses**

Plaintiffs want to add unnecessary and confusing language about the relevant time period. After the parties submitted CMC statements proposing language regarding the relevant time period and the focus of evidence beginning in 2006, the Court made its position clear: the "plaintiffs' pre-2006 instruction is too confusing, and the Court is not going to offer it." 12/9/21 PTC No. 8 Tr. 57:5–6. Since that hearing, Sutter has reevaluated the language proposed by each party in their CMC statements and agrees with the Court that much of the language both parties proposed was both unnecessary and confusing. Sutter believes that the 1.5 Claims and Defenses instruction should just state one sentence on this point: "The evidence in this case will focus on events beginning in 2006, unless I determine otherwise." Anything more than this will only spark confusion and speculation by the jurors. Plaintiffs assert that more is needed to prevent the jury from making "unwarranted assumptions" but plaintiffs offer no basis for thinking the jury will assume anything one way or the other about time periods not at issue.

Plaintiffs also want to add the phrase "contracting practices" to the fifth paragraph of this instruction. But as Sutter explained in its argument on the jury instructions, the Cartwright Act reaches only contracts in restraint of trade, not a company's "practices." *See* ECF 1134, p. 80, Sutter's Objection to Plaintiffs' Instruction No. S-7. And the term "contracting practices" will be vague and confusing to jurors in any event. Plaintiffs do not argue that the Cartwright Act reaches unilateral practices, much less cite any authority so holding. Instead, they summarily claim that the Cartwright Act also governs "conduct." They also cite references to "contracting practices" in this Court's prior orders, but none of those orders addressed whether the Cartwright Act permits recovery for allegedly unlawful "practices" as opposed to contracts and contract terms—and the Court certainly did not purport to depart from California on this point. Nor are plaintiffs "entitled" to have the jury instructed on a theory that is contrary to the law.

**Market Power Instructions and Verdict Form Question**

Sutter requests that the Court make a correction to its Proposed Final Jury Instructions and Verdict Form to align them with the Court's legal ruling regarding the need for plaintiffs to prove market power.

The Honorable Laurel Beeler
January 24, 2022
Page 5

On the parties' separate memoranda regarding jury instructions (ECF 1134, 1135), the Court ruled that market power is a threshold element that applies to both plaintiffs' tying and unreasonable course of conduct claims. *See* ECF 1193, p. 7 (ruling that "market power is an element of both claims"). The Court also recognized this fact elsewhere in the text of the Proposed Final Jury Instructions. *See* ECF 1276, Cartwright Act Claim – Introduction Instruction ("[F]irst, I will explain the concepts of 'markets' and 'market power,' which apply to both claims.").

The Proposed Final Jury Instructions and Verdict Form, however, do not currently require the jury to make this legally necessary finding of market power as to both of plaintiffs' claims. ECF 1275, 1276. Sutter accordingly submits proposed corrections attached hereto as Exhibit B to align the instructions and verdict with the Court's ruling.

Sutter is submitting this request now, and respectfully asks that the Court address the issue before opening statements, so that Sutter can conduct its opening statement and witness examinations accordingly. Plaintiffs' refusal to agree to this correction is needless obstructionism. The Court has already clearly ruled on the issue. *See* ECF 1193, p. 7 (ruling that "market power is an element of both claims"). Plaintiffs' continued disagreement with the Court's ruling is not a basis for refusing to agree to this change (and indeed, Sutter has agreed to align the text of 1.5 Claims and Defenses with the Court's ruling on procompetitive justifications, despite Sutter's continued objection to that ruling).

Plaintiffs assert that the parties will have the opportunity to request further revisions (which both parties will likely do) at the charging conference. But that fact provides no basis for not making a necessary correction now, particularly on a critical point like market power, which Sutter intends to address in its opening statement. Both parties sought early resolution of this issue (and the other jury instruction issues they separately briefed) precisely so that they would have the Court's guidance before trial commenced. Plaintiffs simultaneously fault Sutter for not raising this proposed correction even earlier. Putting aside the contradiction between this argument and plaintiffs' principal position that Sutter should wait until the charging conference, this argument fails because the prior corrections were non-exhaustive and the parties made clear that they would raise additional issues with the instructions at a later date. Indeed, plaintiffs' own requested changes to 1.5 Claims and Defenses confirms this.

Plaintiffs' argument on the merits highlights the need for Sutter's proposed change. Plaintiffs argue that the Court's proposed final instructions "include the standard CACI instruction on market power (CACI 3412), *which applies to both Plaintiffs' claims*." *Infra* p. 3 (emphasis added). But nothing in the current instruction indicates that it applies to all of plaintiffs' claims or, more importantly, that a finding of market power is a necessary element for both claims. *See* ECF 1276, CACI 3412. The Court has ruled that the market power element applies to both of plaintiffs' claims. ECF No. 1193, p. 7 ("Market power is an element of both claims . . . ."). Contrary to

The Honorable Laurel Beeler
January 24, 2022
Page 6

plaintiffs' assertion, Sutter's requested change does not "elevate" the market-power element over the other elements. Rather, it merely tells the jury that market power must be found for both claims, as the Court ruled. This will avoid jury confusion over the issue. In short, because the Court's proposed instructions and verdict form do not contain this critical information, the Court should make Sutter's proposed changes.

Very truly yours,

/s/ David C. Kiernan
David C. Kiernan
*Counsel for Defendant Sutter Health*


/s/ Matthew Cantor
Matthew Cantor
*Counsel for Plaintiffs*

# Exhibit A

## 1.5: CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties at trial.

The plaintiffs in this case are four people who paid premiums for health insurance and two companies who paid premiums for their employees between January 1, 2011 and the present. They represent a class of other individuals and employers who also paid premiums for health insurance during this time period. The defendant is Sutter Health, a healthcare system that owns and operates 24 hospitals and other medical-service providers in Northern California.

~~Four~~Five health-insurance companies provided the health insurance: Anthem Blue Cross, Blue Shield of California, Aetna, United Healthcare and Health Net. These health-insurance companies cover certain of the medical expenses incurred for medical services provided to their members, including those provided at Sutter hospitals. They also contract with Sutter for services that Sutter provides to their members.

The plaintiffs claim that Sutter violated California antitrust law by using its economic power in seven markets to force the health-insurance companies to buy Sutter's medical services in four other markets. The plaintiffs claim that as a result, the health-insurance plans paid higher prices for inpatient hospital service, and the plaintiffs paid higher premiums. The plaintiffs also claim that Sutter's contracts with the health-insurance plans contained terms that unreasonably restrained competition, resulting in higher prices for inpatient services and higher premiums for the plaintiffs.

Sutter denies these claims. ~~Sutter raises the affirmative defenses that it had legitimate business justifications for its conduct and~~ and maintains it has not violated California's antitrust laws or caused higher hospital prices. Sutter denies that it has required that the hospitals specified by Plaintiffs must be included in the insurance company networks that Plaintiffs identify. As to Plaintiffs' unreasonable restraint of competition claim, Sutter asserts that its contract terms had effects that benefited competition and ~~consumers, and that these benefits outweigh any impact on competition. The plaintiffs deny Sutter's affirmative defenses.~~ patients. Plaintiffs maintain that that the anticompetitive effects of Sutter's contract terms outweigh any beneficial effects.

The evidence in this case will focus on events beginning in 2006, unless I determine otherwise.

# Exhibit B

## 1.5: CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties at trial.

The plaintiffs in this case are four people who paid premiums for health insurance and two companies who paid premiums for their employees between January 1, 2011 and the present. They represent a class of other individuals and employers who also paid premiums for health insurance during this time period. The defendant is Sutter Health, a healthcare system that owns and operates 24 hospitals and other medical-service providers in Northern California.

Five health-insurance companies provided the health insurance: Anthem Blue Cross, Blue Shield of California, Aetna, United Healthcare and Health Net. These health-insurance companies cover certain of the medical expenses incurred for medical services provided to their members, including those provided at Sutter hospitals. They also contract with Sutter for services that Sutter provides to their members.

The plaintiffs claim that Sutter violated California antitrust law by using its economic power in seven markets to force the health-insurance companies to buy Sutter's medical services in four other markets. The plaintiffs claim that as a result, the health-insurance plans paid higher prices for inpatient hospital service, and the plaintiffs paid higher premiums. The plaintiffs also claim that Sutter's contracts with the health-insurance plans contained terms that unreasonably restrained competition, resulting in higher prices for inpatient services and higher premiums for the plaintiffs.

Sutter denies these claims and maintains it has not violated California's antitrust laws or caused higher hospital prices.  Sutter denies that it has required that the hospitals specified by Plaintiffs must be included in the insurance company networks that Plaintiffs identify. As to Plaintiffs' unreasonable restraint of competition claim, Sutter asserts that its contract terms had effects that benefited competition and patients. Plaintiffs maintain that that the anticompetitive effects of Sutter's contract terms and contracting practices outweigh any beneficial effects.

This evidence in this case will focus on events beginning in 2006, unless I determine otherwise.  You should not make any assumptions about any events prior to January 1, 2006.

# Exhibit C

**CACI 3412: "Market Power" Explained – Court's Proposed Instruction (*bold italics*** indicate Sutter's proposed modification)

> Market power is the ability to increase prices or reduce output without losing market share.  The higher a seller's market share, the more likely is has market power.  ***If you conclude that Sutter does not have market power in the relevant markets that I will describe, then you must find for Sutter on all counts in this case.***
>
> In deciding whether a seller has market power, you should consider how difficult it is for a potential competitor to successfully enter the market.  The more difficult it is to successfully enter a market, the more likely a seller has market power within that market.  Market power is less likely to exist if it is not difficult for potential competitors to enter a market successfully.
>
> Each market has two components: a product market and a geographic market.

**Sutter's Requested Correction:** The Court's proposed instruction fails to instruct the jury that it must find for Sutter on all claims if it concludes that Sutter lacks market power in the relevant markets.

**Grounds:**  The Court has ruled that market power is a threshold element that applies to plaintiffs' tying and unreasonable course of conduct claims. *See* ECF 1193, p. 7 (ruling that "market power is an element of both claims"); ECF 1194, Cartwright Act Claim – Introduction Instruction ("[F]irst, I will explain the concepts of 'markets' and 'market power,' which apply to both claims.").  But the Court's proposed instructions do not tell the jury that it must find market power to rule for plaintiffs on their tying or unreasonable course of conduct claims.  Thus, as the instructions currently stand, the jury could find for plaintiffs despite not finding that Sutter has market power in the relevant markets, as required by this Court's rulings and the case law.

**Proposed Cure:**  Add the language shown above in ***bold italics***.

**Alternative Cure:** As an alternative (which Sutter proposes only if the Court does not accept the changes proposed above), the Court should revise the tying and unreasonable-course-of-conduct instructions to make clear that the jury must find market power.

This could be done by revising CACI 3423 to make clear to the jury that, to find the "economic power" required to find an unlawful invalid tying arrangement, it must find that Sutter possessed market power in the tying market.  This could be done by revising the first paragraph of CACI 3423 to read:

> To find that Sutter had sufficient economic power in one or more of the tying markets for inpatient hospital services, you must find that Sutter had the ability to increase prices or reduce output in that market without losing market share.  In determining that question, you may consider whether Sutter has such a large share of the market for inpatient hospital services in the tying markets that buyers do not have alternate sources of inpatient hospital services or a reasonably available substitute.  If Sutter has economic

power, it may be established even though it exists with respect to some, but not all, buyers.

Similarly, CACI 3405 could be revised to add as a new first element the following:

1. That Sutter had market power in one or more of the tying markets.

**Verdict Form – Omission of Market Power Question**

**Requested Correction:** The proposed verdict form fails to ask the jury to make a finding regarding Sutter's market power.

**Grounds:** The Court has ruled that market power is a threshold element that applies to plaintiffs' tying and unreasonable course of conduct claims. *See* ECF 1193, p. 7 (recognizing that "[m]arket power is an element of both claims); ECF 1194, Cartwright Act Claim – Introduction Instruction ("[F]irst, I will explain the concepts of 'markets' and 'market power,' which apply to both claims."). But the proposed verdict form does not ask the jury to make a finding on market power. Thus, under the proposed verdict form, the jury could find for plaintiffs without finding that Sutter has market power in the relevant markets as required by this Court's rulings and the case law.

**Proposed Cure:** Include the following question at the beginning of the verdict form:

> 1.  For each of the following geographic areas, did plaintiffs prove *both* (a) that the area is a properly defined geographic market for general acute care inpatient hospital services *and* (b) that the geographic area is a market in which Sutter had market power in the market for general acute care inpatient hospital services? (For each area, circle "Yes" only if plaintiffs proved *both* (a) *and* (b).)
>
> | | | |
> |---|---|---|
> | Antioch | Yes | No |
> | Auburn | Yes | No |
> | Crescent City | Yes | No |
> | Jackson | Yes | No |
> | Lakeport | Yes | No |
> | Tracy | Yes | No |
> | Berkeley/Oakland | Yes | No |
>
> If your answer to all parts of question 1 is no, stop here, answer no further questions, and have the presiding juror sign and date this form. If your answer to any part of question 1 is yes, proceed to Part II.

*See* ECF 1130-1, Attachment F (Sutter's Proposed Verdict Form), Part I: Market Power,

Question 1.

As an alternative (which Sutter proposes only if the Court does not include the question proposed above as a threshold question before going into the element of either claim), the Court could insert the question above as the first question on the unreasonable-course-of-conduct claim section. For the tying claim, instructing the jury as alternatively proposed above that, to find economic power, they must find that Sutter had the ability to increase prices or reduce output in the market at issue without losing market share would be an alternative to including the question above at the beginning of the tying claim section.