## CONSTANTINE CANNON LLP

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022

**VIA ECF**

The Honorable Laurel Beeler
United States Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      **Re:**    *Djeneba Sidibe et al. v. Sutter Health*, **Case No. 3:12-cv-04854-LB**

Dear Judge Beeler:

      Plaintiffs write to ask the Court to take certain measures to ensure that rulings and Orders issued by the Court that relied on work product of your former law clerk, Ms. Meghan Strong, were not compromised by Ms. Strong's conflict-of-interest. Information that has come to light in the last few weeks, which we have sought in response to a January 4, 2022 conflict notice filed by Mr. Stephen Goff of King & Spalding -- counsel of record for defendant Sutter Health in this matter, *UEBT/California* and other substantially-related matters -- demonstrates that Ms. Strong had a conflict that should have been disclosed to the Court prior to her clerkship.

      That conflict emanates from, among other things, the facts that K&S, immediately prior to Ms. Strong's clerkship and currently, employed her as an associate; that Ms. Strong knew that Sutter was a client of K&S during her clerkship; and that K&S attorneys had told Ms. Strong, prior to her clerkship, that she would be welcomed back for further employment with K&S following her clerkship if she wished to pursue that route. It also stems from the fact that K&S had appeared in this very case and that Mr. Goff has had a long-standing relationship representing Sutter on the very issues at this case's core.

      Given these facts, which we synthesize for the benefit of the Court below, certain relief should be provided to ensure that Court Orders or rulings that may have relied on Ms. Strong's work product were not tainted by any bias that Ms. Strong may have had, even if only implicit or subconscious. There is no doubt that, under ethical cannons and local rules, disclosures should have been made to the Court (and Plaintiffs), prior to Ms. Strong's clerkship, regarding the association between (1) K&S and Ms. Strong and (2) K&S and Sutter, which were not. Had these disclosures been made, Plaintiffs would have objected to Ms. Strong working on these matters and the Court could have taken measures to screen Ms. Strong off from this matter. As these disclosures were not made and Ms. Strong worked substantially on this matter despite her

CONSTANTINE CANNON LLP

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022
Honorable Laurel Beeler
Page 2

conflict, we respectfully request that the Court now take steps to assure the Plaintiff Class that its Orders and rulings did not rely on compromised work product.

We also wish to emphasize that we believe that, throughout this matter, the Court has taken its commitment to judicial independence very seriously. And, even where we have disagreed with Your Honor's rulings, we have never questioned your sincerity when rendering them. Nonetheless, we are troubled that Ms. Strong worked on this case, let alone "personally and substantially." The failure to disclose, particularly by K&S, Ms. Strong's association with Sutter counsel was, in the very least, reckless; may have caused substantial prejudice to Plaintiffs; and creates an appearance of impropriety.

Specifically, we respectfully ask the Court to:

1. order that a sworn statement be provided by Ms. Strong that identifies (a) how she became aware that Sutter was a client of the firm, (b) when she did so, and (c) describes what she knew about that representation, during her clerkship, in as much detail as possible;

2. advise us about the matters relative to this case that Ms. Strong worked on while a clerk for Your Honor; and

3. take measures, if any, that the Court deems necessary to ensure that work product from Ms. Strong that the Court may have relied upon did not compromise any rulings or Orders of the Court.

The following summarizes the salient facts as we currently understand them. Most of these are stated in correspondence that was authored by Pat Brumbaugh, Deputy General Counsel from K&S, on January 12, 24, and 26 (ECF Nos 1409-1, 1409, 1410-1) or were sworn to in a Declaration filed by Mr. Goff in *UEBT/California* in March 2017 (ECF No. 1407-2 at pp. 8-14).

### I. Ms. Strong's Employment at K&S, Her Clerkship with the Court, and Her Return to K&S Following Her Clerkship

We understand that Ms. Strong was an associate at Boies Schiller & Flexner LLP (BSF) prior to joining K&S and that Your Honor was aware of that fact. In May 2020, some of the BSF partners with whom Ms. Strong worked moved laterally to K&S and, shortly thereafter, in June 2020, Ms. Strong applied for a clerkship with Your Honor. We understand that she

# CONSTANTINE CANNON LLP

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022
Honorable Laurel Beeler
Page 3

interviewed with the Court in July 2020, and was offered and accepted her clerkship in August 2020.  In August 2020, Ms. Strong joined some former BSF colleagues in K&S's San Francisco office where Mr. Goff has a residence, according to the K&S website and despite Mr. Brumbaugh's statements otherwise.

More important, K&S acknowledges that Ms. Strong "*was aware generally that Sutter was a client of [K&S] prior to her clerkship.*"  ECF No. 1409-1 at p. 6 (1/12/22 Brumbaugh letter) (emphasis added).  Ms. Strong did not work on any Sutter-related matter while at K&S, including this one or *UEBT/California,* and K&S claims that Ms. Strong "knew nothing about the nature or subject matter of [the] work" that K&S completed for Sutter, including that K&S appeared in the *Sidibe* or *UEBT/California* actions.  ECF No. 1410-1 at p. 2, para 1 (1/26/22 letter from Mr. Brumbaugh).  K&S does not explain, however, how Ms. Strong became aware that Sutter was a client of K&S, who told her about that representation, why she became aware of that fact, or offer any other details that she may have known about that relationship, including which partners serviced Sutter.[1]

Neither Mr. Goff nor K&S fully disclosed their role in *Sidibe* or *UEBT/California* or its decades-long representation of Sutter to the Court and it did not advise Ms. Strong to do so.  *See* ECF No. 1410-1 at p. 3, para 6 ("[K&S] did not itself communicate with Judge Beeler regarding Ms. Strong's clerkship or direct Ms. Strong to discuss with Judge Beeler her employment with [K&S]"); ECF No. 1409-1 p. 7, Response to Question 6 ("Ms. Strong does not recall discussions [with K&S personnel] regarding . . . whether there are matters that she should avoid working on [or] whether there were other matters of which she should inform Judge Beeler"); and Response to Question 4 ("Ms. Strong does not recall discussing [K&S's] representation of Sutter with Judge Beeler").

Ms. Strong clerked for Your Honor from April, 2021 through August, 2021.  (K&S has refused to tell us the specific dates that Ms. Strong began and ended her clerkship.)  During that time, she "participated personally and substantially as a law clerk [in *Sidibe v. Sutter Health*]."  ECF No. 1409-1 at p. 5 (1/12/22 Brumbaugh letter).  While Ms. Strong was participating "personally and substantially" in *Sidibe*, the parties briefed and argued critical pretrial motions that were decided by the Court.  *See, e.g*., ECF 1165, 1166 and 1167.

---

[1] K&S claims that "neither Mr. Goff nor anyone else at the firm who had been involved in *Sidibe* or *UEBT* knew Ms. Strong . . . ."  ECF No. 1410-1 at p. 2, para 4.  But K&S does not confirm whether Ms. Strong knew of Mr. Goff or his practice, even if she did not know him personally.

NYDOCS 460474v.1

CONSTANTINE CANNON LLP

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022
Honorable Laurel Beeler
Page 4

K&S admits that "lawyers with whom [Ms. Strong] worked hoped she would return to the firm and told her so," identifying that there was a significant potential for her to return to K&S following her clerkship.  ECF No. 1410-1 at p. 2, para 5 (1/26/22 Brumbaugh letter).  Furthermore, K&S acknowledges that, after she left her clerkship with Your Honor, she contacted -- at some undisclosed point -- unnamed K&S attorneys "with whom she was acquainted and informed them that she had left her clerkship" and they inquired about her interest in returning to K&S.  ECF No. 1409-1 at p. 7, para 7.

Further, K&S acknowledged that it "was aware when [Ms. Strong] joined or shortly thereafter that Ms. Strong intended to clerk for Judge Beeler."  *Id.* at pp. 6-7, para 5 (1/12/22 letter from Mr. Brumbaugh).  Accordingly, K&S knew that Ms. Strong would only work for it for nine months before her clerkship: this suggests that K&S would likely have continued to employ Ms. Strong following her clerkship if she sought to go that route.  It is unlikely that K&S would have put resources and training into an associate, like Ms. Strong, that it believed would only be with K&S for a nine-month stint.

Despite the above, K&S states that Ms. Strong did not "intend" to return to K&S during her clerkship.  K&S does not identify whether Ms. Strong had any other solid post-clerkship employment prospects during her clerkship.

Ms. Strong received a formal offer to return to the K&S on December 15, 2021 and accepted it on December 16, 2021, although she apparently applied for other positions before doing so.  ECF No. 1409-1 at p. 7, para 7 (1/12/22 Brumbaugh letter).  Ms. Strong is listed on the K&S website as an attorney who has experience in "antitrust" and "healthcare." https://www.kslaw.com/people/meghan-strong.

II.     **King & Spalding's Substantial Relationship with Sutter and Its Representation of Sutter in This Matter and the *UEBT/California* Matter**

Mr. Goff and K&S have a deep, long-term relationship with Sutter Health.  Mr. Goff's K&S website biography states that he has "represent[ed]" Sutter Health for "over 25 years . . . in its development and contracting."  This is confirmed by a sworn declaration that he filed in *UEBT/California* in 2017.  There, Mr. Goff testified that he has "represented Sutter Health and its affiliated entities ("Sutter") as outside counsel for approximately 25 years."  ECF No. 1407-2,

CONSTANTINE CANNON LLP

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022
Honorable Laurel Beeler
Page 5

at p. 7, ¶ 4.[2]  He further stated there that he has advised Sutter regarding provisions in its managed care contracts with health plans.  *Id.*  Melissa Brendt, Sutter's Chief Contracting Officer and its Rule 30(b)(6) witness regarding managed care contracting, further testified that Mr. Goff advised Sutter regarding three of the critical provisions at issue: its "equal treatment"/anti-steering, anti-tiering, and non-participating provider rate provisions.[3]  And Mr. Goff attested that "[s]ince 1998, I have represented Sutter Health in many managed care contracting disputes," and "I estimate that I have represented Sutter Health in more than 50 disputes that involved managed care contracting."  *Id.* ¶ 2.

In addition, Mr. Goff was an active counsel of record for Sutter in *UEBT/California*, a case effectively consolidated for fact discovery with this one.  He testified that he was "involved in the defense of [*UEBT/California*] since its inception." *Id.* at p. 10, ¶ 14.  Further, he testified that he "worked on [*UEBT/California*] *extensively*, assisting with gathering documents and information for discovery responses, providing information to Sutter's counsel of record for use in its defense, and many other tasks."  *Id.* ¶ 15 (emphasis added)).  This contravenes Mr. Brumbaugh's statement that Mr. Goff's representation of Sutter on these matters has been "limited."  ECF No. 1409-1 at p. 5.  For example, Mr. Goff, representing Sutter, deposed Aetna's Chandra Welsh in *UEBT/California*; that deposition is part of the discovery materials in this case.  Ms. Welsh is Aetna's Rule 30(b)(6) witness in this case and the main Aetna witness that Plaintiffs intend to call and who Sutter will cross-examine.

In the instant case, Mr. Goff and his partner, John Whittaker, appeared as counsel of record in May 2017.  ECF No. 145.  Accordingly, Mr. Goff and Mr. Whittaker are listed on the

---

[2] Mr. Goff is not K&S's only San Francisco attorney who works for Sutter.  *See, e.g.*, https://www.kslaw.com/people/stephen-goff?locale=en  https://www.kslaw.com/people/marcia-augsburger?locale=en; https://www.kslaw.com/people/quyen-ta?locale=en.                    .

[3] Relevant portions of Ms. Brendt's transcript can be provided upon request.

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022
Honorable Laurel Beeler
Page 6

PACER docket sheet as counsel for Sutter.[4]  Mr. Goff and/or Mr. Whittaker represented Sutter (or Sutter employees) in at least eight depositions in this case.[5]

In sum, Mr. Goff has a nearly three decade relationship with Sutter.  He helped draft the very contract provisions that Plaintiffs are challenging.  He also helped to enforce them, including through numerous arbitrations with health plans.  Moreover, K&S (including Mr. Goff and other K&S partners) have actively represented Sutter in both this case and *UEBT/California* since 2017.

\* \* \*

The above facts demonstrate that Ms. Strong had a conflict and that disclosures should have been made to the Court and Plaintiffs regarding the scope of the representation of Sutter by K&S in this and other matters, and Ms. Strong's knowledge of the K&S/Sutter relationship. This would have enabled the Court to take measures to ensure that Ms. Strong's work was not infected by a conflict and offered Plaintiffs an opportunity to object to Ms. Strong working on this case.

"[L]aw clerks are required to preserve the court's impartiality and the appearance of its impartiality." *First Interstate Bank of Arizona v. Murphy, Weir & Butler, P.C.*, 1998 WL 827700, at \*3 (N.D. Cal. Nov. 25, 1998), *aff'd sub nom. First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983 (9th Cir. 2000) (citing Code of Conduct for Law Clerks, Canons 2 and 5(c)(1)).  Canon 320(F)(1) of the Code of Conduct for Judicial Employees, indeed, mandates that "A judicial employee should avoid conflicts of interest in the performance of official duties. A conflict of interest arises when a judicial employee knows that he or she . . . might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner."  The fact that Ms. Strong knew of the K&S/Sutter relationship, was a former associate with personal ties to K&S attorneys, and knew that there was a significant potential for her to return to K&S during her clerkship shows that she

---

[4] Another current K&S partner—David Wallach (who was at Jones Day until he moved to K&S on November 5, 2021)—is on Sutter's trial witness list to testify about 29 separate Fed. R. Evid. 1006 exhibits.

[5] K&S represented the following persons at their depositions herein: Gwyn Bicker, Susann Bonslett, Cynthia del Moral, Tina Greene, Cynthia Kettmann, April Martin and Michael Stanish.

CONSTANTINE CANNON LLP

WASHINGTON | NEW YORK | SAN FRANCISCO | LONDON

January 27, 2022
Honorable Laurel Beeler
Page 7

"might" have been "personally or financially affected by a matter." *See Hamid v. Price Waterhouse*, 51 F.3d 1411, 1416-17 (9th Cir. 1995) ("a reasonable person might be concerned whether a law clerk's advice to a judge would be biased in favor of the position taken by a firm, if the law clerk had worked there before his clerkship, was on a leave of absence, and planned to work there after his clerkship").

Where a law clerk performs substantive work of a matter from which she should have been isolated, there is an appearance of impropriety even where "there is no suggestion of actual impropriety or lack of impartiality by the Judge or the law clerk." *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 985 (9th Cir. 2000).

Moreover, K&S had an obligation to inform this Court of its role representing Sutter when it knew that its associate would be working for Your Honor to ensure the "fair" administration of justice. *See* Northern District Local Rule 11-4(a) ("Every member of the bar of this Court and any attorney permitted to practice in this Court . . . must . . . (4) Practice with the honesty, care, and decorum required for the fair and efficient administration of justice."). K&S failed to meet this obligation, leaving the Court in the dark about its role in defending Sutter and failing to give it critical information regarding whether Ms. Strong should have been screened off from this matter. This prejudiced Plaintiffs.

For the foregoing reasons, Plaintiffs respectfully request that they be provided with the relief requested above.

Respectfully submitted,

_____

Matthew L. Cantor
Constantine Cannon LLP
*Counsel for Plaintiffs and the Certified Class*

cc:  Counsel of record

NYDOCS 460474v.1