Jeffrey A. LeVee (State Bar No. 125863)
jlevee@jonesday.com
Elizabeth A. Burnside (State Bar No. 258184)
eburnside@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone:    213.489.3939
Facsimile:    213.243.2539

David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
Caroline N. Mitchell (State Bar No. 143124)
cnmitchell@jonesday.com
Brian G. Selden (State Bar No. 261828)
bgselden@jonesday.com
Catherine Zeng (State Bar No. 251231)
czeng@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    415.626.3939
Facsimile:    415.875.5700

Robert H. Bunzel (State Bar No. 99395)
rbunzel@bzbm.com
Patrick M. Ryan (State Bar No. 203215)
pryan@bzbm.com
Oliver Q. Dunlap (State Bar No. 225566)
odunlap@bzbm.com
BARTKO, ZANKEL, BUNZEL &
MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone:    415.956.1900
Facsimile:    415.956.1152

Attorneys for Defendants
SUTTER HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DJENEBA SIDIBE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SUTTER HEALTH, <br><br> Defendant. | Case No. 3:12-CV-04854-LB <br><br> **SUTTER'S AMENDED AND REVISED GOOD FAITH CASE-IN-CHIEF ORDERED TRIAL WITNESS LIST WITH TIME ESTIMATES** <br><br> Date:        February 10, 2022 <br> Time:        8:30 a.m. <br> Courtroom:   B, 15th Floor <br> Judge:       The Hon. Laurel Beeler |

1        Pursuant to the Court's October 27, 2016 Case-Management and Pretrial Order (Jury)

2    ("CMO") [Dkt. No. 113], the Court's August 30, 2021 Final Pretrial Order ("Final Pretrial

3    Order") [ECF No. 1167], the Court's October 28, 2021 Order on Plaintiffs' Expedited Motion and

4    Offer of Proof to Admit Certain Pre-2006 Evidence ("Order on Pre-2006 Offer of Proof") [ECF

5    No. 1282], and the agreement of the parties, Sutter Health ("Sutter") provides the following

6    amended good faith list of witnesses that Sutter may call live or by deposition in Sutter's case in

7    chief in the order that Sutter believes in good faith it may present such witnesses at trial.  This list

8    also includes good faith estimates of testimonial time for each witness.  In addition to the

9    witnesses listed below, Sutter may call live or by deposition any witness listed by Plaintiffs in

10    their July 22, September 8, December 7, December 15, or December 29 (all 2021), or February 4,

11    2022 witness lists, or any witness otherwise called at trial by Plaintiffs.  Pursuant to an agreement

12    of the parties, Sutter reserves the right, on cross-examination of any live witness called by

13    Plaintiffs during their case-in-chief, to exceed the scope of testimony elicited by Plaintiffs.

14        Sutter reserves the right to add to, delete or modify the information set forth below, and

15    will negotiate with Plaintiffs to determine a mutual schedule on which to make any necessary

16    changes in light of any further rulings by the Court on any pre-trial motions or guidance with

17    respect to any evidentiary disputes.  Pursuant to the Court's CMO, the following list includes

18    only witnesses that may be called in Sutter's case in chief and not rebuttal or impeachment

19    witnesses.  Sutter reserves the right to call additional witnesses to rebut or impeach Plaintiffs'

20    evidence presented at trial, including, e.g., witnesses on the parties' prior witness lists.

21        These disclosures are made without waiver of and without prejudice to Sutter's right to

22    (a) decide not to call one or more of the disclosed witnesses, (b) decide to call a particular witness

23    on fewer than all the subjects disclosed below for that witness, (c) decide to modify this list,

24    including the time estimates provided, for good faith reasons before or during the trial, including

25    but not limited to the identification of any witnesses relating to discovery produced after the date

26    of this good faith list, (d) object to the propriety of any testimony proffered by Plaintiffs, (e)

27    modify or expand the scope or length of testimony of any witness identified in light of any

28    evidence or testimony proffered by Plaintiffs, (f) seek to limit the nature and scope of testimony

3:12-CV-04854-LB
Sutter's Amended Good Faith Case in Chief
Ordered Witness List with Time Estimates

or evidence on any subject, (g) question any witness as to his or her personal knowledge, bias, or other suitability as a witness, (h) add or remove witnesses based on the outcome of any pre-trial or trial rulings, and (i) designate any witnesses required to respond to any expert reports that Plaintiffs serve in the future.  Sutter expressly reserves all such rights and objections.  Sutter further discloses that (a) for any deposed witness, Sutter may question that witness regarding subject matters addressed in deposition, and (b) Sutter reserves the right to question each identified witness about documents produced in discovery that bear his or her name.  Sutter also reserves the right to change the manner of presentation depending on information learned regarding the availability of witnesses, and to present witness testimony via remote means during the current COVID-19 public health crisis.  If Plaintiffs object to the use of Sutter's deposition designations at trial, Sutter reserves the right to call the deponent to provide live testimony. Sutter further reserves the right to call any witness identified on Plaintiffs' witness list for any subject matter, and to call any class member as a witness, to defend Plaintiffs' allegations.

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| 1. | Krevans, Sarah<br><br>*Sutter Health* | Live | Ms. Krevans is Sutter's Chief Executive Officer, and Sutter's former Chief Operating Officer and the former President of the Sacramento Sierra region. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in her own prior sworn testimony in this litigation, she may testify on all aspects of Sutter's operations, including without limitation finances, contracting, business strategy, competition, capital requirements and investments, quality, and budgeting.  She may also testify regarding Sutter's affiliations, integration, corporate governance, and affordability.  Ms. Krevans may also testify about Sutter's business rationale for, and the benefits of, the challenged conduct; Sutter's response to emergencies including the Northern | Sutter to Call | 1.0 |

---

[1] Time allocations are provided in hours.

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | California fires and COVID-19; and her work on the Sutter Health Emergency Management System (SHEMS). | | |
| 2. | Conforti, James<br><br>*Sutter Health* | Live | Mr. Conforti is Sutter's Chief Operating Officer. In addition to responding to argument or evidence proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Conforti may testify regarding Sutter's competition and operations over time in the Valley Region and across the system, including without limitation Sutter's operational integration and efficiencies and the benefits of operating as an integrated healthcare delivery system. Mr. Conforti may testify with respect to Sutter's capital investments, including without limitation seismic compliance and other facilities investments (including in the Valley Region), EHR, and other investments in innovation, safety and quality such as the Sutter Health Emergency Management System (SHEMS). Mr. Conforti may also testify regarding Sutter's integrated delivery model, affordability initiatives, coordinated care, and multi-specialty care, including how the integrated system has facilitated Sutter's response to emergencies including the Northern California fires and COVID-19, as well as the operational and financial impacts of COVID-19. He may testify as to Sutter's considerations with respect to acquisitions of, or ventures with, other providers. | Sutter to Call | .75 |
| 3. | David Wallach | Live | Mr. Wallach will testify as to the mode of preparation of summaries of evidence offered pursuant to Federal Rule of Evidence 1006. | Sutter to Call | .5 |
| 4. | Brendt, Melissa<br><br>*Sutter Health* | Live | Ms. Brendt is Sutter's Chief Contracting Officer and Vice President.  In addition to the topics listed in Plaintiff's witness list for Ms. Brendt, and responding to argument or | Sutter to Call | 2.0 |

| | **Name** | **Method** | **Summary of Testimony** | **Status** | **Time[1]** |
|---|---|---|---|---|---|
| | | | evidence proffered by Plaintiffs or included in her own prior sworn testimony in this litigation, she may testify regarding all aspects of Sutter's Managed Care Department, including without limitation, Sutter's managed care organization and strategy, negotiation and implementation of, and disputes related to, managed care contracts (including amendments), rates (including non-participation rates), and terms; Sutter's chargemasters and how methodologies changed over time; Sutter's payor and service mix; network and product configurations; Sutter's participation in networks and products, including without limitation participation in tiered products and narrow networks; and Sutter's development of network and product designs. Ms. Brendt may also testify regarding the challenged conduct, including the reasons for and benefits of Sutter's conduct. Ms. Brendt may also testify regarding Sutter's price and quality transparency and participation in cost comparison tools; and ACOs, capitated arrangements and other shared savings programs. Ms. Brendt may also testify regarding Sutter's delegation and parameter process, and the benefits of Sutter's integrated system. | | |
| 5. | Isenberg, William<br><br>*Sutter Health* | Live | Dr. Isenberg is an obstetrics and gynecology physician, former physician lead for Sutter's electronic health records (EHR) implementation, current leader in Sutter's emergency management organization (SHEMS), current systemwide Chief Quality and Safety Officer, and current hospital quality and safety advisor to the State and various hospitals in it through his roles at Sutter and as Chair of the Hospital Quality Institute. His current job responsibilities include portions of Dr. Lockhart's prior role as Sutter's systemwide Chief Medical Officer. | Sutter to Call | .75 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | Sutter offers his testimony primarily to support its beneficial effects and procompetitive justification defenses. In addition to responding to evidence or argument proffered by Plaintiffs, he may testify regarding his professional background; Sutter's EHR; Sutter's community-connect program; Sutter's telemedicine, including telecardiology and telestroke; Sutter's emergency preparedness and management; Sutter's standardized care protocols, including related to sepsis and Sutter's sepsis initiatives; Sutter's related technology; and Sutter's implementation and integration of these tools into patient care to improve patient outcomes, efficiency, and health equity.  He may also testify regarding Sutter's Chronic Care and Advanced Illness Management Programs; Sutter's logistics system for patient and supply management, including its response to COVID; and how these topics relate to patient care, efficiency, and health equity before and during the pandemic. | | |
| 6. | Gates, John *Sutter Health* | Live | Mr. Gates is the Chief Financial Officer for Sutter's Bay Area. In addition to responding to argument or evidence proffered by Plaintiffs, he may testify regarding Sutter's finances and operations, including without limitation regional parameters; budgeting; forecasting; capital planning; investment and budgeting in facilities in the Bay Area, including CPMC and ABSMC, including without limitation the revenue streams necessary to support those investments. | Sutter to Call | .5 |
| 7. | Boudreau, Colette *Sutter Health* | Live | Ms. Boudreau is Sutter's Vice President of Enterprise Finance and Controller.  In addition to responding to evidence or argument proffered by Plaintiffs or addressed in her own prior sworn testimony in this litigation, she may testify regarding Sutter's finances and operations, including without | Sutter to Call | .75 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | limitation its financial policies, payor and service mix; Sutter's capital investments and planning; Sutter's pension funding; and Sutter's charity care (including Sutter Community Benefit). Ms. Boudreau may also testify regarding Sutter's current and former corporate governance and structure and the financial and operational integration of providers into the Sutter system.  Ms. Boudreau may also testify regarding the preparation of certain summary exhibits offered pursuant to FRE 1006. | | |
| 8. | Chason, Jon<br><br>*Sutter Health* | Live | Mr. Chason is Sutter's Vice President, Managed Care. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Chason  may testify regarding the analysis function of Sutter's Managed Care Department, including the negotiation and modeling of, and disputes related to, managed care contracts (including amendments), rates (including non-participation rates) and terms. Mr. Chason may also testify regarding charge description masters and contracted rates (including non-participation rates) and how methodologies changed over time; payor and service mix; and Sutter's delegation and parameter process. Mr. Chason may testify regarding Sutter's analysis of participation in cost comparison tools and negotiations over transparency, and ACOs, capitated arrangements and other shared savings programs.  Mr. Chason may also testify regarding the preparation of certain summary exhibits offered pursuant to FRE 1006. | Sutter to Call | 1.75 |
| 9. | Dean, Brian<br><br>*Sutter Health* | Live | Mr. Dean is Sutter's current Chief Financial Officer. In addition to responding to argument or evidence proffered by Plaintiffs, Mr. Dean may testify regarding Sutter's finances and current financial condition, including | Sutter to Call | .5 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | without limitation revenues, profit, losses, expenses, investments, capital requirements and investments, pension funding, budgets, forecasts, and financing including bond financing. | | |
| 10. | Khachadourian, Linda<br><br>*Sutter Health* | Live | Ms. Khachadourian is Sutter's Chief Enterprise Transformation Officer at Sutter. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in her own prior sworn testimony in this litigation, she may testify regarding Sutter's strategic and business development plans, including without limitation the history, journey and goals of Sutter's integration; the reasons Sutter uses narrow networks/tiering; and competition among providers and health plans, including Kaiser. | Sutter to Call | .5 |
| 11. | Voge, Jan<br><br>*Sutter Health* | Live | Ms. Voge is a member of Sutter's Managed Care Department. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in her own prior sworn testimony in this litigation, she may testify regarding negotiation and implementation of, and disputes related to, managed care contracts (including amendments), rates (including non-participation rates), and terms; and Sutter's price and quality transparency and participation in cost comparison tools | Sutter to Call | .5 |
| 12. | Smith, Todd<br><br>*Sutter Health* | Live | Mr. Smith is Sutter's Vice President, Product Development and Management, a former regional Vice President of Strategy and Business Development and a former member of the Managed Care Department. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Smith regarding the negotiation and implementation of managed care contracts (including amendments), rates (including non-participation rates), and terms during his time in the managed care department, including | Sutter May Call | .5 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | without limitation participation in tiered products and narrow networks; and Sutter's development of network and product designs.  Mr. Smith may testify regarding healthcare competition in Northern California, including without limitation competition faced by Sutter Bay area hospitals during Mr. Smith's tenure as a Regional Vice President.  Mr. Smith also may testify about Sutter's decisions whether to participate in cost comparison tools and the evolving healthcare marketplace. | | |
| 13. | Harrison, Jim<br><br>*Sutter Health* | Depo | In addition to the topics listed in Plaintiff's witness list for Mr. Harrison, and responding to argument or evidence proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, excerpts of Mr. Harrison's deposition testimony may be designated regarding issues relating to his role in Sutter's Strategy Department, including without limitation analyses and evaluations he performed (or had performed at his direction), relating to (among others) markets, competition in the markets, and strategy to respond to competition in the markets. | Sutter to Call | .5 |
| 14. | Wilcox, Tammy<br><br>*Dignity* | Live | Ms. Wilcox is the Senior Vice President of Managed Care for Dignity Health and is the lead executive responsible for Dignity's payor relationship.  She may testify regarding the benefits of an integrated health system, the role of confidentiality in Dignity's contract terms with the payors, and other managed care contract provisions in Dignity contracts that are comparable to those of Sutter's payor contracts.  She may also offer testimony that Kaiser is recognized as a competitor to Sutter and Dignity in the relevant geographic areas. | Sutter to Call | .25 |
| 15. | Wong, Annie<br><br>*UC Davis* | Live | Ms. Wong is the Director of Health Contracts at UC Davis.  She may testify regarding the role of | Sutter to Call | .25 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | confidentiality in UC Davis' contract terms with the payors, and other managed care contract provisions in UC Davis' contracts that are comparable to those of Sutter's payor contracts.  She may also testify regarding UC Davis' use of its commercial patients to subsidize government patients. | | |
| 16. | Greenfield, Maya<br><br>*Kaiser* | Live | Maya Greenfield is the Director of Strategy and Business Development for the Northern California Region of Kaiser and was designated as a corporate representative for Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc.  Ms. Greenfield may testify on the Northern California healthcare market, including its structure, payor mix, participants, market shares and market differentiation.  Ms. Greenfield may also testify regarding Kaiser's position in the market and competition with Sutter.  She may also testify regarding Kaiser's capital investments, revenue strategies, advertising and marketing, and total costs of care, and the market context for these subjects. | Sutter to Call | .25 |
| 17. | May, Gary<br><br>*Stanford* | Live | Gary May is a Vice President of Stanford Health and leads the Managed Care Contracting and Payer Strategy Group.  He may testify regarding the Northern California healthcare market and the competition among hospital systems, including Stanford, Kaiser and Sutter.  He may also testify regarding how providers differentiate themselves by quality and services offered, the need for revenue to compete in quality, and strategies to assure revenue.  He may also testify regarding contracting practices between healthcare systems and insurers, including insurers' use of tiered/narrow networks and other patient steering mechanisms, and their effects upon the Northern California market. | Sutter to Call | .25 |

| | **Name** | **Method** | **Summary of Testimony** | **Status** | **Time[1]** |
|---|---|---|---|---|---|
| 18. | Segall, Jannine<br><br>*John Muir Health* | Live | Ms. Segall is John Muir Health's Executive Director of Contracting & Network Management.  Ms. Segall may testify that Kaiser is recognized as a competitor to both Sutter and John Muir.  She may also testify regarding John Muir's contracting provisions and practices, including but not limited to the confidentiality of John Muir's participation in tiered and narrow networks.  She also may testify regarding John Muir's use of its commercial patients to subsidize government patients. | Sutter May Call | .25 |
| 19. | Shaughnessy, Tom<br><br>*Sutter Health* | Live | Dr. Shaughnessy is a critical care physician and head of Sutter's San Francisco-based e-ICU program. Sutter offers his testimony to support its beneficial effects and procompetitive justification defenses. In addition to responding to evidence or argument proffered by Plaintiffs, he may testify regarding his professional background; and Sutter's 2002 – 2021 e-ICU program and its consequent benefits including improved efficiency and better patient outcomes. | Sutter to Call | .5 |
| 20. | deGhetaldi, Larry<br><br>*Sutter Health* | Live | Dr. deGhetaldi is a primary care physician, Integrated Health Association Board Member, and a Palo Alto Medical Foundation President. Sutter offers his testimony primarily to support its beneficial effects and procompetitive justification defenses. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, he may testify regarding his professional background; how Sutter has improved efficiency, total cost of care, and patient outcomes, and delivered more equitable care; Sutter's systemwide "Vital Few" protocols; Sutter's practice and culture of payor agnosticism, i.e., clinicians not distinguishing between patients based on payor; how reimbursement from private and | Sutter to Call | .5 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | government payer sources make cost shifting reasonably necessary; the impact of regional cost structures on Sutter's cost of providing healthcare; COVID testing, standards of care, and vaccinations; and how these topics relate to patient care during the pandemic. | | |
| 21. | Skinner, Jonathan  *Sutter Expert* | Live | Dr. Skinner may testify regarding opinions disclosed in his expert report, including without limitation, responding to evidence and testimony presented by Plaintiffs' witnesses (including Plaintiffs' experts' opinions). | Sutter to Call | 1.0 |
| 22. | Pilch, Patrick  *Sutter Expert* | Live | Mr. Pilch may testify regarding his opinions disclosed in his expert report, responses to Plaintiffs' experts' opinions, and responses to evidence and testimony presented by Plaintiffs. | Sutter to Call | 1.25 |
| 23. | Adcock, Richard  *Verity Health System* | Live | Mr. Adcock is the former CEO of Verity Health System of California, Inc., and may testify regarding his experience concerning the Verity bankruptcy which post-dated the fact discovery cut-off in this case, including the burden and limits placed on Northern California providers by regulators and insurers.  Mr. Adcock is referenced in the June 21, 2019 expert report of Mr. Patrick Pilch (at p. 35 and n. 148) in this case.  Mr. Adcock may testify about healthcare industry pressures on providers; the high costs of running hospitals in the geographic areas encompassed by this case, including salaries, pensions, seismic obligations, aging infrastructure and IT investment; and how insurers are able to extract lower rates from providers who lack the ability to negotiate with equal bargaining strength, resulting in lower revenues from commercial insurers that negatively impacted a competitor to Sutter operating, in part, in the relevant geographic markets during the class period as now expanded by Plaintiffs to encompass | Sutter to Call | .5 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | 2018-2020. See, August 31, 2018 declaration of Richard Adcock in the Verity bankruptcy, Dkt. 8, U.S. Central Dist. Cal. Bankruptcy Ct. No. 2:18-bk-20151-ER | | |
| 24. | Sweeney, Joseph *Segal Company* | Depo | Excerpts of Mr. Sweeney's deposition testimony may be designated regarding his work at The Segal Company as a healthcare benefits consultant, including his review, input, analysis and use of Blue Shield's redirection analyses. | Sutter May Call | .25 |
| 25. | Wells, Darrin[2] *Blue Shield* | Live | Mr. Wells may testify regarding issues relating to Blue Shield actuarial analyses and network trends and analytics; redirection and termination analyses performed by Blue Shield; support for sales to self-funded and fully insured customers; product design at Blue Shield; provider contracting and issues relating to Blue Shield's negotiation with and analysis of health care providers, including Sutter; Blue Shield's claims data systems and the production of claims data relating to the litigation; cohort analyses performed by Blue Shield; and all matters that are the subject of his sworn testimony in this litigation. | Sutter to Call | .5 |
| 26. | Hitchings, Brent *Blue Shield* | Depo | Mr. Hitchings may testify regarding his work at Blue Shield with a focus on Blue Shield's methodology for premium setting for fully-insured products. | Sutter to Call | .5 |
| 27. | Hodges, Daniel *Woodruff-Sawyer* | Live | Mr. Hodges may testify regarding issues relating to health benefit trust and employer groups' health plan selection, benefit design, and administration, including demand for particular types of health plans and networks; and communications with insurance carriers and/or providers, including Sutter. | Sutter May Call | .5 |

---

[2] On the afternoon of February 4, 2022, Blue Shield's counsel advised that Mr. Wells is unavailable from February 25 through March 14, 2022. Sutter will confer with Plaintiffs and adjust the order as appropriate.

3:12-CV-04854-LB
Sutter's Amended Good Faith Case in Chief
Ordered Witness List with Time Estimates

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| 28. | Lalande, Gerald<br><br>*United* | Live | Mr. Lalande is the Director of Pricing and Actuary for UnitedHealthcare and may testify on all aspects of United's rate filings and premium-setting methodology.  He may also testify regarding United's narrow and tiered networks. | Sutter May Call | .5 |
| 29. | Mathewson, Chris<br><br>*Anthem* | Live | Mr. Mathewson may testify regarding his work as the Director and Actuary II for California Individual and Small group products at Anthem, including how Anthem calculates premiums for individual and small group products, Anthem's methodology for calculating Medical Loss Ratio, and his work evaluating the savings generated by Anthem's narrow and tiered networks. | Sutter May Call | .5 |
| 30. | Tsui, Lei<br><br>*Anthem* | Live | In addition to the topics listed in Plaintiff's witness list for Mr. Tsui, Mr. Tsui may testify regarding his work as Actuary and Director III at Anthem, including Anthem's methodology for premium setting for large group products and his work to measure the savings generated by tiered and narrow products. | Sutter May Call | .5 |
| 31. | Kueks, Robert<br><br>*Health Net* | Live | Mr. Kueks is a Vice President of Actuarial Services for HealthNet, where he oversees actuarial and underwriting functions.  In addition to the topics listed in Plaintiff's witness list for Mr. Kueks, he may testify as to HealthNet's calculation of premiums, including how, prior to the ACA, HealthNet looked at historical claims experience by region, by product, and by plan design, to create rate increases. | Sutter May Call | .5 |
| 32. | Travis, Patrick<br><br>*Sutter Expert* | Live | Mr. Travis may testify regarding the opinions disclosed in his expert report, responses to Plaintiffs' experts' opinions, his experience as a healthcare benefits consultant to employers and labor trusts, and responses to evidence and testimony presented by Plaintiffs. | Sutter to Call | .75 |
| 33. | Huynh, Steve<br><br>*CalChoice* | Live | Mr. Huynh may testify regarding his work at Choice Administrators Insurance Services, Inc. (or "CaliforniaChoice"), including as to | Sutter to Call | .25 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | the small group health plan options that CaliforniaChoice offers to its customers, and the popularity of certain health plan benefit designs with CaliforniaChoice customers. | | |
| 34. | Davila, Juan<br><br>*Blue Shield* | Depo | Excerpts of Mr. Davila's deposition testimony may be designated regarding his work at Blue Shield relating to network management, including budgeting, network analytics, and provider contracting; communications with and about clients and/or providers; and competition in the relevant markets, including competition with Kaiser; out-of-network care and reimbursement. | Sutter May Call | .25 |
| 35. | Gowrisankaran, Gautam<br><br>*Sutter Expert* | Live | Dr. Gowrisankaran may testify regarding the opinions disclosed in his expert reports, including without limitation responses to Plaintiffs' experts' opinions, and to evidence and testimony presented by Plaintiffs. | Sutter to Call | 1.25 |
| 36. | Gregg, Christy<br><br>*Blue Shield* | Depo | Christy Gregg is the Data and Analytics Lead for Corporate Services for Blue Shield of California.  Ms. Gregg may testify regarding the claims, premium, and member contact data produced by Blue Shield in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and Blue Shield's practices for managing the data. | Sutter May Call | .5 |
| 37. | Goldstein, Glenn<br><br>*Anthem* | Depo | Glenn Goldstein is a Director of Engineering for Anthem.  Mr. Goldstein may testify regarding the claims, premium, and member contact data produced by Anthem in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and Anthem's practices for managing the data. | Sutter May Call | .5 |
| 38. | Carrigan, Robert<br><br>*United* | Depo | Mr. Carrigan is a Finance Director with UnitedHealthcare.  Excerpts of Mr. Carrigan's deposition testimony may be designated regarding the premium data produced by United in this action, including the preparation, extrapolation | Sutter May Call | .5 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | | | and interpretation of that data, the sources of that data, and United's practices for managing the data. | | |
| 39. | Pandolfo, Paul<br><br>*United* | Depo | Mr. Pandolfo is the former Senior Manager of Data Engineering with UnitedHealthcare. Excerpts of Mr. Pandolfo's deposition testimony may be designated regarding the claims data produced by United in this action, including the archiving, preparation, extrapolation and interpretation of that data, the sources of that data, problems with the data, and United's practices for managing the data. | Sutter May Call | .5 |
| 40. | Sprague, Jeff<br><br>*Sutter Health* | Live | Mr. Sprague was Sutter's Chief Financial Officer. In addition to the topics listed in Plaintiff's witness list for Mr. Sprague, and responding to argument or evidence proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Sprague may testify regarding all aspects of Sutter's financial operations during his time as Chief Financial Officer, including without limitation Sutter's budgeting and forecasting, as well as its operating and capital needs (the latter including without limitation seismic and other facility upgrades, pension obligations, EHR, and other innovation, and other investments in safety and quality). Mr. Sprague may testify regarding testimony may include Sutter's chargemaster delegation and parameter process; payor and service mix; bond obligations and bond ratings. Mr. Sprague's testimony may include affordability, quality and transparency initiatives; and changes to operations over time and in response to changing market conditions. He may also testify regarding efforts to financially and operationally integrate providers into the system; and efficiencies from integrated operations. | Sutter to Call | 1.0 |
| 41. | Orszag, Jonathan | Live | Dr. Orszag may testify regarding the opinions disclosed in his expert reports, | Sutter to Call | 4.0 |

| | Name | Method | Summary of Testimony | Status | Time[1] |
|---|---|---|---|---|---|
| | *Sutter Expert* | | the expert reports of Robert Willig, responses to Plaintiffs' experts' opinions, and responses to evidence and testimony presented by Plaintiffs. | | |

## WITNESSES IDENTIFIED IN PLAINTIFFS' CASE-IN-CHIEF

In addition to the above witnesses, who Sutter anticipates calling in its case-in-chief, Sutter also anticipates calling the below 11 witnesses whom have also been identified by Plaintiffs in their case-in-chief.  In the event that Plaintiffs do not call any of the below witnesses in their case-in-chief, Sutter reserves the right to call these witnesses in its case-in-chief:

| | Name | Method | Summary of Testimony | Status | Time |
|---|---|---|---|---|---|
| 1. | Anderson, Peter<br><br>*Sutter Health* | Live | Mr. Anderson is the former Chief Strategy Officer at Sutter.  In addition to the topics listed in Plaintiff's witness list for Mr. Anderson, and responding to argument or evidence proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, he may testify about Sutter's business strategies, including without limitation Sutter's strategy to build an integrated healthcare delivery system; strategy to compete with other providers and health plans; strategy around price, affordability, quality, price transparency, and total cost of care; strategy around investments; strategy around expansion.  He may testify about his role at Sutter, especially how it relates to Sutter's culture and mission.  In addition, he may testify about the state of competition between systems in the healthcare market in Northern California, including competition among providers and health plans including Kaiser.  He may also testify about Sutter's relative quality, prices, costs, and price transparency.  He may also testify about Sutter's strategy to build an | Identified by Both Parties | .75 |

| | Name | Method | Summary of Testimony | Status | Time |
|---|---|---|---|---|---|
| | | | integrated healthcare delivery system and offer coordinated care. He may also testify concerning Sutter's efforts to invest in facilities, improve the quality of its care, and support the community via charitable care. He may also speak to market interest in tiering, steering, narrow networks, and ambulatory surgery centers, and Sutter's efforts with respect to those areas. | | |
| 2. | Beuoy, Michael *Blue Shield* | Live | In addition to the topics listed in Plaintiff's witness list for Mr Beuoy, Mr. Beuoy may testify regarding Blue Shield's methodology for premium setting for fully insured products and Blue Shield's filings with the Department of Insurance. Mr. Beuoy may also testify regarding all matters that are the subject of his sworn written testimony in this litigation. | Identified by Both Parties | .5 |
| 3. | Conklin, Jeff *Adventist* | Live | Mr. Conklin is President and CEO of Adventist Health Plan, Inc. and a payer and network strategies executive for Adventist Health. In addition to the topics listed in Plaintiff's witness list for Mr. Conklin, he may testify that competition for inpatient services in the Northern California healthcare market is robust. He may also offer testimony regarding industry practices that healthcare providers and insurers customarily follow when negotiating provider contracts, including that the rates charged in such contracts are confidential and proprietary. | Identified by Both Parties | .25 |
| 4. | Fawley, Reece *UCSF* | Live | Mr. Fawley is the VP of Health Plan Strategy and Managed Care at UCSF. In addition to the topics listed in Plaintiff's witness list for Mr. Fawley, he may testify about the Northern California healthcare market and its robust competition for inpatient services. He may also testify regarding UCSF contracting practices in their contracts with insurance companies, including without limitation the use of analogous contract provisions to those | Identified by Both Parties | .25 |

| | Name | Method | Summary of Testimony | Status | Time |
|---|---|---|---|---|---|
| | | | used by Sutter, and the confidentiality of these contracts. He may also testify about the disadvantages of tiered and narrow networks and participating providers, as well as the unreliability of price transparency tools. | | |
| 5. | Feeney, Tina<br><br>*Plaintiff* | Depo | Ms. Feeney may testify regarding the health plan enrollments and premiums paid by Johnson Pool & Spa, and its alleged injuries at issue in this lawsuit. | Identified by Both Parties | .25 |
| 6. | Hansen, Susan<br><br>*Plaintiff* | Depo | Ms. Hansen may testify regarding her health plan enrollments and premiums, and her alleged injuries at issue in this lawsuit. | Identified by Both Parties | .25 |
| 7. | Jankowski, Jerry<br><br>*Plaintiff* | Depo | Mr. Jankowski may testify regarding his health plan enrollments and premiums, and his alleged injuries at issue in this lawsuit. | Identified by Both Parties | .25 |
| 8. | Ragsdale, Jill<br><br>*Sutter Health* | Live | Ms. Ragsdale is Sutter's Vice President and Chief People and Culture Officer. In addition to the topics listed in Plaintiff's witness list for Ms. Ragsdale, and responding to argument or evidence proffered by Plaintiffs or addressed in her own prior sworn testimony in this litigation, Ms. Ragsdale may testify as to Sutter's human resources costs and processes. Ms. Ragsdale may also testify as to employee safety or other HR conditions, including during COVID-19. | Identified by Both Parties | .5 |
| 9. | Reed, Robert<br><br>*Sutter Health* | Live | Mr. Reed was Sutter's Chief Financial Officer for many years and previously was the Chief Financial Officer for Alta Bates Hospital. In addition to the topics listed in Plaintiff's witness list for Mr. Reed, and responding to argument or evidence proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Reed may testify on all aspects of Sutter's financial operations during his time as CFO, including without limitation Sutter's budgeting, operating and capital requirements, investments | Identified by Both Parties | .5 |

| | Name | Method | Summary of Testimony | Status | Time |
|---|---|---|---|---|---|
| | | | and borrowing. Mr. Reed may also testify regarding Sutter's corporate governance and operations, including without limitation the financial and operational integration between Sutter affiliates. Mr. Reed may testify regarding the organization and function of Sutter's Manages Care Department, which reported to him, including without limitation the negotiation of managed care contracts and network configuration, and the nature of Sutter's competition in the Northern California healthcare market. | | |
| 10. | Schneider, Steven<br><br>*Aetna* | Live | Mr. Schneider is the actuary in charge of Aetna's California market. In addition to the topics listed in Plaintiff's witness list for Mr. Schneider, he may testify as to Aetna's calculation of premiums, based on geographic regions, products, and historical data, as well as differences based on groups and the ACA. | Identified by Both Parties | .5 |
| 11. | Tasabia, Ezequiel<br><br>*Sutter Health* | Live | In addition to the topics listed in Plaintiff's witness list for Mr. Tasabia, and responding to argument or evidence proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Tasabia may testify regarding the contracting negotiation and practices of providers and insurers including Sutter, Dignity and various health plans; Sutter's relationship with various health plans; Sutter's participation in tiered and narrow networks; competition with Kaiser; Sutter's price transparency and participation in cost comparison tools; Sutter's affordability initiatives. He may also testify as to how Dignity dealt with non-participating charges by charging higher trauma rates based on his time at Dignity. | Identified by Both Parties | .75 |

## WITNESSES UNLIKELY TO BE CALLED

Sutter has identified the below witnesses as "Unlikely to Call" witnesses that it presently

does not anticipate calling at trial, but the determination of whether to call the witness will depend in part on how Plaintiffs present their case.  Sutter thus reserves the right to call the following witnesses at trial.

| | **Name** | **Method** | **Summary of Testimony** | **Status** | **Time** |
|---|---|---|---|---|---|
| 1. | Couser, Maurice<br><br>*United* | Live | Mr. Couser is the West Region Underwriting Vice President at UnitedHealthcare and may testify on all aspects of United's rate filings and premium-setting methodology, including its Underwriting Manual and alternative funding arrangements for fully-insured products. He may also testify regarding United's narrow and tiered network products. | Sutter Unlikely to Call | .5 |
| 2. | Doolabh, Rajiv<br><br>*Blue Shield* | Live | Mr. Doolabh may testify regarding issues relating to his work at Blue Shield with a focus on his efforts relating to redirection and termination analyses and the relationship between insurers and Sutter. | Sutter Unlikely to Call | .25 |
| 3. | Hermosillo, Jeffrey<br><br>*Blue Shield* | Live | In addition to the topics listed in Plaintiff's witness list for Mr. Hermosillo, Mr. Hermosillo may testify regarding his work at Blue Shield including relating to the meaning of certain internal Blue Shield communications. Mr. Hermosillo will also testify regarding Blue Shield's relationship with CCSF and profit and loss for Blue Shield. | Sutter Unlikely to Call | .25 |
| 4. | Lavery, Martin<br><br>*United* | Depo | Mr. Lavery is a software engineer with Optum Ireland, a UnitedHealthcare company.  Excerpts of Mr. Lavery's deposition testimony may be designated regarding the claims data produced by United in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and United's practices for managing the data. | Sutter Unlikely to Call | .25 |
| 5. | Lui, Edward<br><br>*Blue Shield* | Live | Mr. Lui may testify regarding his work as a Senior Manager, Director, and Vice President of Underwriting at Blue Shield, including Blue Shield's methodology for premium setting for | Sutter Unlikely to Call | .25 |

| | Name | Method | Summary of Testimony | Status | Time |
|---|---|---|---|---|---|
| | | | fully-insured products. | | |
| 6. | Martin, Clyde *Aetna* | Depo | Mr. Martin is a Director of Business Program Management with CVS/Aetna.  Excerpts of Mr. Martin's deposition testimony may be designated regarding the claims data produced by Aetna in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and Aetna's practices for managing the data. | Sutter Unlikely to Call | .25 |
| 7. | Masley, Joe *Sutter Health* | Live | Mr. Masley is a Director of Managed Care Analysis at Sutter. In addition to responding to evidence or argument proffered by Plaintiffs or addressed in his own prior sworn testimony in this litigation, Mr. Masley may testify regarding analysis or modeling performed in support of the negotiation and modeling of, and disputes related to, managed care contracts (including amendments), rates (including non-participation rates) and terms.  Mr. Masley also may testify regarding Sutter's evaluation of and participation in price transparency tools. | Sutter Unlikely to Call | .5 |
| 8. | McCabe, Susan *Sutter Health* | Live | Ms. McCabe is Sutter Health's Director of Reimbursement. In addition to responding to argument or evidence proffered by Plaintiffs or addressed in her own prior sworn testimony in this litigation, Ms. McCabe may testify regarding Sutter's process for setting and submitting its chargemasters, including without limitation the work of Sutter's Revenue Integrity Steering Committee. | Sutter Unlikely to Call | .5 |
| 9. | McPherson, Shawn *Aetna* | Depo | Mr. MacPherson is a Director with Aetna.  Excerpts of Mr. MacPherson's deposition testimony may be designated regarding the premium data produced by Aetna in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and Aetna's practices for managing the data. | Sutter Unlikely to Call | .25 |
| 10. | Roseberry, David | Depo | Mr. Roseberry is a Senior Manager in the Claims Operations group at | Sutter Unlikely to | .5 |

| | **Name** | **Method** | **Summary of Testimony** | **Status** | **Time** |
|---|---|---|---|---|---|
| | *Health Net* | | Centene, which acquired Health Net. Excerpts of Mr. Roseberry's deposition testimony may be designated regarding the claims data produced by Health Net in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and Health Net's practices for managing the data. | Call | |
| 11. | Waters, John<br><br>*Health Net* | Depo | Mr. Waters is the Director of Business Analytics at Centene, which acquired Health Net. Excerpts of Mr. Waters's deposition testimony may be designated regarding the premium data produced by Health Net in this action, including the preparation, extrapolation and interpretation of that data, the sources of that data, and Health Net's practices for managing the data. | Sutter Unlikely to Call | .25 |

## **CUSTODIAN OF RECORD WITNESSES**

Sutter is mindful of the Court's admonition in its June 14, 2021 Case-Management Order Regarding Sealing Procedures [Dkt. No. 1038] that the parties avoid using custodial witnesses for the purpose of admitting documents at trial. In light of the Court's direction, Sutter identifies separately below the following witnesses identified for the purposes of admitting documents collectively as "May Call" witnesses. Sutter reserves the right to call any of the following witnesses should the parties be unable to reach an agreeable stipulation as to the authenticity or admissibility of any document on Sutter's trial exhibit list.

| **Name** | **Method** | **Summary of Testimony** | **Status** |
|---|---|---|---|
| Alameda Unified School District Custodian of Records ("COR"); Terri Baker; Heidi Briggs; California DOI COR; California DMHC COR; California Health and Human Services Agency COR; California Ironworkers COR; California Office of Statewide | Live | Document custodians to establish foundational evidentiary issues regarding records relating to healthcare benefit plans and/or work performed by each custodian in the regular course of their work. | May Call |

| **Name** | **Method** | **Summary of Testimony** | **Status** |
|---|---|---|---|
| Health Planning and Development COR; California's Valued Trust COR; Cedars-Sinai COR; City of Concord COR; City of Oakland COR; City of San Ramon COR; CMS COR; Cottage Health COR; Edward Davis; Catherine Dodd; Kathleen Donneson; Dow Chemical COR; Trina Honea; Lafayette School District COR; Anita Lee; Sacramento County COR; SISC COR; Stanislaus County COR; and Tenet Healthcare COR. | | | |

Dated:  February 4, 2022

BARTKO, ZANKEL BUNZEL & MILLER, a Professional Corporation

JONES DAY


By:   */s/ David. C. Kiernan*
David C. Kiernan

Attorneys for Defendant Sutter Health