1  CONSTANTINE CANNON LLP
   MATTHEW L. CANTOR (*pro hac vice*)
2  JEAN KIM (*pro hac vice*)
   335 Madison Avenue, FL 9
3  New York, NY  10017
   (212) 350-2700
4  (212) 350-2701 (fax)
   mcantor@constantinecannon.com
5  jkim@constantinecannon.com
   prodriguezlopez@constantinecannon.com
6
7  *Lead Counsel for Plaintiffs and the Class*

8  FARMER BROWNSTEIN JAEGER
     GOLDSTEIN KLEIN & SIEGEL LLP
9  DAVID C. BROWNSTEIN (141929)
   WILLIAM S. FARMER (46694)
   DAVID M. GOLDSTEIN (142334)
10 235 Montgomery Street, Suite 835
   San Francisco, CA 94104
11 (415) 795-2050
   (415) 520-5678 (fax)
12 dbrownstein@fbj-law.com
   wfarmer@fbj-law.com
13 dgoldstein@fbj-law.com

14 *Additional Co-Lead Counsel for Plaintiffs*
   *and the Class*
15

THE MEHDI FIRM, PC
AZRA Z. MEHDI (220406)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Ph: (415) 293-8039
Fax: (415) 432-4301
azram@themehdifirm.com

*Co-Lead Counsel for Plaintiffs and the Class*

STEYER LOWENTHAL BOODROOKAS
  ALVAREZ & SMITH LLP
ALLAN STEYER (100318)
DONALD SCOTT MACRAE (104663)
SUNEEL JAIN (314558)
235 Pine Street, 15th Floor
San Francisco, CA 94104
(415) 421-3400
(415) 421-2234 (fax)
asteyer@steyerlaw.com
smacrae@steyerlaw.com
sjain@steyerlaw.com

*Additional Co-Lead Counsel for Plaintiffs and the*
*Class*

16            UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18            SAN FRANCISCO DIVISION

19 DJENEBA SIDIBE, JERRY JANKOWSKI, SUSAN
   HANSEN, DAVID HERMAN, OPTIMUM
20 GRAPHICS, INC., and JOHNSON POOL & SPA,
   on Behalf of Themselves and All Others Similarly
21 Situated,

22            Plaintiffs,

23     v.

24 SUTTER HEALTH,

25            Defendant.

26

Case No. 3:12-cv-4854-lb

**PLAINTIFFS' MEMORANDUM**
**REGARDING JURY**
**INSTRUCTION AND VERDICT**
**FORM ISSUES**

Date:     March 7, 2021
Time:     1:00 PM
Judge:    The Honorable Laurel Beeler

27

28

1

**TABLE OF CONTENTS**

2
                                                                                    Page

3    I.     THE COURSE OF CONDUCT INSTRUCTION SHOULD TELL THE JURY TO
            CONSIDER ONLY MARKET-WIDE PROCOMPETITIVE EFFECTS, IF ANY,
4           THAT WERE DIRECTLY CAUSED BY THE CHALLENGED RESTRAINTS ........ 1

5
     II.    THE JURY SHOULD BE INSTRUCTED THAT SUTTER'S CLAIMED
6           PROCOMPETITIVE EFFECTS ARE IRRELEVANT, AND SHALL NOT BE
            CONSIDERED, FOR PLAINTIFFS' *PER SE* TYING CLAIM ................................... 1
7

8    III.   OTHER CHANGES SHOULD BE MADE TO CACI 3420 TO CONFORM
            WITH THE APPLICABLE LAW AND THE CLAIMS IN THIS CASE ..................... 2
9

10   IV.    THE FIRST QUESTION OF THE JURY QUESTIONNAIRE SHOULD
            INCLUDE CHANGES CONSISTENT WITH PLAINTIFFS' REQUESTED
11          CHANGES TO CACI 3420 ........................................................................... 5

12
     V.     THE JURY INSTRUCTIONS SHOULD IDENTIFY THE HEALTH PLANS AS
13          THE RELEVANT PURCHASERS ................................................................... 5

14   VI.    SUTTER'S REQUESTS TO CHANGE THE JURY INSTRUCTIONS
     SHOULD BE DENIED ......................................................................................... 7
15

16   VII.   LIST OF ADDITIONAL REQUESTED CHANGES TO INSTRUCTIONS AND
            VERDICT FORM  . ................................................................................... 10
17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
Page

**Cases**

3
*Classen v. Weller*, 145 Cal.App.3d 27 (1983)................................................................3

4
*Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, 4 Cal. 3d 842 (1971)............................9

5
*Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336 (9th Cir.1984)........................................6

6
*FTC v. Advocate Health Care Network*, 841 F.3d 460 (7th Cir. 2016) ........................................5

7
*FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327 (3d Cir. 2016)............................................5

8
*GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 446 (N.D. Cal. 2017) .............9

9

10
*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1249 (9th Cir. 2020).....................................................................................................1

11
*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126 (N.D. Cal. 2014)......................................................................................................................1

12
*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984)....................................................4

13
*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381 (9th Cir. 1984). ............................................................................................................................4

14

15
*Pac. Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196 (9th Cir. 1975) .................9

16
*Saint Alphonsus Med. Ctr. – Nampa Inc. v. St.  Luke's Health Sys., Ltd.*, 778 F.3d 775 (9th Cir. 2015) ...........................................................................................................5, 6

17
*Sidibe et al. v. Sutter Health,* 2019 WL 2078788 (N.D. Cal. May 9, 2019) .................................6

18
*Sidibe v. Sutter Health*, 2021 WL 879875, (N.D. Cal. Mar. 9, 2021)........................................3, 4

19
*Sidibe v. Sutter Health*, 333 F.R.D. 463, 471 (N.D. Cal. 2019)....................................................6

20
*Sidibe v. Sutter Health*, 667 F. App'x 641 (9th Cir. 2016) .........................................................5

21
*Suburban Mobile Homes, Inc. v. AMFAC Communities, Inc.*, 101 Cal. App. 3d 532 (1980) .......3

22
*UAS Mgmt., Inc. v. Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357 (2008) .....................3, 4

23
*United States v. Joyce*, 2017 WL 895563, at *8 (N.D. Cal. Jan. 20, 2017), *aff'd sub nom.* United States v. Guillory*, 740 F. App'x 554 (9th Cir. 2018) ..............................................6

24

25
*United States v. Koppers Co.*, 652 F.2d 290, 293 (2d Cir. 1981) ................................................6

26

27

28

---

ii

1    Plaintiffs respectfully submit this brief regarding the jury instructions and verdict form.

2    **I.    The Course of Conduct Instruction Should Tell the Jury to Consider Only Market-
3          wide Procompetitive Effects, If Any, That Were Directly Caused by the Challenged
          Restraints**

4    Only benefits to competition in the relevant market that directly flow from Sutter's

5    challenged contracting practices may be considered in weighing anticompetitive effects against

6    procompetitive effects.  *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust*

7    *Litig.*, 958 F.3d 1239, 1249 (9th Cir. 2020) (affirming rule of reason judgment for plaintiffs where

8    "district court found no proof that the challenged rules **directly** foster consumer demand.")

9    (emphasis added); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d

10   1126, 1136 (N.D. Cal. 2014) ("to justify a challenged restraint under the rule of reason, an

11   antitrust defendant must show that it actually promotes competition in a relevant market.").

12   Restraints cannot be justified unless they enhance market-wide competition with

13   procompetitive benefits such as lower prices or increased output *directly* resulting from the

14   challenged restraint.  *In re Lidoderm Antitrust Litig.*, 2018 WL 7814761, at *2 (N.D. Cal. Feb. 7,

15   2018) (ruling on jury instruction that "only procompetitive justifications are weighed in that

16   analysis, whereas justifications that benefit only the settling parties and not the market or

17   consumers are not."). That fact that a party earns revenue from a restraint is not sufficient to

18   demonstrate procompetitive effects on *the market*. Accordingly, the following sentence should be

19   added to CACI 3405: "You should only consider beneficial effects to competition in the entire

20   market directly caused by Sutter's challenged conduct."

21   **II.   The Jury Should Be Instructed That Sutter's Claimed Procompetitive Effects Are
          Irrelevant, and Shall Not Be Considered, for Plaintiffs' *Per Se* Tying Claim**

22
23   In its Order on Proposed Jury Instructions, this Court ruled that "procompetitive

24   justifications are relevant only to the rule-of-reason claim, not the tying claim." ECF 1193 at 9.

25   Accordingly, CACI 3420 should include language instructing the jury not to consider any

     procompetitive effects (or business justifications) with respect to the *per se* tying claim.

26   This case is unusual in that it is being tried with both a *per se* claim and a rule of reason

27   claim.  Sutter is presenting extensive evidence of purported beneficial effects of its conduct; this

28
     _____
                                              1
     PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTION AND VERDICT FORM ISSUES
     CASE NO. 3:12-CV-4854-LB

1    has imbued the case since opening statements.  At this point, it is understandable that the jury

2    might think that Sutter's procompetitive effects arguments relate to all the claims in the lawsuit.

3    Therefore, it is critical to clarify that Sutter's claimed procompetitive effects are irrelevant to the

4    tying claim to avoid juror confusion.  The form CACI instruction does not include such language

5    because most cases that go to trial do not have both *per se* and rule of reason claims.  "Well-

6    tailored and specific instructions may be necessary, however, in complex antitrust cases 'where ...

7    abstract legal principles are not self-explanatory to a lay jury, and the facts to which they must be

8    applied are complex.'" *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d

9    1381, 1398 (9th Cir. 1984).

10            In *United States v. Joyce*, the court gave a *per se* instruction that told the jury "you need

11   not be concerned with whether the agreement was reasonable or unreasonable, the justifications

12   for the agreement, or the harm, if any, done by it." 2017 WL 895563, at *8 (N.D. Cal. Jan. 20,

13   2017), *aff'd sub nom. United States v. Guillory*, 740 F. App'x 554 (9th Cir. 2018)[1]; *see also*

14   *United States v. Koppers Co.*, 652 F.2d 290, 293 (2d Cir. 1981) (jury instruction in *per se* case

15   properly stated that it was "not necessary to consider why the acts were committed or what effect

16   it had on the industry").  Accordingly, the following sentence should be added to CACI 3420:

17   "You shall not consider any claimed procompetitive effects or justifications for Sutter's conduct

18   in deciding this claim."

19   **III.    Other Changes Should Be Made to CACI 3420 to Conform with the Applicable Law
             and the Claims in this Case**

20           Plaintiffs can establish liability on their tying claim by proving a tying arrangement for

21   inpatient hospital services between *one or more* of the tying hospitals and *one or more* of the tied

22   hospitals.  This is correctly stated in the Verdict Form.  The current language of CACI 3420 is

23   inconsistent with the Verdict Form and could be read to suggest that Plaintiffs must prove tying

24   arrangements among *all the* tying hospitals and *all the* tied hospitals.  This is a misstatement of

25

26   _____

27   [1] That decision adopted the *Per Se* Violations of Antitrust Law jury instruction, the text of which
     is set forth at 2017 WL 9751358 (N. D. Cal. Feb. 2, 2017).

28

PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTION AND VERDICT FORM ISSUES
CASE NO. 3:12-CV-4854-LB

the law.  To state Plaintiffs' burden correctly, and to avoid juror confusion, the second numbered paragraph of the Court's proposed CACI 3420 should refer to "one or more of the tying hospitals" and "one or more of the tied hospitals."

The second numbered paragraph of CACI 3420 should be revised to ask whether "Sutter linked the sale of inpatient hospital services in the alleged 'tying' markets to the sale of inpatient hospital services in the 'tied' markets through contracts with health plans."  This conforms with the second element of a tying claim as articulated in *UAS Mgmt, Inc. v. Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357, 369 (2008) ("[A] tying agreement, arrangement or condition [ ] whereby the sale of the tying product [or service] was linked to the sale of the tied product or service;").[2]  This Court cited *UAS* with approval in discussing *per se* tying in its Order on Proposed Jury Instructions.  ECF 1193 at 5.

*UAS* addressed a *per se* tying claim in the context of contracts between health plans and hospitals.  It held that there was an unlawful tie when defendant hospital linked the sale of inpatient and outpatient hospital services through its contracts with health plans, although the contract did not "require the insurers to purchase any services from respondent."  *Id*. at 371.  This instruction should use the verb "linked" to properly address tying in the context of forcing and restrictive provisions in contracts between hospitals and health plans present in *UAS* and here.

Pursuant to *UAS*, this instruction should also refer to forcing health plans to "purchase or contract for" tied inpatient hospital services.  The contractual tying arrangement in *UAS* required health plans to give defendant preferential network status for outpatient services not because its product was lower-priced or higher-quality, but as a condition for purchasing the defendant's must-have inpatient services.  *Id*.  In *UAS*, the hospitals required health insurers to contract for

---

[2] This language also was used in *Suburban Mobile Homes, Inc. v. AMFAC Communities, Inc.*, 101 Cal. App. 3d 532, 542 (1980), the case cited by the Court for the elements of a tying claim in denying Sutter's motion for summary judgment on Plaintiffs' *per se* tying claim.  *Sidibe v. Sutter Health*, 2021 WL 879875, at *6 (N.D. Cal. Mar. 9, 2021), and *Classen v. Weller*, 145 Cal.App.3d 27, 37–38 (1983).  In *Suburban Mobile Homes,* the court found a *per se* tying arrangement based on a written agreement between a trailer park operator and mobile home dealers that included restrictive provisions.  101 Cal. App. 3d at 538.

PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTION AND VERDICT FORM ISSUES
CASE NO. 3:12-CV-4854-LB

1    both outpatient services and inpatient services in a single contract with restrictive provisions.

2    This was sufficient to establish a *per se* tie under the Cartwright Act, although the contract did not

3    **"require the insurers to purchase any services from respondent."**  169 Cal. App. 4th at 371

4    (emphasis added).  Here, as in *UAS*, Sutter's requirement that health plans contract for services

5    from all Sutter hospitals is a tying arrangement, even if all Sutter hospitals were not in every

6    health plan network.

7         Tying liability "has not been limited to situations in which sellers engaged in express

8    conditioning with respect to the sale of the tying product.  For example, 'separate availability will

9    not preclude antitrust liability where a defendant has established its pricing policy in such a way

10   that the only viable economic option is to purchase the tying and tied products in a single

11   package.'" *Apple iPod iTunes Antitrust Litig.*, 2009 WL 10678931, at *3 (N.D. Cal. May 15,

12   2009) (citation omitted).  By forcing the Health Plans to contract for the purchase of all Sutter

13   hospitals in Systemwide Agreements, Sutter forces them "to purchase the tying and tied products

14   in a single package."  By forcing the Health Plans to accept non-par penalty provisions setting

15   rates for Sutter hospitals that are not included in a health plan network, Sutter eliminates the

16   economic viability of provider networks that do not include all Sutter hospitals.

17        Plaintiffs also submit that this instruction should use the word "forced" rather than

18   "coerced" in the first sentence to make it more easily understandable for the jury without

19   changing its meaning.  The word "coerce" often implies threats of violence, which do not need to

20   be proven under the Cartwright Act to show an illegal tie.  "Force" is a term frequently used in

21   Cartwright Act cases.  *See, e.g.*, *Sidibe v. Sutter Health*, 2021 WL 879875, at *5 (N.D. Cal. Mar.

22   9, 2021); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12 (1984) ("[T]he essential

23   characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over

24   the tying product to force the buyer into the purchase of a tied product that the buyer either did

25   not want at all, or might have preferred to purchase elsewhere on different terms.").

26   Alternatively, both terms could be used in this instruction.  *See UAS Mgmt*, 169 Cal. App. 4th at

27   369 ("force or coerce").

28

4

**IV.   The First Question of the Jury Questionnaire Should Include Changes Consistent with Plaintiffs' Requested Changes to CACI 3420**

For the reasons explained in the previous section, Plaintiffs submit that the third question in the verdict form should ask: "Did Sutter Health link the sale of inpatient hospital services in the tying hospitals to the sale of inpatient hospital services from Sutter in the tied markets by forcing Health Plans to purchase or contract for the purchase of inpatient hospital services from Sutter in one or more of the tied markets as a condition of purchasing for contracting for the purchase of inpatient hospital services from Sutter in one or more of the tying  markets?"

**V.   The Jury Instructions Should Identify the Health Plans as the Relevant Purchasers**

The jury instructions should identify the Health Plans as the pertinent purchasers of inpatient hospital services.  "[B]ecause patients are 'largely insensitive' to price, antitrust analysis focuses on the interactions between hospitals and health plans, not hospitals and patients" *Saint Alphonsus Med. Ctr. – Nampa Inc. v. St.  Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015) ("*St. Luke's*").  "[T]he correct [] focus [is] on the likely response of insurers to a hypothetical demand by all the [hospitals] in a particular market for a SSNIP."  *Id.*  This is clear from the fact that the Health Plans are the *direct* purchasers and the premium payers the *indirect* purchasers of Sutter's inpatient hospital services.

The jurors in this case must consider SSNIP analysis in defining the relevant geographic and product markets in this case.  *St. Luke's* requires that hospital services markets must be defined based on the "likely response of insurers" and the jurors need to be so informed, in order to correctly apply the controlling law.  This controlling holding of *St. Luke's* has been consistently applied by the Ninth Circuit in this case and by other Courts of Appeal in hospital antitrust cases.  *See Sidibe v. Sutter Health*, 667 F. App'x 641 (9th Cir. 2016); *FTC v. Advocate Health Care Network*, 841 F.3d 460, 471 (7th Cir. 2016); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 343 (3d Cir. 2016) (reversing judgment for defendant given district court's "fail[ure] to properly account for the likely response of insurers in the face of a SSNIP" when defining hospital markets).  If the jury were to fail to "properly account for likely response of insurers" in defining relevant markets and find for Sutter, reversal would be required.  Sutter is

1  actively inviting such error by telling the jury that Sutter lacks market power in this case based on

2  options available to patients.  Accordingly, the Court must inform the jury that the Health Plans

3  are the relevant purchasers in this case to prevent reversible error.

4        Plaintiffs' claims in this case address Sutter's contracts with Health Plans for the sale of

5  inpatient hospital services to the Health Plans.  As the Court's proposed CACI 3405 instruction

6  states, one of the elements Plaintiffs must prove for their course of conduct claim is that "**Sutter**

7  **and insurance companies** agreed to contracts with terms that unreasonably restrained trade

8  because they **prevented the insurance companies** from steering patients to lower-cost non-

9  Sutter hospitals within the health-plan network."  ECF 1276 at 11 (emphasis added).  The tying

10  and market definition instructions should also instruct the jury to decide the tying and relevant

11  market issues based on the options available to the Health Plans who contract with Sutter to

12  purchase hospital services, rather than the downstream options available to Health Plan members.

13  The jury should be instructed that because the tie was imposed on the Health Plans, the relevant

14  markets must be determined based on the options available to the Health Plans.  *See Digidyne*

15  *Corp. v. Data General Corp.*, 734 F.2d 1336, 1342-4 (9th Cir.1984) ("The tie was therefore

16  imposed on these OEMs, not on the ultimate consumer of the finished computer product.").

17        The Order on Proposed Jury Instructions cites the Court's first summary judgment

18  decision as finding that the responses of both patients and Health Plans to market changes are

19  relevant to market determination.  ECF 1193 at 3.  But that decision concluded that "it is the latter

20  response — the response of health plans — that is the focus of the hypothetical-monopolist test

21  here."  *Sidibe v. Sutter Health*, 2019 WL 2078788, at *25 (N.D. Cal. May 9, 2019) (quoting *St.*

22  *Luke's*).  The Court also held, that "[h]ere, the consumers responding to a hypothetical-

23  monopolist hospital's SSNIP are health plans, not the health-plan enrollees (*i.e.*, patients) because

24  health plans (not enrollees) directly pay the hospital's price increases."  *Id*. at *24; *see also Sidibe*

25  *v. Sutter Health*, 333 F.R.D. 463, 471 (N.D. Cal. 2019) ("hospitals [such as Sutter] sell hospital

26  services to health-insurance plans [such as Blue Shield, Anthem, Aetna, Health Net, or

27  UnitedHealthcare]."  *Id*. at 471(citing *St. Luke's*, 778 F.3d at 784 & n.10).

28

PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTION AND VERDICT FORM ISSUES
CASE NO. 3:12-CV-4854-LB

1  Sutter has incorrectly argued that *St. Luke's* is inapposite because Kaiser Permanente did

2  not have hospitals in the geographic market in that case and because Kaiser is vertically

3  integrated.  That argument is a red herring because the Health Plan witnesses have all confirmed

4  that they cannot purchase hospital services from Kaiser and therefore cannot substitute Kaiser

5  hospitals for Sutter hospitals in response to Sutter price hikes.

6  The jury needs to be instructed that for market definition purposes, the relevant purchasers

7  in this case are the Health Plans, so the jury can decide this case according to the governing law.

8  **VI.      Sutter's Requests to Change the Jury Instructions Should be Denied**

9  **CACI 3412, CACI 3423 and CACI 3405:**  The Court has repeatedly rejected Sutter's

10  proposal to alter CACI 3412, CACI 3423 and CACI 3405, purportedly "to align with the Court's

11  ruling on market power."  Sutter first proposed in July 2021 that CACI 3412 be altered to state

12  that "If you conclude that Sutter does not have market power in the relevant markets that I will

13  describe, then you must find for Sutter on all counts in this case." ECF 1133 at 96.  In its Order

14  on Proposed Jury Instructions, the Court rejected Sutter's proposed language (ECF 1193 at 6, n.

15  6) and, instead, ordered that "[t]he court will instruct the jury with the standard CACI instruction

16  on market power for both claims." *Id.* at 8.

17  The Court excluded this proposed language in CACI 3412 in its Proposed Final Jury

18  Instructions but included an Introductory Cartwright Act instruction informing the jury that

19  market power applies to both Plaintiffs' claims.  ECF 1194 at p. 8.  *See also* revised Proposed

20  Final Jury Instructions. ECF 1276 at 8.  The Court's proposed instructions are completely

21  consistent with its market power ruling in its Order on Proposed Jury Instructions.

22  Sutter reargued this issue suggesting the same alteration of CACI 3412 in a letter brief

23  dated January 24, 2022. ECF 1403.  In that letter brief, Sutter further requested that the Court

24  revisit its decision rejecting Sutter's suggestion that the Verdict Form include additional multi-

25  part questions that Sutter previously proposed in its Proposed Verdict Form. *See* ECF 1130-1 at

26  177.  On February 4, 2022, the Court denied Sutter's requested alterations:

27

28

7

> In the introductory instruction, the court already said that the concepts "market" and "market power" applied to both claims. – ECF No. 1276 at 8.) That seems sufficient for now. The issue can be discussed at the charging conference."

ECF 1425.

While the Court's Order states that the issue can be discussed at the charging conference, there is no reason the Court should deviate from its repeated sound rulings that the current market power instructions are sufficient. The Judicial Council's CACI 3412 does not include the language Sutter seeks, and for good reason. It would be inappropriate to isolate and elevate the market power element over all the other elements of the Tying and Rule of Reason claims by altering CACI 3412 to state that the jury "must find for Sutter on all counts" if the market power element is not met. The Court's Cartwright Act Claim — Introductory Instruction already instructs the jury that the market power requirement applies to both claims. *See* ECF 1276 at 8.

In that letter brief, Sutter also suggested, as a so-called "alternative cure," altering CACI 3423 to state that economic power for the Tying Claim exists only if "Sutter had the ability to increase prices or reduce output in that market without losing market share." If Sutter again proposes such an alternative, the Court should again reject it. While the ability to charge supracompetitive prices is one way to show market power, it is not, as Sutter suggests, the only way. For example, market share and barriers to entry also demonstrate market power. *See* CACI 3412. Moreover, Sutter's ability to force the Health Plans to contract for all Sutter providers in a single contract – and to force them to accept contractual provisions they did not want – also demonstrates market power. Accordingly, Sutter's "Alternative Cure" should be rejected because nothing needs to be cured and Sutter's proposed economic power language misstates the law.

**CACI 3405**: Sutter announced last night (Feb. 27) that it seeks to change the first numbered paragraph of CACI 3405 to remove the words "unreasonably restrain trade." That change should not be made because that paragraph of the CACI form instruction includes those words. Moreover, the parties agreed to modifications of CACI 3405 in ECF 1273 that were accepted by the Court on October 11, 2021 in ECF 1276, and Sutter never proposed this unnecessary and inappropriate change until February 27, 2022.

1    **CACI 3411:**  Sutter's argument that the word "purpose" should be deleted from CACI

2    3411 also has no merit.  The Court's proposed instruction tracks the CACI form in instructing "In

3    deciding whether Sutter's challenged restraint has an anticompetitive or beneficial purpose or

4    effect on competition, you should consider the results the restraint was intended to achieve or

5    actually did achieve."  ECF 1276 at 11.  The Court's proposed CACI 3411 also follows form in

6    stating "In balancing these purposes or effects, you also may consider, among other factors, the

7    following:….(d) The reasonableness of the stated purpose for the restraint."  Removing the word

8    "purpose" from this instruction, particularly from subsection (d), would destroy its meaning.

9         Moreover, altering this instruction as Sutter requests would be contrary to controlling

10   Cartwright Act law.  "A contract, combination, or conspiracy is an illegal restraint of trade if it

11   constitutes a *per se* violation of the statute or has as its purpose or effect an unreasonable restraint

12   of trade."  *Corwin v. Los Angeles Newspaper Service Bur.*, 22 Cal. 3d 302, 314–15 (1978);

13   *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 446 (N.D. Cal. 2017); *see also,*

14   *Pac. Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1202 (9th Cir. 1975)

15   (approving jury instruction based on "agreement the purpose or effect of which is to unreasonably

16   restrain trade" because it "fairly embodied the law of this circuit.").

17        Sutter will likely argue that "purpose" should be removed from this instruction because

18   the Court agreed to Sutter's earlier request to remove the word from CACI 3405.  But the fact that

19   the Court did not include "purpose" in its proposed instruction defining "Essential Factual

20   Elements" of the Course-of-Conduct claim does not mean that the Court should compound this

21   invited error by also removing it from CACI 3411.  If consistency is the goal, the Court should

22   restore "purpose" to CACI 3405 in conformance with the CACI form instruction and case law.

23        **CACI 3414:**  Sutter has stated that CACI 3414 "[s]hould be revised to better align with

24   facts of this case (*e.g.*, 'transporting a service')."  Plaintiffs have no objection to removing the last

25   sentence of the third paragraph of CACI 3414 which refers to "transporting a service" or to

26   removing the entire third paragraph.  Sutter's proposed Geographic Market instruction, however,

27   improperly sought to rewrite this paragraph to refer to "whether patients in one area tend not to

28

9

travel to another area to receive general acute care inpatient hospital services" in direct

contravention of *St. Luke's*. *See* ECF 1133 at 67. Accordingly, Sutter's request to revise CACI

3414 should be denied.

**CACI 3420:** The Court should decline Sutter's invitation to replace the word "conduct"

with "tying arrangement" in CACI 3420. Both the CACI 3420 form instruction and the Court's

proposed CACI 3420 correctly include the word "conduct" in the fourth numbered paragraph.

While the word "value" after "dollar" could be added to the Court's proposed language for clarity

and to conform with the CACI model, there is no reason to deviate from the CACI form by

replacing the word "conduct" with "tying arrangement."

**CACI 3440:** The Court's proposed CACI 3440 correctly instructs the jury to "decide

how much money will reasonably compensate the plaintiffs and the class for the harm." Sutter's

assertion that this instruction should be "limited to the harm caused to Plaintiffs" ignores the harm

to the absent Class Members who are also entitled to damages if liability is established. The

fourth paragraph of this instruction should also refer to "plaintiffs and the class" to conform with

the language in the first and fifth paragraphs.

The Court should also deny the extensive changes to the Verdict Form Sutter requests.

**VII.     List of Additional Requested Changes to Instructions and Verdict Form**

Pursuant to F. R. Civ. Proc. 51, Plaintiffs also submit that the Court should give

Plaintiffs' Instructions P-13, S-1 through S-11; and S-17 and S-18 from the Joint Proposed Jury

Instructions (Disputed & Undisputed) (ECF 1133) rather than the corresponding instructions in

the Court's Proposed Instructions (ECF 1276) and give Plaintiffs' proposed Instruction 1.5 (ECF

1130, Ex. B) rather than the Court's proposed Instruction 1.5 in ECF 1418.

The Verdict Form should ask Questions 1 and 2 in Plaintiffs' Proposed Verdict Form

(ECF 1130-1 at 17-3), rather than Questions 1 and 2 in the Court's Proposed Verdict Form. (ECF

1275); ask Question 6 in ECF 1130-1 at 17-3, rather than Question 5 in ECF 1275; and ask

Questions 8 and 9 in ECF 1130-1 at 17-3.

PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTION AND VERDICT FORM ISSUES
CASE NO. 3:12-CV-4854-LB

Respectfully Submitted

February 28, 2022                                                    **Constantine Cannon LLP**

                                                                    /s/ *Matthew L. Cantor*

                                                                    Matthew L. Cantor
                                                                    *Counsel for Plaintiffs*

PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTION AND VERDICT FORM ISSUES
CASE NO. 3:12-CV-4854-LB