March 4, 2022

**BY ELECTRONIC CASE FILING**

The Honorable Laurel Beeler
United States Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *Djeneba Sidibe et al. v. Sutter Health, Case No. 3:12-cv-04854-LB*

Dear Judge Beeler:

Plaintiffs, on behalf of the certified Class, and Defendant Sutter Health (together, the "Parties") submit this joint letter regarding Table 3 of TX 8764.

PLAINTIFFS' STATEMENT

Plaintiffs respectfully request that the Court strike all references to Table 3 of TX 8764.0057,[1] including Ms. Brendt's testimony concerning it.  The chart contains "assumptions" for out-of-network charges from the California Department of Insurance ("DOI") in the context of a then-proposed network adequacy regulation.  But ***selective*** references to statements by state bodies concerning out-of-network rates charged to health plans are prejudicial: there is a substantial chance that they would mislead jurors into trusting that 90% of billed charges was somehow standard or customary for out-of-network hospital rates, or that the State of California had stated that such a rate was fair and reasonable.  *See* Fed. R. Evid. 403.  Allowing this evidence to stay in the case is particularly problematic here because the State of California found that Sutter's non-par, out-of-network rates of 90%-100% of billed charges *were anticompetitive*.  It is, for that very reason, that it sued Sutter.  The Court should exclude references to Table 3 for the same FRE 403 reasons it granted Sutter's motion in limine to exclude all references to the California Attorney General's suit against Sutter.  Alternatively, if references to Table 3 of TX 8764 are not stricken, Plaintiffs should be allowed to "rebut" this incomplete information with evidence from the ***most relevant*** source—the California Attorney General's antitrust investigation and lawsuit challenging Sutter's out-of-network rates.  *See* MIL 2 (ECF 1167 at 8).

Sutter counsel pointed to Table 3 of TX 8764 for the first time during the redirect examination of Melissa Brendt, Sutter's Chief Contracting Officer, purportedly to ask whether she considered the 90% figure as an "assumed" out-of-network rate when negotiating non-participating rates with health plans.  Sutter counsel could have referenced this table during Ms. Brendt's direct examination when he asked numerous questions as to discussions with health plans over the non-participating rate set forth

---

[1] The proposed exhibit TX 8764 has been attached as Exhibit P1.

March 4, 2022
Page 2

in Sutter's contracts, but he chose not to do so.  In response, Plaintiffs' counsel was allowed only 5 minutes of re-cross on it.[2]

In Table 3, DOI posits, without any factual basis, that out-of-network costs would be 90% of billed charges for individual, small group and large group plans, and that this figure would not change based on the proposed network adequacy regulation.  *See* TX 8764.0056-0057 ("***Without current data*** from insurance companies reflecting the new ACA market, the assumptions on . . . percent of billed charges were modified to reflect the implementation of the proposed regulation as detailed in Table 3") (emphasis added).  Thus, by the document's very own admission, the 90% out-of-network assumption is an afterthought, and the probative value of the exhibit to the jury would be very limited.[3]

That TX 8764 includes ***an official seal*** on its first page would further confuse the jury into falsely believing that the State of California's imprimatur somehow falls on the exhibit.[4]  Because of this risk of prejudice, courts regularly reject selective evidence of "regulatory compliance" because it "could easily inflate the perceived importance of compliance and distract the jury from the central question before it[.]"  *In re C.R. Bard, Inc.*, 810 F.3d 913, 922 (4th Cir. 2016).  Here, that "central question" is whether Sutter's conduct violated the ***antitrust*** laws.  *See also Almendarez v. BNSF Ry. Co.*, 2014 WL 1338090, at *2 (W.D. Wash. Apr. 2, 2014) (excluding evidence or argument of statutory legislative history).  In addition, it is the Court's role—not Sutter—to "instruct the jury on the applicable law."  *Broadus v. CSX Transp., Inc.*, 2009 WL 1402025, at *6 (E.D. La. May 14, 2009) ("The Court will not allow (i), the FRA Regulations, to be introduced into evidence.  The Court will instruct the jury on the applicable law.").  Thus, admitting Table 3 is not only "prejudicial" but would also be at odds with "court instruct[ions] . . . about the [relevant legal] provisions," *Lan v. Allstate Ins. Co.*, 127 F. App'x 932, 933 (9th Cir. 2005); *see also Baines v. Maddock*, 2007 WL 2994802, at *1 (S.D. Cal. Oct. 11, 2007) (granting motion to exclude a statute and two regulations "on the grounds that they are irrelevant and would confuse the jury.").  As a result, any probative value related to the DOI's assumptions, factually devoid as they are, on out-of-network rates is substantially outweighed by a danger of unfair prejudice and confusion, and would mislead the jury.  FRE 403.  Table 3 and references to it should therefore be excluded.

Further, this Court has ***already excluded*** evidence from another state agency's consideration of Sutter's out-of-network rates – the antitrust investigation and prosecution by the California Attorney General's office.  *See* MIL 2 (ECF 1167 at 8).  If Sutter is allowed to adduce evidence suggesting its

---

[2] Sutter claims that Plaintiffs' counsel "published" Table 3 to the jury.  But counsel merely re-displayed the Table for the purposes of cross-examination and has not consented to admission of the exhibit into evidence.

[3] Sutter's citation of *Kohli v. Gonzales*, 473 F.3d 1061 (9th Cir. 2007) is of no moment.  That case concerned judicial review of the ***legal sufficiency*** of actions of a *federal* agency as a matter of *federal* immigration law.  Here, the question is the prejudicial effects and lack of probative value from baseless assumptions from a state agency in the context of regulatory notice-and-comment responses.

[4] Thus, Sutter's citation to *Alsabur v. AutoZone, Inc*., 2014 WL 3841042, (N.D. Cal. Aug. 1, 2014) is inapposite—it is Table 3's origin from a California agency and its lack of factual basis that makes the document prejudicial and non-probative, not merely the document's inaccuracy.

March 4, 2022
Page 3

non-par rates are presumptively reasonable according to one state agency, in fairness, Plaintiffs should be allowed "to rebut" with evidence from that more relevant source. *Id.* Here, the California Attorney General's Complaint conflicts with DOI's assumption by alleging that Sutter's "out-of-network pricing provisions" significantly exceeds the "reasonable and customary rate," and thus "render uneconomical any narrow networks that exclude" Sutter hospitals. California AG Compl. ¶117.[5] By foreclosing "narrow and tiered networks," the California Attorney General argued that Sutter "cause[d] damage to consumers, Employers, and the state by forcing [health plans] . . . to pay higher prices for such services and products than they would pay but for this anticompetitive conduct." *Id.* ¶128. Plaintiffs, however, were not permitted to raise these issues on cross, given this Court's prior rulings. *See* MIL 2 (ECF 1167 at 8). But for those rulings, Plaintiffs would have cross-examined Ms. Brendt regarding the California AG investigation and asked whether it impacted Sutter's willingness to demand such high non-participating, out-of-network rates for Sutter facilities.[6]

For these reasons, Plaintiffs respectfully request that the Court strike all references to TX 8764.0057 and Table 3 therein, and prevent any publication of the table to the jury. Plaintiffs further respectfully request that the Court explain to the jury that any reference to Table 3 should be disregarded. In the alternative, the Court should allow Plaintiffs to rebut DOI's out-of-network assumptions with evidence from the California Attorney General's investigation into Sutter's anticompetitive non-par rate provisions.

DEFENDANT'S STATEMENT

Plaintiffs' attempt to exclude one page of the Department of Insurance report (TX 8764) is baseless.

*First*, plaintiffs complain that Sutter asked about Table 3 and the 90% of billed charges figure only on redirect when it "could have referenced" the information earlier. But Mr. Cantor raised this objection at the time and the Court properly overruled it: "[I]t came in for two reasons: Sort of the black box kind of aspect of reasonable and customary practices and, also, about how the non-par rate

---

[5] The California AG Complaint in *Becerra v. Sutter Health* has been attached as Exhibit P2. The Complaint is not hearsay as a verbal act with legal significance, and would provide foundation for testimony as to Ms. Brendt's ***understanding*** of a state agency's allegations that Sutter's non-par rates were excessive and anticompetitive.

[6] Sutter responds with caselaw for the uncontroversial proposition that evidence of previous litigation ***alone*** is often prejudicial. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7803893 (N.D. Cal. Nov. 15, 2016); *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. 06-CV-00244-RMW, 2008 WL 282376 (N.D. Cal. Jan. 28, 2008); *Aetna, Inc. v. Blue Cross Blue Shield of Michigan*, 2015 WL 1646464 (E.D. Mich. Apr. 14, 2015). But here, Sutter has proffered selective, revisionist evidence from one state agency to suggest that the California government considered Sutter's 95% non-par rate to be presumptively reasonable. If this evidence is kept in the record, fairness requires additional evidence to rebut this presupposition to allow the jury an accurate picture of how the State as a whole evaluated Sutter's non-par rates.

March 4, 2022
Page 4

operated in practice that came in in direct.  And then you crossed on the non-par rate, and this is
redirect on the non-par rate in practice. . . . So objection overruled."  Trial Tr. 3281:10–19.

The transcript makes clear that the Court's ruling was well-founded.  It was Mr. Cantor who
implied on cross-examination that TX 8764 did not comment on the challenged provisions or whether
the non-par rate was anticompetitive:

> Q. When we were discussing, do you know whether the DOI -- this is 2015; right?
> That's when the report came down?
> A. Yes.
> Q. That's three years after this litigation was filed; right?
> A. Yes.
> Q. Did it say anywhere there that the contractual provisions that Sutter had with
>     Aetna or Health Net or United or Blue Shield or Anthem Blue Cross were per se
>     legal?
> A. No. It wasn't about that.
> Q. It didn't comment on the contractual provisions; correct?
> A. Correct.
> Q. It didn't comment on whether having a non-par rate of 95 percent of billed
>     charges was anti-competitive or not; correct?
> A. It did not.

Trial Tr. 3094:7–21.

Following this testimony, Sutter was entitled to redirect Ms. Brendt on whether the report
influenced Sutter's decision to keep its out-of-network rate at 95% of billed charges and to point to the
section of the report that influenced Sutter's evaluation of its negotiated out-of-network rate.  *See
United States v. Makhlouta*, 790 F.2d 1400, 1402-03 (9th Cir. 1986) (no error permitting redirect that
"fell comfortably within the scope of the cross-examination").  And consistent with the Court's
guidance, Sutter asked a mere two questions about the table.  Following that, Mr. Cantor asked and
was granted an opportunity to re-cross Ms. Brendt specifically on her testimony that she relied upon
the table.  The jury should be permitted to consider the table and paragraph that Mr. Cantor published
to the jury given that (1) the table is relevant to the issues in the case (namely, the level of out-of-
network rates), (2) the testimony reflects that Sutter relied on the DOI findings in the ordinary course
of business when evaluating the requests by the health plans to remove or reduce the non-participation
rate, (3) Mr. Cantor was given extra time to ask questions about Ms. Brendt's testimony and the report,
which Mr. Cantor took full advantage of.  Trial Tr. 3280:20–3281:1, 3282:3–12, 3288:11–3289:18.[7]

---

[7] Plaintiffs state they were only "allowed" five  minutes of re-cross on the DOI table.  But five minutes
is all counsel requested.  *See* Trial Tr. 3286:23–24 ("Well, that's fine. I have five, ten minutes, Your
Honor."); *id.* 3288:2–5 ([The Court]: "I'll give you five minutes, and then you can have -- you can
redirect again. Five minutes and that's it. MR. CANTOR: Thank you.").  And that five minutes proved
plenty: Mr. Cantor asked questions about the DOI table on re-cross and then moved on to a different

March 4, 2022
Page 5

*Second*, plaintiffs suggest that the table should not be admitted because "the DOI posits, without any factual basis, that out-of-network costs would be 90% of billed charges . . . and that this figure would not change based on the proposed [changes to the] network adequacy regulation." But DOI is the agency responsible for regulating insurance in California and DOI prepared TX 8764 specifically as part of its analysis of the proposed changes to network adequacy regulations. Thus, far from an "afterthought," DOI's estimate of what the out-of-network rates would be is presumptively based on the agency's experience, expertise, and professional judgment. *See Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007) (explaining that there is a "well established principle of federal law that administrative agencies are entitled to a presumption that they 'act properly and according to law" and that "[i]n the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties") (citations omitted). And in any event, plaintiffs' argument goes to the weight of the evidence and not its admissibility. Indeed, plaintiffs cross-examined Melissa Brendt on this very point.

*Third,* Plaintiffs suggest that the table will mislead the jury into believing that a non-participating rate set at 90% of billed charges was "presumptively reasonable according to one state agency." That is incorrect. Sutter is not arguing that the DOI endorsed Sutter's non-par rate. Sutter's two questions about the table were (1) whether Ms. Brendt understood the DOI to be expressing a view about what out-of-network rate is "common," and (2) whether this influenced her evaluation of Sutter's rate. Trial Tr. 3282:3–12. The report and Ms. Brendt's testimony are plainly relevant to the jury's evaluation of Sutter's non-participation rate and of whether plaintiffs are correct in asserting that Sutter's rate was out of line with common out-of-network rates. Sutter did not ask whether the DOI endorsed any particular rate, and Ms. Brendt offered no such testimony. Plaintiffs' argument that the State of California did not approve of a 90% non-participation rate because the California AG filed an antitrust suit against Sutter is misplaced for the same reasons.

Moreover, context is important. It was *Mr. Cantor* who first introduced this issue when he asked Ms. Brendt whether the DOI had commented on a 95% non-par rate. Trial Tr. 3094:19–21. Ms. Brendt responded no to that question and Sutter does not contend otherwise. But the DOI's use of 90% reimbursement for out-of-network providers is one piece of evidence (among others that Sutter has adduced at trial) related to why Sutter chose 95% and did not accede to demands that the rate be 60%, which effectively would be the in-network rate. Plaintiffs cannot elicit testimony that the exhibit nowhere speaks to the reasonableness of Sutter's non-participation rate, and then preclude Sutter from correcting that misstatement (or alternatively demand the ability to introduce highly prejudicial evidence about other litigation against Sutter). That would be highly prejudicial, and would mislead the jury, which is entitled to evaluate the facts. What's more, the jury saw the table and heard the testimony. The jury is well equipped to determine how much weight to give the testimony and table in light of Mr. Cantor's cross- and recross-examinations.

*Finally*, plaintiffs suggest an unlevel playing field because Sutter was allowed to ask about Table 3 while they were precluded from asking about the AG investigation from the Court's prior MIL

---

topic altogether after one minute. *See* Trial Tr. 3288:11–3289:18 (questioning on DOI table); *id.* at 3289:19–25 (moving on).

March 4, 2022
Page 6

order.  At the risk of repetition, it is important to underscore that Sutter's questioning on this chart was prompted by plaintiffs' cross-examination.  Sutter did not ask one question on direct about this table, but was compelled to do so when Mr. Cantor asked questions that would have misled the jury about what the DOI stated.  Putting this important context aside, there is no undue prejudice to plaintiffs from the DOI chart: to the extent the jury views the evidence as unfavorable to plaintiffs, it is doing so on the merits of the issues the jury is charged with deciding.  *See Alsabur v. AutoZone, Inc.*, 2014 WL 3841042, at *13 (N.D. Cal. Aug. 1, 2014) ("[t]hat the evidence hurts Plaintiff's case does not make [it] unduly prejudicial under Rule 403").  The AG investigation and allegations are not analogous.  Unlike findings by a governmental body, allegations in a complaint are not findings and are quintessential hearsay.  *PCA-Corr., LLC v. Akron Healthcare LLC*, 2021 WL 1582984, at *4 (S.D. Ohio Apr. 22, 2021) ("the allegations in the complaints constitute inadmissible hearsay).[8]

Moreover, as the Court has recognized, allowing evidence of the AG investigation, lawsuit, and consent decree involving the same contract provisions would be highly prejudicial and would effectively end the case for Sutter.  The jury would decide the case based on what happened in another case that never went to trial rather than based on the evidence before them.  And no limiting instruction could be crafted to un-ring that bell.  Indeed, courts in this district and elsewhere have repeatedly recognized the unique 403 concerns that other litigation or investigations into the defendant pose.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) (if "a jury hears that some or all of the Defendants have been found liable by the [European Commission], it will be very difficult for the jury not to find them liable as well"); *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. 06-CV-00244-RMW, 2008 WL 282376, at *4 (N.D. Cal. Jan. 28, 2008) (excluding an FTC decision out of concern "about the undue weight or even de facto collateral estoppel effect that a jury would accord to the FTC's liability opinion"); *Aetna, Inc. v. Blue Cross Blue Shield of Michigan*, 2015 WL 1646464, at *10 (E.D. Mich. Apr. 14, 2015) (excluding evidence of other cases that were "resolved without any finding of liability" because it would be unduly prejudicial and require litigating the other cases.

As Sutter explained during oral argument, plaintiffs' statement that the *UEBT* consent decree requires that the contract provisions at issue in this case be removed is wrong.  If plaintiffs were permitted to bring up the investigation and settlement, Sutter would be compelled to explain what the consent decree permits and prohibits, which would be a complete sideshow.  But even if plaintiffs were correct that the consent decree required Sutter to remove all the provisions, which it does not, the investigation and settlement should still be precluded under Rule 408 and 403.  This case is about whether the contract provisions caused damages in 2011–2020 and thus the focus is on what the contract provisions were during that period.  Indeed, the parties stipulated that neither side would discuss contract negotiations after October 2018.  ECF 1201 ¶ 4.  Plaintiffs proposed the cut-off to avoid any testimony about the consent decree; Mr. Cantor explained to me that he did not want the jury to think that the challenged conduct had stopped.

---

[8] Plaintiffs' claim that a complaint is non-hearsay is incorrect.  *See In re Tenet Health Care Corp. Securities Litig.*, 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007) (granting motion in limine to exclude SEC Complaint as "inadmissible hearsay").

March 4, 2022
Page 7

       The cases plaintiffs cite do not dictate a different result.  In *In re C.R. Bard*, the court was concerned about "subjecting the jury to many hours, and possibly days, of complex testimony about regulatory compliance."  810 F.3d at 922.  That was not the case here, where Ms. Brendt's testimony on the topic lasted at most 10 minutes.  And the *Lan* and *Baines* courts found the evidence at issue of marginal relevance.  *Lan*, 127 F. App'x at 933 (legislative history "would have prejudiced [defendant] and been of little relevance to [plaintiff's] claims"); *Baines*, 2007 WL 2994802, at *1 (statute and regulation were "irrelevant").  For the reasons discussed above, Table 3 is highly probative to Sutter's defense.  Finally, *Almendarez* and *Broadus* stand for the unremarkable proposition that the court has the authority to exclude evidence.  Sutter does not contend that the Court does not have this authority.  Instead, Sutter's position is that the Court should not exclude highly relevant evidence for which plaintiffs opened the door.

       For the foregoing reasons, plaintiffs' request should be denied.

                  Respectfully submitted

                  Matthew L. Cantor
                  *Counsel for Plaintiffs*

                  David C. Kiernan
                  *Counsel for Sutter Health*