CONSTANTINE CANNON LLP
MATTHEW L. CANTOR (*pro hac vice*)
JEAN KIM (*pro hac vice*)
335 Madison Avenue, FL 9
New York, NY  10017
(212) 350-2700
(212) 350-2701 (fax)
mcantor@constantinecannon.com
jkim@constantinecannon.com
prodriguezlopez@constantinecannon.com

*Lead Counsel for Plaintiffs and the Class*

THE MEHDI FIRM, PC
AZRA Z. MEHDI (220406)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Ph: (415) 293-8039
Fax: (415) 432-4301
azram@themehdifirm.com

*Co-Lead Counsel for Plaintiffs and the Class*

FARMER BROWNSTEIN JAEGER
  GOLDSTEIN KLEIN & SIEGEL LLP
DAVID C. BROWNSTEIN (141929)
WILLIAM S. FARMER (46694)
DAVID M. GOLDSTEIN (142334)
235 Montgomery Street, Suite 835
San Francisco, CA 94104
(415) 795-2050
(415) 520-5678 (fax)
dbrownstein@fbj-law.com
wfarmer@fbj-law.com
dgoldstein@fbj-law.com

*Additional Co-Lead Counsel for Plaintiffs and the Class*

STEYER LOWENTHAL BOODROOKAS
  ALVAREZ & SMITH LLP
ALLAN STEYER (100318)
DONALD SCOTT MACRAE (104663)
SUNEEL JAIN (314558)
235 Pine Street, 15th Floor
San Francisco, CA 94104
(415) 421-3400
(415) 421-2234 (fax)
asteyer@steyerlaw.com
smacrae@steyerlaw.com
sjain@steyerlaw.com

*Additional Co-Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DJENEBA SIDIBE, JERRY JANKOWSKI, SUSAN HANSEN, DAVID HERMAN, OPTIMUM GRAPHICS, INC., and JOHNSON POOL & SPA, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH,<br><br>Defendant. | Case No. 3:12-cv-4854-lb<br><br>**PLAINTIFFS' OPPOSITION TO SUTTER HEALTH'S PROPOSED ADDITONAL JURY INSTRUCTIONS**<br><br>Judge:   The Honorable Laurel Beeler |

## I. INTRODUCTION

Late in the day on March 3 — the day before the March 4 Charging Conference – Sutter served Proposed Additional Instructions seeking five new jury instructions. ECF 1500. Although Sutter's filing was inconsistent with Court-ordered deadlines, and without any meet and confer, each of Sutter's proposed instructions was discussed at the Charging Conference. The Court rejected Sutter's Proposed Additional Instructions 3 through 5 and allowed Plaintiffs to file this formal opposition to Sutter's first two additional instructions (Class Action and Disaggregation of Damages).

## II. THE COURT PROPERLY ADDED A CLASS ACTION INSTRUCTION THAT INCLUDES THE PROPER DEFINTION BUT DOES NOT INCLUDE THE EXTRA LANGUAGE SUTTER PROPOSED THAT IS NOT IN THE CLASS DEFINITION

Plaintiffs oppose Sutter's effort to rewrite the class definition to include language, including evidentiary material, that is not in the Court's order defining the class. The Court approved a class notice that defines the class as follows:

> All entities in California Rating area 1, 2, 3, 4, 5, 6, 8, 9 or 10 (the "Nine Rating Areas" or "Nine RAs"), and all individuals that either live or work in one of the Nine RAs, that paid premiums for a fully-insured health insurance policy from Blue Shield, Anthem Blue Cross, Aetna, Health Net or United Healthcare from January 1, 2011 to the present. This class definition includes Class Members that paid premiums for individual health insurance policies that they purchased from these health plans and Class Members that paid premiums, in whole or in part, for health insurance policies provided to them as a benefit from an employer or other group purchaser located in one of the Nine RAs. (ECF 1163 at 3).

After class notice had been sent, Sutter noted an error that required removing from the class definition four counties from within Rating Areas 9 and 10: Mariposa, Monterey, San Benito, and Tulare. Plaintiffs agree this should be clarified in the Class Action jury instruction.

Plaintiffs believe it is important for the class definition instruction to adhere as closely as possible to the class definition the Court approved. Plaintiffs agree with the Court's approach to the Class Action instruction. ECF 1505.

Sutter's additional paragraphs are improper, unnecessary, and confusing. Sutter seeks to insert into the jury instruction evidentiary matters addressed in trial testimony or Plaintiffs'

responses to requests for admissions.  That is the proper way to introduce evidence, not through a jury instruction.  Also, it would be improper to instruct the jury that flex-funded products are not fully insured.  There is evidence in the trial record that some flex-funded products have a component that is fully insured.[1]  This is a fact issue that falls squarely within the province of the jury.  Accordingly, Plaintiffs object to Sutter's proposed Class Action jury instruction.

### III. THE COURT SHOULD REJECT SUTTER'S PROPOSED "DISAGGREGATION INSTRUCTION"

Sutter wants to add a brand-new damages instruction that would require the jury to assess whether each of the alleged restraints standing on its own restrained competition, and whether Dr. Chipty's damages model can disaggregate damages.  To support its position, Sutter cites *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and *City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361 (1992).  Both *Comcast* and *City of Vernon* are inapposite.  Neither case concerned provisions in a contract that operate synergistically to restrain competition.  Moreover, Sutter's overreaching interpretation of those cases has been consistently rejected by courts in this district as inconsistent with the actual holdings of *Comcast* and *City of Vernon*.

In *Comcast*, plaintiffs sought class certification asserting four distinct theories of antitrust impact based on unrelated practices.  The court certified a class based on only one of those four theories.  The four theories in *Comcast* were:

> First, Comcast's clustering made it profitable for Comcast to withhold local sports programming from its competitors, resulting in decreased market penetration by direct broadcast satellite providers. Second, Comcast's activities reduced the level of competition from "overbuilders," companies that build competing cable networks in areas where an incumbent cable company already operates. Third, Comcast reduced the level of "benchmark" competition on which cable customers rely to compare prices. Fourth, clustering increased Comcast's bargaining power relative to content providers."

569 U.S. at 31 (2013).  The Supreme Court ruled that the plaintiffs' expert's impact and damages

---

[1] For example, Michael Beouy, the Blue Shield actuary whose testimony Sutter cited in its Proposed Additional Instructions, testified that "the claims experience for flex-funded groups is ultimately borne for the most part by the group themselves", indicating there is a fully-insured component.  *See* Feb. 14, 2022 Trial Transcript at 874:13-20.

model was insufficient because it was based on all four distinct theories of liability, and it could not disaggregate impact and damages to the lone surviving theory.

In stark contrast to *Comcast*, Plaintiffs have only one theory of liability and antitrust impact, *viz*., the combined effect of Sutter's anticompetitive contractual provisions and practices hampered the development of effective narrow and tiered networks which caused the class to pay premium overcharges. *See Sidibe v. Sutter Health*, 2021 WL 879875, at *1 (N.D. Cal. Mar. 9, 2021) ("The plaintiffs challenge contract terms — such as high rates for out-of-network Sutter services in the Tied Markets and the inability to change Sutter's status as a preferred provider without Sutter's permission — as anticompetitive because the terms allegedly prevented health plans from steering their enrollees away from high-cost Sutter hospitals to lower-priced providers."). Different clauses in the same contract that work together are not separate events or independent legal theories of antitrust impact within the meaning of *Comcast*.[2] When Plaintiffs challenged Sutter at the Charging Conference to provide authority supporting disaggregation of damages from provisions in the same contract, Sutter's silence spoke volumes.

In *Leyva v. Medline Indus. Inc*., the Ninth Circuit explained that *Comcast* requires only that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." 716 F.3d 510, 514 (9th Cir. 2013). Courts in this district have rejected defense arguments to extend *Comcast*, holding that *Comcast* requires nothing more than that the plaintiffs' damage model be tied to their theory of liability and harm.

In *In re Lidoderm Antitrust Litig*., Judge Orrick rejected defendants' attack on plaintiffs' damages model on the ground that it included "damages not 'attributable to the class'."

> They rely heavily on the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). There, plaintiffs initially relied on four theories of antitrust liability and calculated aggregate damages based on each of the four theories. 133 S.Ct. at 1434. However, the district court certified the class based on only one of the four theories, and plaintiffs did not provide a damages calculation for that one theory standing alone. *Id*. Because the plaintiffs relied on "a methodology that identifies damages that are not the result of the wrong"

---

[2] Dr. Chipty served as Comcast's expert economist. She is intimately familiar with that case and undoubtedly considered it in developing her damages model.

alleged, they did not establish that "damages are capable of measurement on a classwide basis," failing to meet the Rule 23(b)(3) requirement. *Id*. at 1433-34.

2017 WL 679367, at *24 (N.D. Cal. Feb. 21, 2017). Judge Orrick held that "***Comcast presents no problem to plaintiffs. They have one theory of injury and one consistent theory of damages . . . .***" *Id*. (emphasis added).[3]

In *In re High-Tech Emp. Antitrust Litig*., Judge Koh rejected defendants' argument that "*Comcas*t holds that a damages model must precisely segregate out effects of every possible factor, including legal conduct" concluding that "Defendants read Comcast's disaggregation holding too broadly." 2014 WL 1351040, at *18 (N.D. Cal. Apr. 4, 2014). *See also Broomfield v. Craft Brew All., Inc*., 2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018) (rejecting *Comcast* argument because "[n]one of CBA's arguments demonstrate that Plaintiffs' damages model is not tied to their theory of liability or harm."); *McLeod v. Bank of Am*., N.A., 2017 WL 6373020, at *17 (N.D. Cal. Dec. 13, 2017) (aggregate damage calculations permissible under *Comcast* where damages model was "tied to Plaintiff's theory of class-wide liability.").

*City of Vernon* also does not support Sutter's proposed disaggregation instruction. In that case, the plaintiff had two wholly distinct theories of antitrust liability: (1) price discrimination and (2) group boycott. The Ninth Circuit had previously held that the acts supporting one of those theories were not anticompetitive. "Vernon insists that all of Edison's acts contributed to the damage figure, but the district court and we have already found that many of those acts were proper." 955 F.2d at 1373.

---

[3] As *Lidoderm* observes, similar *Comcast* challenges have been rejected by Courts of Appeals across the nation: "*See also In re Nexium Antitrust Litig*., 777 F.3d 9, 19 (1st Cir. 2015) (rejecting challenge under *Comcast* where "the plaintiffs' theory and model for damages would only require that the defendants pay aggregate damages equivalent to the injury that they caused."); *In re Urethane Antitrust Litig*., 768 F.3d 1245, 1258–59 (10th Cir. 2014) (explaining the expert's benchmarks in *Comcast* became "useless" upon a ruling that three of the liability theories could not be used); *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) (explaining that *Comcast* stands for the proposition that formulas for classwide measurement of damages should not be "incompatible" with liability theories); *Butler v. Sears*, 727 F.3d 796, 799 (7th Cir. 2013) (a damages model must "measure only those damages attributable to [the liability] theory. If the model does not even attempt to do that, it cannot" meet the requirements of Rule 23(b)(3) (citing *Comcast*, 133 S.Ct. at 1433)).

In *Cathode Ray Tube (CRT) Antitrust Litig.*, Judge Tigar rejected defendants' argument that plaintiffs' damage model did not satisfy *Mt. Vernon* because it failed to disaggregate damages recoverable under the Foreign Trade Antitrust Improvements Act from damages from CRT sales that defendants claimed were not recoverable under FTAIA:

> In *City of Vernon*, plaintiff City of Vernon sued Southern California Edison over Edison's alleged refusal to give Vernon fair access to Edison's transmission lines, preventing Vernon from purchasing electricity from non-Edison suppliers. Among the issues before the court was Vernon's damages study, which both the district court and the Ninth found inadequate. That study failed to distinguish between losses suffered by Vernon because of Edison's anti-competitive conduct, and losses suffered for other reasons.

2016 WL 5725008, at *7 (N.D. Cal. Sept. 30, 2016).

Judge Tigar held that *City of Vernon* and the other cases defendants cited "do not assist Defendants" and "do not stand for the principal that damages in a price-fixing case must be assessed on a transaction-by-transaction basis." *Id*. at *6-*7. *See also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5141861, at *3 (N.D. Cal. Dec. 13, 2010).

Sutter's entire disaggregation argument is based on a false paradigm.  Sutter asserts that if some of the provisions in a contract could be deemed lawful when considered in isolation, the damages caused by the harm to competition caused by the contract must be limited to that caused by provisions that are independently unlawful.  The proper measure of damages, however, is the harm to class members resulting from anticompetitive effects of the entire contract that is the restraint on trade.  No case even remotely supports Sutter's position: It is contrary to antitrust law's fundamental prohibition on contracts that restrain trade.

At the Charging Conference, Sutter argued that the jury should be required to answer special verdict questions regarding the legality of each of the challenged provisions in Sutter's contract because it would assist Sutter with the post-verdict motion Sutter intends to file on the disaggregation issue.  That should not be done because the jury should decide the anticompetitive effect of Sutter's contract as a whole.  As the Ninth Circuit has recognized, the ultimate determination of an antitrust violation rests on the "overall combined effect" of defendants' acts

and that it "would not be proper to focus on specific individual acts." *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992). Sutter's attempt to isolate different elements of Plaintiffs' Course of Conduct claim runs afoul of *Continental Ore Company v Union Carbide & Carbon Corp.*, where the Supreme Court held that antitrust plaintiffs "should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." 370 US 690, 699 (1962).

Moreover, Sutter's verdict form proposal is contrary to the Ninth Circuit's directive for verdict form simplicity. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 876 (9th Cir. 1993) ("The usefulness of special verdicts as a way of communicating a jury's findings to the court is limited. Generally, they are used to answer only questions of ultimate fact, such as whether a product was defective or a person negligent, rather than questions of evidentiary fact."); *Loc. 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 189 F.3d 473 (9th Cir. 1999) (rejecting defendant's argument that "the verdict form should have asked for an answer on each element of each claim.")

## IV. CONCLUSION

For the foregoing reasons, and those discussed during the March 4, 2022 Charging Conference, Plaintiffs respectfully submit that Sutter's Proposed Additional Instructions be denied.

Respectfully Submitted,

March 6, 2022                                                                                  **Constantine Canon LLP**

                                                                                                           _____
                                                                                                           Matthew L. Cantor
                                                                                                           *Counsel for Plaintiffs*


MATTHEW L. CANTOR (admitted *phv*)
JEAN KIM (admitted *phv*)
CONSTANTINE CANNON LLP
335 Madison Avenue
New York, NY 10017
(212) 350-2738
(212) 350-2701 (fax)
mcantor@constantinecannon.com

jkim@constantinecannon.com

AZRA Z. MEHDI (220406)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Ph: 415-293-8039
Fax: 415:432-4301
azram@themehdifirm.com

DAVID C. BROWNSTEIN (141929)
WILLIAM S. FARMER (46694)
DAVID GOLDSTEIN (171039)
FARMER BROWNSTEIN JAEGER LLP
235 Montgomery Street, Suite 835
San Francisco, CA 94104
(415) 795-2050
(415) 520-5678 (fax)
dbrownstein@fbj-law.com
wfarmer@fbj-law.com
dgoldstein@fbj-law.com

ALLAN STEYER (100318)
D. SCOTT MACRAE (104663)
SUNEEL JAIN (314558)
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
235 Pine Street, 15th Floor
San Francisco, CA 941104
(415) 421-3400
(415) 421-2234
asteyer@steyerlaw.com
smacrae@steyerlaw.com
sjain@steyerlaw.com

*Counsel for Plaintiffs and the Class*