| | |
|---|---|
| Jeffrey A. LeVee (State Bar No. 125863) | Robert H. Bunzel (State Bar No. 99395) |
| jlevee@jonesday.com | rbunzel@bzbm.com |
| Elizabeth M. Burnside (State Bar No. 258184) | Patrick M. Ryan (State Bar No. 203215) |
| eburnside@jonesday.com | pryan@bzbm.com |
| JONES DAY | Oliver Q. Dunlap (State Bar No. 225566) |
| 555 South Flower Street, Fiftieth Floor | odunlap@bzbm.com |
| Los Angeles, CA 90071 | BARTKO, ZANKEL, BUNZEL & MILLER |
| Telephone: 213.489.3939 | One Embarcadero Center, Suite 800 |
| Facsimile: 213.243.2539 | San Francisco, CA 94111 |
| | Telephone: 415.956.1900 |
| David C. Kiernan (State Bar No. 215335) | Facsimile: 415.956.1152 |
| dkiernan@jonesday.com | |
| Caroline N. Mitchell (State Bar No. 143124) | |
| cnmitchell@jonesday.com | |
| Brian G. Selden (State Bar No. 261828) | |
| bgselden@jonesday.com | |
| Catherine Zeng (State Bar No. 251231) | |
| czeng@jonesday.com | |
| JONES DAY | |
| 555 California Street, 26th Floor | |
| San Francisco, CA 94104 | |
| Telephone: 415.626.3939 | |
| Facsimile: 415.875.5700 | |

Attorneys for Defendant
SUTTER HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DJENEBA SIDIBE, et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>SUTTER HEALTH,<br><br>    Defendant. | Case No. 3:12-CV-04854-LB<br><br>**SUTTER HEALTH'S RESPONSE TO PLAINTIFFS' BRIEF RE PROPOSED ADDITIONAL INSTRUCTIONS** |

Sutter submits this brief to respond to the case authorities and other arguments in plaintiffs' brief opposing Sutter's proposed additional instructions.

## I. THE COURT SHOULD INSTRUCT THE JURY THAT IT MUST NOT AWARD DAMAGES FOR CONDUCT THAT IT DETERMINES TO BE LAWFUL.

Plaintiffs' brief mischaracterizes Sutter's proposed instruction and thus is addressed to an argument Sutter is not making. Sutter does not contend that the jury must consider the conduct here "in isolation" and that it may not consider the combined effect of the challenged conduct. Rather, Sutter's point is that damages must be limited to the harm that results from conduct that violates the antitrust laws. That is what Sutter's proposed instruction provides:

> If you find Sutter has violated the antitrust laws, any damages you award must be limited to the damages, if any, from injury that you find plaintiffs have shown were caused by the conduct that you find to be in violation of the antitrust laws. Plaintiffs have the burden to segregate any losses caused by acts that are not antitrust violations from those there were caused by acts that violated the antitrust laws.

Plaintiffs' brief does not address the first sentence of this instruction. As this Court observed, that sentence states an indisputable "hornbook law" principle of damages. RT 4006:12–14. At the very least, the Court should instruct the jury on that point, particularly if the Court declines to include questions in the special verdict form asking specifically about the lawfulness of the various categories of conduct plaintiffs challenge.

The Court should also include the second sentence of the instruction, which accurately states the holding in *City of Vernon v. S. California Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992), and the other cases Sutter has cited. Plaintiffs argue that *City of Vernon* is different because it supposedly involved "wholly distinct theories of antitrust liability" (Opp. 4), whereas plaintiffs here are relying on contracting practices that "operate synergistically to restrain competition." Opp. 2. In fact, the claims in *City of Vernon* are indistinguishable on this point because the City of Vernon alleged a single alleged harm—increased costs for acquiring electric power—resulting from the alleged combined effect of related actions by Southern California Edison that "prevented Vernon from obtaining bulk power from other providers." 955 F.2d at 1363. Most of the conduct related to contractual rights to transmission and pricing that Vernon

1  sought but which it claimed that Edison had unreasonably denied. *Id.* at 1366–70 ("Edison has refused to enter into reasonable agreements to integrate Vernon's firm purchases from other sources"). Other conduct included Edison's allegedly conspiring with other companies to boycott or deny access to power to Vernon. *Id.* at 1370–71. Vernon claimed that "all of Edison's acts contributed" to the damages that Vernon suffered from being denied access to power. *Id.* at 1373. The Ninth Circuit ruled that the district court properly granted summary judgment on some but not all of the contract-related claims and also on the conspiracy claims on the ground that the conduct did not violate the antitrust laws. Having established that Vernon was relying on the alleged combined effect of some actions that were lawful and some that were allegedly unlawful, the Ninth Circuit then considered whether Vernon had "segregate[d] the losses . . . caused by acts which were not antitrust violations from those that were." *Id.* at 1372. Concluding that Vernon had failed to do so, the Ninth Circuit ruled that summary judgment was proper as to all of the claims (except for injunctive relief as to one claim). *Id.* at 1373.

Importantly, the Ninth Circuit reached this ruling even though the surviving claim—refusal to agree to a reasonable notice term in the parties' interoperation agreement—was related to claims in connection with that same agreement. The court's ruling thus did not depend on distinguishing between conduct that arose under a contract as opposed to non-contract-related conduct (such as the boycott conspiracy claims). Rather, summary judgment was proper because some of the conduct was determined to be lawful and some was not, but Vernon's expert had calculated damages only for the effect of all the conduct combined.

This principle means that damages in this case must not be awarded for any aspects of Sutter's conduct that are lawful even if that conduct combined with other unlawful conduct to produce alleged damages. The jury should be so instructed.

The cases plaintiffs cite are not to the contrary. *In re High-Tech Emp. Antitrust Litig..*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *18 (N.D. Cal. Apr. 4, 2014), involved a *Daubert* challenge to the expert's model, which the court denied on the ground that the expert asserted that he adequately controlled for, and segregated out from his model, the effect of any lawful conduct. *Id*. at *18. The Court distinguished *City of Vernon* on that ground *City of Vernon* was not

addressed to a *Daubert* challenge but was considering the consequences of failing to segregate harm when some conduct that allegedly contributed to the harm was found to be lawful. *Id.* at *18 n. 38. Sutter is not seeking to exclude Dr. Chipty's opinion, as in *High-Tech*. Rather, it is contending that damages must be limited to the conduct found to be lawful, as *City of Vernon* ruled.

*In re: Cathode Ray Tube (CRT) Antitrust*, No. C-07-5944 JST, 2016 WL 5725008, at *6 (N.D. Cal. Sept. 30, 2016), held only that, "at the summary judgment stage," there was no need to segregate damages because the plaintiff had shown for purposes of summary judgment that all of the conduct at issue violated the antitrust laws. *Id.* at *6. It did not address the need for the jury or the court to segregate damages if it is ultimately determined that some of the conduct was lawful. *See also In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5141861, at *3 (N.D. Cal. Dec. 13, 2010) (finding *City of Vernon* inapplicable at the summary judgment stage because there was no issue there of failure to segregate).

Plaintiffs' other cases did not involve any failure to segregate between lawful and unlawful effects and thus did not address *City of Vernon*. *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *24 (N.D. Cal. Feb. 21, 2017), was addressed to a defense claim that the damages calculation included some purchases by persons who were not injured. *Id.* at *24. It did not address the situation here—and in *City of Vernon*—of the alleged combined effect of some acts that were legal and some that were not. *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *16 (N.D. Cal. Sept. 25, 2018), likewise did not involve any issue of segregating the effects of lawful conduct from unlawful conduct. *See id.* at *8 (challenging expert model on the ground that it did measure the effect of the alleged false advertising). *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2017 WL 6373020, at *17 (N.D. Cal. Dec. 13, 2017), held only that aggregate damages are permissible if they are tied to the theory of liability—a point that Sutter does not challenge and that it is irrelevant here. *See also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (finding no issue under *Comcast* because "damages will be calculated based on the wages each employee lost due to Medline's unlawful practices").

Plaintiffs also argue that the law requires that antitrust liability turn on the "contract as a whole" (Opp. 5), and thus the jury is not permitted to determine that certain provisions of Sutter's agreements are lawful even if others are unlawful. But none of the cases plaintiffs cite support that assertion. *City of Anaheim v. S. California Edison Co.*, 955 F.2d 1373 (9th Cir. 1992), stated only that "it would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect." *Id.* at 1376. It did not rule that specific individual acts can never be found to be unlawful when they are alleged to be combined with other acts. Any such holding would be flatly inconsistent with *City of Vernon*, which was decided on the same day as *City of Anaheim* by the same panel and authored by the same judge (Judge Fernandez).

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 693 (1962), is irrelevant for the same reason. The plaintiff there alleged that the defendant metal manufacturers had conspired to exclude competing manufacturers from the market. As proof that the conspiracy had excluded it from the market, the plaintiff relied on five incidents in which it tried to enter the market but was thwarted. The court of appeal found this evidence insufficient after examining each incident separately and determining that defendants were not at fault. In reversing, the Supreme Court held that the court of appeal erred in considering the five incidents "as if they were five completely separate and unrelated lawsuits" and "wiping the slate clean after scrutiny of each." *Id.* at 698–99. In other words, it was the effect of the conspiracy on competition that needed to be considered "as a whole."

Sutter does not dispute this proposition. Plaintiffs are entitled to argue that the contract terms must be considered "as a whole" in evaluating the effect on competition. But they are not entitled to recover damages for conduct deemed lawful by the jury or by the Court in a JMOL ruling, even when considered in combination. And the jury is certainly entitled (and Sutter believes compelled) to find, for example, that provisions in a contract that merely require that one party not unilaterally change the terms of that contract during the contractual term are lawful even if there is also a non-par rate in the same contract that the jury concludes is unlawful. That finding would be no different from the ruling in *City of Vernon* that Edison may have acted

unlawfully when it refused to provide reasonable notice under the contract there, but did not act unlawfully when it denied interruptible transmission service or refused to offer a "Special Condition" in connection with the contract. Nothing in *Continental Ore* prevents such a finding. And, if such a finding is made, controlling precedent in this Circuit requires that the effect of the lawful conduct be segregated from that of the unlawful conduct.

## II. THE COURT SHOULD INSTRUCT THE JURY ON THE LEGAL QUESTION WHETHER THE CLASS DEFINITION ENCOMPASSES SELF-FUNDED AND FLEX-FUNDED PLANS.

Plaintiffs do not dispute that self-funded plans do not fall within the class definition. The jury should be so instructed.

As to flex-funded plans, plaintiffs assert that a "fact issue" exists because of evidence that flex-funded plans have a "component" that is insured. But there is no dispute about the underlying facts—everyone agrees that an employer with a flex-funded plan bears the financial risk for some claims and pays premiums for insurance for other claims or amounts. Whether such plans fall within the class definition contained in this Court's class certification order is a legal question for the Court to resolve, not a factual issue for the jury.[1]

And the Court should resolve that question by ruling that flex-funded plans are not within the class definition. A plan that includes both insured elements and self-funded elements is only *partially* insured, not *fully* insured as the class definition requires. And enrollees who pay premiums for such a plan are paying premiums for a partially insured plan, not a fully insured one. The Court should rule that the class definition means what it says—*i.e.*, that only "fully insured" plans are within the definition, and that entities and individuals (and the premiums they

---

[1] *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 49 F.3d 541, 543 (9th Cir. 1995) ("We review de novo the district court's legal analysis of the language of the class definition."); *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1443 (9th Cir. 1987) ("the district court construes the language of the class definition in much the same way that a court might construe the language of a contract or a statute"), *rev'd on other grounds sub nom. California v. ARC Am. Corp.*, 490 U.S. 93 (1989). "The court must consider the plain language of the class certification and the apparent intent of the parties and the court defining the class at the time of certification." *Valdivia v. Schwarzenegger*, No. CIVS 94-671 LKK/GGH, 2007 WL 3096168, at *4 (E.D. Cal. Oct. 22, 2007).

1 | paid) are part of the class only if they paid premiums for fully insured plans.

Dated: March 6, 2022

Respectfully submitted,

Jones Day

By:   /s/ Jeffrey A. LeVee
      Jeffrey A. LeVee

Counsel for Defendant
SUTTER HEALTH