UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DJENEBA SIDIBE, et al., | Case No. 12-cv-04854-LB |
| Plaintiffs, | |
| v. | **SUPPLEMENTAL ORDER REGARDING JURY INSTRUCTIONS** |
| SUTTER HEALTH, et al., | Re: ECF Nos. 1491, 1492, 1500, 1503, 1508, and 1509. |
| Defendants. | |

### INTRODUCTION

Sutter has asked the court to instruct the jury to consider a "business justification" defense to the plaintiffs' per se tying claim.[1] The plaintiffs contend that procompetitive effects or "business justifications" do not apply to their per se tying claim and cite several cases supporting that position.[2] The court previously held that "procompetitive justifications are relevant only to the rule-of-reason claim, not the tying claim."[3] The weight of existing California law and the purpose of the per se tying rule favor the plaintiffs' position that procompetitive effects are not relevant to

---

[1] Def.'s Br. re Jury Instrs. – ECF No. 1491 at 9–16. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Pls.' Mem. of P. & A. re Jury Instrs. – ECF No. 1135 at 9–14; Pls.' Mem. re Jury Instrs. – ECF 1492 at 4–5.

[3] Order – ECF No. 1193 at 9.

ORDER – No. 12-cv-04854-LB

the per se tying claim. The court, therefore, does not depart from its prior conclusion on this issue.

Sutter also has asked the court to provide the jury with a special verdict form that "identif[ies] each of the challenged provisions and ask[s] the jury whether the effect of that provision was to restrain trade (either alone or together with the other provisions)."[4] Alternatively, Sutter proposes that, "at the very least," the court should instruct the jury that "damages must be limited to the harm that results from conduct that violates the antitrust laws."[5] Sutter's request is primarily based on the decision in *City of Vernon v. S. California Edison Co.*, where the court held that plaintiffs' damages study was flawed because it "failed to segregate the losses, if any, caused by acts which were not antitrust violations from those that were" and affirmed the district court's award of summary judgment to the defendant. 955 F.2d 1361, 1372–73 (9th Cir. 1992). Sutter also relies on the Supreme Court's decision in *Comcast Corp. v. Behrend*, where the Court reversed an order granting class certification based on flaws in the damages model. 569 U.S. 27, 38 (2013).

The plaintiffs oppose the proposed disaggregation instruction. The plaintiffs contend that the *Comcast* and *City of Vernon* decisions are inapplicable because the plaintiffs' theory in this case is that certain clauses in the same contract operate synergistically to restrain competition.[6] Based on the specific facts at issue in this case and the nature of the plaintiffs' antitrust theory, the court will not include a special-verdict-form question addressing each of the challenged provisions separately, but will instruct the jury that "[a]ny damages you award are limited to the damages from injury caused by conduct that violates the antitrust laws."[7]

## ANALYSIS

### 1. Procompetitive Defenses to the Per Se Tying Claim

The plaintiffs rely on several recent California and federal cases that articulate the per se tying rule without mentioning a defense based on procompetitive effects. First, the plaintiffs cite

---

[4] Def.'s Br. re Jury Instrs. – ECF No. 1491 at 6.
[5] Def.'s Resp. to Pls.' Br. re Jury Instrs. – ECF No. 1509 at 2.
[6] Pls.' Br. re Jury Instrs. – ECF No. 1508 at 3–4.
[7] Final Jury Instrs. – ECF No. 1511 at 12.

*In re Cipro Cases I & II*, where the court held that "[t]he per se rule reflects an irrebuttable presumption that, if the court were to subject the conduct in question to a full-blown inquiry, a violation would be found under the traditional rule of reason."[8] 61 Cal. 4th 116, 146 (2015) (applying the Cartwright Act) (quoting *Fisher v. City of Berkeley*, 37 Cal. 3d 644, 666 (1984), *aff'd*, 475 U.S. 260 (1986)). Second, the plaintiffs cite *Corwin*, where the court said, "[t]ying arrangements are illegal per se 'whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product.'"[9] 4 Cal. 3d 842, 856 (1971) (applying the Cartwright Act).

The plaintiffs also cite a Northern District case where the court — applying the Cartwright Act — held that "[a] tying arrangement can be per se illegal under either Section 16726 or 16727 if a defendant had sufficient economic power in the tying market to coerce the purchase of the tied product or a substantial amount of sale was affected in the tied product. . . . [T]he rule of reason does not apply, and the plaintiff need not separately prove a resulting adverse effect on competition in the market."[10] *Nicolosi Distrib. Inc. v. BMW of N. Am.*, No. C 10-03256 SI, 2011 WL 1483424, at *4 (N.D. Cal. Apr. 19, 2011) (cleaned up).[11] In short, several courts have articulated a per se tying rule that does not allow a defense based on procompetitive effects. These cases support the plaintiffs' position that procompetitive effects are not relevant to the tying claim.

Nonetheless, the main California Supreme Court cases suggest a modern trend toward less categorical rules and appear to recognize that some consideration of business justifications is possible even in per se tying cases. In *In re Cipro Cases I & II*, the California Supreme Court said,

---

[8] Pls.' Mem. of P. & A. re Jury Instrs. – ECF No. 1135 at 11.

[9] *Id.* at 10.

[10] *Id.* at 10–11.

[11] The *Nicolosi* court also identified the elements of a tying claim: "To state a claim for an unlawful tying agreement, the plaintiff must allege both that: a tying agreement, arrangement or condition existed whereby the sale of the tying product was linked to the sale of the tied product; and the complaining party sustained pecuniary loss as a consequence of the unlawful act. The plaintiff must also allege that either, the party had sufficient economic power in the tying market to coerce the purchase of the tied product; or a substantial amount of sale was affected in the tied product. A tying arrangement is per se illegal under the Cartwright Act where either of these latter elements is proven." 2011 WL 1483424, at *2 (cleaned up).

"the truth is that our categories of analysis of anticompetitive effect are less fixed than terms like 'per se,' 'quick look,' and 'rule of reason' tend to make them appear[ ]" and that the modern trend in antitrust analysis is toward a "sliding scale" approach. 61 Cal. 4th 147–48. The court stated that "[t]his nuanced approach makes equal sense for claims under the Cartwright Act[ ]" and that "nothing in the text of the Cartwright Act dictates the precise details of the per se and rule of reason approaches; these are but useful tools the courts have developed over time to carry out the broad purposes and give meaning to the general phrases of the antitrust statutes." *Id.* This language suggests that nuance may sometimes be appropriate when deciding whether to categorize a claim as a per se or rule-of-reason claim. But the weight of California authority suggests that the court should apply per se rules rigidly without regard to business justifications.

For instance, in *Marin County Board of Realtors, Inc. v. Palsson*, the court stated that "[a]though this proposition [that an access rule amounted to a group boycott] is superficially plausible, we hesitate before mechanically applying a per se rule . . . [because] such a rule would establish the activities of the board to be illegal without any regard to their economic effects or possible justification." 16 Cal. 3d 920, 931 (1976). The court referenced the limitation against applying the per se rule against group boycotts to boycotts that do not involve a "purpose to coerce the trade policy of third parties or to secure their removal from competition." *Id.* at 931. This language suggests that, in general, the per se rule is categorical and is only subject to special justifications in limited circumstances.

The *Marin* decision also included a footnote explaining that in *Silver v. N.Y. Stock Exchange*, the U.S. Supreme Court found a Sherman Act violation in an opinion that suggested "a per se violation[,]" but also "examine[d] and reject[ed] various justifications for the exchange's practice." 16 Cal. 3d at 933 n.9 (citing *Silver*, 373 U.S. 341 (1963)). The *Marin* court criticized this apparent inconsistency (*i.e.*, considering economic effects and possible justifications in a per se claim) when it stated that some commentators had analyzed the case as a rule-of reason case and others as a per se case. *Id.* ("Others have interpreted *Silver* as a per se case, a circumstance which justifies the criticism of one writer that 'The judgment of history must surely be that the courts and the legal profession have been far more successful in the results achieved in antitrust

cases than in their efforts to articulate the ideas involved.'") (cleaned up). In short, the *Marin* decision suggests that it is inappropriate for a defendant to use procompetitive justifications as a defense to a per se tying claim.

Moreover, in *Oakland-Alameda County Builders' Exchange v. F. P. Lathrop Constr. Co.*, the California Supreme Court identified tying arrangements as a category of conduct subject to a per se rule and stated that "[t]he 'per se' doctrine means that a particular practice and the setting in which it occurs is sufficient to compel the conclusion that competition is unreasonably restrained and the practice is consequently illegal." 4 Cal. 3d 354, 361 (1971) (cleaned up).

California appellate courts also have articulated the rule without identifying any procompetitive defense. For example, in *UAS Management, Inc. v. Mater Misericordiae Hospital* (which arose from an outpatient surgery center's allegations against a hospital alleging per se tying), the court held, "where such an arrangement [*i.e.* a tying arrangement] is found, it is illegal per se; that is, the seller's justifications for the arrangement are not measured by a rule of reasonableness." 169 Cal. App. 4th 357, 369 (2008), *as modified on denial of reh'g* (Jan. 13, 2009). While Sutter is correct that the court in *UAS Management* did not directly consider a business-justification defense, the discussion of the alleged tying arrangement does not mention the defense, which suggests that the defense was not available.[12] Accordingly, the decision in *UAS Management* favors the plaintiffs' position.[13] The decision in *Suburban Mobile Homes, Inc. v. Amfac Communities, Inc.* is instructive too. There, the court said, "[s]ince . . . appellant has made out a prima facie case of an actionable tying arrangement under section 16720 [of the Cartwright Act], the complex issues raised in appellant's alternative argument need not be reached." 101 Cal. App. 3d at 550. This implies that procompetitive effects do not need to be considered once the plaintiff establishes the elements of a per se tying claim. *See also Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 541–42 (1998) (identifying the elements of a per se tying claim in detail without referencing a procompetitive or business-justification defense).

---

[12] Def.'s Mem. of P. & A. re Jury Instrs. – ECF No. 1134 at 14–15.

[13] Pls.' Mem. of P. & A. re Jury Instrs. – ECF No. 1135 at 10–11.

On the other hand, in *Corwin*, the court said, "[t]he facts must be examined to ascertain whether or not there are legitimate reasons for selling normally separate items in a combined form to dispel any inferences that it is really a disguised tie-in."[14] 4 Cal. 3d at 858 ("This argument raises the difficult question whether this case should be treated as a case of tying the sale of one product to the sale of another product or merely as the sale of a single product."). While the court was discussing whether two allegedly tied products were actually one product and not the possibility of a procompetitive defense, it does cite favorably *United States v. Jerrold Elecs. Corp.,* 187 F. Supp. 545, 559 (E.D. Pa. 1960), *aff'd*, 365 U.S. 567 (1961) — which is one of the key federal cases establishing a basis for a procompetitive defense to tying claims — and suggests that even where "separate products" were involved in a tying arrangement, other factors may be considered. *Id.*

In short, the relevant California Supreme Court holdings generally support the view that procompetitive effects and business justifications are not relevant to per se tying claims. To the extent there is any support for the view that business justifications or procompetitive effects may be considered, *Corwin* provides the best support for that view. The relevant portion of the *Corwin* decision, however, also could be interpreted as a discussion of whether the subject arrangement was actually a tying arrangement and not whether procompetitive or business justifications are available as affirmative defenses.

Given Sutter's position that the application of the Sherman Act in federal court is controlling, it is appropriate to examine the key federal cases. In this regard, several U.S. Supreme Court decisions applying the Sherman Act, including *Arizona v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332 (1982), and *N. Pac. Ry. Co. v. U.S.*, 356 U.S. 1 (1958), support the plaintiffs' position. The Court in *Northern Pacific Railway* said, "[t]his principle of per se unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as

---

[14] Def.'s Mem. of P. & A. re Jury Instrs. – ECF No. 1134 at 12 (arguing that *Corwin* establishes that California courts rely on federal courts' interpretations of the Sherman Act when applying the Cartwright Act).

United States District Court
Northern District of California

related industries, in an effort to determine at large whether a particular restraint has been unreasonable—an inquiry so often wholly fruitless when undertaken[. ]" It then characterized tying arrangements as per se illegal. 356 U.S. at 5. This supports the view that a per se tying claim is categorical and not subject to procompetitive defenses.

Furthermore, in *Arizona v. Maricopa Cnty. Med. Soc.*, the Court said, "[f]or the sake of business certainty and litigation efficiency, we have tolerated the invalidation of some agreements that a full-blown inquiry might have proved to be reasonable." 457 U.S. at 344. In other words, the purpose of the per se rule is to avoid fact-intensive industry-by-industry inquiries to determine whether the tying is anticompetitive even if the per se rule captures some arrangements that could otherwise survive a rule-of-reason inquiry (*i.e.*, arrangements that could be defended based on procompetitive effects). The rule Sutter asks for — a defense based on procompetitive effects or business justifications — would undermine this purpose.

Sutter's attempts to distinguish or limit the above-noted decisions are not persuasive. Sutter claims that *Corwin* merely stands for the proposition that California courts' applying the Cartwright Act follow federal-court decisions under the Sherman Act and that *Corwin* supports considering a procompetitive defense to a tying claim.[15] Sutter cites the following excerpt from *Corwin*: "[t]he facts must be examined to ascertain whether or not there are legitimate reasons for selling normally separate items in a combined form to dispel any inferences that it is really a disguised tie-in."[16] 4 Cal. 3d at 858 (cleaned up). But, as discussed above, the issue was whether two allegedly tied products were actually one product, not whether there was a possibility of a procompetitive defense. *Id.* ("This argument raises the difficult question whether this case should be treated as a case of tying the sale of one product to the sale of another product or merely as the sale of a single product.") (cleaned up).

Sutter also cites *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, where the Court said that the defendant, Kodak, might be correct that "any anti-competitive effects of Kodak's behavior are

---

[15] Def.'s Mem. of P. & A. re Jury Instrs. – ECF No. 1134 at 12, 14.

[16] *Id.* at 12.

outweighed by its competitive effect."[17] 504 U.S. 451, 486 (1992). As the plaintiffs observe, however, this broad pronouncement is at the end of the opinion after a discussion of a tying claim and a § 2 monopoly claim.[18] *Id.* Thus, the decision does not definitively support the view that procompetitive effects are available as a defense to both monopoly and per se tying claims.

Aso, Justice Scalia's dissent in *Kodak* suggests the opposite. He said, "we should not—under the guise of a per se rule—condemn such potentially procompetitive arrangements simply because of the antitrust defendant's inherent power over the unique parts for its own brand[.]" But he does not thereafter suggest a procompetitive defense to a per se tying claim. *Id.* 502 (Scalia, J., dissenting). Instead, he suggests that the court should "evaluate the aftermarket tie alleged in this case under the rule of reason, where the tie's actual anticompetitive effect in the tied product market, together with its potential economic benefits, can be fully captured in the analysis." *Id.* This implies that the Court's decision in *Kodak* does not allow for a "procompetitive" defense to a per se tying claim (as Sutter suggests).

The Supreme Court also has suggested that per se tying rules do not permit an "inquiry into actual market conditions." *See Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 37 (2006) ("Per se condemnation—condemnation without inquiry into actual market conditions—is only appropriate if the existence of forcing is probable. Thus, application of the per se rule focuses on the probability of anticompetitive consequences") (cleaned up); *but see Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 34 n.1 (1984) (O'Connor, J., concurring) ((1) the per se analysis in practice requires an inquiry into market power and (2) unlike price fixing, tying is not illegal without proof of "market power or anticompetitive effect," and "[t]he 'per se' doctrine in tying cases has thus always required an elaborate inquiry into the economic effects of the tying arrangement[ ]"), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, (2006)); *compare Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1349 (9th Cir. 1987) ("It may seem somewhat anomalous to permit justifications for arrangements that are

---

[17] *Id.* at 15.

[18] Pls.' Mem. of P. & A. re Jury Instrs. – ECF No. 1135 at 14.

apparently subject to per se condemnation. . . . Before applying the per se label we must determine whether the challenged practice is one of those types that is plainly anticompetitive and very likely without redeeming virtue. Allowing the defendant to assert a business-justification defense is one way of inquiring into whether the reasons for the relatively categorical historical condemnation of tie-ins apply to the challenged arrangements.") (cleaned up). It is true that in cases like *Ill. Tool Works Inc. v. Independent Ink, Inc.* and *In re Cipro Cases I & II*, courts have identified a trend toward a more nuanced and less categorical approach. For instance, in *Ill. Tool Works Inc. v. Independent Ink, Inc.*, the Court said, "[o]ver the years, however, this Court's strong disapproval of tying arrangements has substantially diminished." 547 U.S. at 35 (cleaned up).

Sutter mainly relies on *United States v. Jerrold Electronics Corp.*, which is not persuasive because the holding in *Jerrold* was based on "the rather unique circumstances [community television services] involved in this particular case." 187 F. Supp. at 555–56. Also, Sutter's contention — that the court must follow federal courts' interpretation of the Sherman Act — is not helpful both because several courts have said that Sherman Act interpretations are not dispositive and because courts applying the Sherman Act (as cited above) have held that procompetitive effects are not relevant to a per se tying claim. *See, e.g.*, *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014) ("Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act."). Accordingly, under current California law, business justifications are not a defense to the per se tying claim.

**2. Disaggregation of Antitrust Damages**

Sutter asked for jury instructions and a verdict form that require the jury to make separate damages findings for each of the challenged terms in the contracts with the health plans (e.g., the non-par rate ).[19] Sutter contended that these special-verdict findings are required because "damages must be limited to the harm that results from conduct that violates the antitrust laws."[20]

---

[19] Def.'s Br. re Jury Instrs. – ECF No. 1491 at 6–7, 19–20.

[20] Def.'s Resp. to Pls.' Br. re Jury Instrs. – ECF No. 1509 at 2; *see also* Def.'s Br. re Jury Instrs. – ECF No. 1491 at 6–7, 19–20; Def.'s Proposed Additional Jury Instrs. – ECF No. 1500 at 4.

The plaintiffs challenged the timeliness of Sutter's request on the ground that their expert's "damages theories and evidence supporting Plaintiffs' damages claim have been at issue for years."[21] They also argued that Sutter's reliance on *Comcast* and *City of Vernon* is misplaced because those cases involved "distinct theories of antitrust impact" and did not involve "provisions in a contract that operate synergistically to restrain competition." By contrast, in this case, the plaintiffs' theory of liability is that that several anticompetitive contract provisions operate together to restrain competition.[23] In short, the question is whether the contracting provisions and practices at issue are separate theories or facets of a single antitrust theory.

In an antitrust action, the plaintiff must establish that the alleged wrongful conduct was a "material cause" of the alleged injury. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n.9 (1969); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 702 (1962) ("We think the jury should be allowed to determine whether respondents' conduct materially contributed to the failure of the Imperial venture, to Continental's damage."). The Ninth Circuit also has said that it is improper "to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect." *City of Anaheim v. S. California Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992).

Concerning damages stemming from an antitrust injury, the Supreme Court has held that a damages model that "fail[s] to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised" is insufficient to support class certification. *Comcast Corp. v. Behrend*, 569 U.S. at 36–37. In *Comcast*, the plaintiffs asserted four antitrust theories: (1) clustering to decrease market penetration by direct satellite providers; (2) thwarting competition from "overbuilders;" (3) reducing "benchmark" competition; and (4) clustering to increase bargaining power with content providers. *Id.* at 31. The district court rejected all theories except the overbuilder theory. *Id.* The Court held that the damages theory was insufficient because

---

[21] Pls.' Br. re Jury Instrs. – ECF No. 1503 at 2–3.
[23] Pls.' Br. re Jury Instrs. – ECF No. 1508 at 3.

it could not distinguish between the impact of rejected theories and the surviving "overbuilding" theory. *Id.* at 37–38.

The Ninth Circuit addressed similar issues in *City of Vernon v. S. California Edison Co.* There, the district court had granted the defendant summary judgment on the plaintiff's antitrust claims, which were based on (1) limiting access to transmission facilities, (2) failing to integrate power purchases under certain agreements, (3) refusing to allow power transmission, (4) conspiring to deny access to Pacific Intertie (a group of high-power transmission lines), and (5) engaging in a group boycott to prevent the plaintiff from buying power from other suppliers. 955 F.2d at 1363, 1366–71. On appeal, the Ninth Circuit affirmed but held that the plaintiff might be entitled to injunctive relief based on the defendant's alleged failure to provide a reasonable-notice term in an integration agreement. *Id.* at 1368, 1373. It also held that the plaintiff's damages study was flawed because it "failed to segregate the losses" caused by acts that were found to be lawful and affirmed the district court's determination that the plaintiff had "no proper proof of damages at all." *Id.* at 1372–73. Sutter relies on the damages decision to support its argument that the plaintiffs must specify damages — in the form of answers to questions on the verdict form — for each anticompetitive contract term.

Sutter also cites *ILC Peripherals Leasing Corp. v. Int'l Bus. Machines Corp.*, where the court granted a directed verdict for the defendant based on its finding that any damages award would be speculative because the plaintiff failed to account for the impact of lawful conduct in its damages study, which was based on comparing actual and forecasted performance. 458 F. Supp. 423, 434–36 (N.D. Cal. 1978), *aff'd sub nom.*, *Memorex Corp. v. Int'l Bus. Mach.*, 636 F.2d 1188 (9th Cir. 1980). The unaccounted-for factors in the damages study included (1) the plaintiff's mismanagement, (2) adverse commentary regarding the plaintiff in the financial community, (3) an economic recession, (4) competition from other companies, and (5) lawful competition from the defendant. *Id.* at 435.

The decisions in *City of Vernon* and *Comcast* do not require the instructions or verdict form that Sutter requested. The *Comcast* decision held only that a plaintiff must rely on a damages study that matches a surviving antitrust theory and not theories that are no longer at issue. 569

U.S. at 36–37. The plaintiffs' damages theory here is based on allegedly anticompetitive contract terms that as a whole restrain trade, and, unlike *Comcast*, there are no rejected antitrust theories.[25] The difference is meaningful. In *Comcast*, the Court held that evidence concerning "competitive" price levels was not relevant if "caused by factors unrelated to an accepted theory of antitrust harm." *Id.* at 38. The distinction between an antitrust theory and factors related to the theory is key. The damages study in *Comcast* was not relevant because the "factors" cited therein did not relate to "an accepted theory of antitrust harm" at issue in the case. *Id.* Here, the factors are the contracting provisions and practices, and they all relate to the plaintiffs' theory.

Similarly, the separate theories of antitrust liability that were improperly part of the damages study in *City of Vernon* are not analogous to the separate contract provision and practices that the plaintiffs allege operate together in this case.[26] 955 F.2d at 1366–73. The antitrust theories that the damages analysis in *City of Vernon* improperly relied upon included, among other things, claims that the defendant "refused to enter into reasonable agreements to integrate [the plaintiff's] firm purchases [of power] from other sources" and that the defendant and another energy company conspired to boycott the plaintiff. 955 F.2d at 1364, 1370–71. The contracting provisions and practices at issue here are not analogous to refusing to enter agreements or conspiring to boycott. Furthermore, unlike *ILC Peripherals*, Sutter has not argued that a special disaggregation instruction is required because the plaintiffs' damages study failed to account for outside factors like economic conditions and mismanagement. 458 F. Supp. 423 at 435.

In sum, *Comcast* and *City of Vernon* do not require that each aspect of a single antitrust theory be separately delineated on the verdict form. The plaintiffs allege that Sutter's contracting provisions and practices, operating together, violate antitrust law even if some provisions in isolation could be lawful. Determining whether the plaintiffs have proved their antitrust theory is for the jury to decide. Requiring a separate finding on each aspect of the theory would prejudge this fact issue by effectively preventing the jury from finding an antitrust violation without also

---

[25] *Id.* at 4.

[26] *Id.* at 3.

finding that all provisions and practices are illegal in isolation. Nonetheless, the court has adopted a damages instruction that informs the jury of their duty to limit any damages award to injuries caused by antitrust violations.

The first sentence of the instruction Sutter most recently requested is: "If you find Sutter has violated the antitrust laws, any damages you award must be limited to the damages, if any, from injury that you find plaintiffs have shown were caused by the conduct that you find to be in violation of the antitrust laws."[27] The court adopted the following, which is a simplified version of Sutter's proposed instruction: "Any damages you award are limited to the damages from injury caused by conduct that violates the antitrust laws."[28] This instruction adequately addresses Sutter's concern that "the jury [could] award[ ] damages based on lawful conduct."[29]

## CONCLUSION

The court has issued final jury instructions and a verdict form consistent with the following: (1) procompetitive justifications are not a defense to the per se tying claim; and (2) each aspect of the plaintiffs' single antitrust theory does not need to be separately delineated on the verdict form, but the jury will be instructed that any damages award must be limited to injuries caused by antitrust violations.

This disposes of ECF Nos. 1491, 1492, 1500, 1503, 1508, and 1509.

**IT IS SO ORDERED.**

Dated: March 11, 2022

LAUREL BEELER
United States Magistrate Judge

---

[27] Def.'s Resp. to Pls.' Br. re Jury Instrs. – ECF No. 1509 at 2.
[28] Final Jury Instrs. – ECF No. 1511 at 12.
[29] Def.'s Br. re Jury Instrs. – ECF No. 1491 at 7.