United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DJENEBA SIDIBE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH, et al.,<br><br>Defendants. | Case No. 12-cv-04854-LB<br><br>**PRETRIAL ORDER** |

The court issues this pretrial order pursuant to Federal Rule of Civil Procedure 16(e).

1. **Trial Date and Length of Trial**

Jury selection is on February 27, 2025. The trial begins March 3, 2025. Each side will have thirty hours per side for opening statements, direct examination of witnesses, and cross-examination of the opposing party's witnesses, including all objections raised during the trial day, and an additional one hour for closing argument. The trial will be on Monday through Friday from 8:30 a.m. to 1:30 p.m. (or slightly longer to finish a witness) and will include two ten- to fifteen-minute breaks, depending on the number of court reporters. March 17 and 18 are dark days. With this schedule, the evidence will be in by Friday, March 21, and an instructions conference will be that afternoon. Closing arguments will be on Monday, March 24.

**2.   Procedures During Trial; Exhibit and Witness Lists; Witnesses**

The court's October 27, 2016, Case-Management and Pretrial Order has the court's trial procedures for the presentation of exhibits, depositions, and witness testimony, including specific procedures for deposition excerpts.[1] The parties have identified their witnesses on their separate witness lists. If the parties identify the same witnesses, the defendant will examine the witness when the plaintiffs call them (as opposed to recalling them).

**3.   Claims, Defenses, and Relief Sought**

The claims in the case are in the summary-judgment order at ECF No. 962. *See also Sidibe v. Sutter Health, Inc.*, 103 F.4th 675, 704–05 (2024) (discussing tying claim). They are (1) unlawful tying and an unlawful course of conduct, in violation of the Sherman Antitrust Act § 1 and California's Cartwright Act, and (2) a violation of California's Unfair Competition Law (UCL). Sutter denies the claims. The parties' positions (claims, defenses, relief sought) are reflected in their joint proposed pretrial order at ECF No. 1693 at 2–6.

**4.   Stipulations**

The parties have reached some stipulations and must submit them at trial as an exhibit that can be read into the record. The parties must stipulate to as many uncontested facts as they can. It will shorten trial time.

**5.   Earlier Rulings**

Except for the court's earlier order granting Sutter's MIL 3 to Exclude Pre-2006 Evidence and the court's rulings on CACI jury instructions 3405 and 3411, which the Ninth Circuit reversed, there was no appeal of other orders and rulings. *Sidibe*, 103 F.4th at 705–06. They remain in effect

---

[1] Pretrial Order – ECF No. 113 at 7–14. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and also the page numbers for any depositions.

United States District Court
Northern District of California

and are law of the case.[2] *Arizona v. California*, 460 U.S. 605, 618 (1983) (the doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case") "[U]nder the law of the case doctrine as applied by the Ninth Circuit, 'it is error for a court upon retrial to reverse an identical evidentiary ruling made during the first trial, barring clear error or a change in circumstances." *United States v. Babichenko*, No. 1:18-CR-00258-BLW, 2022 WL 1429836, at *1 (D. Idaho May 4, 2022) (quoting *United States v. Tham*, 960 F.2d 1391, 1397 (9th Cir. 1991)).[3] This means that the 140 evidentiary rulings issued in the daily evidentiary hearings are law of the case too. Also, "an issue . . . waived on appeal[] cannot be revived on remand." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 765, 775 (N.D. Cal. 2017).

## 6. Motions in Limine (MILs)

### 6.1 Plaintiffs' MILs

#### 6.1.1 MIL 10 to Exclude Legislation, Regulations, and Related Material — Denied

At the first trial, Sutter asked for judicial notice of statutes, regulations, and legislative materials. The court held that the requests generally sought notice of relevant adjudicative facts but could not be wholesale admitted because — in short — a Sutter sponsoring witness was needed to establish their relevance to Sutter's decision-making.[4]

In this trial, the plaintiffs challenge nineteen exhibits on Sutter's exhibit list that fall into this category. At the last trial, the court allowed Sutter to introduce three of the exhibits (following the pocket-brief process), generally on the ground that they were relevant to decision-making in a highly regulated environment. First, the court allowed the introduction of TX 7544 — Cal. Health

---

[2] Orders – ECF Nos. 1166, 1167, 1193, 1318, 1330, 1382, 1417; J. Filing Re Evidentiary Rulings – ECF No. 1655.

[3] Joint Filing Re Evidentiary Rulings – ECF No. 1655 (summarizing rulings).

[4] Order – ECF No. 1330 at 2; Opp'n to Pls.' MIL 10 – ECF No. 1662-1 at 2–3; Tr., Ex. D22 – ECF No. 1672 at 45 (p. 13) ("[T]he proper way to get . . . in evidence [regarding the regulatory context and its impact on Sutter's contracting] is to ask the witnesses questions. And if the witnesses can recognize the material and testify about it, well, then you get it in evidence.").

& Safety Code § 1375.7, which provides that no contractor can include a term that permits an insurer to "change a material term of the contract, unless the change has been negotiated and agreed to by the provider and the plan" — on the ground that it was relevant regulatory context for decision-making. Blue Shield executive Tracy Barnes testified that these processes needed to be followed to amend or change a contract.[5] Second, the court admitted TX 8764 and 8765. Both involve the California Department of Insurance's (DOI's) rulemaking about Cal. Gov't Code § 11346.2(b). TX 8764 is the DOI's notice of rulemaking regarding network-adequacy requirements in Gov't Code § 11346.2(b), and TX 8765 is the DOI's responses to comments.[6] The court held — and the plaintiffs agreed — that witness Melissa Brendt could testify about them (assuming that Sutter was aware of the concerns and the regulatory basis for decisions).[7]

The regulatory context necessarily informed Sutter's decisions. As the Ninth Circuit held, Sutter's motive for adopting its contract terms is relevant. *Sidibe*, 103 F.4th at 688 ("Sutter's motives for adopting the challenged contract terms are therefore relevant to whether Sutter forced health plans to agree to terms that prevented the health plans from steering patients to lower-cost, non Sutter hospital.") (cleaned up), 692 ("[T]he history of the restraint and the reasons for its adoption are crucial factors under the rule of reason.") (cleaned up), 693 ("Evaluating a party's motives is particularly important when applying the rule of reason's fact-specific assessment.") (cleaned up). Antitrust cases consider intent and purpose when evaluating intent and purpose under the rule of reason. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436 n.13 (1979).

Also, the exhibits are admissible only to demonstrate how the regulatory context affected Sutter's decision-making about its contracts, not for their truth.[8] It is possible that some records will be business records.[9]

---

[5] Tr., Ex. D3 – ECF No. 1571 at 113 (p. 1859).

[6] Joint Letter Br. – ECF No. 1489 at 6 (synopsizing exhibits).

[7] Tr., Ex. D3 – ECF No. 1571 p. 2913.

[8] Opp'n to Pls.' MIL 10 – ECF No. 1662-1 at 7 (does not offer them for the truth of the matter asserted).

[9] Tr., Ex. D3 – ECF No. 1571 at 166–67 (pp. 3054–55) (foundation laid for business record).

1    Another issue is the plaintiffs' challenge to Table 3, which assumes that Sutter's out-of-network

2    rates are 90 percent of billed charges. The DOI's estimate of out-of-network rates (assuming

3    knowledge by sponsoring witnesses) is relevant to Sutter's decision, again, only as context for

4    Sutter's practices, not for the truth. It is an estimate, but that goes to weight, not admissibility, and

5    can be tested through cross-examination.[10]

6    This evidence about regulatory points of reference informing Sutter's practices is different

7    than other investigations against Sutter that involved whether its practices were anticompetitive.

8    The first are adjudicative facts that are admissible when foundation is laid that Sutter considered

9    them in its contracting practices. Fed. R. Evid. 201(a).[11] For the second category, the court already

10   held that the plaintiffs cannot elicit testimony about the California Attorney General's

11   investigation and outcome: it was not a complete investigation, the allegations never reached

12   verdict, and a jury might decide the case based on the fact of a different case, not the evidence in

13   this case.[12] Any relevance is substantially outweighed by the danger of unfair prejudice. Fed. R.

14   Evid. 403(b). Courts recognize the prejudice under Rule 403(b) from the admission of the fact of

15   other litigation or investigations against a defendant. *In re Cathode Tube (CRT) Antitrust Litig.*,

16   No. C-07-5944 JST, 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) (if a jury hears that the

17   European Commission found the defendants liable, "it will be very difficult for the jury not to find

18   them liable as well"); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. CV-00-20905 RMW, 2008

19   WL 282376, at *4 (N.D. Cal. Jan. 28, 2008) (excluding FTC decision because of "the undue

20   weight or even *de facto* collateral estoppel effect that a jury would accord to the FTC's liability

21   opinion"); *Aetna, Inc. v. Blue Cross Blue Shield of Mich.*, No. 15-15346, 2015 WL 1646464, at

22   *10 (E.D. Mich. Apr. 14, 2015) (excluding evidence of cases brought against Blue Cross by the

23   DOJ, the Michigan AG, and plaintiffs in a class action that were "resolved without any finding of

24   liability against Blue Cross [because] . . . any reference to those cases would be more prejudicial

25

26

27

28

United States District Court
Northern District of California

---

[10] Pls.' MIL 10 – ECF No. 1662 at 5–6; Opp'n to *id.* – ECF No. 1662-1 at 9.

[11] Order – ECF No. 1330.

[12] Tr. – ECF No. 1582 (pp. 2906–07).

than probative . . . [and] would result in litigating the issues brought by the DOJ, the Michigan AG and the [class-action] plaintiffs. . . . There are sufficient issues raised in the instant case without litigating the issues brought in the other cases.").

Evidence from the proceedings (such as admissions) — if anonymized — could be relevant.[13]

In sum, the court holds that the regulatory context is relevant to Sutter's motives and decisions, not for the truth. *Sidibe*, 103 F.4th at 688. The hurdle for Sutter on exhibits like these is that it must establish foundation for them (meaning, knowledge of the regulatory context that informed the witness's decisions). This could be through business records or witness testimony. Assuming foundation, objections go to weight, not admissibility.

### 6.1.2  MIL 11 to Exclude Evidence of Arbitrations and Legal Proceedings — Denied

At the first trial, the court granted Sutter's MIL 2 and precluded the introduction of certain litigation against Sutter, including the California AG and UBET cases (discussed in part in the last section). (It allowed the use of admissible evidence from the litigation, such as admissions.) Three categories of evidence were at issue in MIL 2: (1) the California AG/UBET cases; (2) California's lawsuit to block the merger of Alta Bates and Summit Medical Center in 1999; and (3) other enforcement actions against Sutter by the U.S. DOJ, the FTC, and OSHA.[14]

In MIL 11, the plaintiffs want to preclude evidence of arbitrations or other litigation (not just litigation against Sutter), including consent decrees that Sutter reached. They want to use admissible evidence from them, including "admissions found in the 'findings of fact and conclusions of law' from the Alta Bates-Summit merger." They contend that the court's earlier ruling on Sutter's MIL 2 precludes the evidence, which is in any event inadmissible and, for the arbitrations, also prejudicial under Rule 403. And if Sutter is allowed to introduce evidence of other legal proceedings such as arbitrations, the plaintiffs want to rebut it with the California-UBET cases.[15] Sutter counters that the plaintiffs seek to exclude three categories of evidence, with

---

[13] Order – ECF No. 1167 at 8.

[14] *Id.*; Def.' MIL 2 – ECF No. 1043-1 at 2–3.

[15] Pls.' MIL 11 – ECF No. 1663 at 4–8.

1   only one category at issue in MIL 2: (1) two orders to rebut evidence that the plaintiffs offer about

2   the Summit merger litigation, (2) evidence admitted in the first trial (over the plaintiffs'

3   objections) about Sutter's arbitrations against Kaiser (and not appealed), and (3) a 1999 settlement

4   agreement with Health Net, excluded by the court as too attenuated and now back in play because

5   pre-2006 evidence is admissible under the Ninth Circuit's ruling.[16] At the argument on MIL 11,

6   the parties focused exclusively on the arbitrations.[17]

7       Preliminarily, the earlier MIL 2 and the court's order addressed only litigation against Sutter,

8   not the evidence at issue in MIL 11.

9       First, as to evidence about the Summit merger litigation, there may be admissible evidence,

10  which must be anonymized (as the court directed previously).[18] The plaintiffs made no offer of

11  proof, and thus admissibility cannot be evaluated now. It can be at trial, where Sutter can object to

12  its admissibility. Sutter points out that findings and expert opinions that the plaintiffs identified in

13  past submissions are inadmissible hearsay.[19] *See SanDisk Corp. v. Kingston Tech. Co.*, 863 F.

14  Supp. 2d 815, 819 (W.D. Wis. 2012) (excluding deposition testimony of expert from another case

15  as inadmissible hearsay); *Rosco, Inc. v. Mirror Lite Co.*, No. CV-96-5658 (CPS), 2006 WL

16  2844400, at *7 (E.D.N.Y. Sept. 29, 2006) (proposed findings of fact have no evidentiary

17  significance); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1257 (N.D.

18  Ohio 1980) (same). If there is admissible evidence, Sutter is entitled to rebut it. It lists two orders

19  as possible rebuttal evidence to show the denial of California's motion to enjoin the merger: Exs.

20  P26 (TX 8342) & P28 (TX 9544). (P28 is *California v. Sutter Health Sys.*, 84 F. Supp. 2d 1057

21  (N.D. Cal. 2000)).

22      Second, as to the arbitrations, the court allowed the evidence previously, over the plaintiffs'

23  objection.[20] The plaintiffs did not appeal the issue and instead argued on appeal that the court

---

[16] Opp'n to Pls.' MIL 11 – ECF No. 1663-1 at 2.

[17] Tr. – ECF No. 1686 at 25–44.

[18] Order – ECF No. 1167 at 8.

[19] Opp'n to Pls.' MIL 11 – ECF No. 1663-1 at 7.

[20] Tr., Ex. D3 – ECF 1582 at pp. 3001–03, 3283–84.

should have admitted findings from the Summit merger litigation.[21] Sutter argues that it thus is law of the case.[22] The court also admitted it previously because it informed Sutter's decisions to negotiate its rates the way it did.[23] The court can judicially notice the existence of the arbitration awards, but not for the truth of the matter asserted in them, as it did with the adjudicative facts at issue in MIL 10. *Bucur v. Fedex Ground Package Sys.*, 2015 U.S. Dist. LEXIS 190203, at *3 n.2 (C.D. Cal. Sept. 10, 2015).

Third, the settlement agreement between Health Net and Sutter is exhibit P27 (TX 9541). The plaintiffs contend that it is inadmissible under Federal Rule of Evidence 408.[24] Because pre-2006 evidence is now admissible, Sutter contends that it bears on why Sutter chose to implement certain contract terms: the plaintiffs challenge provisions that prohibit insurers from making unilateral changes during the term of their contracts with Sutter, and the agreement shows that health plans had a history of unilaterally changing contract terms to Sutter's detriment.[25] The agreement is relevant for the reasons advanced by Sutter. It is not inadmissible under Rule 408, which precludes evidence of settlement discussions "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Rule 408(b) does not require exclusion of evidence offered for another purpose. There is no prejudice under Rule 403. Exclusion is unwarranted at the MIL phase. But like all evidence from other legal proceedings, admissibility turns on how it is used at trial.

Finally, the court previously excluded evidence about the California AG/UBET cases. The reasons are reflected in part in the analysis of MIL 10. It is law of the case. The proffered evidence does not open the door to the introduction of evidence about the California AG/UBET cases.

---

[21] Opp'n to Pls.' MIL 11 – ECF No. 1663-1 at 4–5 (citing Reply Br., Ex. D18 at 16).

[22] Opp'n to Pls.' MIL 11 – ECF No. 1663-1 at 9–10.

[23] Tr., Ex. D3 – ECF No. 1582 at pp. 2905–06.

[24] Pls.' MIL 11 – ECF No. 1663 at 7–8.

[25] Opp'n to *id.* – ECF No. 1663-1 at 11–12. Sutter did not respond to the plaintiffs' argument that its consent decrees are inadmissible and presumably does not intend to introduce any.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 6.1.3  MIL 12 to Exclude Evidence of Nonparty Legal Proceedings — Denied

At the first trial, Sutter introduced evidence about nonparty Sutter litigation and investigations to show — like the regulatory context at issue in MIL 10 and the arbitrations at issue in MIL 11 — the context for Sutter's decisions when negotiating its contracts. The court allowed the evidence primarily because it provided context for Sutter's decisions and was fair cross-examination in support of Sutter's defenses. A Senate report was a business record that validated Sutter's decisions about the need for the non-par rate.[26] Northbay's litigation against Blue Shield was used to cross-examine Blue Shield witness Tracy Barnes, who testified that Sutter's 95-percent non-par rate was higher than the rates they paid other providers, to contextualize his testimony because Northbay's prices were higher than Sutter's.[27]

Sutter's exhibit list has around twenty exhibits about the same nonparty (Blue Shield) and around twenty exhibits involving the nonparty health plans, including agency investigations, enforcement actions, and settlements. The plaintiffs want to exclude them as hearsay and irrelevant.[28] The rulings on MIL 10 and 11 drive the outcome here for the following reasons.

First, the court's rulings are law of the case.

Second, the documents generally are offered not for the truth and instead — assuming the proper foundation can be laid that a witness considered them — to explain the context for Sutter's negotiations of the contract provisions at issue in the litigation. As discussed above, Sutter's motive for adopting its contract terms is relevant. *Sidibe*, 103 F.4th at 688, 692–93; *U.S. Gypsum Co.*, 438 U.S. at 436 n.13. The Ninth Circuit emphasized not only purpose, but also history, reversing a Rule 403 exclusion on the ground that it undervalued probative evidence. *Sidibe*, 103 F.4th at 688, 692–93, 703–04. The plaintiffs' proposed blanket ban conflicts with this analysis if Sutter can show a non-hearsay purpose tied to its defenses (e.g., rebutting anticompetitive intent).

---

[26] Tr., Ex. D3 – ECF No. 1571 at pp. 3150–51 (testimony of Sutter witness Melissa Brendt).

[27] *Id.* at pp. 1936–38.

[28] Pls.' MIL 12 – ECF No. 1664 at 4–9.

1          Third, the documents are not categorically inadmissible. There are four categories. One is the

2    use of Ingenix data used to establish usual and customary rates paid for out-of-network services.[29]

3    The court allowed the evidence previously as relevant to the non-par rate.[30] Another category is

4    documents about insurers' violations of their obligations under the Knox-Keene Act, including by

5    failing to correctly reimburse non-contracted providers.[31] These documents support Sutter's

6    defenses to the plaintiffs' claims about the non-par rate: they determined that the rates were

7    necessary. A third category is a consent agreement that Blue Cross reached with a state agency to

8    address complaints that Blue Cross did not provide adequate notice and disclosure of rate

9    changes.[32] Sutter witness Melissa Brendt testified at the first trial that this context motivated

10   contract provisions that required insurers to discuss new products with Sutter before including

11   Sutter in the network.[33] The final category is documents about insurers' administrative limitations

12   in offering narrow networks or inaccuracies in provider directories. Sutter identifies these as

13   relevant to its alleged refusal to participate in transparency efforts and narrow/tiered networks.[34]

14   For example, exhibit P35 (TX 7698) is a state agency's "Final Report: Non-Routine Survey of

15   Blue Shield of California." The agency investigated because it received complaints that customers

16   were having difficulty finding in-network physicians. The agency determined that 18.2 percent of

17   physicians in the provider directory were not actually at the listed location and thus could not

18   accept members there.[35] Ms. Brendt testified that these issues contributed to her concerns about

19   narrow networks and the potential impact on patients.[36]

20

21   [29] Opp'n to *id.* – ECF No. 1664-1 at 7 (citing Exs. P42 (TX 9570), P48–P49 (TX 9601–TX 9602), and
     P53 (TX 9624)).

22

23   [30] Tr., Ex. D3 – ECF No. 1571 at p. 3151 (testimony of Sutter witness Melissa Brendt).

24   [31] Opp'n to Pls.' MIL 12 – ECF No. 1664-1 at 7 (citing Exs. P38 (TX9559), P39–P40 (TX 9564–
     TX9565), P43–P46 (TX 9573–TX 9576), P50 (TX 9603)).

25   [32] *Id.* at 8 (citing Ex. P55 (TX 9774)).

     [33] Tr., Ex. D3 – ECF No. 1571 at pp. 2976–77, 2978, 2980.

26   [34] Opp'n to Pls.' MIL 12 – ECF No. 1664-1 at 8 (citing Exs. P34–P35 (TX 7697–TX 7698), P36 (TX
     7700)).

27   [35] *Id.* (citing Ex. P35 (TX 7698)).

28   [36] Tr., Ex. D3 – ECF No. 1571 at p. 3033.

United States District Court
Northern District of California

1    Fourth, for the reasons in the last section, the settlement agreements are not inadmissible under

2    Federal Rule of Evidence 408 or prejudicial under Rule 403.

3    Finally, the court is not wholesale admitting the documents. A Sutter witness cannot testify

4    about documents — even if they are non-hearsay public records — if Sutter did not consider

5    them.[37] Sutter must lay foundation for the documents to use them.

6    ### 6.1.4  MIL 13 to Prevent Sutter From Mischaracterizing the Claims — Denied

7    The plaintiffs contend that at the first trial, Sutter mischaracterized their claims by referencing

8    the operative complaint.[38] Some context is necessary.

9    In the first trial, the plaintiffs cross-examined Sutter's expert about his understanding of their

10   tying claim, asking whether he thought that the "tying claims are based on forcing network

11   participation in particular products for tying hospitals." The expert responded that the theories

12   were "a little unclear" but that he understood that the tying claim was that Sutter had market

13   power in the tying hospital markets and was using the power to "forc[e] insurance companies to

14   purchase these — these hospital services in tied markets like in San Francisco."[39] The plaintiffs

15   then suggested that the expert was "focusing on the wrong paradigm" and the right paradigm was

16   that Sutter used systemwide contracting to impose contract terms on all hospitals, including out-

17   of-network hospitals.[40] On redirect, Sutter asked the expert questions about the plaintiffs'

18   contention that Sutter had used its tying hospitals to force insurers to include other unwanted tied

19   hospitals in network.[41] The plaintiff made that claim in opening, saying that the "evidence will

20   show that Sutter often refused to allow for its hospitals to be excluded from health plan networks,

21   requiring the health plans to include tied hospitals in their network."[42] (The court described the

22

23

---

24   [37] Opp'n to Pls.' MIL 12 – ECF No. 1664-1 at 9 (pointing out that most are public records).

25   [38] Pls.' MIL 13 – ECF No. 1665 at 2.

26   [39] Tr., Ex. D3 – ECF No. 1571 at p. 3931.

     [40] *Id.* at pp. 3932–35.

27   [41] *Id.* at pp. 3970–75.

28   [42] *Id.* at p. 293.

United States District Court
Northern District of California

1    claim that way in its summary-judgment order too.[43]) The plaintiffs did not object to the redirect

2    examination. During it, Sutter characterized the theory as a "new theory."[44]

3        The plaintiffs also reference Sutter's brief on appeal, where Sutter contrasted the plaintiffs'

4    opening statement (the alleged tying arrangements had prevented insurers from excluding tied

5    hospitals from their networks) to their closing argument (the tying claim was not about network

6    participation and instead was about purchasing hospitals or hospital services).[45]

7        The plaintiffs contend that the Ninth Circuit agreed with the plaintiffs' characterization of their

8    claims:

9            Sutter first argues that it presented sufficient evidence at trial that it did not link the
            in-network participation of its tying hospitals and the in-network participation of its
10           tied hospitals. However, Plaintiffs alleged a second tying condition: not only the in-
            network participation of Sutter's tied hospitals but also the payment of
11           *supracompetitive non-par rates* at Sutter's tied hospitals. The fact that Sutter
            presented evidence relevant to the network participation of its tied hospitals is not
12           necessarily dispositive of whether Sutter engaged in tying at all.

13

14   *Sidibe*, 103 F.4th at 704. The plaintiffs assert that this is the operative articulation of the plaintiffs'

15   claims, and thus is the law of the case, and, alternatively, that Sutter cannot mischaracterize the

16   plaintiffs' claims.[46]

17       The plaintiffs can argue the two versions of the tying claim that the Ninth Circuit articulated.[47]

18   But the Ninth Circuit ruled only that there are two tying conditions. It did not address Sutter's

19   redirect examination of its expert after the plaintiffs said that he focused on the wrong paradigm.

20       Also, Sutter points out that the parties can disagree about what is needed to establish the tying

21   claim. In Sutter's view, network participation is critical to the claim, a view supported by the

22

23   [43] Order – ECF No. 962 at 8 (the plaintiffs' "theory of liability is that Sutter used its market power for
     inpatient services in the Tying Market to force the health plans to include (in their networks) Sutter
24   inpatient services in the Tied Markets and then had terms that prevented the health plans from excluding
     Sutter tied hospitals from the networks or establishing lower-cost networks"); Final Pretrial Order –
25   ECF No. 1167 at 3 (defining claims and defenses by reference to the summary-judgment order).

26   [44] Tr., Ex. D3 – ECF No. 1571 at p. 3975.

27   [45] Br., Ex. D20 – ECF No. 1671-1 at 429–35.

     [46] Pls.' MIL 13 – ECF No. 1665 at 4–8.

28   [47] Opp'n to *id.* – ECF No. 1665-1 at 5–6.

1    plaintiffs' damages model, which is based on Sutter's allegedly raising prices for in-network

2    services (and not based just on the non-par rate's allegedly resulting in higher charges for the

3    limited set of out-of-network services). Part of the theory of higher in-network prices is that Sutter

4    prevented steering (that is, prevented the use of narrow or tiered networks that would exclude

5    Sutter from network participation or put it in a disfavored tier).[48] The Ninth Circuit did not address

6    these arguments when it defined the claim. *Al-Safin v. Cir. City Stores, Inc.*, 394 F.3d 1254, 1258

7    (9th Cir. 2005) ("The doctrine does not apply to issues not addressed by the appellate court.")

8    (cleaned up). Prior articulations of the claim could be relevant for other reasons too, including

9    understanding what the claim is now. Sutter doubts that the non-par rate is an antitrust tie because

10   it is a price, not a product.[49] Even if it is, Sutter contends that the plaintiffs' expert's damages

11   study is based only on the network-inclusion theory, not the non-par theory.[50] Network inclusion

12   was the theory in the operative complaint, meaning, "[d]id the seven tying hospitals cause the

13   inclusion of the four tied?" And Sutter asserts that "there was no evidence at the trial of that tie. I

14   don't think there's any evidence in the trial of the — of a tie caused by the nonpar rate."[51] (The

15   plaintiffs dispute this.[52])

16        Alternatively, the plaintiffs want to preclude Sutter from relying on the operative complaint

17   because it is superseded by the pretrial order and the Ninth Circuit's opinion.[53] *Patterson v. Hughes*

18   *Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) (courts look "to the pretrial order in determining the

19   scope of the claims presented"). But a complaint does not lose all relevance. For example,

20   "reference to the complaint" may be "helpful in interpreting the language in the pretrial order." *DP*

21   *Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 842 n.8 (9th Cir. 2001); *ILC*

22   *Trademark Corp. v. Aviator Nation, Inc.*, No. CV 17-7975-MWF (JPRx), 2019 WL 12536569, at *3

23

24   ――――――――――――
     [48] *Id.* at 6–7.

25   [49] Tr. – ECF No. 1686 at 54.

26   [50] *Id.* at 57.

27   [51] *Id.* at 58.

     [52] *Id.* at 65–68.

28   [53] Pls.' MIL 13 – ECF No. 1665 at 6–8.

(C.D. Cal. Apr. 16, 2019) (superseded complaints may retain relevance for context or admissions); Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1527, Effect of the Pretrial Conference at Trial (4th ed. 2023) ("Although federal judges generally recognize the binding effect of pretrial orders, particularly the order that is entered after the final pretrial conference just before the trial, this does not mean that the order is rigidly and pointlessly adhered to at trial. The decision to bind the parties to the order is viewed as a matter of judicial discretion.").

Referencing the operative complaint may have probative value in testing the plaintiffs' consistency or expert understanding. The practical utility here is expert testimony about damages (and not party consistency or admissions). At the MIL stage, the court cannot say categorically that the probative value is substantially outweighed by prejudice, given the relevance to damages. Of course, Sutter cannot frame the claim in the complaint as the operative claim: that would confuse the jury and be inconsistent with the Ninth Circuit's decision. Theories of a case, after all, can evolve. Also, the court will instruct the jury on the law, including the elements of the claims. Those instructions — and the constantly reiterated instruction at trial that what the lawyers say is argument, not evidence — would address what is a modest risk. There was one stray remark by counsel about "a new theory," it seems unlikely that the complaint will figure prominently in the new trial, and presumably the issues with damages mostly will be confined to the experts and their damages theories.

Finally, it is not possible to address the issue more now. The court cannot guess what Sutter might say at trial or police its defense in advance. Another practical reality is that the plaintiffs can rebut Sutter's characterizations.

### 6.1.5  MIL 14 to Exclude Evidence of Purpose for Systemwide Contracting — Denied

Sutter has disclosed two exhibits to establish why it shifted to systemwide contracting.[54] The plaintiffs want to exclude them on the ground that the evidence is irrelevant to their tying claim and "is not a legitimate procompetitive justification under the Rule of Reason."[55] The court denies

---

[54] Opp'n to Pls.' MIL 14 – ECF No. 1666-1.

[55] Pls.' MIL 14 – ECF No. 1658-4 at 4.

the motion: Sutter does not offer the evidence to justify its alleged tying or restraint of trade and instead offers it to show its purpose in adopting systemwide contracting.

There are two documents. One is a January 12, 1998, letter from Sutter to Blue Cross terminating two contracts because BlueCross would not agree to rates that would allow Sutter hospitals to cover their costs. In it, Sutter explains that under the existing contracts, "Sutter Health providers [were] not recovering their costs of providing care." Sutter proposed rates that "would be market competitive and would allow Sutter Health's affiliates to cover their costs of providing patient care to Blue Cross enrollees."[56] The second is an April 15, 1998, memorandum. Sutter's CFO explained that it was "requesting a new systemwide rate structure that would cover costs and provide for a minimal return."[57] It also said that "most of our hospitals and physician groups are not even covering the costs of providing care to Blue Cross patients. We simply can't continue to accept rates that don't cover our costs."[58]

Sutter contends that the documents "echo the points in the two memoranda plaintiffs highlighted in their appeal."[59] On appeal, the plaintiffs contended that they should have been allowed to put in evidence regarding Sutter's purpose in adopting systemwide contracting, including two memoranda from the late 1990s: a 1997 Sutter memo and a 1998 memo from Sutter's CFO. *Sidibe*, 103 F.4th at 694–95. The Ninth Circuit reversed, holding that this error in excluding pre-2006 evidence was compounded by the failure to instruct the jury to consider Sutter's anticompetitive purpose. *Id.* at 705–06.

The first document that the plaintiffs referenced on appeal was a 1997 memorandum that discussed Sutter's desire to negotiate higher rates with Blue Cross because the existing rates were so low that several Sutter hospitals were losing money on inpatient services provided to Blue Cross members.[60] The second was a 1998 memorandum that described the benefits from being part of the

---

[56] January 12, 1998, Letter, Ex. P58 (TX 9772) – ECF No. 1658-5 at 3.

[57] April 15, 1998, Mem., Ex. P59 (TX 9616) – ECF No. 1658-6 at 4.

[58] *Id.* at 8.

[59] Opp'n to Pls.' MIL 14 – ECF No. 1666-1 at 4.

[60] *Id.* (citing November 24, 1997, Mem., Ex. D24).

1    Sutter system, including strategic planning, risk sharing, greater access to capital, financial and

2    operational oversight, shared technology, clinical integration, and centralized contracting.[61] The

3    Ninth Circuit held that these should have been admitted because they supported the plaintiffs'

4    "theory . . . that Sutter used its systemwide contracts to impose tying arrangements and other

5    anticompetitive contract terms." *Id.* at 694. Sutter contends that if the plaintiffs are allowed to

6    introduce the memoranda as relevant to Sutter's purpose, Sutter can introduce its contemporaneous

7    evidence to provide context for, and to rebut the plaintiffs' reading of, the plaintiffs' two

8    memoranda. It offers the evidence only about its purpose, not to offer a competitive justification for

9    its systemwide contracting. It points out that the Ninth Circuit held that systemwide contracting is

10   lawful, which is law of the case.[62] *Id.* at 689 ("systemwide contracting is itself lawful").

11       It is law of the case that business justification is not an affirmative defense to the plaintiffs'

12   tying claim. *Sidibe v. Sutter Health, Inc.*, No. 12-cv-04854-LB, 2021 WL 4812445, at *5 (N.D.

13   Cal. Sept. 17, 2021). Sutter is not offering the evidence for that reason and instead offers it to

14   rebut the plaintiffs' evidence and to establish its purpose in adopting systemwide contracting.[63]

15   The plaintiffs have put Sutter's purpose at issue and plan to introduce evidence from the same time

16   period. Sutter put on evidence in the first trial that it did not tie its hospitals together and that its

17   contracts did not prevent changes to network participation, adopt a higher price for out-of-network

18   participation, prevent steering, or otherwise restrain competition. It will do so in the second trial

19   and offers its evidence to show the purpose for its centralized contracting practices: negotiate more

20   effectively, reduce the cost structure, and ensure that its hospitals received reasonable value for

21   their services to cover costs and invest in patient care.[64]

22       The plaintiffs' cases are distinguishable and do not change the conclusion that the evidence is

23   relevant to Sutter's purpose in adopting systemwide contracts. As Sutter points out, the cases

24   involved restraints of trade like price-fixing, bid-rigging, and boycotts. *United States v. Socony-*

---

[61] *Id.* (citing November 20, 1998, Mem., Ex. D23).

[62] *Id.* at 5.

[63] *Id.* at 7.

[64] *Id.* at 8–9.

*Vacuum Oil Co.*, 310 U.S. 150, 228 (1940) (in price-fixing case, "the offers of proof . . . were properly excluded, insofar as they bore on the nature of the restraint and the purpose or end sought to be attained"); *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1152 (9th Cir. 2003) (defendant sought "to justify not only fixing prices, but intentionally fixing prices at a supracompetitive level"); *United States v. Marr*, No. 14-CR-00580-PJH, 2017 WL 1540815, at *11 (N.D. Cal. Apr. 28, 2017) (granting MIL "precluding defendants from offering evidence or argument justifying the bid rigging agreements"); *United States v. Aiyer*, 33 F.4th 97, 123 (2d Cir. 2022) (district court "properly concluded that '[e]vidence of pro-competitive effects, or the lack of harm, is not relevant;'" the indictment charged the defendant with entering into "a conspiracy to fix prices and rig bids"); *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 836 (9th Cir. 2022) ("[S]paring consumers the need to patronize competing firms is not a procompetitive justification for a group boycott.").

In sum, as discussed above, the Ninth Circuit held that Sutter's motive for adopting its contract terms is relevant. It also ruled that the pre-2006 evidence is relevant. *Sidibe*, 103 F.4th at 686, 688, 692–93, 703–04. Sutter is entitled to put in evidence of its purpose in adopting systemwide contracts. The court denies the motion to exclude the evidence.

At the hearing, the plaintiffs also asked that Sutter be barred from arguing in closing that the benefits are procompetitive and offset anticompetitive effects under the Rule of Reason.[65] That concern will be addressed through the jury instructions, which will limit what Sutter can argue. A limiting instruction also can clarify that the evidence is admissible only to show Sutter's purpose.

### 6.2  Sutter's MILs

#### 6.2.1  MIL 7 to Exclude Strategy Advantage Documents — Denied in Part

Before the first trial, the court granted Sutter's MIL 4 to exclude the same evidence:

> The challenged documents are a 2006 memorandum summarizing statements that Sutter executives made about Sutter's marketing position . . . . An outside consultant — hired by Sutter as part of its Marketing Task Force to understand market needs and define its product strategy — prepared the memorandum and based it on her interviews with the executives. They are like a brainstorming session, eliciting the

---

[65] Tr. – ECF No. 1686 at 76.

executives' views on what Sutter did (or did not do) right and how it could improve. They have nothing to do with contracting practices. Sutter contends that they are not business records because (1) there was a delay between the interviews and the consultant's drafting the documents (meaning, that she did not prepare the documents "at or near the time" of the act), and (2) the record is untrustworthy because the consultant does not remember the precise processes that she used for taking notes and turning them into memoranda, and she made basic fact errors (such as getting a title and a name wrong). It also contends that the documents are not party admissions (partly due to the inaccuracies in them and partly because the plaintiffs cannot show that the persons made them in a representative capacity). Sutter also contends that the documents are irrelevant and any probative value is substantially outweighed by undue prejudice under Rule 403.

Generally, the business-records foundation could be laid, and Sutter's objections might go to weight, not admissibility. But the memorandum, which stitches together the interviews without attribution, is confusing. Also, the individual interviews are not obviously party admissions (although perhaps a foundation could be laid) in the classic sense: a party making statements about the issue such that the statements are evidence about the issue. Here, the statements do have some relevance to the issues in the litigation (e.g., there is discussion about pricing and quality) but they have nothing to do with contracting. In early 2006, they necessarily look back at years that precede the class period by over five years. Any marginal relevance to the relevant time period is substantially outweighed by the danger of confusion of the issues and the same sideshow concerns discussed in [the order granting] MIL 3 [and excluding pre-2006 evidence]. The court grants the motion.[66]

On appeal, the Ninth Circuit identified the memo's account of an interview with future Sutter CEO Sarah Krevens (then CEO of two Sutter hospitals). She said, "Related to the health plans, we force them to pay us more. They do pay us more, and they don't like us. In some cases, they have paid us more than the market. We're working on it, though. There are lots of reasons why we pushed the health plans. Mainly, we pushed them because we could." The Ninth Circuit held that "these admissions are highly relevant to Plaintiffs' theory of the case." *Sidibe*, 103 F. 4th at 694. When coupled with other evidence — the contemporaneous memos (one from the CFO) (discussed in the last section) and the CFO's deposition testimony that "Sutter implemented systemwide contracting with the purpose of achieving higher pricing" — it would have "bolstered Plaintiffs' allegations that Sutter used systemwide contracting to link in-network participation in,

---

[66] Order – ECF No. 1167 at 9–10.

1    or supracompetitive non-par rates at, its tying and tied hospitals (the first element of a tying

2    claim)." *Id.* at 695.

3        The evidence here falls into the bucket of evidence — previously excluded as too old — that

4    now is relevant. And Ms. Krevens's statement is an admission, given the Ninth Circuit's opinion,

5    assuming that it can be authenticated. The court said as much in its earlier ruling. Presumably,

6    other statements could be admissions too, assuming that they meet the requirements of Federal

7    Rule of Evidence 801(d)(2) and can be authenticated, either by the consultant or the person

8    making the statement. Finally, a business-records foundation possibly could be laid. Any evidence

9    must still be relevant.

10        Foundation can be laid more easily for admissions than for business records. The plaintiffs

11   have not identified admissions other than Ms. Krevens's statement. If there are others, the

12   plaintiffs can identify them and lay the foundation for their admissibility, probably through the

13   consultant. Sutter can object both to foundation and whether the statements are opposing party

14   statements within the meaning of Rule 801(d)(2).

15        To admit the memo as a business record, the plaintiffs must show that "(A) the record was

16   made at or near the time by — or from information transmitted by — someone with knowledge;

17   (B) the record was kept in the course of a regularly conducted activity of a business, organization,

18   occupation, or calling, whether or not for profit; (C) making the record was a regular practice of

19   that activity; (D) all these conditions are shown by the testimony of the custodian or another

20   qualified witness, or by a certification . . . [and] (E) the opponent does not show that the source of

21   information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed.

22   R. Evid. 803(6). "The proponent of the evidence bears the burden of laying the proper foundation

23   for the admission." *City of Long Beach v. Standard Oil of Cal.*, 46 F.3d 929, 937 (9th Cir. 1995)

24   (district court properly concluded handwritten notes were not a business record).

25

26

27

28

United States District Court
Northern District of California

1   Sutter identifies the potential problems with admitting the memorandum as a business record:

2   (1) when did the author draft it, (2) was it during the course of a regularly conducted business

3   activity, (3) is it accurate, and (4) there are issues regarding hearsay within hearsay.[67]

4   Foundation requires a sponsoring witness. Sutter's objections are best addressed at trial in the

5   context of that sponsoring witness. The plaintiffs as the designating party must proffer the witness

6   on the two-day cycle described below in section 12. If the parties do not work the issue out, then

7   they must provide all information required by section 12, including the particular evidence

8   relevant to determining the issues (and cannot rely on the exhibits on the docket that are part of

9   voluminous filings).

### 6.2.2  MIL 8 to Exclude Late-Disclosed Witness — Denied

11   At the time of the first trial, CalPERS's Rule 30(b)(6) witness was Kathleen Donneson, who

12   was deposed but did not testify.[68] On December 5, 2024, CalPERS told the plaintiffs that Ms.

13   Donneson had retired and could no longer serve as its representative. On December 9, 2024, when

14   the parties exchanged witness lists, the plaintiffs designated Kristin Owens, a current CalPERS

15   employee, as CalPERS's Rule 30(b)(6).[69] Sutter moved to exclude Ms. Owens under Federal Rule

16   of Civil Procedure 37(c)(1) on the ground that the plaintiffs failed to timely disclose Ms. Owens

17   under Rule 26 and the late disclosure prejudiced Sutter's trial preparation.[70] The plaintiffs counter

18   that the disclosure was timely and harmless and offer Sutter a deposition of Ms. Owens.[71] The

19   issue is whether the plaintiffs' disclosure is substantially justified or harmless. It is.

20   A party must disclose "the name, and if known, the address and telephone number of each

21   individual likely to have discoverable information," identifying the subjects of the information, that

22   the party will use to support its claims and defenses. Fed. R. Civ. P. 26(a)(1)(A). A party must

23   supplement or correct an incomplete disclosure in a timely manner. Fed. R. Civ. P. 26(e)(1). A

---

[67] Def.'s MIL 7 – ECF No. 1668-1 at 6–14.

[68] Def.'s MIL 8 – ECF No. 1669-1 at 2.

[69] Opp'n to *id.* – ECF No. 1669-2 at 2 (citing Brownstein Decl., Ex. P76).

[70] Def.'s MIL 8 – ECF No. 1669-1 at 2.

[71] Opp'n to *id.* – ECF No. 1669-2 at 2.

1    failure to do so bars use of the witness at trial "unless the failure was substantially justified or is

2    harmless." Fed. R. Civ. P. 37(c)(1). The plaintiffs have the burden of proving substantial

3    justification or harmlessness. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107

4    (9th Cir. 2001).

5        The court denies the motion.

6        First, the failure to identify Ms. Owens earlier was substantially justified. Fed. R. Civ. P.

7    37(c)(1). The plaintiffs disclosed CalPERS in their 2016 initial disclosures and supplemented with

8    Ms. Owens on December 9, 2024, two business days after they learned of the issue. This contrasts

9    with longer delays, like the fifteen-month delay in *Ollier v. Sweetwater Union High School*

10   *District*, which warranted exclusion. 768 F.3d 843, 863 (9th Cir. 2014). Sutter contends that the

11   plaintiffs must show that Ms. Donneson is unavailable because she is outside the court's subpoena

12   power, *see* Fed. R. Civ. P. 45(c)(1), or is otherwise unavailable, *see* Fed. R. Civ. P. 32(a)(4) and

13   Fed. R. Evid. 804(a). But practically, her retirement precludes her from representing CalPERS as a

14   Rule 30(b)(6) witness, justifying substitution.

15       Second, the late disclosure is harmless. Sutter deposed Ms. Donneson in 2018, received

16   documents from CalPERS, and can depose Ms. Owens. Unlike *Ingenco Holdings, LLC v. Ace Am.*

17   *Ins. Co.*, where late disclosures disrupted schedules, the prior discovery and the ability to depose

18   Ms. Owens mitigate prejudice.[72] Ms. Owens will testify only about (1) what CalPERS is and what

19   it covers, (2) the types of insurance it provided during the damages period, and (3) premiums paid

20   for fully insured products. All are topics familiar to Sutter from prior discovery. A deposition can

21   confirm this scope, distinguishing this case from *Ollier*, where last-minute discovery burdened the

22   opposing party.

23       This ruling aligns with courts allowing substitute Rule 30(b)(6) witnesses when prior

24   designees leave employment. *See Green Payment Sols., LLC v. First Data Merch. Servs. Corp.*,

25   2019 WL 4221402, at *1 (C.D. Cal. July 2, 2019) (permitting substitution with safeguards like

26   depositions and limiting testimony to prior designee's scope). The court imposes similar limits

27

28   [72] *Id.* at 4–9.

United States District Court
Northern District of California

1    here: Ms. Owens's testimony is restricted to the topics Ms. Donneson addressed in her deposition,

2    ensuring no unfair surprise.

3        ### 6.2.3  MIL 9 to Exclude Dr. Tenn's Study — Denied

4        Sutter moved to exclude a study by Dr. Steven Tenn (then an economist at the FTC) on the price

5    effects of the Sutter-Summit merger on the grounds that it is inadmissible hearsay and that its use by

6    the plaintiffs' expert, Dr. Tasneem Chipty, violates Federal Rule of Evidence 703.[73] The plaintiffs

7    do not dispute that the study is hearsay but counter that Dr. Chipty may rely on and disclose the

8    study's findings under Rule 703 as a basis for her expert opinions on market definition and

9    competitive effects, consistent with the Ninth Circuit's ruling in *Sidibe*. 103 F.4th at 698.[74] The

10    court denies Sutter's motion: Dr. Chipty's reliance on the report is permissible under Rule 703, the

11    jury can consider it, and the Ninth Circuit's decision compels this outcome.

12        Under Rule 703, an expert may base an opinion on facts or data that are not admissible if

13    "experts in the particular field would reasonably rely on those kinds of facts or data in forming an

14    opinion on the subject." If such data are otherwise inadmissible, the proponent may disclose them

15    to the jury "only if their probative value in helping the jury evaluate the opinion substantially

16    outweighs their prejudicial effect." *Id.* Rule 703 permits experts to rely on hearsay, such as

17    academic studies, if the reliance is reasonable. But the rule does not allow experts to "parrot"

18    inadmissible evidence without independent analysis. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d

19    1227, 1236 (9th Cir. 2017); *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999). District

20    courts have broad discretion to assess admissibility under Rule 703 and balance probative value

21    against prejudice under Rule 403. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

22        In *Sidibe v. Sutter Health*, the Ninth Circuit reversed this court's exclusion of pre-2006

23    evidence, including Dr. Tenn's study, finding it "highly relevant" and "probative" of market

24    definition and the purpose and effects of Sutter's conduct under the Cartwright Act. 103 F.4th at

25    698. The court held that excluding the evidence under Rule 403 was an abuse of discretion where

26

27    ───────────────

      [73] Def.'s MIL 9 – ECF No. 1670-1 at 2.

28    [74] Opp'n to *id.* – ECF No. 1670-2 at 2–4.

United States District Court
Northern District of California

1    its probative value was not substantially outweighed by risks of confusion, prejudice, or delay.

2    The court emphasized that Rule 403 "tilts . . . toward the admission of evidence in close cases." *Id.*

3    at 691–92, 702.

4        The analysis here turns on three considerations: (1) Dr. Chipty's permissible reliance on Dr.

5    Tenn's study under Federal Rule of Evidence 703; (2) the probative value of the study; and (3) the

6    context of the Ninth Circuit's decision criticizing the court's exclusion of pre-2006 evidence.

7    ### 6.2.3.1  Admissibility of Dr. Tenn's Study Under Rule 703

8        Sutter contends that Dr. Tenn's study is inadmissible hearsay under Federal Rule of Evidence

9    801(c), Dr. Chipty cannot reasonably rely on it under Rule 703, and a contrary ruling merely

10   transmits hearsay to the jury.[75] The plaintiffs concede the study is hearsay if offered for its truth

11   but assert it is admissible under Rule 703 as a basis for Dr. Chipty's expert opinions, not as

12   substantive evidence.[76]

13       Dr. Chipty's reliance on Dr. Tenn's study is permissible under Rule 703. As an antitrust

14   economist, Dr. Chipty reasonably relies on retrospective studies like Dr. Tenn's to assess market

15   power and competitive effects, a practice that is established in the field. Phillip E. Areeda &

16   Herbert Hovenkamp, Antitrust Law ¶ 942 (5th ed. 2023) (economists routinely use peer-reviewed

17   studies to inform market analysis). Dr. Tenn's study was published in the International Journal of

18   the Economics of Business and has been cited by courts. *E.g.*, *FTC v. Advocate Health Care*

19   *Network*, 841 F.3d 460, 472 (7th Cir. 2016). It bears the hallmark of reliability.[77] Dr. Chipty does

20   not parrot the study and instead integrates it with her own analyses of market data, documents, and

21   econometric models.[78] *See Moonberg Entm't Ltd. v. BabyBus (Fujian) Network Tech. Co.*, 2023

22   WL 4108838, at *15 (N.D. Cal. June 21, 2023) (permitting expert reliance on inadmissible data

23   when it is supplemented by independent analysis).

24

25

26   [75] Def.'s MIL 9 – ECF No. 1670-1 at 2–3, 6–11.

     [76] Opp'n to *id.* – ECF No. 1670-2 at 7–11.

27   [77] *Id.* at 5–6 (citing other evidence to support reliability).

28   [78] Chipty Report – ECF No. 822-2 (¶¶ 50, 132).

United States District Court
Northern District of California

1    Sutter contends that Dr. Chipty's reliance is unreasonable because she did not independently

2    verify Dr. Tenn's data.[79] This misreads Rule 703. Experts need not replicate underlying data but

3    must demonstrate that their reliance aligns with field standards. *Daubert v. Merrell Dow Pharms.,*

4    *Inc.*, 509 U.S. 579, 595 (1993). Sutter's expert, Dr. Gowrisankaran, relied on Dr. Tenn's study,

5    undercutting any critique of its reliability.[80] *Ramirez v. Debs-Elias*, 407 F.3d 444, 449 (1st Cir.

6    2005) (expert reliance on scholarly literature upheld where customary in the field).

7            **6.2.3.2  Disclosure to the Jury**

8    Sutter contends that even if Dr. Chipty appropriately relied on the study, disclosing its findings

9    to the jury is unwarranted because the plaintiffs have not rebutted Federal Rule of Evidence 703's

10   presumption against disclosure of otherwise inadmissible evidence.[81] The plaintiffs counter that

11   disclosure is warranted given the study's probative value, as recognized by the Ninth Circuit.[82]

12   *Sidibe*, 103 F.4th at 698.

13   Dr. Chipty may disclose the study's findings to the jury. The study's probative value —

14   demonstrating that Sutter raised prices 29–72 percent post-merger despite Kaiser's proximity — is

15   significant for assessing market definition and competitive effects. These are key issues in this

16   retrial. The Ninth Circuit found it "probative" of whether "Kaiser and Sutter compete in the same

17   market" and of "the purpose and effects of Sutter's conduct." *Id.* This result aligns with the Ninth

18   Circuit's holding that historical evidence can illuminate intent and effects under the rule of reason.

19   *Id.* at 692–93.

20   Under Federal Rule of Evidence 703, disclosure is permissible if the probative value

21   "substantially outweighs" prejudice. The Ninth Circuit in *Sidibe* rejected the exclusion of evidence

22   under Rule 403, noting that "damaging" evidence does not equate to "unfair prejudice."[83] It also

23

24   ───────────────────

     [79] Def.'s MIL 9 – ECF No. 1670-1 at 8.

25   [80] Tr. – ECF No. 1586 at 133 (p. 3939:2-4).

26   [81] Def.'s MIL 9 – ECF No. 1670-1 at 9–12.

     [82] Opp'n to *id.* – ECF No. 1670-2 at 8–9.

27   [83] Because Rule 703 inverts the Rule 403 inquiry and allows disclosure only if the probative value
     substantially outweighs the resulting prejudice, it does not follow from the Ninth Circuit's holding that

28

1    recognized that alternatives (such as limiting instructions) mitigate risks. *Id.* at 702–03. Sutter's

2    concerns about jury confusion (e.g., conflating merger effects with contract effects) or prejudice

3    (e.g., punishing past conduct) are valid but manageable. The study's focus on the 1999 merger

4    predates the start of the class period in 2011, but its relevance to Kaiser's competitive constraint

5    bridges that gap. A cautionary instruction can clarify its limited purpose — supporting Dr.

6    Chipty's opinions, not proving the truth of Dr. Tenn's findings — thereby reducing confusion or

7    undue prejudice. *See United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997)

8    (limiting instructions cure prejudice).

9        Sutter's reliance on *In re Citric Acid Litig.*, 191 F.3d at 1102, is misplaced. There, the expert

10    offered no independent analysis, merely reciting hearsay. Here, Dr. Chipty's testimony is

11    grounded in her broader expertise. The Ninth Circuit's "cautious and sparing" application favors

12    admission absent overwhelming countervailing factors. *Hankey*, 203 F.3d at 1172.

13                 **6.2.3.2  Consistency with *Sidibe v. Sutter Health***

14        The Ninth Circuit's ruling in *Sidibe* guides this decision. The court criticized this court's prior

15    blanket exclusion of pre-2006 evidence, including Dr. Tenn's study, as overly blunt, emphasizing

16    its relevance to market power and intent. 103 F.4th at 698, 704. While Sutter argues the study's

17    merger focus is inapposite to contracting practices, *Sidibe* deemed it probative of broader

18    competitive dynamics, including Kaiser's role, which is a central defense here. *Id.* Excluding it

19    risks repeating the reversible error of denying the plaintiffs evidence critical to rebut Sutter's

20    market claims.

21                          *    *    *

22        The court denies Sutter's motion. Dr. Chipty may rely on Dr. Tenn's study and explain the

23    bases of her opinions to the jury for her opinions on market definition and competitive effects. Dr.

24    Tenn's study will not be admitted as substantive evidence. Sutter can propose a limiting

25    instruction.

26

27    _____

28    Rule 703 is necessarily satisfied. That said, the Ninth Circuit's evaluation of the probative value and danger of prejudice is instructive.

### 7.  Jury Instructions

The court will file its proposed instructions. There will be an instructions conference during trial, before closing argument, to finalize any issues about the instructions.

### 8.  Verdict Form

The court will file a proposed verdict form and will finalize it before closing argument.

### 9.  Jury Questionnaire

The court used the parties' agreed-to jury questionnaire.

### 10.  Trial

By 3:00 p.m. each trial day, the parties must give notice of the order of proof for the second trial day, including witnesses, evidence, and demonstratives. (They also must update their previous order of proof for the next trial day to reflect any adjustments, which generally should be limited to adjustments based on witness schedule and the flow of trial.) By 4:00 p.m., the parties must meet and confer to resolve any objections. If they cannot resolve the objections, by 6:00 p.m., the objecting party must provide its position. By 7:00 p.m., the proffering party must provide its response. The parties must file any dispute by 7:00 a.m. the next day in a joint letter (limited to several paragraphs each) and attach all relevant exhibits and any previous ruling on the issue at the last trial.[84] (A different judge limits parties to three sentences each, something that the parties have shown that they can do by their several-line objections to the opening slides.) By 8:00 a.m., the parties must provide a chambers copy of the filing that includes cases supporting their positions. The court will address any disputes at the end of the trial day.

This process will eliminate the last-minute issues raised by the parties, often late at night, during the last trial. Resolution often took longer than the thirty minutes that the court allotted for

---

[84] Joint Filing Re Evidentiary Rulings – ECF No. 1655 (summarizing rulings).

dispute resolution between 8:00 a.m. and 8:30 a.m. For context, the parties had 140 disputes last trial that they could not resolve and raised formally with the court through the joint-letter process.

This will not happen again: this is a retrial, this order defines what is admissible generally, the rules of evidence otherwise limit what is admissible, and there will be no last-minute issues because there should be no surprises and few objections. Indeed, there should be no 8:00 a.m. disputes because the parties will know what is coming two days before the evidence is offered. In the unlikely event that there is a dispute that requires consideration at 8:00 a.m., the pocket brief must be filed no later than 2:00 p.m. on the preceding trial day, and a chambers copy must be delivered by 2:30 p.m. If there are disputes that run past 8:30 a.m., the losing party's trial time will be reduced by all argument time.

The trial has potential "hot" issues. Given the sophisticated lawyers on the case, they should anticipate them and have a pocket brief in hand — with supporting exhibits and authorities — to aid the court's resolution of the issues.

To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross-examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross-examination (other than for impeachment). The parties will call their joint witnesses only once (which means that those witnesses will be called during the plaintiffs' case).

**IT IS SO ORDERED.**

Dated: March 2, 2025

_____
LAUREL BEELER
United States Magistrate Judge