CONSTANTINE CANNON LLP
JEAN KIM (*pro hac vice*)
6 East 43rd Street, 26th Floor
New York, NY 10017
(212) 350-2700
(212) 350-2701 (fax)
jkim@constantinecannon.com

*Lead Counsel for Plaintiffs and the Class*

THE MEHDI FIRM, PC
AZRA Z. MEHDI (220406)
95 Third Street
2nd Floor #9122
San Francisco, CA 94103
(415) 293-0070
(415) 293-0070 (fax)
azram@themehdifirm.com

*Co-Lead Counsel for Plaintiffs and the Class*

SHINDER CANTOR LERNER LLP
MATTHEW L. CANTOR (*pro hac vice*)
ELLISON A. SNIDER (*pro hac vice*)
14 Penn Plaza, Ste. 1900
New York, NY 10122
(646) 960-8601
matthew@scl-llp.com
esnider@scl-llp.com

JAMES J. KOVACS (*pro hac vice*)
J. WYATT FORE (*pro hac vice*)
600 14th St NW, 5th Floor
Washington DC 20005
(646) 960-8601
james@scl-llp.com
wyatt@scl-llp.com

(*Additional counsel listed on signature page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DJENEBA SIDIBE, JERRY JANKOWSKI, SUSAN HANSEN, DAVID HERMAN, OPTIMUM GRAPHICS, INC., and JOHNSON POOL & SPA, on Behalf of Themselves and All Others Similarly Situated,

                  Plaintiffs,

    vs.

SUTTER HEALTH,

                  Defendant.

Case No. 3:12-cv-4854-LB

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Date: May 22, 2025
Time: 9:30 AM
Judge: The Honorable Laurel Beeler

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL BACKGROUND.........................................................................2

        A.      The Pleading Stage ...................................................................................2

        B.      Fact And Expert Discovery.......................................................................3

        C.      Class Certification ....................................................................................5

        D.      Summary Judgment ..................................................................................6

        E.      Settlement in the State Actions ................................................................7

        F.      Pretrial Work............................................................................................7

        G.      Jury Trial ..................................................................................................8

        H.      Appeal of Jury Verdict .............................................................................9

        I.      Re-Trial and Settlement .........................................................................10

        J.      Settlement Notice and Plan of Distribution ...........................................13

III.    LEGAL STANDARD...........................................................................................16

IV.     ARGUMENT .......................................................................................................17

        A.      The Proposed Settlement satisfies the requirements of Rules 23(a) and (b)(3).........17

        B.      The Proposed Settlement is fair, reasonable and adequate under Rule 23(e)...........19

                1.      The Class Representatives and Class Counsel have adequately
                        represented the Class..................................................................19

                2.      The Settlement was negotiated at arm's length. ..........................20

                3.      The quality of relief to the Class weighs in favor of approval......21

                        a.      Costs, risks, and delay of trial and appeal.........................21

                        b.      The Settlement Provides Fair, Reasonable and Adequate Relief ......22

                        c.      The effectiveness of the method of distributing relief to the class. ...22

                        d.      Proposed award of attorney's fees, including timing of payment. ....24

                        e.      Any agreement required to be identified under Rule 23(e)(3)...........24

                4.      The Settlement treats all Class Members equitably......................25

        C.      The Proposed Notice is the best practicable under the circumstances.....................25

D.    The proposed service awards are appropriate.............................................28

V.    CONCLUSION...............................................................................................29

1

## TABLE OF AUTHORITIES

2

3

**Cases**

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)............................................................................................................18

*Bernstein v. Virgin Am., Inc.*,
   No. 15-cv-02277-JST, 2023 WL 7284158 (N.D. Cal. Nov. 3, 2023)...................................28, 29

*Boyd v. Bank of Am. Corp.*,
   No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)....................25

*Brown v. Hain Celestial Grp., Inc.*,
   No. 3:11-cv-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ........................................24

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .....................................................................................................25

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...................................................................................................28

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980)....................................................................................................18

*Garner v. State Farm Mut. Auto Ins. Co.*,
   No. CV 018 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...........................20

*Harris v. Vector Mktg. Corp.*,
   No. C–08–5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .............................................25

*Howell v. Advantage RN*, LLC,
   *No.:17-CV-883 JLS (BLM), 2*020 WL 3078522 (S.D. Cal. June 9, 2020) .................................21

*In Re: Blue Cross Blue Shield Antitrust Litig.*,
   No. 2:13-CV-20000-RDP, MDL 2406, 2022 WL 4587618 (N.D. Ala. Aug. 9, 2022)...........14, 23

*In re Capacitors Antitrust Litig.*,
   No. 3:17-md-02801-JD, 2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ........................................24

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944 JST, 2017 WL 2481782 (N.D. Cal. June 8, 2017).............................................23

*In re Cathode Ray Tube (CRT) Antitrust Litig., No. C-07-5944 JST*,
   2017 WL 565003 (N.D. Cal. Feb. 13, 2017) ..........................................................................22

*In re Heritage Bond Litig.*,
   No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...............................................23

iii

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11–CV–02509–LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015)........................23

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ........................................................................16, 18

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 4:13-md-02420-YGR (DMR), 2017 WL 1086331 (N.D. Cal. Mar. 20, 2017) ...................22

*In re NCAA Ath. Grant-in-Aid Cap Antitrust Litig.*,
  No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ........................................29

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................................23

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................20

*In re Packaged Seafood Prods. Antitrust Litig.*,
  No. 3:15-md-02670-DMS (MSB), 2024 WL 4875246 (S.D. Cal. Nov. 22, 2024) ...................23

*In re Portal Software Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...............18

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .........................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. MDL 3:07-MD-1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ...............24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) .........................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)................18

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) .........................................................................29

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................24

*Kang v. Wells Fargo Bank, N.A.*,
  No. 17-cv-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021)........................18

*Koeppen v. Carvana, LLC*,
  No. 21-cv-01951-TSH, 2024 WL 3925703 (N.D. Cal. Aug. 22, 2024) ................18, 24

*Lamb v. Bitech, Inc.*,
  No. 3:11–cv–05583–EDL MED, 2013 WL 4013166 (N.D. Cal. Aug. 5, 2013)........................27

iv

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ....................................................................................27

*Meijer, Inc. v. Abbott Lab'ys*,
    No. 07-5985 CW, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011)...............................24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................18

*Nucci v. Rite Aid Corp.*,
    No. 19-cv-01434-LB, 2022 WL 1693711 (N.D. Cal. May 26, 2022) ..........................20

*Officers for Just. v. Civ. Serv. Comm'n of City and Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ......................................................................................27

*Perez v. Rash Curtis & Assocs.*,
    No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)...................29

*Rabin v. PricewaterhouseCoopers LLP*,
    No. 16-cv-02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 3, 2021) ............................29

*Radcliffe v. Experian Info.*,
    Sols., 715 F.3d 1157 (9th Cir. 2013)............................................................................20

*Reynolds v. Direct Flow Med., Inc.*,
    No. 17-cv-00204-KAW, 2019 WL 4168959 (N.D. Cal. Sept. 3, 2019) ......................22

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................20, 22, 25

*Roe v. SFBSC Mgmt., LLC*,
    No. 14-cv-03616-LB, 2022 WL 17330847 (N.D. Cal. Nov. 29, 2022)..................22, 24

*Ross v. Trex Co. Inc., No. C,*
    09-00670 JSW, 2013 WL 791229 (N.D. Cal. Mar. 4, 2013).......................................26

*Sali v. Corona Reg'l Med. Ctr.*,
    889 F.3d 623 (9th Cir. 2018) ......................................................................................17

*Sidibe et al. v. Sutter Health*,
    No. 12-cv-04854-LB, 2021 WL 879875 (N.D. Cal. Mar. 9, 2021)................................7

*Sidibe v. Sutter Health*,
    103 F.4th 675 (9th Cir. 2024).......................................................................................10

*Sidibe v. Sutter Health*,
    333 F.R.D. 463 (N.D. Cal. 2019)............................................................................17, 18

*Sidibe v. Sutter Health*,
    No. 12-cv-04854-LB, 2019 WL 2078788 (N.D. Cal. May 9, 2019) ..............................6

v

*Sidibe v. Sutter Health*,
  No. 12-cv-04854-LB, 2020 WL 4368221 (N.D. Cal. July 30, 2020) ......................17, 19

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ......................................................................................25, 28

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .............................................................................................16

*Vietnam Veterans of Am. v. Cent. Intel. Agency*,
  No. 09-cv-00037-CW, 2018 WL 4827397 (N.D. Cal. Oct. 4, 2018) ...............................29

*Wren v. RGIS Inventory Specialists*,
  No. 06-cv-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...............................28

**Statutes**

California Civil Code Section 1542 .............................................................................................12

**Rules**

Fed. R. Civ. P. 23 .............................................................................................16, 17, 19, 26

Fed. R. Civ. P. 23(a) ...............................................................................................................17

Fed. R. Civ. P. 23(a)(2) ..........................................................................................................17

Fed. R. Civ. P. 23(a)(3) ..........................................................................................................17

Fed. R. Civ. P. 23(a)(4) ....................................................................................................17, 19

Fed. R. Civ. P. 23(b)(2) ............................................................................................................5

Fed. R. Civ. P. 23(b)(3) ................................................................................................. *passim*

Fed. R. Civ. P. 23(c)(3) ..........................................................................................................26

Fed. R. Civ. P. 23(c)(2) ..........................................................................................................28

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................25, 26

Fed. R. Civ. P. 23(e) ...............................................................................................................19

Fed. R. Civ. P. 23(e)(2); and (ii) ......................................................................................16, 19

Fed. R. Civ. P. 23(e)(3) ..........................................................................................................21

Fed. R. Civ. P. 23(e)(1) ....................................................................................................16, 25

Fed. R. Civ. P. 23(e)(1)(B) ...............................................................................................16, 25

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
Case No. 3:12-CV-04854-LB

Fed. R. Civ. P. 23(e)(2)(A) and (B) .................................................................................19

Fed. R. Civ. P. 23(e)(2)(B)...............................................................................................19

Fed. R. Civ. P. 23(e)(2)(C)...............................................................................................21

Fed. R. Civ. P. 23(e)(2)(C) and (D) .............................................................................21, 25

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................................24

Fed. R. Civ. P.23(e)(2)(A) ................................................................................................19

Federal Rule of Evidence 702 ........................................................................................7, 8

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
Case No. 3:12-CV-04854-LB

Plaintiffs Djeneba Sidibe, Jerry Jankowski, Susan Hansen, David Herman, Optimum Graphics, Inc., and Johnson Pool & Spa hereby submit their motion for preliminary approval of the proposed Settlement between Plaintiffs and Defendant Sutter Health. ("Sutter"). *See* Declaration of Jean Kim, dated April 25, 2025, submitted herewith ("Kim Decl.") Ex. A.

## I.    INTRODUCTION

This antitrust consumer class action, first filed on September 17, 2012, was litigated through multiple motions to dismiss; two class certification motions and a Rule 23(f) petition; two summary judgment motions; a four-week trial; and three appeals to the Ninth Circuit before the parties agreed to settle on the eve of a second trial on March 2, 2025.  The proposed Settlement for $228.5 million was reached, with the assistance of a well-regarded mediator, by experienced counsel who have deep familiarity with the evidentiary record and legal arguments that each party has made in the nearly thirteen years of litigating this matter.

The Class Representatives and Class Counsel have achieved substantial relief and benefits for all Class Members through the proposed Settlement.  The Class faces significant risks and many more years of litigation if the matter does not settle now.  Given the large monetary recovery being offered by Sutter to settle and the risks of continued litigation, there can be no doubt that the proposed Settlement is fair, adequate and reasonable to all Class Members. Providing Sutter with a release of claims and dismissal of this action with prejudice in exchange for that monetary recovery makes eminent sense.  Accordingly, Plaintiffs seek preliminary approval to draw to a favorable conclusion this important and long-running antitrust action.

Not only is the overall amount of the proposed Settlement fair, adequate and reasonable to Class Members, but so are the Proposed Notice Plan and the Proposed Plan of Distribution ("POD") for the Settlement funds.  Both are supported by recent precedent and will be executed by JND Legal Administration ("JND"), a nationally recognized claims administrator, who successfully distributed the Notice of Pendency to the approximately three million Class Members here in this matter and has expertise in administering distribution plans like the one proposed here.

## II.    PROCEDURAL BACKGROUND

### A.    The Pleading Stage

Plaintiffs filed their first complaint on September 17, 2012, alleging that Sutter was engaging in anticompetitive conduct in the health care services industry in Northern California in violation of state and federal antitrust laws and California's Unfair Competition Law.  At that time, there was only one law firm representing Plaintiffs, the Mehdi Firm, PC.  Plaintiffs amended their complaint as of right on December 10, 2012.  Kim Decl. ¶ 5.

Sutter moved to dismiss the First Amended Complaint and the parties litigated that motion from January to June of 2013.  On June 3, 2013, the Court found that Plaintiffs had standing but dismissed the complaint for failure to allege relevant product and geographic markets.  Plaintiffs filed their Second Amended Complaint on July 1, 2013.  Kim Decl. ¶¶ 6-7.

In August 2013, Constantine Cannon LLP ("CC") joined the action as counsel for Plaintiffs.  Jean Kim, Matthew L. Cantor (who served as Lead Trial and Appellate Counsel throughout these proceedings) and Axel Bernabe, entered appearances.  Soon thereafter, in September 2013, the law firms of Steyer Lowenthal Boodrookas Alvarez & Smith LLP ("Steyer Lowenthal") and Farmer Brownstein Jaeger LLP ("Farmer Brownstein") joined the action as counsel for Plaintiffs.  Allan Steyer, D. Scott Macrae and Jill Manning, of Steyer Lowenthal and David Brownstein (and, later, David Goldstein) of Farmer Brownstein, among others, entered appearances.  Kim Decl. ¶ 8.

Meanwhile, on August 2, 2013, Sutter Health filed a Motion to Dismiss the Second Amended Complaint.  The parties litigated that motion from August 2013 through November 2013. On November 7, 2013, the Court granted the motion, dismissing Plaintiffs' tying claim for failure to allege harm in the tied market and their monopolization and attempted monopolization claims for failure to allege market power and the relevant geographic market.  Kim Decl. ¶ 9.

Shortly thereafter, on December 9, 2013, Plaintiffs filed the Third Amended Complaint alleging that Sutter had engaged in tying arrangements and a course of conduct that violated federal and state antitrust laws.  Plaintiffs alleged tying and tied markets for the sale of inpatient

hospital services to commercial insurers in several hospital services areas ("HSAs"), based on the Dartmouth Atlas on Health Care, an industry authority. Plaintiffs brought the action on behalf of a putative class of indirect purchasers who had enrolled in commercial health plans and were alleged to have been overcharged and injured by Sutter's alleged anticompetitive conduct. Kim Decl. ¶ 10.

On January 8, 2014, Sutter moved for the third time to dismiss the complaint. On June 20, 2014, the Court dismissed the Third Amended Complaint, this time with prejudice, for failure to allege relevant geographic markets. Kim Decl. ¶ 11. Plaintiffs timely appealed and litigated the appeal from December 2014 through July of 2016. Kim Decl. ¶ 12. On July 15, 2016, the Ninth Circuit reversed the Court's dismissal and remanded for further proceedings. Kim Decl. ¶ 13.

### B.    Fact And Expert Discovery

On remand the parties commenced discovery. While the parties to this action litigated Plaintiffs' appeal of the Court's dismissal of the Third Amended Complaint, on April 7, 2014, a different group of plaintiffs filed a complaint on behalf of a putative class of direct purchasers in California Superior Court challenging alleged conduct similar to that at issue here. *UFCW & Employers Benefit Trust v. Sutter Health*, CGC-14-538451 (Cal. Super. Ct. S.F. *filed* April 7, 2014) (the "*UEBT*" action). Kim Decl. ¶ 14. While the first appeal was pending, discovery had commenced in *UEBT*. Given the similarity of the claims and underlying facts between the cases, discovery was consolidated and coordinated. Kim Decl. ¶ 15. On March 29, 2018, the California Attorney General sued Sutter in California Superior Court, also based upon alleged conduct similar to that at issue here, alleging violations of antitrust law. *California ex rel. Xavier Becerra v. Sutter Health*, CGC-18-565398 (Cal. Super. Ct. S.F. *filed* March 29, 2018) (the "AG" action, and together with *UEBT*, the "State Actions"). Thereafter, discovery was coordinated across all three actions. Kim Decl. ¶ 16.

Plaintiffs propounded significant discovery that ran for a period of approximately six years, from 2016 through 2021. Over 2.5 million documents (over 17 million pages) were produced by the parties, non-party health plans, and other third parties. Much of the discovery

sought, including paid claims and premium data required to analyze liability and damages, was from non-party health plans who negotiated with Sutter for the provision of inpatient hospital services. Negotiating and obtaining discovery from Anthem Blue Cross, Blue Shield, United Healthcare, Health Net and Aetna (the "Health Plans") was particularly difficult and consumed thousands of attorney hours. Kim Decl. ¶ 17.

To review the substantial discovery produced by Sutter and the Health Plans, Plaintiffs retained the help of additional law firms, including Keller Grover, Schneider Wallace and Scott & Scott. CC, Steyer Lowenthal, and Farmer Brownstein led discovery efforts and oversaw the review of millions of documents. Kim Decl. ¶ 18. Once discovery had been reviewed and analyzed, the parties conducted depositions of one hundred and fifty-five (155) fact witnesses, the vast majority in-person, many of them multi-day, amounting to two hundred and twenty-three (223) days of deposition. Kim Decl. ¶ 19.

The parties also engaged in substantial expert work and discovery. Plaintiffs retained three experts: 1) Dr. Tasneem Chipty, an esteemed Ph.D economist who has testified on behalf of the United States in health care antitrust matters and who, in this case, opined on the issues of class certification, relevant markets, liability, antitrust impact, and damages; 2) Dr. Kenneth Kizer, a former Undersecretary of the U.S. Department of Health and Human Services, who served as Plaintiffs' health care industry expert, opining on hospital quality and competition, integration of care and industry background; and 3) Mr. David Axene, a health care actuarial expert with over 50 years of experience in California, who opined on premium construction, an actuarial approach to tracing the impact of alleged overcharges through to health insurance premiums, and other issues relevant to class certification and impact. Kim Decl. ¶ 21.

Sutter retained seven experts: 1) Dr. Robert Willig, Ph.D., an economist on the Princeton University faculty who previously served as the head of the economics bureau of the Antitrust Division of the U.S. Department of Justice; 2) Dr. Gautam Gowrisankaran, Ph.D., an economist on the Columbia University faculty; 3) Jonathan Orszag, an economist who founded Compass Lexecon; 4) Dr. Jonathan Skinner, Ph.D., a health care economist; 5) Patrick Pilch, a health care

industry expert; 6) Shannon Keller, a health care actuarial expert; and 7) Patrick Travis, a health care industry executive with expertise in purchasing and pricing of health insurance. Kim Decl. ¶ 21.

Plaintiffs' experts produced fourteen (14) expert reports and Sutter's produced twenty-three (23). Each expert sat for deposition, in many instances multiple times, for a collective twenty-eight (28) days of expert deposition testimony. Kim Decl. ¶ 22.

Dr. Chipty, in determining her overcharge estimates, and liability and class opinions, analyzed a vast amount of transaction data, including millions of lines of paid claims and premium data. Dr. Chipty, in conducting her analyses, was supported by a team of economists, healthcare specialists and data analysts at Berkeley Research Group (BRG), Matrix Economics and AlixPartners. Kim Decl. ¶ 22.

On September 29, 2017, Plaintiffs amended the complaint for the final time to conform to the discovery that had been taken up until that time. Kim Decl. ¶ 23. The Fourth Amended Complaint was the operative complaint from that time forward. Fact discovery was concluded on August 31, 2018, and expert discovery on December 8, 2021. Kim Decl. ¶ 24.

**C.    Class Certification**

The Court conducted two extensive rounds of briefing on class certification between 2018 and 2020. Plaintiffs first moved to certify an indirect purchaser class of premium payers on June 22, 2018. The Court issued its opinion certifying only a Federal Rule of Civil Procedure 23(b)(2) injunctive class on October 18, 2019. The Court denied the motion with respect to a Rule 23(b)(3) damages class, concluding that Dr. Chipty's analysis was insufficient to show antitrust injury and damages on a class-wide basis. Kim Decl. ¶ 25.

Dr. Chipty thereafter expanded her analysis to include data from all five Health Plans, specified regression analyses based on data filed with the Center for Medicare and Medicaid Services (CMS) data, and other available data that further supported her opinions on class-wide injury and damages. Plaintiffs moved again to certify a Rule 23(b)(3) damages class on November 28, 2019. On July 30, 2020, the Court granted Plaintiffs' motion and certified a Rule

1    23(b)(3) class of premium payers.  The Court thereafter appointed CC as Lead Class Counsel and

2    The Mehdi Firm as Co-Lead Class Counsel.  Kim Decl. ¶ 26.

3         Plaintiffs submitted a proposed notice plan and supporting papers prepared with JND

4    Legal Administration ("JND") to provide Notice of Pendency on September 17, 2020.  Prior to

5    retaining JND, plaintiffs considered a proposal from a competing notice and claims administrator,

6    Epiq.  Plaintiffs retained JND based on the relative strength of its proposal and the claims

7    administrator's experience and reputation.  Kim Decl. ¶ 28.

8         After motion practice regarding the proposed form and scope of the Notice of Pendency,

9    Plaintiffs worked with JND to effectuate notice between November 2020 and March 2021.  The

10   deadline to opt out of the class action was March 8, 2021.  Notice was provided to over three

11   million Class Members via mail, email, and print and digital publication.  Kim Decl. ¶ 29.

12        **D.    Summary Judgment**

13        The Court also oversaw two rounds of summary judgment motion practice.  Not long into

14   discovery, on October 5, 2017, Sutter moved for early summary judgment, claiming that Plaintiffs

15   lacked sufficient evidence to prove their alleged relevant geographic markets for inpatient hospital

16   services. Kim Decl. ¶¶ 30-31.

17        The parties submitted substantial expert reports and conducted expert discovery of

18   Dr. Chipty and Dr. Gowrisankaran's geographic market opinions.  Dr. Chipty's analysis supported

19   Plaintiffs' market definition allegations for eleven (11) out of the twelve (12) geographic markets

20   alleged for inpatient hospital services in Northern California. Market definition is a costly and

21   expert-heavy exercise in antitrust litigation.  Kim Decl. ¶ 31.

22        On April 12, 2019, in a seventy-page opinion, the Court denied Sutter's motion for

23   summary judgment with respect to eleven (11) of Plaintiffs' twelve (12) alleged geographic

24   markets and granted Sutter's motion with respect to the Davis market. *Sidibe v. Sutter Health*, No.

25   12-cv-04854-LB, 2019 WL 2078788 (N.D. Cal. May 9, 2019) (ECF No. 673).

26        After the close of fact discovery, on June 22, 2020, Plaintiffs moved for partial summary

27   judgment on the distinct products element of their tying claim.  The Court, on October 23, 2020,

28

1    granted that motion.  Kim Decl. ¶ 33.

2           On August 22, 2020, Sutter moved for summary judgment on several potentially

3    dispositive issues, including whether Sutter's contracting practices constituted tying arrangements.

4    The Court, on March 9, 2021 (after the opt-out period for Class Members expired), denied that

5    motion with regard to Plaintiffs' *per se* and rule of reason tying claims and their course of conduct

6    claim, finding numerous disputed issues of fact regarding Plaintiffs' Sherman Act Section 1 and

7    Cartwright Act claims.  *Sidibe et al. v. Sutter Health*, No. 12-cv-04854-LB, 2021 WL 879875

8    (N.D. Cal. Mar. 9, 2021) (ECF No.962).  The Court granted Sutter's motion with regards to

9    Plaintiffs' Sherman Act Section 2 claims and damages claims from 2008 to 2010.  Kim Decl. ¶ 34.

10           **E.    Settlement in the State Actions**

11           In late 2021, Sutter settled with the AG and *UEBT* plaintiffs in the State Actions for

12    monetary relief and significant injunctive relief relating to Sutter's contracting practices with

13    insurers.  The injunctive relief included, among other things, terms that prohibit and permit certain

14    conduct related to Sutter's contracting practices with insurance companies concerning network

15    participation, steering, tiering, out-of-network pricing, and availability of pricing information.

16    The injunction also appointed a monitor to ensure Sutter's compliance with the injunction terms.

17    The release in the settlement agreement in the State Actions resolved all claims relating to the

18    challenged conduct except it explicitly carved out the damages claims in this matter.  Kim Decl. ¶

19    35.

20           **F.    Pretrial Work**

21           Due to delays caused by the COVID-19 pandemic and witness availability, the parties

22    prepared for the first trial three separate times.

23           Trial was first scheduled to commence on October 4, 2021.  Starting in

24    November/December, the parties began working diligently for months to prepare exhibit

25    lists, trial witness lists, and designations of deposition testimony. The parties exchanged

26    those materials and held extensive meet and confers for months regarding exhibits and

27    deposition designations.   Collectively, there were thousands of exhibits on the parties'

28

exhibit lists and several hours of deposition designations.  Kim Decl. ¶ 37.

The parties also prepared and submitted thirteen (13) *in limine* and additional motions to exclude expert evidence under Federal Rule of Evidence 702.  On August 30, 2021, the Court issued a pretrial order denying all seven (7) of Plaintiffs' *in limine* motions and granting all six (6) of Sutter's *in limine* motions.  The order precluded Plaintiffs from offering any evidence from the period before January 1, 2006, unless the Court ordered otherwise.  In response, Plaintiffs made an offer of proof relating to twenty-three (23) pieces of evidence otherwise precluded by the Court's pre-2006 *in limine* ruling, which was denied as to all 23 pieces of evidence.  The Court also largely denied the parties' Rule 702 motions.  Kim Decl. ¶ 38.

On September 23, 2021, the Court adjourned the October 4, 2021 date for the commencement of trial to January 6, 2022.  On December 16, 2021, the parties conducted *voir dire* and selected a jury.  But on January 5, 2022, the day before trial was scheduled to commence, the Northern District suspended all jury trials due to the outbreak of another strain of COVID.  Kim Decl. ¶ 39.  Trial was rescheduled for the third time -- to commence on February 9, 2022.  The parties conducted *voir dire* and selected a jury on February 9, 2022.  Kim Decl. ¶ 40.

### G.     Jury Trial

From February 9 to March 11, 2022, the Court conducted trial in this case.  During nineteen (19) full trial days, over four weeks, the jury heard testimony from fifty (50) witnesses, including six (6) expert witnesses.  Three hundred and fifty-one (351) exhibits were entered into evidence.  Non-party Health Plan witnesses testified regarding Sutter's contracting practices and the impact of Sutter's conduct on premiums.  Three of the six Plaintiffs (Djeneba Sidibe, David Herman and Optimum Graphics, Inc.) testified on behalf of the Class regarding their premium payments and the relief they hoped to achieve from the lawsuit.  Kim Decl.  ¶ 41.

Over ten (10) Sutter witnesses also testified in defense.  Non-Sutter hospital and other witnesses testified to hospital contracting practices, charity care, and clinical integration.  Dr. Chipty testified to her liability and damages opinions (asserting that the Class had incurred damages of

approximately $411 million between January 1, 2011 and March 31, 2020) and explained her opinion how the overcharges resulting from Sutter's alleged conduct were passed on to Class Members through higher premiums. Sutter's experts testified to their opinions on liability and damages, claiming that the Class was not injured by Sutter's conduct and did not incur damages. Kim Decl. ¶ 41.

On March 11, 2022, the jury rendered a verdict in Sutter's favor.  Kim Decl. ¶ 43.  Final judgment was entered on March 29, 2022.  Kim Decl. ¶ 44.

### H.    Appeal of Jury Verdict

Plaintiffs promptly appealed this second Final Judgment to the Ninth Circuit, asking that the Final Judgment be reversed and remanded for a new trial.  Plaintiffs appealed the Court's *in limine* and other rulings that precluded Plaintiffs from presenting any pre-2006 evidence at trial. Plaintiffs argued that evidence of health plan negotiations before and after Sutter's systemwide contracting and anticompetitive contract terms had been forced on health plans supported their tying claims.  The precluded evidence included alleged admissions from Sutter executives who conceived of and were charged with carrying out Sutter's alleged systemwide restraints.  Plaintiffs argued that they were prejudiced at trial by the erroneous exclusion of the evidence.  Kim Decl. ¶ 45.

Plaintiffs also appealed the Court's revision of CACI jury instructions on their course of conduct claim, arguing that instruction eliminated any consideration of the history and purpose of Sutter's restraints.  Plaintiffs argued that this forced the jury to assess Sutter's alleged restraints without understanding the purpose for which Sutter had imposed them--to raise prices.  Plaintiffs argued that if the jury had been instructed to consider such purpose, it would have understood the likely anticompetitive effects that resulted from Sutter's conduct.  Kim Decl. ¶ 46. Lastly, Plaintiffs appealed the Court's Orders denying their request to define the "relevant purchaser" as the health plans and their motion for sanctions. Kim Decl. ¶ 47.

Sutter argued that the Court's adoption of the jury instructions that excluded the term "purpose" from Plaintiffs' course of conduct claim was correct or, alternatively, that any error

9

was harmless because the jury had not reached the verdict-form question that related to

consideration of the purpose and history of Sutter's restraints.  Sutter argued that the exclusion of

pre-2006 evidence was well within the trial court's discretion to streamline trial and the excluded

materials were cumulative of other evidence that had already been admitted and confusing for the

jury. Kim Decl. ¶ 48.

On June 4, 2024, the Ninth Circuit, in a 2-1 decision, reversed the jury verdict based

on the Court's errors in revising the CACI jury instructions and precluding pre-2006 evidence

from trial.  *Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024) (ECF No. 147-1).

The Ninth Circuit concluded that pre-2006 evidence was relevant and probative of Sutter's

intent, the likely effect of Sutter's conduct, and whether Sutter forced health plans into

systemwide contracting and other contract terms.  It found that the exclusion was not harmless and

had prejudiced Plaintiffs in the first trial.  It also found that the failure to instruct the jury to

consider the history and purpose of Sutter's restraints was legal error.  Kim Decl. ¶ 51.

Judge Bumatay dissented, cautioning against disturbing the trial court's evidentiary rulings

over which it has wide discretion.  He also argued that the majority opinion broke new ground in

antitrust's rule of reason analysis, making mandatory the consideration of the "purpose" of a

restraint's imposition for all antitrust claims.  He agreed with Sutter's argument that the faulty jury

instruction was harmless error.  Kim Decl. ¶ 52.

The Ninth Circuit, in a separate memorandum, affirmed the Court's "relevant purchaser"

instruction and its denial of Plaintiffs' motion for sanctions (ECF No. 148-1).  On July 18, 2024,

Sutter filed a Petition for Rehearing and Rehearing *En Banc* in the Ninth Circuit (ECF No.

152).  That Petition was denied on August 12, 2024 (ECF No. 153), and the Ninth Circuit issued

its mandate reversing and remanding on August 19, 2024 (ECF No. 154).

## I.    Re-Trial and Settlement

On remand, Plaintiffs immediately sought to schedule a re-trial and began preparing

for it.[1]  On November 6, 2024, the Court ordered a re-trial to commence on March 3, 2025.

Following that order, the parties began preparations for the second trial.  The parties made

supplemental pretrial exchanges and met and conferred regarding the witnesses, exhibits, and

testimony designations.  They also worked diligently to subpoena and prepare witnesses for trial

testimony.  The parties appeared at several pre-trial hearings to argue new *in limine* motions,

argue jury instructions, and agree on logistics for trial.  Kim Decl. ¶ 55.

On February 27, 2025, the parties conducted *voir dire* and selected a jury for the re-

trial.  They finalized trial logistics and prepared to give opening statements a few days later, on

March 3, 2025.  Kim Decl. ¶ 56. Although the parties had settlement discussions throughout this

litigation, including a formal mediation session and follow-up conversations from 2019 through

2021, those discussions were ultimately unsuccessful.  Kim Decl. ¶ 57. However, in the lead up to

the re-trial, the parties retained Gregory P. Lindstrom of Phillips ADR to mediate their dispute.

They had numerous communications with Mr. Lindstrom and participated in an in-person

mediation with him in the months leading to the re-trial.  The parties also engaged in direct

settlement communications.  After the jury was selected, but before opening statements, the

parties reached an agreement in principle to settle the matter for $228.5 million.  The parties

informed the Court of their agreement and filed a notice of settlement on March 2, 2025.  Kim

Decl. ¶ 58.

The parties thereafter negotiated a settlement agreement over six weeks.  These were arms-

length negotiations which involved multiple rounds of comments and back and forth regarding the

terms of settlement.  Kim Decl. ¶ 59. Class counsel with substantial experience with antitrust and

complex litigation, and who prosecuted the case since the pleading stage, negotiated the

agreement.  They were most familiar with its strengths and weaknesses.  They were also aware of

the risks of another jury trial, having tried the case once already.  They understood the difficulties

facing a lay jury in deciding an antitrust case of this magnitude and complexity. Jeffrey A. LeVee

---

[1] On October 1, 2024, Mr. Cantor opened a new law firm – Shinder Cantor Lerner LLP (SCL). He continued to act as Lead Trial Counsel at SCL and SCL attorneys that had formerly been part of CC continued to prosecute this matter.

and David C. Kiernan, both of Jones Day, negotiated the agreement on behalf of Sutter.  Kim Decl. ¶ 60.

On April 24, 2025, the parties executed the settlement agreement (the "Settlement Agreement").  *See* Kim Decl. Ex. A.

Consistent with the certified Rule 23(b)(3) class, the Settlement covers  "All entities in California Rating area 1, 2, 3, 4, 5, 6, 8, 9 or 10 (the "Nine Rating Areas" or "Nine RAs"), and all individuals that either live or work in one of the Nine RAs, that paid premiums for a fully-insured health insurance policy from Blue Shield, Anthem Blue Cross, Aetna, Health Net or UnitedHealthcare from January 1, 2011 through March 8, 2021. This class definition includes Class Members that paid premiums for individual health insurance policies that they purchased from the Health Plans and Class Members that paid premiums, in whole or in part, for health insurance policies provided to them as a benefit from an employer or other group purchaser located in one of the Nine RAs."  *Id.* at I.A.3.

Under the Settlement Agreement, Sutter will deposit $228,500,000 into a Court-approved escrow account within twenty (20) calendar days from the date of the Court's order granting final approval of the Settlement (the "Settlement Fund").  *Id.* at III.A.1.  All interest earned in the escrow account from the date of deposit until the Effective Date of the Settlement shall be split 50% for the benefit of the Class and 50% for the benefit of Sutter. *Id.* at III.A.5.

In exchange for Sutter's payment of $228.5 million, Plaintiffs and all Class Members will release all claims against Sutter and its affiliates, arising from or related to the facts, activities or circumstances that were or could have been alleged in the complaints filed by Plaintiffs, including in the Fourth Amended Complaint, or any purported anticompetitive effect resulting from the conduct alleged by Plaintiffs, including conduct alleged at the first trial. *Id.* at VI.A.1. The Settlement Agreement includes a waiver of unknown claims pursuant to California Civil Code Section 1542. *Id.* at VI.A.2.

The Settlement Agreement provides that Class Counsel may apply to the Court for an award of attorney's fees and reimbursement of all expenses incurred in this action. All attorneys'

12

fees and expenses shall be payable solely out of the Settlement Fund in such amounts as the Court orders. *Id.* at VII.1.  The Settlement Agreement also provides that Lead Class Counsel may request permission from the Court to withdraw the amount awarded by the Court for Attorneys' Fees and Expenses for any Class Counsel or Additional Counsel, or any portion thereof, provided that all appeals regarding the settlement (excepting any related solely to attorney's fees or expenses and class representative service awards) have been resolved. *Id.* at VII.2.

The Court previously provided Class Members with an opportunity to opt out of the class action from December 15, 2020 to March 8, 2021. The Court-approved Notice of Pendency provided that any class members who did not opt out of the Class by March 8, 2021, would be bound by the outcome of the lawsuit, would receive the benefits of any settlement, and would not be able to exclude themselves from the Class in the future. The Settling Parties agree that pursuant to the Court's prior orders, and the opt-out notice that was already given, Class Members will not be provided with another opportunity to opt out of the Settlement.  *Id.* at II.D.

**J.     Settlement Notice and Plan of Distribution**

As with the Notice of Pendency, Plaintiffs have retained JND to administer the Settlement notice and the Proposed Plan of Distribution ("POD").  *See* Kim Decl. Ex. B.    JND is a nationally recognized notice and claims administrator and successfully effectuated the Notice of Pendency to more than three million Class Members.  JND has designed a Settlement Notice Plan that is similar to the Notice of Pendency that the Court approved in December 2020.  *See* Declaration of Jennifer Keough ("Keough Decl."), dated April 24, 2025, and exhibits, submitted herewith.

To account for the passage of time, JND will update the previously used contact information obtained from the Class Health Plans and will disseminate direct notice via U.S. mail and email.  JND will also disseminate digital notice to business entities via LinkedIn and other on-line platforms.  It will serve digital notice to consumers via Facebook/Instagram and other on-line platforms and targeted advertising.  JND will also conduct an internet search campaign and distribute a digital press release to media outlets in English and Spanish.  Although JND published

1 | the Notice of Pendency in print newspapers, JND has determined that the readership of print

2 | newspapers has declined significantly in the past several years so will not be providing notice

3 | through print advertisements.  JND therefore will expand its digital publication of notice as

4 | described above.  Kim Decl. ¶ 69 [2]

5 |      Plaintiffs prepared the POD in consultation with JND.  Plaintiffs also considered and relied

6 | on precedent from another recent class settlement that involved a similar (but nationwide) class of

7 | premium payors.  JND also served as the claims administrator for *BCBS*.  *See In Re: Blue Cross*

8 | *Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, MDL 2406, 2022 WL 4587618 (N.D. Ala.

9 | Aug. 9, 2022), *aff'd ,* 85 F.4th 1070 (11th Cir. 2023).

10 |      Portions of the $228.5 million Settlement Fund shall be used to pay certain costs and fees

11 | prior to determining a net amount that is available for distribution to Class Members (the "Net

12 | Settlement Fund"). The fees and other costs to be deducted from the Settlement Fund include

13 | approximately:  $10 million of costs to cover notice and administration of the Settlement;

14 | expenses incurred by Class Counsel of approximately $28 million in prosecuting the case,

15 | reimbursement of which shall be subject to a petition to and approval by the Court; attorneys'

16 | fees, not to exceed 33% of the Settlement Fund, to the counsel representing the class, also subject

17 | to approval by the Court; service awards to Class Representatives, approved by the Court; and

18 | escrow account costs. Class Counsel will seek an attorneys' fees award of up to 33% of the

19 | Settlement Fund. Such an award will not reflect any positive multiplier.[3] Class counsel will

20 | seek reimbursement of approximately $ 28 million in litigation expenses, including

21 | approximately $17 million in expert witness costs.[4] *See* Kim Decl. Ex. A at Sect. VII.

22 |      The Class Representatives -- Djeneba Sidibe, David Herman, Susan Hansen, Susan

---

[2] The Settlement Agreement also provides for the parties' compliance with the Class Action Fairness Act.

[3] Class Counsel (including firms assisting with discovery) are actively accruing their billing records identifying their lodestar and the number of hours billed for this 12.5-year matter.  At this time, we estimate that Class Counsel total lodestar for the matter will exceed $75 million.  Kim Decl. ¶ 71. Class Counsel will be ready to provide precise numbers to the Court on total lodestar and number of hours billed at the hearing relevant to this preliminary approval motion.

[4] Defendant incurred more than $20 million in expert expenses.

1    MacAusland (Optimum Graphics Inc.), Tina Feeney (Johnson Pool & Spa), and Jerry Jankowsi --

2    protected the interests of the Class over the many years of this litigation and expended significant

3    time and effort on the case.  Each Class Representative reviewed and approved one or more

4    versions of the complaints filed, searched their personal and business files for copies of their

5    health insurance plans and premium payments, produced responsive documents, answered

6    interrogatories, prepared for and sat for deposition, attended class certification hearings, prepared

7    to testify at trial and, some of them, testified at trial. Each Class Representative was in regular

8    communication with counsel throughout the litigation spanning over a decade, including one trial

9    and three trips to the Ninth Circuit.  Kim Decl. ¶ 72.

10          Assuming an attorney's fee award of 33% of the Settlement Fund, reasonable

11   service awards, minimal Escrow Account costs, claims administration expenses of $10 million,

12   and an expense reimbursement award of $28 million, the Net Settlement Fund proceeds available

13   for distribution to Class Members would be approximately $115 million (equal to $228.5 million

14   minus the aforementioned fees and expenses).  Kim Decl. ¶73.

15          The payment for a claim submitted by an Authorized Claimant (e.g., "Claimant A")

16   shall be determined by the following equation:

17

18                    "Total Premiums Paid" (as defined below by this Plan)

19                         during Class Period by Claimant A

20

21                                   **Divided by**

22                    Total Premiums Paid during Class Period by

23                    all Authorized Claimants who submit claims

24

25                                  **Multiplied by**

26

27                    Total dollars in Net Settlement Fund

28

15

**= Claimant A's claim payment**

The inputs and assumptions that are provided in this equation are explained in greater detail in the POD. Kim. Decl. Ex. B. ¶¶ 10–14. The POD also provides a Group/Employee distribution process for premium contributions paid jointly by a group/employer and employee. *See id.* at ¶¶ 15–17. Plaintiffs relied on data published by the Kaiser Family Foundation to derive a default option for Group/Employee split of premiums during the Class Period (2011–21): 18% Employee Claimant/82% Group Claimant for individual plans and 30% Employee Claimant/70% Group Claimant for family plans. *Id.* at ¶¶ 16(f)–(g).

For claimants who forego the default option and elect to submit documentation of premium payments to calculate their payment, the POD provides an alternative option on their claim form. Any claimant whose counterpart (for a claiming Group Claimant, the Employee; and for a claiming Employee Claimant, its Group Claimant) elects the alternative option will be contacted by the Claims Administrator and provided with the opportunity to submit additional evidence to assist in the ultimate determination of how to allocate their unallocated employee premiums. *Id.* at ¶¶ 16(h)-(l).

### III.    LEGAL STANDARD

In deciding whether to approve a proposed class settlement under Fed. R. Civ. P. 23(b)(3), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (internal quotation marks and quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted).

In December 2018, the Rules Committee revised Rule 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See*

Fed. R. Civ. P. 23(e)(1). Under the revised rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## IV.    ARGUMENT

### A.    The Proposed Settlement satisfies the requirements of Rules 23(a) and (b)(3).

To preliminarily approve a class settlement, the Court should review whether the Class that will settle and receive compensation satisfies the elements of Rules 23(a) and (b)(3).  Here, of course, the Court has already certified a Class, finding that these Rule 23 elements were satisfied. *See Sidibe v. Sutter Health,* 333 F.R.D. 463 (N.D. Cal. 2019); *Sidibe v. Sutter Health*, No. 12-cv-04854-LB, 2020 WL 4368221 (N.D. Cal. July 30, 2020). The Ninth Circuit did not disturb those findings when Sutter sought interlocutory appeal of the Class Orders.

**Rule 23(a) Requirements**.

*Numerosity.* Here, the proposed Settlement covers approximately three million Class Members. The Court found that the numerosity requirement was satisfied. *Sidibe*, 333 F.R.D. at 485 (noting that "courts have held that classes as small as 40 satisfy the numerosity requirement.").

*Commonality*. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This Court found that Plaintiffs satisfied the commonality requirement by raising "common questions about whether Sutter's systemwide contracting with its all-or-nothing, anti-steering, and penalty-rate provisions is anticompetitive that would generate common answers apt to drive resolution of the litigation." *Sidibe*, 333 F.R.D. at 486.

*Typicality.* The test of typicality under Rule 23(a)(3) is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."

1    *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 633 (9th Cir. 2018) (quotation omitted). This Court

2    ruled that "[t]he named plaintiffs' claims are typical of the class's claims." *Sidibe*, 333 F.R.D. at

3    486.

4        ***Adequacy of Representation.*** Rule 23(a)(4) requires that "the representative parties will

5    fairly and adequately protect the interests of the class." '"To determine legal adequacy, [courts]

6    resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest

7    with other class members and (2) will the named plaintiffs and their counsel prosecute the action

8    vigorously on behalf of the class?'" *Sidibe*, 333 F.R.D. at 488 (quoting *Hyundai*, 926 F.3d at 566)

9    (internal quotation marks omitted).  This Court found that both these components of the adequacy

10    requirement are satisfied. *Id*. at 488-91.

11        Class Counsel had more than sufficient information to make an informed decision as to the

12    value of the Settlement compared to the risks of continued litigation. Class Counsel briefed and

13    argued motions to dismiss, summary judgment, class certification, discovery motions, jury

14    instructions, and motions *in limine,* tried this case to a jury in February and March 2022, appeared

15    three times before the Ninth Circuit, and were fully prepared for a second trial, all of which

16    enabled Class Counsel to make an informed judgment to enter into the proposed Settlement.[5]

17        Class Counsel are experienced lawyers who have successfully litigated many complex

18    antitrust class actions, on behalf of both plaintiffs and defendants, and tried a number of these

19    cases. Kim Decl. ¶ 60. Class Counsel have brought that experience and knowledge to bear on

20    behalf of the Class and in this proposed Settlement. *Id*.[6]

21    _____

22    [5] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig*., MDL No.
2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("[E]xtensive review of

23    discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision
about the Settlement. As such, this factor favors approving the Settlement."); *see also In re Portal*

24    *Software Sec. Litig*., No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

25    [6] *See Kang v. Wells Fargo Bank, N.A.,* No. 17-cv-06220-BLF, 2021 WL 5826230, at *14 (N.D.
Cal. Dec. 8, 2021) ("'[T]he fact that experienced counsel involved in the case approved the

26    settlement after hard fought negotiations is entitled to considerable weight.'"); *Koeppen v.
Carvana, LLC,*  No. 21-cv-01951-TSH, 2024 WL 3925703, at *7 (N.D. Cal. Aug. 22, 2024)

27    (quoting *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980). *Nat'l Rural*

28

**Rule 23(b)(3) Requirements.** The predominance requirement is satisfied where "common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (alteration in original) (citation omitted). This Court found that Plaintiffs satisfied the predominance requirement because common issues predominated on each of the elements of Plaintiffs' antitrust claims. *Sidibe*, 2020 WL 4368221, at *8-12.

**B.      The Proposed Settlement is fair, reasonable and adequate under Rule 23(e).**

As amended, Rule 23 provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("direct[ing] the parties to present [their] settlement . . . in terms of [this new] shorter list of core concerns" rather than use the Ninth Circuit's former list of factors for consideration). Ultimately, as the Ninth Circuit has explained, the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

**1.      The Class Representatives and Class Counsel have adequately represented the Class.**

The first Rule 23(e)(2) factor – concerning the adequate representation of the Class, Fed.R.Civ.P.23(e)(2)(A) – is satisfied because the Class Representatives and Class Counsel have adequately represented the Class. In certifying the Class, the Court found that each Class Representative was adequate and had no conflicts with the interests of the Class. *Sidibe v. Sutter Health*, No. 12-cv-04854-LB, 2020 WL 4368221 (N.D. Cal. July 30, 2020) (ECF No. 823).  Their continued commitment to the action through summary judgment, the first trial, and preparation for the second trial underscores that they have adequately represented the Class.  *See also* discussion of Rule 23(a)(4), *supra*, which is incorporated by reference here.

_____

*Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quotation omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    The Settlement was negotiated at arm's length.

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note to 2018 amendment.  "'Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.'" *Nucci v. Rite Aid Corp.*, No. 19-cv-01434-LB, 2022 WL 1693711, at *4 (N.D. Cal. May 26, 2022) (quoting *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 018 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010) (internal quotation marks omitted)); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)  ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). The Settlement was reached only after more than twelve years of extensive, rigorous litigation and well-informed, hard-fought, arm's-length negotiations—including in person mediation facilitated by Gregory Lindstrom, an experienced and skilled mediator. *See* Declaration of Gregory P. Lindstrom, dated April 25, 2025 ¶ 10 ("Lindstrom Decl.") ("[T]his settlement was reached through fierce litigation and substantial, arms' length negotiations.  Given the amount of time and effort spent on this matter by the parties and the uncertainties and risks inherent in another multi-week trial, it is my firm opinion that the settlement reached is fair, adequate and reasonable.").

Moreover, none of the Class Representatives will receive preferential treatment in exchange for the Settlement. Kim Decl. ¶ 72. *See Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1165 (9th Cir. 2013). Here, the Settlement funds will be distributed *pro rata* based on the premiums paid by Class Members, and Class Counsel will be reimbursed expenses and fees from the common fund, subject to the Court's approval. Class Counsel will ask the Court to approve reasonable service awards to the Class Representatives out of the Settlement funds to reimburse

them for their efforts on behalf of the Class over the past twelve years, but neither Class Counsel nor Sutter have made any promises about such awards.[7]

### 3. The quality of relief to the Class weighs in favor of approval.

The third factor is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) and (D) advisory committee's note to 2018 amendment.

### a. Costs, risks, and delay of trial and appeal.

The parties have already tried this case to a jury once and understand the significant risks for both sides in a re-trial. Each side has litigated vigorously over almost thirteen years and has studied the evidentiary record in depth; they know the strengths and weaknesses of their respective cases. Each side also knows that any outcome from a re-trial likely would be appealed and result in years of additional delay to this already very old case. Plaintiffs are also cognizant of the enormous resources and costs that were expended in these many years of litigation and the additional vast resources and costs to try this case again and litigate any further appeals. Moreover, the age of the evidentiary record, some of it ranging back to the late 1990s, has posed challenges as witnesses' memories fade with the passage of time.

This is an antitrust case, involving complex concepts of market power, antitrust markets and antitrust injury. That Plaintiffs' claims need to be assessed, and the law applied, within the context of state and federal healthcare regulatory regimes only adds to the complexity and difficulty for a lay juror. Several of Plaintiffs' key trial witnesses were not within Plaintiffs' control because they are non-party insurance executives who testified about Sutter's contracting

---

[7] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments"). The settlement process here has been arm's length in all respects.

1    practices and their impact on premium prices.  Securing non-party witnesses to testify to events

2    from more than twenty years ago has posed significant challenges and risks.

3          For all these reasons, the proposed Settlement is an excellent result for the Class.  *See*

4    Lindstrom Decl. ¶ 10. Therefore, while Plaintiffs maintain they have "strong claims," they are

5    fully aware that "significant risk and uncertainty remain such that continuing the case could lead

6    to protracted and contentious litigation." *Howell v. Advantage RN*, LLC, No.: 17-CV-883 JLS

7    (BLM), 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020).

8                        **b.    The Settlement Provides Fair, Reasonable and Adequate Relief**

9          The Settlement provides Class Members with substantial relief. The total value of the

10   Settlement is $228,5000,000—more than 55% of their $411,000,000 in single damages.  *See* Kim

11   Decl. ¶ 68. This is in line with the percentage of damages provided in other settlements the courts

12   in this District readily approve. *See, e.g.*, *Rodriguez*, 563 F.3d at 964 (affirming that a settlement

13   that was approximately 30% of the estimated damages before trebling was fair, adequate, and

14   reasonable); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (DMR), 2017

15   WL 1086331, at *4 (N.D. Cal. Mar. 20, 2017) (approving "settlement [that] represents 11.2% of

16   the single damages attributable to Sony sales"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

17   No. C-07-5944 JST, 2017 WL 565003, at *4, *6 (N.D. Cal. Feb. 13, 2017) (granting preliminary

18   approval of settlement representing 24% of single damages, and previously finding 20% of single

19   damages to be a good recovery in other cases); *Roe v. SFBSC Mgmt., LLC*,  No. 14-cv-03616-LB,

20   2022 WL 17330847, at *12 (N.D. Cal. Nov. 29, 2022) ("[T]welve percent of the best-case

21   scenario is within the range courts approve."); *Reynolds v. Direct Flow Med., Inc*., No. 17-cv-

22   00204-KAW, 2019 WL 4168959, at *3 (N.D. Cal. Sept. 3, 2019) (granting final approval for a

23   settlement representing 13% of plaintiffs estimated damages).

24         The Settlement is also in line with the monetary settlement achieved in the State Actions,

25   in which the Class achieved approximately 57% of single damages.  The injunctive relief obtained

26   in the State Actions fully applies to the Class, so Plaintiffs do not seek further injunctive relief.

27                        **c.    The effectiveness of the method of distributing relief to the class.**

28

22

Eligible Class Members who file a claim may receive a payment, with the actual amount depending on the number of claims and the volume of commerce represented in those claims. Making a claim will be straightforward. Class Members will be able to submit a claim through an online portal or by mailing a claim form. This information will be included in the Class Notice and Settlement website, and a toll-free number will be established to answer Class Members' questions. *See* Keough Decl. ¶¶ 42,44.  The Settlement Fund will be distributed pursuant to the POD.[8]

Class Counsel, in consultation with JND and BRG, which has provided economic consulting services to the Class through this case, prepared the POD that will apportion the Net Settlement Fund (funds after fees and expenses are paid) based on each claimant's estimated premium payments.  Premiums can be estimated either via a default mechanism that will rely on the large amount of premium data elicited by Class Counsel from the non-party Health Plans, or by choosing an alternative mechanism by which Class Members can provide information regarding their actual premium payments.  This estimation process will also take into account the fact that premiums are sometimes paid jointly by employees and groups/employers by either utilizing a default split mechanism, based on Kaiser Family Foundation data, to estimate the proportion of these joint premiums paid by employees and their employers, or, using actual split data if a Class Member chooses to provide it. *See* Kim Decl. Ex. B  ¶¶ 10–16.

Notably, the Plan of Distribution, including the Group/employee split, closely hews to the Plan of Distribution approved in *BCBS,* a recent antitrust litigation concerning insurance

---

[8] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "'fairly treats class members by awarding a *pro rata* share' to the class members based on the extent of their injuries." (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005)); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670-DMS (MSB), 2024 WL 4875246, at *7 (S.D. Cal. Nov. 22, 2024) (approving *pro rata* antitrust settlement distribution); *In re High-Tech Emp. Antitrust Litig.*, No. 11–CV–02509–LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving *pro rata* distribution of fractional share based upon class member's total base salary as fair and reasonable); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008).

premiums. *See In Re: Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618. Lastly, JND – the Class Administrator here – was the Administrator of the Settlement in that case and thus has substantial experience with distributions based on insurance premiums paid. *See* Kim Decl. ¶ 70.

Any unclaimed funds will not revert to Sutter but will instead be distributed to claimants in a second distribution. *See* Kim Decl. Ex. B at Sect.V.A.3 & .6. If there are any remaining funds after a second distribution, they shall be distributed to the Class, or, Class Counsel may make an application to the Court for *cy pres* distribution in accordance with governing standards in the Ninth Circuit. *Id.*

### d.    Proposed award of attorney's fees, including timing of payment.

The Settlement Agreement provides that Class Counsel shall seek attorneys' fees of up to 33% of the Settlement Fund and reimbursement of costs. Attorneys' fees and costs will be paid after final approval of the Settlement and after appeals to the Settlement Agreement are resolved (unless appeals relate solely to the awards of attorney's fees and expenses and service fees).[9] The proposed fee and cost award will be fair and reasonable.[10]

### e.    Any agreement required to be identified under Rule 23(e)(3).

---

[9] "Federal courts ... routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *40 (N.D. Cal. July 22, 2020) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-MD-1827 SI, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011)); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) ("Courts in this district approve these 'quick pay' provisions routinely.")

[10] See *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2023 WL 2396782 at *1 (N.D. Cal. Mar. 6, 2023) ($66 million attorneys' fees award amounted to 40% of the settlement fund created by that round of settlements, and a cumulative 31% of the total settlements); *Koeppen v. Carvana, LLC*, 2024 WL 3925703, at *11 (N.D. Cal. Aug. 22, 2024) (awarding attorneys' fees of 35% of recovery); *SFBSC*, 2022 WL 17330847, at *19 (awarding attorneys' fees of 33% of recovery); *Nucci*, at *8 (awarding 33% of gross settlement amount); *Meijer, Inc. v. Abbott Lab'ys*, No C. 07-5985 CW, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (awarding 33.33% of $52 million recovery).

24

All the terms of the proposed Settlement are contained within the Settlement Agreement attached as Exhibit A to the Kim Declaration. Plaintiffs have not entered into any additional agreement with Sutter in connection with the proposed Settlement.

### 4. The Settlement treats all Class Members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(C) and (D) advisory committee's note to 2018 amendment.

Here, the Settlement treats all Class Members equitably, and there are no differences between the scope of relief among any Class Members. While Class Counsel will request reasonable service awards for the Class Representatives to reimburse them for their efforts on behalf of the Class, such awards are well-accepted in the Ninth Circuit.[11] For all these reasons, the proposed Settlement merits preliminary approval.

### C. The Proposed Notice is the best practicable under the circumstances.

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3)…the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d

---

[11] *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly typical' in class actions."); *see also Boyd v. Bank of Am. Corp.*, No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

1   at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal

2   quotation marks omitted)).

3          Notice in Rule 23(b)(3) actions, "must clearly and concisely state in plain, easily

4   understood language:" (i) the nature of the action; (ii) the definition of the class certified; (iii) the

5   class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

6   attorney if the member so desires (v) that the court will exclude from the class any member who

7   requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

8   of a class judgment on members under Rule 23(c)(3). *See* Fed. R. Civ. P. 23(c)(2)(B).

9          JND, a highly experienced class notice and settlement administrator, designed and

10  effectuated the first notice to the Class after the Rule 23(b)(3) damages class was certified in 2020.

11  In accordance with the Court-approved class notice plan, JND effectuated mail and publication

12  notice from December 15, 2020 through January 22, 2021.  JND obtained Class Member data

13  from each of the Health Plans and served notice upon millions of Class Members via U.S. mail

14  and email.  JND also disseminated notice via fifteen (15) newspaper outlets that were approved by

15  the Court.  Digital notice was also served to potential employer class members via LinkedIn.

16  Additionally, JND established a class website on December 14, 2020 that published Notice of

17  Pendency, as well as information regarding the lawsuit.

18         Plaintiffs have retained JND to design and disseminate Settlement notice, and act as the

19  Settlement claims administrator.  They did not engage in an additional request for proposals

20  because JND had previously acted as the administrator for the Notice of Pendency and had

21  substantial work product from that first tranche of work to utilize for settlement notice; JND was

22  the most cost-effective choice and had experience disseminating notice and knowledge from its

23  prior work.  Plaintiffs' Settlement Notice Plan is similar to the class notice plan that was approved

24  by the Court in December 2020.  It includes direct mail and email notice as well as digital notice

25  through press releases and digital advertising.  *See* Keough Decl. ¶¶ 27–40.

26         The Settlement Notice Plan provides a thorough approach to notice by direct U.S. mail,

27  with skip tracing and other methods to find changed addresses, email where available, and digital

28

ads, and press releases, all of which are designed so that notice will reach as many Class Members as possible. *See* Keough Decl. ¶¶ 16, 29-38, 40; *see also, e.g.*, *Ross v. Trex Co. Inc.*, No. C 09-00670 JSW, 2013 WL 791229, at \*1 (N.D. Cal. Mar. 4, 2013). The notice plan proposed by JND satisfies Rule 23 requirements and the Due Process clause of the United States Constitution. *See* Keough Decl. ¶ 15.

Moreover, the contents of the notice satisfactorily inform Class Members of their rights in the class action and under the Settlement. The proposed notice form includes: (i) the case caption; (ii) a description of the Class and Class Members eligible to receive payments; (iii) a description of the Settlement Agreement, including the monetary consideration provided to the Class; (iv) the names of Class Counsel; (v) the Final Approval Hearing date; (vi) information about the Final Approval Hearing; (vii) information about the deadline for filing objections to the Settlement Agreement; (viii) how Class Counsel will be compensated and that additional information regarding Class Counsel's fees and costs will be posted on the website prior to the deadline for objections; and (ix) how to obtain further information about the proposed Settlement Agreement, including through the website maintained by the Claims Administrator that will include links to the notice, motions for approval and for attorney's fees, and other important documents.[12] *See id.*; *see also* 4 Newberg on Class Actions § 11:53 (4th ed. 2002) (stating that notice is "adequate if it may be understood by the average class member"); *Lamb v. Bitech, Inc.*, No. 3:11–cv–05583–EDL MED, 2013 WL 4013166, at \*4 (N.D. Cal. Aug. 5, 2013).

Class Members will complete a simple claim form provided on the Settlement website which can be completed on the website or by mail. Based on its experience in comparable cases,

---

[12] The notice explains that there is no further right to opt out of the Class.  From December 2020 through January 2021, a court approved opt-out notice was sent to Class Members which stated that that if they did not opt out, "they will be bound by the outcome of the lawsuit" and "will not be able to file a lawsuit asserting claims against Sutter related to the allegations or claims in this case" and "will not be able to remove yourself from [the case.]" Due process only requires that class members be given a single opportunity to opt out of a class. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018). A member who has failed to exclude herself at the class certification stage is not entitled to exercise that option at the settlement stage. *Id.* (citing *Officers for Just. v. Civ. Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 635 (9th Cir. 1982)).

JND anticipates an expected reach to exceed 70% of eligible Class Members, See Keough Decl. ¶ 49.[13]

Accordingly, the notice program, through direct mail, digital ads, press releases, and email where available, as well as the accompanying forms, are reasonable and adequate and are fairly calculated to apprise Class Members of their rights. *See also* Fed. R. Civ. P. 23(c)(2) advisory committee's note to 2018 amendment (stating that "electronic methods of notice, for example email, are the most promising" method for delivery of notice). JND also will assist Class Counsel with the implementation of the claims administration and distribution process. *See* Kim Decl. ¶¶ 69, 71 (describing estimated costs from JND). The cost of Class Notice and claims administration is reasonable in relation to the $228.5 million Settlement and will be paid by Class Counsel, who will apply to the Court for reimbursement of this expense from the Settlement Fund.

### D.    The proposed service awards are appropriate.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). It is well-established in the Ninth Circuit that named plaintiffs in a class action are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. In considering whether to approve awards, the district court considers:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[u]ing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Bernstein v. Virgin Am., Inc.,* No. 15-cv-02277-JST, 2023 WL 7284158, at *3 (N.D. Cal. Nov. 3, 2023) (quoting *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011) (alteration in original).

The Class Representatives protected the interests of the class for an extended period and expended significant time and effort on the case. Each Class Representative reviewed and

---

[13] JND follows well-established procedures for securely handling Class Member data and maintains adequate liability insurance.  Keough Decl. ¶ 17.

approved each of the complaints, searched their personal and business files for copies of their

health insurance plans and payments, produced responsive documents, answered interrogatories,

prepared for and sat for deposition, attended hearings, prepared to testify at trial and, some of

them, testified at trial. Each Class Representative was in regular communication with counsel

throughout the litigation spanning over a decade, including one trial and three appeals. Kim Decl.

¶ 72.  Accordingly, Class Counsel request service awards as follows: Class Representatives who

did not testify at trial: $15,000; Class Representatives who did testify at trial: $20,000.

The requested awards are within the range of awards granted in the Northern District. S*ee,

e.g., Bernstein.,* 2023 WL 7284158, at *4 (approving service awards of $25,000 and $12,000);

*Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626 (N.D. Cal. Feb.

3, 2021) (approving a $20,000 service award*); In re Wells Fargo & Co. S'holder Derivative Litig*.,

445 F. Supp. 3d 508, 533 (N.D. Cal. 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021) (granting

$25,000 service awards);  *Perez v. Rash Curtis & Assocs*., No. 4:16-cv-03396-YGR, 2020 WL

1904533, at *23 (N.D. Cal. Apr. 17, 2020) (awarding $25,000 for "actively participating in this

litigation for several years, and [spending] and effort in this matter, including being deposed and

testifying at trial."); *Vietnam Veterans of Am. v. Cent. Intel. Agency*, No. 09-cv-00037-CW, 2018

WL 4827397, at *1 (N.D. Cal. Oct. 4, 2018) ($20,000 per representative); *In re NCAA Ath. Grant-

in-Aid Cap Antitrust Litig*., No. 4:14-md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6,

2017), aff'd,768 F. App'x 651 (9th Cir. 2019) (granting incentive awards of $20,000 per plaintiff).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the

accompanying proposed order preliminarily approving the Settlement Agreement, directing notice

of the proposed Settlement, and setting a hearing for the purpose of deciding whether to grant final

approval of the Settlement. As set forth in the Proposed Order, Plaintiffs propose the following

schedule for final approval and related deadlines:

1.  Deadline to commence disseminating Class notice – 30 days after entry of preliminary

approval order;

2.   Deadline for filing affidavit attesting that notice was disseminated as ordered – 30 days prior to final approval hearing;

3.   Plaintiffs to file a motion for an award of attorney's fees, costs, and service awards – 30 days before the final approval hearing;

4.   Deadline for Class Members to object to the Settlement – 117 days after preliminary approval;

5.   Deadline for Class Members to file a claim – 162 days from preliminary approval;

6.   Plaintiffs to file motion for Final Approval of Settlement – 30 days prior to Final Approval Hearing.


Dated:  April 25, 2025


Respectfully submitted,

/s/ *Jean Kim*

CONSTANTINE CANNON LLP
JEAN KIM (*pro hac vice*)
6 East 43rd Street, 26th Floor
New York, NY  10017
(212) 350-2700
(212) 350-2701 (fax)
jkim@constantinecannon.com

THE MEHDI FIRM, PC
AZRA Z. MEHDI (220406)
95 Third Street
2nd Floor #9122
San Francisco, CA 94103
(415) 293-0070
(415) 293-0070 (fax)
azram@themehdifirm.com

FARMER BROWNSTEIN JAEGER
GOLDSTEIN KLEIN & SIEGEL LLP
DAVID C. BROWNSTEIN (141929)
DAVID M. GOLDSTEIN (142334)
155 Montgomery Street, Suite 301
San Francisco, CA 94104
(415) 795-2050
(415) 520-5678 (fax)
dbrownstein@fbj-law.com
dgoldstein@fbj-law.com

SHINDER CANTOR LERNER LLP
MATTHEW L. CANTOR (*pro hac vice*)
ELLISON A. SNIDER (*pro hac vice*)
14 Penn Plaza, Ste. 1900
New York, NY 10122
(646) 960-8601
matthew@scl-llp.com
ellison@scl-llp.com

JAMES J. KOVACS (*pro hac vice*)
J. WYATT FORE (*pro hac vice*)
600 14th St NW, 5th Floor
Washington DC 20005
(646) 960-8601
james@scl-llp.com
wyatt@scl-llp.com

STEYER LOWENTHAL
BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER (100318)
D. SCOTT MACRAE (104663)
235 Pine Street, Fifteenth Floor
San Francisco, CA 94104
(415) 421-3400
(415) 421-2234 (fax)
asteyer@steyerlaw.com
smacrae@steyerlaw.com

30

1

THE MANNING LAW FIRM
JILL M. MANNING (178849)
50 California St., Ste. 1500

2

San Francisco, CA 94111
(415) 439-5200

3

jill@manning-lawfirm.com

4

5

*Counsel for Plaintiffs and the Class*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
Case No. 3:12-CV-04854-LB