CONSTANTINE CANNON LLP
JEAN KIM (*pro hac vice*)
6 East 43rd Street
New York, NY 10017
(212) 350-2700
(212) 350-2701 (fax)
jkim@constantinecannon.com

*Lead Counsel for Plaintiffs and the Class*

THE MEHDI FIRM, PC
AZRA Z. MEHDI (220406)
95 Third Street
2nd Floor #9122
San Francisco, CA 94103
(415) 293-0070
(415) 293-0070 (fax)
azram@themehdifirm.com

*Co-Lead Counsel for Plaintiffs and the Class*

SHINDER CANTOR LERNER LLP
MATTHEW L. CANTOR (*pro hac vice*)
14 Penn Plaza, Ste. 1900
New York, NY 10122
(646) 960-8601
matthew@scl-llp.com
esnider@scl-llp.com

JAMES J. KOVACS (*pro hac vice*)
J. WYATT FORE (*pro hac vice*)
600 14th St NW, 5th Floor
Washington DC 20005
(646) 960-8601
james@scl-llp.com
wyatt@scl-llp.com

(*Additional counsel listed on signature page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DJENEBA SIDIBE, JERRY JANKOWSKI, SUSAN HANSEN, DAVID HERMAN, OPTIMUM GRAPHICS, INC., and JOHNSON POOL & SPA, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

SUTTER HEALTH,

Defendant.

Case No. 3:12-cv-4854-LB

**CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date:   November 6, 2025
Time:  9:30 AM
Judge: The Honorable Laurel Beeler

1

**NOTICE OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Please take notice that Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, will be heard on November 6, 2025 at 9:30 a.m. Pacific Time, or as soon thereafter as the Motion may be heard, in Courtroom B on the 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Laurel Beeler.

1

**Table of Contents**

I.    PRELIMINARY STATEMENT .................................................................................1

II.   PROCEDURAL BACKGROUND .........................................................................2

    A.    The Pleading Stage (2012-2016) ...............................................................2

    B.    Fact And Expert Discovery (2016-2021).....................................................4

    C.    Class Certification (2018-2020)..................................................................6

    D.    Summary Judgment (2017-2019; 2020-2021) ...........................................6

    E.    Settlement in the State Actions (2019-2020) .............................................8

    F.    Pretrial Work (2021-2022)..........................................................................8

    G.    Jury Trial (2022) ........................................................................................9

    H.    Appeal of Jury Verdict (2022-2024)..........................................................10

    I.    Re-Trial and Settlement (2024-2025) .......................................................11

    J.    Class Counsel's Lodestar and Expense Reports .....................................12

    K.    Class Representative Participation............................................................14

III.  ARGUMENT......................................................................................................15

    A.    Legal Standard .........................................................................................15

    B.    The Requested 33% Fee Award Is Reasonable Under the Percentage-of-Recovery Method ...........................................................................................................17

        1.    Class Counsel Obtained Outstanding Relief for the Class............................18

        2.    There Were Many Risks in This Case .........................................................18

        3.    The Skill Required and the Quality of the Work Justifies the Request ........19

        4.    The Contingent Fee Nature of the Case and the Financial Burden...............20

    C.    The Requested Fee Is Reasonable Under Lodestar Cross-Check.............................21

    D.    The Expenses Are Reasonable and Should Be Reimbursed......................................23

    E.    The Requested Service Awards are Reasonable and Should be Approved..............24

IV.   CONCLUSION .................................................................................................25

1

**Table of Authorities**

2

**Cases**                                                                                                                   **Page(s)**

3

*Aichele v. City of L.A.*,
2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) ...................................................................16

4

*Bernstein v. Virgin Am, Inc.*,
2023 WL 7284158 (N.D. Cal. Nov. 3, 2023) ..................................................................25

5

6

*Blum v. Stenson*,
465 U.S. 886 (1984) .........................................................................................................15

7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ....................................................................................................15, 16

8

9

*Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...........................................................................................25

10

*Carlin v. DairyAmerica, Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019) .............................................................................24

11

*Covillo v. Specialtys Café*,
2014 WL 954516 (N.D. Cal. Mar. 6, 2014) .....................................................................23

12

13

*Downes v. Unum Life Ins. Co. of Am.*,
2024 WL 4876940 (N.D. Cal. Nov. 22, 2024) .................................................................22

14

*Fernandez v. CoreLogic Credco, LLC*,
2024 WL 3209391 (S,D,. Cal. June 24, 2024) .................................................................20

15

16

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ...............................................................................................24

17

*Harris v. Vector Mktg. Corp.*,
2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .....................................................................25

18

19

*In re Aggrenox Antitrust Litig.*,
2018 WL 10705542 (D. Conn. July 19, 2018) .................................................................17

20

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022).............................................................................................23

21

*In re Apple Inc. Device Performance Litig.*,
2025 WL 2090981 (N.D. Cal. Feb. 17, 2023) ..................................................................20

22

23

*In re Buspirone Antitrust Litig.*,
2023 LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) .................................................................17

24

*In re Capacitors Antitrust Litig.*,
2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ...................................................................16

25

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2017 WL 565003 (N.D. Cal. Feb. 13, 2017)....................................................................18

26

*In re Fine Paper Antitrust Litig.*,
751 F.2d 562 (3d Cir. 1984)..............................................................................................22

27

28

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) ................................................................................16

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
  21 F.4th 1102 (9th Cir. 2021) ................................................................................16

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................................19, 20

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  2021 WL 2328431 (S.D.N.Y. June 7, 2021) ...........................................................17

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .......................................................16

*In re Linerboard Antitrust Litig.*,
  2004 WL 1221350 (E.D. Pa. June 2, 2004) ............................................................17

*In re Lithium Ion Batteries Antitrust Litig.*,
  2017 WL 1086331 (N.D. Cal. Mar. 20, 2017) ........................................................18

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) .......................................................................24

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..........................................................25

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ....................................................................................17

*In re Polyurethane Foam Antitrust Litig.*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .......................................................17

*In re Pork Antitrust Litig.*,
  2022 WL 4238416 (D. Minn. Sept. 14, 2022) ........................................................16

*In re Vitamins Antitrust Litig.*,
  2001 LEXIS 25067 (D.D.C. July 13, 2001) ...........................................................17

*In re Vitamins Antitrust Litig.*,
  2001 WL 34312839 (D.D.C. July 16, 2001) ...........................................................20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..................................................................................15

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) ...................................................................25

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................................23

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) .........................................................16

*Koeppen v. Carvana, LLC*,
  2024 WL 3925703 (N.D. Cal. Aug. 22, 2024) ....................................................17, 18

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lusby v. GameStop Inc.*,
   2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)................................................................23

*Lymburner v. U.S. Fin. Funding, Inc.*,
   2012 WL 398816 (N.D. Cal. Feb. 7, 2012)................................................................23

*Meijer, Inc. v. Abbott Lab'ys*,
   2011 WL 13392313 (N.D. Cal. Aug. 11, 2011)................................................................16

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)................................................................15, 24

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003)................................................................17

*Nucci v. Rite Aid Corp.*,
   2010 WL 1693711 (N.D. Cal. May 26, 2022)................................................................17

*Overbo v. Loews California Theatres, Inc.*,
   2010 WL 11719051 (N.D. Cal. Aug. 17, 2010)................................................................22

*Perez v. Rash Curtis & Assocs.*,
   2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)................................................................25

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968)................................................................15

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983)................................................................15

*Rabin v. PricewaterhouseCoopers LLP*,
   2021 WL 837626 (N.D. Cal. Feb. 4, 2021)................................................................25

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)................................................................15

*Reynolds v. Direct Flow Med., Inc.*,
   2019 WL 4168959 (N.D. Cal. Sept. 3, 2019)................................................................18

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)................................................................18

*Roe v. SFBSC Mgmt., LLC*,
   2022 WL 17330847 (N.D. Cal. Nov. 29, 2022)................................................................17, 18

*Schuchardt v. Law Office of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016)................................................................23

*Sidibe et al. v. Sutter Health*,
   2021 WL 879875 (N.D. Cal. Mar. 9, 2021)................................................................7

*Sidibe v. Sutter Health*,
   103 F.4th 675 (9th Cir. 2024)................................................................10

*Sidibe v. Sutter Health*,
   2019 WL 2078788 (N.D. Cal. May 9, 2019)................................................................7

iv

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................................................16

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ........................................................................16, 18, 22

*State of Haw. v. Standard Oil, Corp.*,
    405 U.S. 251 (1972)...................................................................................................15

*Suarez v. Bank of Am., Nat'l Ass'n*,
    2024 WL 150721 (N.D. Cal. Jan. 11, 2024) .......................................................17, 18

*Taylor v. Shutterfly, Inc.*,
    2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) .............................................................23

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .......................................................................................21

*United States v. J-M Mfg. Co., Inc.*,
    2025 WL 1148344 (C.D. Cal. Mar. 13, 2025) ...........................................................22

*Vietnam Veterans of Am. v. Cent. Intel. Agency*,
    2018 WL 4827397 (N.D. Cal. Oct. 4, 2018)...............................................................25

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................17, 18, 21, 22

*Wehlage v. Evergreen at Arvin LLC*,
    2012 WL 4755371, (N.D. Cal. Oct. 4, 2012)..............................................................23

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) ...................................................................................16

**<u>Rules</u>**

Fed. R. Evid. 702 .................................................................................................................8, 9

Fed. R. Civ. P. 23 .....................................................................................................................6

# I.    PRELIMINARY STATEMENT

Class Counsel obtained an outstanding result for the Class in this hard-fought and grueling indirect purchaser antitrust class action against Sutter Health ("Sutter").  After more than 12 years of litigation, Sutter agreed to settle the case for $228.5 million.  Class Counsels' recovery of 56% of the claimed single damages far exceeds the percentage recovery in many of the indirect purchaser class actions settled in this district.  As a result of Class Counsel's ingenuity, hard work, and perseverance, millions of Californians will receive compensation from the settlement fund.

Class Counsel overcame substantial challenges to achieve this remarkable result for the Class.  They prosecuted a novel indirect purchaser class action on behalf of health insurance subscribers who claimed they were overcharged for their premiums due to Sutter's alleged conduct.  Class Counsel's development of the Class's Cartwright Act antitrust tying and course of conduct claims broke new ground in both antitrust and health care law.  Indeed, the *UFCW & Employers Benefit Trust v. Sutter Health*, CGC-14-538451 (Cal. Super. Ct. S.F. *filed* April 7, 2014) (the "*UEBT*" action) litigation followed the filing of this case and obtained injunctive relief on behalf of a different class that also benefited the class here.

Class Counsel made a huge investment of time (132,739 hours) and money for expenses ($28,132,680) and shouldered an immense workload for more than 12 years.  This included the investigation of Sutter's conduct and conception of claims, several motions to dismiss, four amended complaints, 17 million pages of documents, 223 deposition days, analysis of millions of lines of premium and claims data, 14 expert reports, two rounds of class certification motions and a Rule 23(f) petition, two rounds of summary judgment, two rounds of trial preparation, three rounds of jury selection, a four-week trial, and two trips to the Ninth Circuit.  Much of the discovery resided with non-party insurance companies and involved massive amounts of health care claims data that is notoriously expensive and difficult to wrangle and analyze.

The risks in bringing this suit were significant and many.  In Sutter, Class Counsel faced a formidable defendant with tremendous financial resources.  It was represented by outstanding, and well-staffed counsel.  The healthcare industry is multi-tiered and complex, and presents unique

challenges in applying antitrust laws and concepts.  Class members here are indirect purchasers and never before this case had a class of premium payers been certified to maintain suit against a provider like Sutter.  Despite the substantial risks, hurdles and setbacks, Class Counsel never wavered in their advocacy for the Class.

Class Counsel are a dedicated group of attorneys from a handful of small firms specializing in antitrust and class action law.  Each firm invested a massive amount of resources in litigating and trying this case.  Given the excellent result achieved, and the length and complexity of the case, Class Counsel seek attorneys' fees of 33% of the gross settlement ($75,405,000) and costs totaling $28,132,680.  Based on historical rates (rather than current rates, as the Ninth Circuit permits), Class Counsel's total lodestar is $81,368,771.  A $75,405,000 recovery would provide Class Counsel with only 93% of their lodestar, a *negative* multiplier that is well below the norm for high-risk antitrust class actions.  The accompanying declaration of Richard Pearl, an expert on attorneys' fees in California, attests to the reasonableness of Class Counsel's rates.

In consideration of the substantial common fund obtained, and tremendous resources devoted by Class Counsel and their respective firms over these many years of litigation, they respectfully request that their motion for fees and costs be granted in full.

## II.    PROCEDURAL BACKGROUND

### A.  The Pleading Stage (2012-2016)

Plaintiffs filed their first complaint on September 17, 2012, alleging that Sutter was engaging in anticompetitive conduct in Northern California in violation of state and federal antitrust laws and California's Unfair Competition Law.  Initially, there was only one law firm representing Plaintiffs, The Mehdi Firm.  Plaintiffs amended their complaint as of right on December 10, 2012.  Declaration of Jean Kim in Support of Class Counsel's Motion for Attorneys' Fees, Costs and Service Awards ("Kim Decl."), submitted herewith, ¶ 33.

Sutter moved to dismiss the First Amended Complaint in March 2013.  On June 3, 2013, the Court found that Plaintiffs had standing but dismissed the complaint for failure to allege relevant product and geographic markets.  Plaintiffs filed their Second Amended Complaint on

1   July 1, 2013. *Id.* ¶ 34.

2       On August 12, 2013, Constantine Cannon LLP ("CC") joined the action as co-lead counsel

3   for Plaintiffs.  CC attorneys, Matthew L. Cantor and Jean Kim (and later James Kovacs and Wyatt

4   Fore), entered appearances.  In September 2013, the law firms of Steyer Lowenthal Boodrookas

5   Alvarez & Smith LLP ("Steyer Lowenthal") and Farmer Brownstein Jaeger LLP ("Farmer

6   Brownstein") joined the action as counsel for Plaintiffs.  Allan Steyer, D. Scott Macrae (and later

7   Jill M. Manning and Suneel Jain), of Steyer Lowenthal and David Brownstein (and later David M.

8   Goldstein) of Farmer Brownstein, among others, entered appearances. *Id.* ¶ 36.  These attorneys

9   constituted the core Class Counsel team throughout the litigation.[1]

10      On August 2, 2013, Sutter Health filed a Motion to Dismiss the Second Amended

11  Complaint.  On November 7, 2013, the Court granted the motion for failure to allege harm in the

12  tied market for Plaintiffs' tying claim and market power and relevant geographic market on

13  Plaintiffs' monopolization and attempted monopolization claims. *Id.* ¶ 37.

14      On December 9, 2013, Plaintiffs filed the Third Amended Complaint, alleging that Sutter

15  had engaged in tying arrangements and a course of conduct that violated federal and state antitrust

16  laws.  Plaintiffs alleged tying and tied markets for the sale of inpatient hospital services to

17  commercial insurers in several hospital services areas ("HSAs"), based on the Dartmouth Atlas on

18  Health Care, an industry authority.

19      On January 8, 2014, Sutter moved for the third time to dismiss the complaint.  On June 20,

20  2014, the Court dismissed the Third Amended Complaint with prejudice for failure to allege

21  relevant geographic markets.  Plaintiffs appealed and litigated the appeal from December 2014

22  through July of 2016. *Id.* ¶ 39.  On July 18, 2016, the Ninth Circuit reversed the Court's dismissal

23  and remanded for further proceedings. *Id.* ¶ 41.

24  _____

25  [1]     On October 1, 2024, Mr. Cantor and other CC attorneys, including Mr. Kovacs and Mr.
    Fore, founded Shinder Cantor Lerner LLP ("SCL").  They and other SCL attorneys have worked
26  on this matter since that time on behalf of the Class. *See* Declaration of Matthew L. Cantor
    ("Cantor Decl."), submitted herewith, ¶¶ 8-9. On November 1, 2024, Ms. Manning founded The
27  Manning Law Firm and continued to prosecute the action on behalf of the Class at her new firm.
    *See* Declaration of Jill M. Manning ("Manning Decl."), submitted herewith.

3

1

**B.    Fact and Expert Discovery (2016-2021)**

2
   Upon remand, the parties commenced six years of extensive discovery.  While the parties

3
litigated Sutter's motions to dismiss and the appeal of the Court's dismissal, a different group of

4
plaintiffs on April 7, 2014, filed a complaint on behalf of a putative class of direct purchasers in

5
California Superior Court challenging similar conduct challenged here. *UFCW & Employers*

6
*Benefit Trust v. Sutter Health*, CGC-14-538451 (Cal. Super. Ct. S.F. *filed* April 7, 2014) (the

7
"*UEBT*" action).  The *UEBT* action had entered the discovery phase by the time this case was

8
remanded.  Given the similarity of the facts and claims between the cases, discovery was

9
consolidated and coordinated.  On March 29, 2018, the California Attorney General sued Sutter in

10
California Superior Court, also based upon conduct similar to that at issue here, alleging violations

11
of antitrust law. *California ex rel. Xavier Becerra v. Sutter Health*, CGC-18-565398 (Cal. Super.

12
Ct. S.F. *filed* March 29, 2018) (the "AG" action, and together with *UEBT*, the "State Actions").

13
Thereafter, discovery was coordinated across all three actions.  *Id.* ¶¶ 42-43.

14
   Plaintiffs propounded and responded to significant discovery that ran from 2016 through

15
2021.  Over 2.5 million documents (over 17 million pages) were produced by the parties and non-

16
party health plans and other third parties.  Much of the discovery sought, including paid claims

17
and premium data required to analyze liability and damages, was from non-party health plans who

18
negotiated with Sutter for the provision of inpatient hospital services.  Negotiating and obtaining

19
discovery from Anthem Blue Cross, Blue Shield, United Healthcare, Health Net and Aetna (the

20
"Health Plans") was difficult and very time consuming.  *Id.* ¶ 45.

21
   To review the substantial discovery produced by Sutter and the Health Plans, Plaintiffs

22
retained additional law firms, including Keller Grover, Schneider Wallace and Scott & Scott.

23
Class Counsel led discovery efforts and oversaw the review of millions of documents.  *Id.* ¶ 46.

24
Plaintiffs also retained economists and health care data analysts from Berkeley Research Group

25
("BRG") to "clean" and prepare the millions of lines of paid claims and premium data for

26
economic analysis.  This was a huge and expensive undertaking given the size and nature of the

27
data sets from each of the five Health Plans.  *Id.* ¶ 47.  Once discovery had been reviewed and

28

analyzed, the parties conducted 155 depositions of fact witnesses, the vast majority in-person, many of them multi-day, amounting to 223 deposition days.  *Id.* ¶ 48.

The parties also engaged in substantial expert work and discovery.  Plaintiffs retained three experts: 1) Dr. Tasneem Chipty, an esteemed Ph.D. economist who has testified on behalf of the United States in health care antitrust matters and who, in this case, opined on the issues of class certification, relevant markets, liability, antitrust impact, and damages; 2) Dr. Kenneth Kizer, a former Undersecretary of the U.S. Department of Health and Human Services, who served as Plaintiffs' health care industry expert, opining on hospital quality and competition, integration of care and industry background; and 3) Mr. David Axene, a health care actuarial expert with over 50 years of experience in California, who opined on premium construction, an actuarial approach to tracing the impact of alleged overcharges through to health insurance premiums, and other issues relevant to class certification and common impact.  Class Counsel worked with each of these experts in preparing their reports: Dr. Chipty issued eleven different expert reports.  Class Counsel also prepared these experts for and defended them in deposition.  Dr. Chipty was deposed for a total of five different days over the span of the case. *Id.* ¶ 49.

Sutter retained seven experts: 1) Dr. Robert Willig, Ph.D., an economist on the Princeton University faculty who previously served as the head of the economics bureau of the Antitrust Division of the U.S. Department of Justice; 2) Dr. Gautam Gowrisankaran, Ph.D., an economist on the Columbia University faculty; 3) Jonathan Orzag, an economist who founded Compass Lexecon; 4) Dr. Jonathan Skinner, Ph.D., a health care economist; 5) Patrick Pilch, a health care industry expert; 6) Shannon Keller, a health care actuarial expert; and 7) Patrick Travis, a health care industry executive with expertise in purchasing and pricing of health insurance.  Class Counsel reviewed and analyzed all the reports prepared by these experts – Willig and Orszag produced 9 reports alone – and prepared for and took depositions of the defense experts. *Id.* ¶ 50.

Plaintiffs' experts, with Class Counsel assistance, produced 14 expert reports and Sutter's produced 23 reports.  In total, Class Counsel defended or took 28 days of expert deposition testimony.  *Id.* ¶ 51.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.    Class Certification (2018-2020)

Class Counsel prosecuted two substantial class certification motions between 2018 and 2020.  Plaintiffs moved to certify an indirect purchaser class of premium payers on July 27, 2018.  Thereafter, the Court issued its opinion certifying a Federal Rule of Civil Procedure 23(b)(2) injunctive class only on October 18, 2019.  The Court denied the motion with respect to a Rule 23(b)(3) damages class, concluding that Dr. Chipty's analysis was insufficient to show antitrust injury and damages on a class-wide basis. *Id.* ¶ 52.

Plaintiffs moved again to certify a Rule 23(b)(3) damages class on January 27, 2020.   Dr. Chipty expanded her analysis to include data from all five Health Plans, specified regression analyses based upon Center for Medicare and Medicaid Services (CMS) data, and used other available data that supported her opinions on class-wide injury and damages.  Class Counsel worked closely with Dr. Chipty in her development of a rigorous analysis that would support certification of the indirect purchaser premium payer class.  On July 30, 2020, the Court granted Plaintiffs' motion and certified a Rule 23(b)(3) class of premium payers.  The Court appointed CC as Lead Class Counsel and The Mehdi Firm as Co-Lead Class Counsel on August 3, 2020. *Id.* ¶¶ 53-54.

Upon certification, Class Counsel vetted claims administrators to prepare and send notice to the Class.  Plaintiffs retained JND Legal Administration based on its experience, reputation, and the strength of its proposal.  Counsel worked with JND on a proposed notice plan and supporting papers and submitted them for the Court's consideration. *Id.* ¶ 55.  The Court issued an Order approving Plaintiffs' Notice Plan on November 5, 2020.

Thereafter, Class Counsel worked with JND to effectuate notice between November 2020 and March 2021.   Notice was provided to class members via mail, email, and print and digital publication. *Id.* ¶ 56.  The deadline to opt out of the Class was March 8, 2021.

## D.    Summary Judgment (2017-2019; 2020-2021)

On October 5, 2017, Sutter moved for early summary judgment, claiming that Plaintiffs lacked sufficient evidence to prove their alleged relevant geographic markets for inpatient hospital

1   services. *Id.* ¶ 57.

2          The parties submitted substantial expert reports and conducted expert discovery of

3   Dr. Chipty's and Dr. Gowrisankaran's geographic market opinions.  Dr. Chipty's analysis

4   supported Plaintiffs' market definition allegations for 11 out of the 12 geographic markets alleged

5   for inpatient hospital services in Northern California. *Id.* ¶ 58. Market definition is a costly and

6   expert-heavy exercise in antitrust litigation.  In a typical antitrust case, one or two markets may be

7   contested.  Here, Plaintiffs had the burden of supporting the market definition for twelve

8   geographic markets.

9          Briefing submitted in connection with summary judgment, and for motions to exclude both

10  Dr. Chipty and Dr. Gowrisankaran was voluminous and fully fleshed out each side's arguments

11  and the evidence gathered in discovery.  On April 12, 2019, the Court, in a 70-page opinion,

12  denied Sutter's motion for summary judgment with respect to eleven of Plaintiffs' twelve alleged

13  geographic markets and granted Sutter's motion with respect to the Davis market. *Sidibe v. Sutter*

14  *Health*, No. 12-cv-04854-LB, 2019 WL 2078788 (N.D. Cal. May 9, 2019) (ECF No. 673).  The

15  Court's decision left for trial the complicated and dense fact dispute regarding the scope of the

16  alleged relevant markets.  Although the parties stipulated that the product market was inpatient

17  hospital services, they litigated through trial whether the market included or excluded Kaiser

18  Permanente. Kim Decl. ¶ 59.

19         After fact discovery ended on July 27, 2020, Plaintiffs moved for partial summary

20  judgment on the distinct products element of their tying claim.  On October 23, 2020, the Court

21  granted that motion.  *Id.* ¶ 60. On August 22, 2020, Sutter moved for summary judgment on

22  several potentially dispositive issues, including whether Sutter's contracting practices constituted

23  tying arrangements.  On March 9, 2021, the Court, denied Sutter's motion aimed at Plaintiffs' *per*

24  *se* and rule of reason tying claims and their course of conduct claim.  *Sidibe et al. v. Sutter*

25  *Health*, No. 12-cv-04854-LB, 2021 WL 879875 (N.D. Cal. Mar. 9, 2021) (ECF No.962).  The

26  Court granted Sutter's motion regarding Plaintiffs' Sherman Act Section 2 claims and damages

27  claims from 2008 to 2010.  *Id.* ¶ 61.  The summary judgment motions involved exhaustive

28

briefing, hundreds of exhibits, and substantial expert declarations. *Id.*

### E.    Settlement in the State Actions (2019-2020)

In late 2019, Sutter settled with the AG and *UEBT* plaintiffs in the State Actions for monetary relief and significant injunctive relief relating to Sutter's contracting practices with insurers. The injunctive relief also benefitted the Class here. It included terms that prohibit conduct challenged in this case related to Sutter's contracting practices with Health Plans concerning network participation, steering, tiering, out-of-network pricing, and availability of pricing information. The injunction also appointed a monitor to ensure Sutter's compliance. *See Id.* ¶ 62. The release in the settlement agreement in the State Actions explicitly carved out the claims in this matter. *Id.* Class Counsel had worked closely and productively with the AG and *UEBT* plaintiffs' counsel throughout the litigation through the settlement of those actions – that work benefitted the prosecution of the State Actions. Kim Decl. ¶ 63.

### F.    Pretrial Work (2021-2022)

Due to delays caused by the COVID-19 pandemic and witness availability, the parties prepared for the first trial three separate times. *Id.* ¶ 64.

Trial was scheduled to commence on October 4, 2021. Starting in January 2021, the parties began working diligently for months to prepare exhibit lists, trial witness lists, and designations of deposition testimony. The parties exchanged those materials and held extensive meet and confers for months regarding exhibits and deposition designations. Collectively, there were thousands of exhibits on the parties' exhibit lists and many hours of deposition designations. *Id.* ¶ 65. Class counsel spent many hundreds of hours culling the record to identify relevant testimony and exhibits for trial, responding to objections, and meeting and conferring with Sutter's counsel. *Id.* ¶ 66.

The parties also submitted thirteen *in limine* and additional *Daubert* motions to exclude expert evidence under Fed. R. Evid. 702. On August 30, 2021, the Court issued an order denying all seven of Plaintiffs' *in limine* motions and granting all six of Sutter's *in limine* motions. The order precluded Plaintiffs from offering any evidence from before January 1, 2006, unless the

Court ordered otherwise.  In response, Plaintiffs made an offer of proof relating to 23 pieces of evidence otherwise precluded by the Court's pre-2006 *in limine* ruling: that Offer of Proof was denied as to all 23. The Court also largely denied the parties' Rule 702 motions.  *Id.* ¶ 67.

On September 23, 2021, the Court continued the October 4, 2021 trial date until January 6, 2022.  On December 16, 2021, after Class Counsel reviewed scores of completed jury questionnaires, the parties conducted *voir dire* and selected a jury.  But on January 5, 2022, the day before trial was scheduled to commence, the Northern District suspended all jury trials due to the outbreak of another strain of COVID.  Trial was rescheduled to commence on February 10, 2022.  After Class Counsel again reviewed scores of jury questionnaires, the parties conducted *voir dire* and selected a jury on February 9, 2022.  *Id.* ¶ 68.

### G.    Jury Trial (2022)

From February 10, 2022 to March 11, 2022, the Court conducted a four-week trial.   Class Counsel spent hundreds of hours preparing Plaintiffs' witnesses for trial, including Plaintiffs' experts.  Class Counsel also spent hundreds of hours preparing cross-examinations for numerous witnesses that Sutter would eventually call and a number that Sutter did not. *Id.* ¶ 69.

During 19 full trial days, over four weeks, Class Counsel examined and elicited testimony from 50 witnesses, including six expert witnesses. Three hundred and fifty-one exhibits were entered into evidence.  *Id.* ¶ 70. Class Counsel secured the testimony from non-party Health Plan witnesses regarding Sutter's contracting practices and the impact of Sutter's conduct on premiums.  Three of the six Class Representatives (Djeneba Sidibe, David Herman and Susan MacAusland for Optimum Graphics, Inc.) testified on behalf of the Class regarding their premium payments and the relief they hoped to achieve from the lawsuit.  Sutter called 22 witnesses in its case – all of whom Class Counsel cross-examined.  Six experts testified at trial.  *Id.* ¶ 71.  Dr. Chipty testified to her liability and damages opinions (asserting that the Class had incurred damages of approximately $411 million between January 1, 2011 and March 31, 2020) and explained how the overcharges resulting from Sutter's conduct were passed on through higher premiums to Class Members. Sutter's experts opined that the Class was not injured by Sutter's

9

1  conduct and did not incur damages.  *Id.* ¶ 72.

2      On March 11, 2022, the jury rendered a verdict in Sutter's favor.  Final judgment

3  was entered on March 29, 2022.  *Id.* ¶ 74.

4      **H.**    **Appeal of Jury Verdict (2022-2024)**

5      Plaintiffs appealed the Final Judgment and *in limine* and other rulings that precluded

6  Plaintiffs from presenting any pre-2006 evidence at trial.  Class Counsel argued that evidence of

7  Health Plan negotiations before and after Sutter's systemwide contracting and anticompetitive

8  contract terms had been forced on health plans supported their tying claims.  Class Counsel argued

9  that they were prejudiced at trial as the result of preclusion of this evidence.  *Id.* ¶ 75.

10      Plaintiffs also appealed the Court's revision of CACI jury instructions on their course of

11  conduct claim, arguing that instruction eliminated consideration of the history and purpose of

12  Sutter's restraints.  Lastly, Plaintiffs appealed the Court's Orders denying their request to define

13  the "relevant purchaser" as the health plans and their motion for sanctions. *Id.* ¶ 76.

14      The appellate record consisted of 33 volumes of supporting materials culled from the 20

15  trial transcripts, 351 trial exhibits, and 1,500+ docket entries, including dozens of excluded

16  documents, trial court transcripts and other materials.  Class Counsel facilitated and coordinated

17  efforts of several amici who filed *amicus curiae* briefs in support of the Class.  *Id.* ¶ 77.

18      On August 24, 2023, the Ninth Circuit heard oral argument on the appeal. On June 4, 2024,

19  the Ninth Circuit, in a 2-1 decision, reversed the jury verdict based on the revisions to the CACI

20  jury instructions and preclusion of pre-2006 evidence.  *Sidibe v. Sutter Health*, 103 F.4th 675 (9th

21  Cir. 2024) (ECF No. 147-1).  In a separate memorandum, the Ninth Circuit affirmed the Court's

22  "relevant purchaser" instruction and its denial of Plaintiffs' motion for sanctions (ECF No. 148-1).

23      On July 18, 2024, Sutter filed a Petition for Rehearing and Rehearing *En Banc* in the Ninth

24  Circuit (ECF No. 152).  Class Counsel prepared an Answer to that Petition, but, ultimately, did not

25  need to file it, as that Petition was denied on August 12, 2024 (ECF No. 153). The Ninth Circuit

26  thereafter issued its mandate reversing and remanding on August 19, 2024 (ECF No. 154).

27

28

**I.    Re-Trial and Settlement (2024-2025)**

Plaintiffs immediately sought to schedule a re-trial and began preparations

for it.  Kim Decl. ¶ 80.  On November 6, 2024, the Court ordered a re-trial to commence on March

3, 2025 and the parties began preparing for the second trial.  The parties made supplemental

pretrial exchanges and met and conferred regarding the witnesses, exhibits, and testimony

designations.  They also subpoenaed and prepared witnesses for trial testimony.  The parties

appeared at several pre-trial hearings to argue new *in limine* motions and jury instructions and

coordinate on logistics for trial.  *Id.*

Class Counsel again spent many hours preparing direct and cross exams, preparing

witnesses, creating demonstratives, making and opposing motions *in limine* and briefing verdict

form and jury instruction issues. On February 27, 2025, after Class Counsel again reviewed scores

of jury questionnaires, the parties conducted *voir dire* and selected a jury.  They finalized trial

logistics and prepared to give opening statements a few days later, on March 3, 2025.  *Id.* ¶ 81.

Counsel facilitated and participated in settlement discussions throughout this litigation,

including a formal mediation session and follow-up conversations from 2019 through 2021.  *Id.* ¶

82.  In the lead up to the re-trial, the parties retained Gregory Lindstrom of Phillips ADR to

mediate their dispute.  They had numerous communications with Mr. Lindstrom and held an in-

person mediation with him in January 2025.  Counsel also participated in direct settlement

communications.  After the jury was selected, but the day before opening statements, the parties

reached an agreement in principle to settle the matter for $228.5 million.  The parties informed the

Court of their agreement and filed a notice of settlement on March 2, 2025.  *Id.*

Class Counsel and counsel for Sutter thereafter negotiated a settlement agreement over five

weeks.  These were arms-length negotiations involving multiple rounds of comments and back

and forth regarding the terms of settlement.  On April 24, 2025, the parties executed the settlement

agreement.  Class Counsel also prepared a plan of distribution in consultation with the claims

administrator, JND.  *Id.* ¶ 20. Plaintiffs submitted their motion for preliminary approval on April

25, 2025.  The Court heard the motion and granted preliminary approval and a schedule through

the final approval hearing on May 22, 2025. *Id.* ¶ 21.

**J.    Class Counsel's Lodestar and Expense Reports**

Throughout this case, Class Counsel worked diligently and efficiently to prosecute this matter.  Unlike many antitrust class actions of this magnitude, they had no need of a leadership committee because only a handful of law firms were involved.  CC, SCL, Farmer Brownstein, Steyer Lowenthal, The Mehdi Firm and The Manning Law Firm are each small law firms with only a few attorneys working on the case.  Together, they ran a lean and collegial legal team. Virtually all the senior lawyers litigated this case since almost the very beginning.  Kim Decl. ¶ 36.  That continuity eliminated the waste and duplication caused by having new attorneys cycling through and billing hours to get up to speed and learn the case.  CC, as Lead counsel, conducted regular team calls to coordinate and organize the workflow.  *Id.* ¶ 6.

The Lodestar report of each firm is based upon contemporaneously maintained time records and tracks the attorney hours during this long-running case.[2]  CC attorneys had the largest lodestar given their leadership of the strategy, briefing, expert work, appeals, and trial presentation since they joined the case in 2013.  Mr. Cantor, is a seasoned healthcare antitrust litigator, and conducted both appellate oral arguments, as well as oral argument on virtually all dispositive motions.  He led strategy throughout the litigation and was lead trial counsel. *Id.* ¶ 10. Ms. Kim is an experienced antitrust litigator with over 20 years of experience; she led all aspects of the litigation and oversaw much of the trial preparation.  *Id.* ¶ 11.

CC provided much of the associate, staff attorney, paralegal and secretarial support in the case.  CC's IT staff set up and hosted the discovery, review and trial preparation platforms that were utilized by the plaintiff team.  CC's experienced electronic discovery personnel managed the

---

[2] Each Class Counsel firm provides summary hour and lodestar information in declarations submitted herewith.  *See* Kim Decl. for CC; Cantor Decl. for SCL; Declaration of David Brownstein ("Brownstein Decl.") for Farmer Brownstein Jaeger Goldstein Klein & Siegel LLP; Declaration of Azra Mehdi ("Medhi Decl.") for the Mehdi Firm; and Manning Decl. for Ms. Manning's time at Pearson Warshaw and The Manning Law Firm.  Scott & Scott LLP, Schneider Wallace Cotrell Kim LLP, and Keller Grover LLP each also submitted declarations in support of their lodestar and expense reports ("Scott Decl.," "JHK Decl." and "Grover Decl." respectively).

review of millions of documents and the preparation of deposition kits, exhibit lists and provided a full suite of litigation support. *Id.* ¶¶ 8, 20.

Importantly, over $27.5 million of the $28,132,680 of costs were borne by CC alone. *Id.* ¶ 22 & Ex. C. A large portion of those costs was for the significant economic expert work. *Id.* Reports of expert fees and expenses, broken out annually, track the work that Dr. Chipty, BRG, Matrix Economics, and Alix Partners did to support Dr. Chipty's opinions on 12 geographic markets, market power, market analysis, class certification, liability and damages and to respond to the opinions of Dr. Willig, Mr. Orszag and Dr. Gowrisankaran on these subjects. *Id.* Ex. D. Dr. Kizer and Mr. Axene also provided expert opinions and responsive expert materials and were compensated for their work. Discovery costs, including for depositions, transcripts and video, document database storage, and office services costs were borne predominantly by CC. All trial vendor and trial-related costs too were paid by CC. *Id.* ¶ 22-29 & Ex. C. Funding the costs of this massive litigation for 12.5 years was a huge and risky undertaking for a boutique firm like CC.

Mr. Cantor, after starting his own firm, SCL, in October 2024, continued to act as Lead Trial Counsel. *See* Cantor Decl. ¶ 8. The Mehdi Firm undertook the initial investigation and filed the original lawsuit, and Ms. Mehdi handled much of the defensive plaintiff discovery and participated in preparing plaintiffs for deposition and trial. *See* Mehdi Decl. ¶¶ 8-13. Farmer Brownstein participated in all aspects of the litigation and worked closely with the senior team on strategy, briefing, discovery and trial. Mr. Brownstein and Mr. Goldstein brought to the team their experience (predominantly on the defense side) in specialized areas of antitrust law, such as tying claims, as well as their wealth of complex litigation and class action experience. *See* Brownstein Decl. ¶¶ 2-12. Steyer Lowenthal brought its local expertise in class action and antitrust law and participated in discovery, briefing, legal research, strategy and trial. Mr. Steyer brought his trial expertise and Mr. Macrae was invaluable in supporting the briefing and many written submissions in the litigation. *See* Steyer Decl. ¶¶ 1-12. Ms. Manning handled Plaintiff defensive discovery, offensive discovery, and participated actively in trial preparation and trial for the first and second trials, including drafting trial documents, negotiating the admission of trial exhibits, and preparing

1    Class Representatives to testify. *See* Manning Decl. ¶¶ 5, 17.

2        Daily time and expense records for the 12 years of litigation are not being submitted due to

3    their size but are available for review upon the Court's request.  Class Counsel's lodestars are

4    based upon historical rates charged at each firm and are broken out on an annual basis to enable

5    more granular review.  As evident from these reports and confirmed by Richard Pearl, a well-

6    regarded fee expert, Class counsels' rates were consistently in line with historical market rates for

7    antitrust litigators of their experience and skill.  *See* Declaration of Richard M. Pearl in Support of

8    Class Counsel's Motion for Attorneys' Fees, submitted herewith.

9        Had Class Counsel calculated lodestars based upon current rates, the total lodestar would

10   be $97,445,991.  Kim Decl. ¶ 32 & Ex. E.

11       **K.    Class Representative Participation**

12        Class representatives Djeneba Sidibe and Jerry Jankowski each participated in the

13   litigation during its 12.5 years and diligently represented the interests of the Class.  Class

14   Representatives David Herman, Susan Hansen, Optimum Graphics, Inc., through Susan

15   MacAusland, and Johnson Pool & Spa, through Tina Feeney, joined the case in September 2017,

16   when the Fourth Amended Complaint was filed. Ms. Sidibe, Mr. Herman, and Ms. MacAusland

17   testified in person at the first trial in 2022 and all class representatives, with the exception of Mr.

18   Herman, due to health reasons, prepared to provide testimony at the second trial.  In preparing for

19   trial testimony, each plaintiff gave many hours of their time to refresh themselves regarding the

20   facts surrounding their claims for relief.

21        Each Class Representative produced documents, responded to discovery requests and sat

22   for deposition.  And each, through Ms. Mehdi or Ms. Manning, kept abreast of major

23   developments in the case.  Each has provided a declaration submitted herewith that provides

24   additional detail regarding their involvement and time devoted to maintaining this suit as plaintiffs

25   and fulfilling their duties as class representatives.[3]

26

27   _____
[3] The declarations of Djeneba Sidibe, David Herman, Susan Hansen, Susan MacAusland, Jerry
28   Jankowski and Tina Feeney are submitted herewith.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    ARGUMENT

### A.    Legal Standard

Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services. As the Supreme Court has held, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("*Boeing*"); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970) ("*Mills*"). In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the U.S. Supreme Court recognized that, under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

This doctrine applies equally and specifically to antitrust litigation. The Supreme Court repeatedly has recognized the importance of private antitrust litigation as a necessary and desirable tool to ensure the effective enforcement of the antitrust laws. *See*, *e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *State of Haw. v.  Standard Oil Corp.*, 405 U.S. 251, 266 (1972). Substantial fee awards in successful cases encourage meritorious class actions and thereby promote private enforcement of, and compliance with, antitrust laws. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) ("[T]he purposes of the antitrust laws are best served by ensuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.").

Courts in the Ninth Circuit regularly award fees as a percentage-of-the-recovery in common fund cases. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). "Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the

15

1    size of the class fund and working in the most efficient manner." *Khoja v. Orexigen Therapeutics,*

2    *Inc.*, No. 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *8 (S.D. Cal. Nov. 30, 2021); *Aichele v.*

3    *City of L.A.*, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015).

4        Under the percentage-of-the-fund approach, the district court awards a percentage of the

5    fund created by the attorneys' efforts as their reasonable attorneys' fee. *Stanger v. China Elec.*

6    *Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016). The percentage-of-recovery for fee computation

7    purposes is based on the total amount of that fund made available. *Boeing*, 444 U.S. at 479-80;

8    *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Ninth Circuit cases

9    often treat 25% as a benchmark percentage. *See*, *e.g*., *In re Google Inc. Street View Elec.*

10   *Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021).

11       However, "[a] one-third fee award is standard in complex antitrust cases[,]" such as this

12   one. *In re Flonase Antitrust Litig*., 291 F.R.D. 93, 104 (E.D. Pa. 2013). Many courts, in this

13   Circuit and others, provide for an upward departure due to the inherent complexity of the legal

14   issues involved and the risk assumed by the attorneys involved in complex antitrust cases. *See In*

15   *re Capacitors Antitrust Litig*., No. 3:17-md-02801-JD,  2023 WL 2396782 at *1 (N.D. Cal. Mar. 6,

16   2023) ($66,000,000 attorneys' fees award amounted to 40% of the Settlement Fund created by that

17   round of settlements, and a cumulative 31% of the total settlements); *In re Lidoderm Antitrust*

18   *Litig*., MDL No. 2521, 2018 WL 4620695, at **1, 4 (N.D. Cal. Sept. 20, 2018) (awarding fees of

19   $34,916,000 and finding that "a fee award of one-third is within the range of awards in this

20   Circuit."); *Meijer, Inc. v. Abbott Lab'ys*, No.: No C. 07-5985 CW, 2011 WL 13392313, at *2 (N.D.

21   Cal. Aug. 11, 2011) (awarding 33 1/3% of $52,000,000 recovery); *In re Pork Antitrust Litig*., No.

22   18-1776  (JRT/JFD), 2022 WL 4238416, at *7 (D. Minn. Sept. 14, 2022) (awarding 33% of

23   settlement fund as attorneys' fees in consumer indirect purchaser action); *In re Keurig Green*

24   *Mountain Single-Serve Coffee Antitrust Litig*., 14-md-02542 (VSB), 2021 WL 2328431, at *1

25   (S.D.N.Y. June 7, 2021) (awarding 33 1/3% of a $31 million settlement fund as attorneys' fees in

26   indirect purchaser action); *In re Aggrenox Antitrust Litig*., No. 3:14 MD 2516 (SRU), 2018 WL

27   10705542, at *5 (D. Conn. July 19, 2018) (awarding 33 1/3% of a $50 million settlement fund as

28

1  attorneys' fees in indirect purchaser action); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10

2  MD 2196,  2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (awarding 30% fee on $147.8

3  million settlement fund); *In re Linerboard Antitrust Litig.*, No. MDL 1261, Civ.A. 98–5055, 2004

4  WL 1221350 (E.D. Pa. June 2, 2004) (30% fee on $202.5 million settlement fund); *In re*

5  *Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (33.3% fee of a

6  $220 million dollar fund); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067 (D.D.C.

7  July 13, 2001) (34% fee on $365 million settlement fund).

8      Other class actions in this district awarding 33% or more include *Koeppen v. Carvana,*

9  *LLC*, No. 21-cv-01951-TSH,  2024 WL 3925703, at *9-10 (N.D. Cal. Aug. 22, 2024) (awarding

10  attorneys' fees of 35% of recovery); *Suarez v. Bank of Am., Nat'l Ass'n*, No. 18-cv-01202-LB,

11  2024 WL 150721, at *2 (N.D. Cal. Jan. 11, 2024) (awarding one third of settlement amount) *Roe*

12  *v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB,  2022 WL 17330847, at *19 (N.D. Cal. Nov. 29,

13  2022); *Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LB, 2022 WL 1693711, at *8 (N.D. Cal. May

14  26, 2022) (awarding 33% of settlement amount); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d

15  373, 379 (9th Cir. 1995) (affirming award of 33%) *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664

16  (9th Cir. 2003) (same).

17    **B.**    **The Requested 33% Fee Award Is Reasonable Under the Percentage-of-**

18          **Recovery Method**

19      Class Counsel's request of 33% of the gross settlement is more than reasonable given the

20  magnitude, duration, complexity and risks of this litigation, as well as the substantial settlement

21  achieved.  In common fund cases, "[s]election of the benchmark or any other rate must be

22  supported by findings that take into account all of the circumstances of the case." *Vizcaino v.*

23  *Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Relevant circumstances of the case include

24  the results counsel achieved for the class, the risk of litigation, counsel's performance, the

25  contingent nature of the representation and the financial burden of the litigation. *Id*. at 1050-51;

26  *see also Stanger*, 812 F.3d at 740.

27

28

### 1. Class Counsel Obtained Outstanding Relief for the Class

The $228.5 million cash Settlement provides the Class Members with significant relief. It provides them with approximately 56% of their $411 million in single damages.[4] As the Court has observed, "the quality of relief to the class was extremely strong." Hr'g Tr. 5/22/2025 at 14:2-15:1. Particularly coming back from a jury verdict rendered against them in the first trial, and defeating multiple dispositive motions seeking to defeat Plaintiffs' claims, the amount and fact of the settlement is an outstanding result for the Class. Many class members, especially large employers like CalPERS, the University of California and the City and County of San Francisco stand to recover substantial damages. Others in the over three million member class will also recover from the Settlement Fund. None of these recoveries would have been possible without this litigation. The expense and magnitude of prosecuting the antitrust claims here would have made it highly improbable for any one Class Member to have obtained a similar recovery.

### 2. There Were Many Risks in This Case

As outlined above, Class Counsel endured and overcame substantial risk in pursuing this litigation *Stanger*, 812 F.3d at 740 (including risk of litigation as a factor in determining whether the requested attorneys' fees are reasonable); *Koeppen*, 2024 WL 3925703, at *12 ("the risk that further litigation might result in not recovering at all is a significant factor in the award of fees."); *Suarez*, 2024 WL 150721, at *3 (Class Counsel "obtained excellent benefits for the class despite a vigorous and skillful defense, and there were significant risks involved with the litigation.) *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, CV 01–5752 DT (RCX), 2005 WL 1594403, at *20

---

[4] This is a significantly higher percentage than other settlements the courts in this District readily approve. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 954, 956 (9th Cir. 2009) (settlement of approximately 30% of the estimated single damages); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (DMR), 2017 WL 1086331, at 4* (N.D. Cal. Mar. 20, 2017) ("settlement represents 11.2% of the single damages attributable to Sony sales"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058 JST, 2017 WL 565003, at *4, *6 (N.D. Cal. Feb. 13, 2017) (settlement representing 24% of single damages); *Roe,* 2022 WL 17330847, at *12 ("twelve percent of the best-case scenario is within the range courts approve."); *Reynolds v. Direct Flow Med., Inc.*, No. 17-cv-00204-KAW, 2019 WL 4168959 *3 (N.D. Cal. Sept. 3, 2019) (settlement representing 13% of plaintiffs' estimated damages).

(C.D. Cal. June 10, 2005) ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.").

Antitrust cases typically are risky and high-stakes and this one was no different. The issues of market definition, market power, liability and damages were not easy to prove. Plaintiffs' claims involved 12 geographic markets and the hotly contested issue of market power within each of those markets. The pervasiveness of Kaiser Permanente in Northern California posed a high degree of risk in proving Sutter's market power. Health care markets are inherently complex with its overlay of regulation and multi-tiered stages of distribution. The presence of managed care, added a layer in the chain of distribution that further complicated the analysis, as it is the health insurer who negotiates and pays providers for the care provisioned for its members. Nonetheless, Class Counsel defeated summary judgment motions and moved the case to trial.

Class Counsel also faced the risk of the class not being certified. A premium-payor indirect purchaser class against a provider had never, before this case, been certified. Class counsel had to work through two rounds of class certification motion practice. Dr. Chipty performed two tranches of analyses in support of certification. The briefing was exhaustive and the amount of data analyzed massive. Thousands of attorney hours were expended on developing the predicate for class certification, the Rule 23 briefing, and the expert work in support.

Class Counsel was able to achieve a retrial when the Ninth Circuit reversed the Final Judgment. Convincing an appellate court to order retrial of a four-week jury trial, particularly an antitrust class action that resulted in a defense verdict, was no easy task. This was critical in this case, as the Class would have achieved no recovery had the verdict stood. Finally, the importance of that appellate ruling is demonstrated by the fact that Sutter agreed to settle on the eve of the second trial.

### 3.     The Skill Required and the Quality of the Work Justifies the Request

As noted above, this case involved factual investigation and research, complex and detailed analyses of antitrust law and economics, difficult and protracted discovery, a vast evidentiary record, two successful appeals, and a full jury trial, with a second one imminent at the

time of settlement. The settlement was hard-fought and negotiated against formidable and skilled opposing counsel at Jones Day.  Both David Kiernan and Jeffrey LeVee, lead counsel for Sutter, are excellent antitrust attorneys who have led numerous successful defenses over their years of practice.  Their co-counsel at Bartko Pavia (formerly Bartko Bunzel), were also highly skilled.

Courts also consider "the quality of opposing counsel as a measure of the skill required to litigate the case successfully."  *In re Apple Inc. Device Performance Litig*., No. 5:18-md-02827-EJD, 2023 WL 2090981, at *14 (N.D. Cal. Feb. 17, 2023); *Heritage Bond*,  2005 WL 1594403, at *20 (noting that quality of opposing counsel is important in evaluating the quality of plaintiff's counsel's work, and stating "[t]here is also no dispute that the plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients.") (internal quotations omitted).

Class Counsel are experienced antitrust and class action attorneys. Kim Decl. ¶¶ 5-22.  The Court has witnessed the caliber of their written submissions, oral advocacy, and trial presentation. At the preliminary approval hearing, the Court commended both sides for their "extraordinary" representation.  5/22/25 Hr'g Tr. at 14:14-17.  Such qualifications should also be taken into account when evaluating an appropriate fee award. *See Fernandez v. CoreLogic Credco, LLC*, No.: 20cv1262 JM (SBC), 2024 WL 3209391, at *16 (S,D,. Cal. June 24, 2024) (approving a fee award based in part on the experience of counsel); *see also In re Vitamins Antitrust Litig*., No. 99-197 (TFH), MDL 1285, 2001 WL 34312839, at *11 (D.D.C. July 16, 2001) ("The experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee.").

### 4.    The Contingent Fee Nature of the Case and the Financial Burden Carried by Class Counsel

The contingent nature of Class Counsel's representation also supports their fee request. Class Counsel took on this case and the out-of-pocket costs to prosecute it, with the understanding that they would be compensated only if they succeeded. CC alone bore the vast majority of the over $28 million in expenses for many years and devoted enormous attorney and staff resources

20

1   throughout.  The much smaller firms—including the Mehdi firm (one attorney), Steyer Lowenthal

2   (twelve attorneys), and Farmer Brownstein (five attorneys)—devoted a disproportionate

3   percentage of their firm's billable hours to this case for years without any compensation.

4       Courts have recognized the need to reward Class Counsel who accept a case on a

5   contingent fee basis because of the risk of non-payment.  It is an established practice in the private

6   legal market to reward attorneys for taking the risk of non-payment by paying them a premium

7   over their normal hourly rates for winning contingency cases. *See* Richard Posner*, Economic*

8   *Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Here, Counsel's requested fees have a negative

9   multiplier, and provide only 93% of their fees.  If calculated at current rates, Class Counsel's

10  requested fees provide only 77% of their fees.  *See* Kim Decl. ¶ 32 & Ex. E.

11      The Court should not overlook the real risks that Class Counsel incur by accepting

12  contingent fee cases, such as this one. Large-scale antitrust actions are, by their very nature,

13  expensive and time-consuming. Any law firm undertaking a case such as this must inevitably be

14  prepared to make a tremendous investment of time, energy, and resources. Class Counsel made

15  this investment with the very real possibility of an unsuccessful outcome and no fee available.

16  Indeed, that was exactly the result after the jury verdict.

17      Class Counsel prosecuted this case for 12.5 years before achieving the settlement. The fact

18  that substantial financial burden was carried for such a long period, with no premium requested,

19  supports the reasonableness of the requested fee request. See *Vizcaino*, 290 F.3d at 1050 ("These

20  burdens [years of litigation, significant financial expense, foregoing other work] are relevant

21  circumstances."); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993).

22  **C.    The Requested Fee Is Reasonable Under Lodestar Cross-Check**

23      The Ninth Circuit has held that the lodestar method "provides a check on the

24  reasonableness of the percentage award. Where such investment is minimal, as in the case of an

25  early settlement, the lodestar calculation may convince a court that a lower percentage is

26  reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage

27  when litigation has been protracted." *Vizcaino*, 290 F.3d at 1050. The 12.5 years of litigation here,

28

                                    21

along with the fact that the 33% recovery results in total fees that are almost $6 million less than Class Counsel's lodestar based upon historical rates (and $22 million less based on current), demonstrates that the requested fee percentage is appropriate.   "Using counsel's current rates to calculate the fee award is an appropriate mechanism to compensate counsel for the delay in receiving payment for their services." *Overbo v. Loews California Theatres, Inc.*, No. C 07-05368 MHP (LB), 2010 WL 11719051, at *5 (N.D. Cal. Aug. 17, 2010) (Beeler, J.).[5] Had Class Counsel calculated fees based upon current rates, as counsel in similarly protracted litigation have been awarded, the total lodestar would be significantly higher, and the shortfall even greater.

The lodestar method is a two-step process. The first step requires ascertaining the "lodestar" figure by multiplying the number of hours reasonably worked by the hourly rate of counsel. *Stanger*, 812 F.3d at 738. In the second step, a court adjusts the lodestar to account for, among other things, the risk of non-payment, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations. *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984). To account for the foregoing factors, the court then applies an appropriate multiplier to the lodestar number.

The lodestar for the services performed by Class Counsel in this case results in a negative lodestar multiplier.  Class Counsel expended a total of 132,739 hours litigating this case for a total lodestar of $81,368,711.  This lodestar is based on historical rates. Kim Decl. ¶ 21. Even so, the total lodestar is greater than the percentage fee award that Class Counsel requests.[6] The requested fee of 33% of $228,500,000 is $75,405,000 which is approximately 92.8% of the lodestar. Had

---

[5] Courts in the Ninth Circuit have consistently awarded attorneys' fees based on current rates to account for the delay in payment.  *See, e.g., Downes v. Unum Life Ins. Co. of Am.*, No. 23-cv-01643-RS, 2024 WL 4876940, at *2 (N.D. Cal. Nov. 22, 2024) *United States v. J-M Mfg. Co., Inc.*, No. EDCV 06-55-GW-PJWx, 2025 WL 1148344, at *10 (C.D. Cal. Mar. 13, 2025) ("With this case nearing its second decade, there can be no honest assertion that historical rates without any adjustment to present value represents full compensation today for the work [] Counsel has successfully performed.").

[6] In the *UEBT* action, class counsel was awarded attorneys' fees of $152,375,000 which represented a positive multiplier of about 1.63 on their lodestar calculated at current rates.

1  current rates been used, the fee would be a substantially lower percentage of their lodestar.  A

2  negative lodestar multiplier supports the reasonableness of the percentage fee request. *Taylor v.*

3  *Shutterfly, Inc.*, No. 5:18-CV-00266-BLF, 2021 WL 5810294, at *9 (N.D. Cal. Dec. 7, 2021)

4  ("The fact that Plaintiff's counsel are seeking substantially less in fees than they reasonably

5  incurred further demonstrates the reasonableness of the fee award.").[7]

6         Attorney's fees expert, Richard Pearl, has opined that the historical rates charged by Class

7  Counsel were in line with the market and reasonable.  Pearl Decl. ¶¶ 15-27.  In short, the lodestar

8  cross-check confirms that the 33% fee requested by Class Counsel is eminently reasonable.

9  **D.      The Expenses Are Reasonable and Should Be Reimbursed**

10         Class Counsel also respectfully request that they be reimbursed for the litigation costs and

11  expenses in the amount of $28,132,680. Kim Decl. Ex. E.  Under the common fund doctrine,

12  Class Counsel are entitled to all reasonable out-of-pocket expenses and costs in prosecution of the

13  claims and in obtaining a settlement. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769,

14  786 (9th Cir. 2022).  Over the many years of this litigation, Class Counsel incurred significant

15  expenses, all of which would have been covered by a fee-for-service client in private litigation.

16         It is common and appropriate for Class Counsel to be reimbursed out of the common fund

17  for all reasonable litigation expenses, including expenses for: experts and consultants, depositions

18  and transcripts, travel, document production, legal research, printing and copying, and Class

19  administration expenses, including the mailing of class notices. *See* H. Newberg, Attorney Fee

20  Awards § 2.19 at 69 (1986); *Mills*, 396 U.S. at 391-92; *see also In re Media Vision Tech. Sec.*

21  *Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an

22  _____
23  [7] *See also Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 WL 8943150 at *6 (N.D. Cal. Nov. 16, 2015); *Lusby v. GameStop Inc*., No. C12–03783 HRL, 2015 WL 1501095 at *4 (N.D. Cal. Mar. 31, 2015); *Covillo v. Specialtys Café*, No. C–11–00594 DMR,  2014 WL 954516 at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair."); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10–cv–05839–CW, 2012 WL 4755371, at *1, (N.D. Cal. Oct. 4, 2012) (same); *Lymburner v. U.S. Fin. Funding, Inc*., No. C–08–00325 EDL, 2012 WL 398816 at *6 (N.D. Cal. Feb. 7, 2012) (same).

attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."). Expenses are compensable in a common fund case if the expense is of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (approving expenses normally charged to a fee-paying client); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023-24 (E.D. Cal. 2019).

A large portion of the expenses incurred by CC went to economist expert fees in the amount of approximately $18.5 million.  To put this figure into context, Sutter expended over $20 million on economist expert fees for Dr. Willig and Mr. Orzag and support from Compass Lexicon.  *Id.* ¶ 25.  There were three expert firms involved, Matrix Economics, BRG and Alix Partners.  As described above, Dr. Chipty was supported by economists, healthcare data analysts and specialists across all three firms in producing her 11 expert reports, and providing many days of deposition and trial testimony.  An annual accounting of economist expert expenses has been provided to allow for a careful review of the expert fees incurred.  *Id.* Ex. D.

The other categories of expenses for which Class Counsel seek payment are also of the type routinely charged to paying clients.  Details concerning the expenses incurred by each firm are listed in their accompanying declarations.  Invoices and further detail regarding expenses are available for inspection upon the Court's request.  Accordingly, it is respectfully requested that the out-of-pocket expenses of Class Counsel of $28,132,680 be reimbursed.  Again, for context, plaintiffs in the State Actions, which were filed after this case in 2014 and 2018 and settled before trial in 2019, were awarded over $21 million in litigation expenses.

### E.    The Requested Service Awards are Reasonable and Should be Approved

Plaintiffs also request service awards of $20,000 for the Class Representatives who testified at trial and $15,000 for the Class Representatives who did not testify at trial.  Class Representatives who did not testify at the first trial prepared to testify at the second.  Given the extent of time and work that the Class Representatives have put into this case over the almost thirteen years it has been litigated, the requested awards are appropriate and well deserved.

It is well-established in the Ninth Circuit that named plaintiffs in a class action are eligible for reasonable service awards. *Stanton v. Boeing Co*., 327 F.3d 938, 976-77 (9th Cir. 2003). *Harris v. Vector Mktg. Corp*., No. C–08–5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012). The requested awards are within the range of awards routinely granted in the Northern District. *See*, *e.g*., *Bernstein v. Virgin Am, Inc.,* No. 15-cv-02277-JST, 2023 WL 7284158, at *3-4 (N.D. Cal. Nov. 3, 2023) (approving service awards of $25,000 and $12,000); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST,  2021 WL 837626 *10 (N.D. Cal. Feb. 4, 2021) (approving a $20,000 service award); *In re Wells Fargo & Co. S'holder Derivative Litig*., 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (granting $25,000);  *Perez v. Rash Curtis & Assocs*., No. 4:16-cv-03396-YGR,  2020 WL 1904533, at *23 (N.D. Cal. Apr. 17, 2020) (awarding $25,000); *Vietnam Veterans of Am. v. Cent. Intel. Agency*, No. 09-cv-00037-CW, 2018 WL 4827397, at *1 (N.D. Cal. Oct. 4, 2018) ($20,000 per representative); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig*., No. 4:14-md-2541 CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd,* 768 F. App'x 651 (9th Cir. 2019) (granting $20,000 per plaintiff).

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant their application for an award of attorneys' fees in the amount of $75,405,000, reimbursement of litigation expenses in the amount of $28,132,680, and the requested service awards for Class Representatives.

Dated: July 29, 2025

Respectfully submitted,

/s/ *Jean Kim*

CONSTANTINE CANNON LLP
JEAN KIM (*pro hac vice*)
6 East 43rd Street
New York, NY  10017
(212) 350-2700
(212) 350-2701 (fax)
jkim@constantinecannon.com

THE MEHDI FIRM, PC
AZRA Z. MEHDI (220406)
95 Third Street
2nd Floor #9122
San Francisco, CA 94103
(415) 293-0070
(415) 293-0070 (fax)
azram@themehdifirm.com

FARMER BROWNSTEIN JAEGER
GOLDSTEIN KLEIN & SIEGEL LLP
DAVID C. BROWNSTEIN (141929)
DAVID M. GOLDSTEIN (142334)
155 Montgomery Street, Suite 301
San Francisco, CA 94104
(415) 795-2050
(415) 520-5678 (fax)
dbrownstein@fbjgk.com
dgoldstein@fbjgk.com

THE MANNING LAW FIRM
JILL M. MANNING (178849)
50 California St., Ste. 1500
San Francisco, CA 94111
(415) 439-5393
jill@manning-lawfirm.com

SHINDER CANTOR LERNER LLP
MATTHEW L. CANTOR (*pro hac vice*)
ELLISON A. SNIDER (*pro hac vice*)
14 Penn Plaza, Ste. 1900
New York, NY 10122
(646) 960-8601
matthew@scl-llp.com
ellison@scl-llp.com

JAMES J. KOVACS (*pro hac vice*)
J. WYATT FORE (*pro hac vice*)
600 14th St NW, 5th Floor
Washington DC 20005
(646) 960-8601
james@scl-llp.com
wyatt@scl-llp.com

STEYER LOWENTHAL
BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER (100318)
D. SCOTT MACRAE (104663)
235 Pine Street, Fifteenth Floor
San Francisco, CA 94104
(415) 421-3400
(415) 421-2234 (fax)
asteyer@steyerlaw.com
smacrae@steyerlaw.com

*Counsel for Plaintiffs and the Class*