United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

DJENEBA SIDIBE, et al.,

Plaintiffs,

v.

SUTTER HEALTH, et al.,

Defendants.

Case No. 12-cv-04854-LB

**FINAL APPROVAL ORDER**

Re: ECF Nos. 1754, 1761

**INTRODUCTION**

This antitrust consumer class action involved multiple motions to dismiss, extensive discovery, two class-certification motions, a Rule 23(f) petition, three summary-judgment motions, a four-week trial that resulted in a defense verdict, and three appeals to the Ninth Circuit. In March 2025, after jury selection for a second trial but before opening statements, the parties reached a settlement. On May 22, 2025, the court approved the settlement preliminarily. The plaintiffs move for final approval of the settlement and for attorney's fees and costs. After a fairness hearing on November 6, 2025, the court grants the motion for final approval and awards the requested fees and costs.

ORDER – No. 12-cv-04854-LB

## STATEMENT

### 1.  The Lawsuit

The named plaintiffs are individuals who purchased health insurance and employers who provided health insurance for their employees.[1] The plaintiffs filed their first complaint on September 17, 2012, represented solely by The Mehdi Firm. After multiple rounds of motions to dismiss and orders dismissing earlier complaints, Constantine Cannon and other firms joined as plaintiffs' counsel.[2] Following dismissal of the third amended complaint for failure to allege relevant geographic markets, the plaintiffs appealed, and the Ninth Circuit reversed.[3] Discovery spanned 2016 to 2021 and was coordinated with two related state-court cases: *UFCW & Employers Benefit Trust v. Sutter Health*, CGC-14-538451 (Cal. Super. Ct. Apr. 7, 2014) (the UEBT action), and *California ex rel. Xavier Becerra v. Sutter Health*, CGC-18-565398 (Cal. Super. Ct. Mar. 29, 2018).[4] Discovery was extensive, involving over 2.5 million documents from parties, nonparty health plans, and third parties and 155 depositions over 223 deposition days. Obtaining discovery from the nonparty health plans was particularly time-consuming, requiring additional counsel, economists, and data analysts.[5]

Expert discovery was substantial. The plaintiffs retained three experts, including Dr. Tasneem Chipty, who issued eleven expert reports on class certification, relevant markets, liability, antitrust impact, and damages.[6] Sutter retained seven experts and produced twenty-three reports.[7] Expert depositions spanned twenty-eight days.[8]

---

[1] Order – ECF No. 962 at 1. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Dismissal Orders – ECF Nos. 35, 64.

[3] Order – ECF No. 83; *Sidibe v. Sutter Health*, 667 F. App'x 641 (9th Cir. 2016).

[4] Order – ECF No. 158.

[5] Kim Decl. – ECF No. 1754-1 at 10 (¶¶ 45–48).

[6] *Id.* at 11 (¶ 49).

[7] *Id.* (¶ 50).

[8] *Id.* (¶ 51).

Two rounds of class-certification occurred. Initially, the court certified a Rule 23(b)(2) injunctive-relief class but denied a Rule 23(b)(3) damages class, finding Dr. Chipty's analysis insufficient for class-wide antitrust injury and damages.[9] For the second motion, Dr. Chipty expanded her analysis, incorporating data from all five health plans, regression analyses using Center for Medicare and Medicaid Services (CMS) data, and other sources. On July 30, 2020, the court certified a Rule 23(b)(3) class of premium payers.[10] On August 30, 2020, the court appointed Constantine Cannon as lead trial counsel and The Mehdi Firm as co-lead class counsel.[11] On November 5, 2020, the court approved the plaintiffs' notice plan, executed by mail, email, and print and digital publication. The opt-out deadline was March 8, 2021.[12]

Three summary-judgment motions were filed. On April 12, 2019, Sutter's early summary-motion was denied (except for the Davis market).[13] The motion involved substantial expert discovery from Dr. Chipty and Sutter's expert, Dr. Gautam Gowrisankaran.[14] After fact discovery ended on July 27, 2020, the plaintiffs moved for partial summary judgment on the distinct-products element of their tying claim, which the court granted.[15] Sutter's summary-judgment motion argued that its practices were not anticompetitive, it did not willfully maintain monopoly power in tying markets or pose a dangerous probability of monopolization in tied markets, and the plaintiffs lacked class-wide damages for the 2008–2010 claims. The court granted Sutter summary judgment on the Sherman Act § 2 claim and 2008–2010 damages, denying the remainder.[16] These motions involved extensive briefing and hundreds of exhibits.[17]

---

[9] Order – ECF No. 698 at 50–53.

[10] Order – ECF No. 823.

[11] Kim Decl. – ECF No. 1754-1 at 12 (¶¶ 53–54).

[12] Order – ECF No. 901.

[13] Order – ECF No. 673.

[14] Kim Decl. – ECF No. 1754-1 at 13 (¶¶ 58–59).

[15] Order – ECF No. 886.

[16] Order – ECF No. 962.

[17] Kim Decl. – ECF No. 1754-1 at 13–14 (¶ 61).

United States District Court
Northern District of California

In late 2019, Sutter settled the state cases, which involved direct purchasers, for damages and injunctive relief relating to Sutter's contracting practices with insurers, benefitting the indirect purchasers in this action through a monitored injunction.[18] Preparation for trial in this case occurred three times: for October 4, 2021, December 2021/January 2022, and the actual four-week trial in February 2022.[19] Pretrial filings exceeded 18,000 pages, including *Daubert* and in limine motions.[20] After a defense verdict, the plaintiffs appealed. The appellate record included thirty-three volumes of trial materials.[21] The Ninth Circuit reversed on two issues: exclusion of pre-2006 evidence and a revised CACI jury instruction. *Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024). It affirmed the "relevant purchaser" instruction and denial of sanctions. *Sidibe*, No. 22-15634, 2024 WL 2826520 (9th Cir. June 4, 2024). It denied Sutter's petition for rehearing and rehearing en banc.[22] After the mandate issued, the parties updated pretrial filings, and the court issued a final pretrial order.[23] Jury selection occurred on February 27, 2025.[24] On March 2, 2025, the parties settled.[25]

## 2.  The Settlement Process

The parties engaged Gregory Lindstrom of Phillips ADR Enterprises for mediation over five weeks, executing the settlement agreement on April 24, 2025.[26] The plaintiffs moved for preliminary approval on April 25, 2025, which the court granted on May 22, 2025.[27] A final fairness hearing was held on November 6, 2025.

---

[18] *Id.* at 14 (¶ 62).

[19] Docket. The parties picked a jury in December 2021, with a trial date of January 6, 2021. Because of the Omicron surge, the Northern District of California cancelled all jury trials in January.

[20] Orders – ECF No. 1166–67, 1282, 1318, 1363, 1382, 1420.

[21] Kim Decl. – ECF No. 1754-1 at 17 (¶ 77).

[22] Order – ECF No. 1624.

[23] Order – ECF No. 1734.

[24] Minute Entry – ECF No. 1733.

[25] Notice of Settlement – ECF No. 1737.

[26] Settlement Agreement, Ex. A to Kim Decl. – ECF No. 1761-2 at 6–36.

[27] Order – ECF No. 1750.

United States District Court
Northern District of California

**3. The Settlement Agreement**

The certified and settlement class is "All entities in California Rating area 1, 2, 3, 4, 5, 6, 8, 9 or 10 (the 'Nine Rating Areas' or 'Nine RAs'), and all individuals that either live or work in one of the Nine RAs, that paid premiums for a fully insured health insurance policy from Blue Shield, Anthem Blue Cross, Aetna, Health Net or UnitedHealthcare from January 1, 2011 to March 8, 2021."[28]

The settlement amount is $228.5 million, to be deposited into a court-approved escrow account within twenty calendar days of this order. Interest from deposit to the Effective Date will be split evenly between the class and Sutter. Proceeds will be distributed pro rata.[29] The release covers:

> Sutter, its past or present parents, subsidiaries, divisions, affiliates, providers (including, but not limited to, hospitals, foundations, doctors, ambulatory surgery centers and any other providers), officers, directors, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) from any and all claims, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising from or related to the facts, activities, or circumstances that were alleged in the complaints filed by Plaintiffs, including in the Fourth Amended Complaint, or otherwise alleged in this Action including during the first trial of this matter in 2022, or arising from or related to any purported anticompetitive effect resulting from the conduct alleged by Plaintiffs in this Action, including conduct alleged during the first trial of this matter in 2022.[30]

The release includes a waiver of unknown claims under Cal. Civ. Code § 1542.[31]

Class Counsel's requested fees and costs (to be deducted from the fund) require court approval and include approximately $10 million for notice and administration of the Settlement (discussed below), $28,185,752 in expenses (including $17 million for experts), attorney's fees (without a multiplier and not exceeding one-third of the settlement fund), service awards to Class Representatives ($20,000 each for testifying Class Representatives, $15,000 each for non-testifying Representatives, totaling $95,000 for five representatives).[32]

---

[28] Settlement Agreement, Ex. A to Kim Decl. – ECF No. 1761-2 at 10.

[29] *Id.* at 18–21 (§ III.A.1, 5).

[30] *Id.* at 24 (§ VI.A.1).

[31] *Id.* at 24–25 (§ VI.A.2).

[32] *Id.* at 25 (§ VII.1); Mot. – ECF No. 1754; Mot. – ECF No. 1761-1 at 15; Kim. Suppl. Decl. – ECF No. 1762.

United States District Court
Northern District of California

The court previously established an opt-out period for Class Members from December 15, 2020, to March 8, 2021, stating that any members who did not opt out would be bound by the outcome of the lawsuit, would receive the benefits of any settlement, and would not be able to exclude themselves from the Class in the future.[33]

### 4. Settlement Administration

JND, a nationally recognized administrator, managed the notice and distribution plan, consistent with the court-approved November 5, 2020, plan. It mailed 6,624,714 Post Card Notices from June 2 to June 24, 2025, using updated addresses from health plans, skip-trace databases, and the U.S. Postal Service. Undeliverable notices were re-mailed to forwarding addresses.[34] It emailed 1,994,468 notices from June 2, 2025, to June 28, 2025, with three follow-up campaigns.[35] Digital ads on LinkedIn, Facebook, Instagram, programmatic advertising (through OMTrade Desk); SHRM.org (the largest trade-association site), Google Display Network (GDN, the leading digital network), and Demand Gen (an AI-powered advertising method) generated 1,885,534 digital impressions from June 2 to July 13, 2025.[36] A press release reached 139.7 million, with 13.5 million via regional outlets.[37] The website, www.SutterHealthPremiumLawsuit.com, provided case details and claim forms.[38] JND's toll-free line received 25,345 calls, and it received 6,169 emails.[39] 206,546 claims were filed by the claim-filing deadline of September 12, 2025.[40] Administration costs are approximately $10 million.[41]

---

[33] Order – ECF No. 955; Settlement Agreement, Ex. A to Kim Decl. – ECF No. 1761-2 at 15–16 (§ II.D).

[34] Kim Decl. – ECF No. 1761-2 at 2–3 (¶ 9); Keough Decl. – ECF No. 1761-3 at 1–3 (¶¶ 2, 5, 9); Order – ECF No. 901.

[35] Keough Decl. – ECF No. 1761-3 at 3–4 (¶¶ 12, 14).

[36] *Id.* at 4–5 (¶¶ 16–20); Digital Ads, Ex. D to *id.* at 24–45.

[37] Keough Decl. – ECF No. 1761-3 at 7 (¶¶ 30–31).

[38] *Id.* at 7–8 (¶¶ 32–33, 35).

[39] *Id.* at 8 (¶¶ 37–38).

[40] *Id.* (¶ 40).

[41] *Id.* (¶ 47) ($4 million for notice and $6 million for claims administration).

ORDER – No. 12-cv-04854-LB                6

United States District Court
Northern District of California

## 5. Objections

Two objections were filed. On August, 26, 2025, William Legler objected to calculating fees on the gross fund.[42] Hao Tze Wang's objection, alleging inadequate notice and discrimination, was withdrawn (after a September 10, 2025, hearing, per Fed. R. Civ. P. 23(e)(5)(B)), with a $900 payment (predicated on his claim that he paid $15,000 in premiums during the class period) and (2) provision of the public opt-out list.[43]

## 6. Efforts of Class Representatives

Class Representatives, some involved since 2012, contributed significantly through discovery, depositions, and trial preparation.[44]

## 7. Additional Costs

Since preliminary approval, the plaintiffs and class counsel incurred additional costs for data expert analysis in connection with assisting certain large Class Members (such as CalPERS). The revised costs total $28,185,752.[45]

## ANALYSIS

## 1. Jurisdiction

The court has jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d)(2).

## 2. Certification of the Settlement Class

The court previously certified the class under Rule 23(a) and (b)(3).[46] The class remains appropriate, with no changed circumstances. Numerosity is satisfied with over three million

---

[42] Obj. – ECF No. 1757.

[43] Minute Entry – ECF No. 1759; Order – ECF No. 1760.

[44] *See* Pls.' Decls. – ECF Nos. 1754-10–15.

[45] Kim Decl. – ECF No. 1761-2 at 4 (¶ 17); Kim. Suppl. Decl. – ECF No. 1762; Reimbursement Costs, Ex. D to *id.* – ECF No. 1761-2.

[46] Orders – ECF Nos. 823, 1750.

ORDER – No. 12-cv-04854-LB                7

members. *Nelson v. Avon Prods., Inc.*, No. 14-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015). Commonality exists in questions about Sutter's contracting practices. Typicality is met, as the plaintiffs' claims arise from the same conduct. Adequacy is satisfied: there are no conflicts and counsel is qualified. Fed. R. Civ. P. 23(a); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003); *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082-LB, 2014 WL 6483216, at *15–20 (N.D. Cal. Nov. 18, 2014).

### 3. Approval of Settlement

A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel;

(7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

The settlement is fair, reasonable, and adequate.

First, representation is adequate. Class counsel and the representatives litigated vigorously over thirteen years, navigating motions, discovery, trial, and appeals.

Second, mediation with Mr. Lindstrom, together with experienced and knowledgeable counsel, ensured a non-collusive process. Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note (2018) ("[T]he involvement of a neutral . . . in negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (private mediation "tends to support the conclusion that the settlement process was not collusive").

Third, the relief is adequate, providing class members with a recovery of over fifty-five percent of single damages, exceeding typical settlements. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (approximately thirty percent of the estimated damages before trebling was fair, adequate, and reasonable); *Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2022 WL 17330847, at *12 (N.D. Cal. Nov. 29, 2022) ("[T]welve percent of the best-case scenario is within the range courts approve."); *Reynolds v. Direct Flow Med., Inc.*, No. 17-cv-00204-KAW, 2019 WL 4168959, at *3 (N.D. Cal. Sept. 3, 2019) (approving settlement representing thirteen percent of the plaintiffs' estimated damages); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *3 (N.D. Cal. June 26, 2017) (settlement of approximately thirty percent of the estimated single damages); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (DMR), 2017 WL 1086331, at 4* (N.D. Cal. Mar. 20, 2017) (settlement of "11.2% of the single damages attributable to Sony sales"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058 JST, 2017 WL 565003, at *4, *6 (N.D. Cal. Feb. 13, 2017) (preliminary approval of twenty-four percent of single damages). The settlement is in line with the monetary settlement in the related state-court cases (UEBT and the California AG's affirmative lawsuit), where the direct-

purchaser class obtained approximately fifty-seven percent of single damages.[47] The risks of trial, appeal delays, and costs support approval.

Fourth, the settlement is equitable. Pro rata and prompt distribution ensures fairness. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "fairly treats class members by awarding a pro rata share to the class members based on the extent of their injuries").

Finally, the *Hanlon* factors overall support approval: strong results, high litigation risk, completed discovery, experienced counsel, and minimal objections (one withdrawn). *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *6 (N.D. Cal. June 27, 2014) (a court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it" (cleaned up)); *cf. Staton*, 327 F.3d at 959 (the court should consider "reaction of the class members to the proposed settlement").

In sum, the settlement is fair, adequate, and reasonable. *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### 4. Attorney's Fees and Costs

Class Counsel's $75.4 million fee request (thirty-three percent of the settlement fund) and $28,185,752 in costs are approved.[48]

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The court must ensure that the award is reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 941–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of

<div style="margin-left:3em; border-left:1px solid; padding-left:1em;">

---

[47] Mot. – ECF No. 1761-1 at 19 (citing settlement in state cases).

[48] Mot. – ECF No. 1754 at 29–30; Mot. – ECF No. 1761-1 at 15; Kim. Suppl. Decl. – ECF No. 1762.

</div>

<div style="text-align:left; margin-left:2em; position:relative;">

United States District Court
Northern District of California

</div>

fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up). When counsel recovers a common fund that confers a "substantial benefit" on a class, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

The "percentage of the fund" method is typically used. The Ninth Circuit's benchmark is twenty-five percent of the settlement, but courts diverge based on factors that include the results obtained, risks undertaken by counsel, the complexity of the issues, the length of the professional relationship, the market rate, and similar awards. *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (thirty-three-percent fee award); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same).

If the court applies the percentage method, it calculates the lodestar as a cross-check to assess the reasonableness of the fees. *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). The lodestar is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). The court has discretion to apply a multiplier to take into account other factors, "including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016) (California standard).

The fees are appropriate as a percentage of the common fund, supported by a lodestar cross-check, the complexity and results, and the lack of objections to the settlement amount.[49] *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259–65 (N.D. Cal. 2015) (approving

---

[49] *See* Mot. – ECF No. 1754 at 24–28; Pearl Decl. – ECF No. 1754-16 at 10–30 (¶¶ 15–26); Kim Decl. – ECF No. 1754-1 at 2–5 (¶¶ 5–22), 7 (¶ 32); Report, Ex. E to Kim Decl. – ECF No. 1754-1 at 46.

benchmark twenty-five percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (thirty-three percent, given extensive litigation, successful results, and contingency risk); *Villalpando v. Exel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (same). Class counsel collects cases supporting the conclusion that the inherent complexity of antitrust cases is a factor that courts consider in awarding a one-third fee award.[50] The lodestar exceeds the fees sought, and counsel did not seek enhanced rates, which supports the reasonableness of the percentage fee request.[51] *Taylor v. Shutterfly, Inc.*, No. 5:18-CV-00266-BLF, 2021 WL 5810294, at *9 (N.D. Cal. Dec. 7, 2021) (counsel sought less in fees than they reasonably incurred). The objection to the gross-fee calculation is overruled because precedent supports gross-fund calculations. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *8–9 (N.D. Cal. Aug. 17, 2018); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000); *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2021 WL 2826697, at *5 (N.D. Cal. July 7, 2021).

The expenses are reasonable and compensable, involving experts and other categories routinely charged to paying clients. Fed. R. Civ. P. 23(h) (compensable expenses include "nontaxable costs that are authorized by law or by the parties' agreement"); *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (can recover reasonable expenses that would be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable expenses in class action settlement).[52]

[50] Mot. – ECF No. 1754 at 23–24 (citing *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) and collecting other cases).

[51] Report, Ex. E to Kim Decl. – ECF No. 1754-1 at 46 (attorney's fees of $81,368,771.00 at historical rates).

[52] Mot. – ECF No. 1761-1 at 34 at 23–24 & n.5 (collecting cases).

ORDER – No. 12-cv-04854-LB          12

**5.  Service Awards**

The court approves the service awards, which reflect the representatives' significant time and effort during this protracted litigation. *See, e.g.*, *Bernstein v. Virgin Am., Inc.*, No. 15-cv-02277-JST, 2023 WL 7284158, at *3–4 (N.D. Cal. Nov. 3, 2023) (service awards of $25,000 and $12,000); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) ($20,000); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) ($25,000); *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 WL 1904533, at *22 (N.D. Cal. Apr. 17, 2020) ($25,000 where the plaintiff held regular meetings with class counsel for more than three years, sat for a lengthy deposition, traveled multiple times from Sacramento to Oakland to appear at trial, testified live at trial, and worked with class counsel to pursue collection efforts); *Vietnam Veterans of Am. v. Cent. Intel. Agency*, No. 09-cv-00037-CW, 2018 WL 4827397, at *1 (N.D. Cal. Oct. 4, 2018) ($20,000); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541 CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) ($20,000).

**6.  Class Representative, Class Counsel, and Claims Administrator**

The court confirms its appointment of the class representative, class counsel, and JND as administrator and approves $10 million in administrative costs.[53] Fed. R. Civ. P. 23(a), (g)(1).

**7.  Class Notice**

The notice plan, executed by JND under the court-approved notice plan, satisfied Rule 23(c)(2) and due process, providing the best notice practicable with information via mail, email, digital mail, and a website. It adequately advised class members of their rights and provided all required information, including (1) a summary of the lawsuit and claims asserted, (2) a clear

---

[53] Order – ECF No. 901 at 2–3; Settlement Agreement, Ex. A to Kim Decl. – ECF No. 1761-2 at 12 (§ I.A.17).

United States District Court
Northern District of California

definition of the class, (3) a description of the material terms of the settlement, (4) a disclosure of the release of the claims, (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so, (6) the date, time, and location of the final fairness hearing, and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.

## 8. Compliance with CAFA

The defendants complied with CAFA notice requirements under 28 U.S.C. § 1715(b), with the fairness hearing held over ninety days after service.[54]

### CONCLUSION

The court approves the class-action settlement, including the fees and costs, and will separately enter the plaintiffs' proposed order and proposed form of judgment.

**IT IS SO ORDERED.**

Dated: November 6, 2025

_____
LAUREL BEELER
United States Magistrate Judge

---

[54] Settlement Agreement, Ex. A to Kim Decl. – ECF No. 1761-2 at 14 (§ II.B.3).

ORDER – No. 12-cv-04854-LB                    14